**No. 23-12958**

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

———————————————

State of Georgia,

*Plaintiff-Appellee*,

v.

Mark R. Meadows,

*Defendant-Appellant*.

———————————————

From the United States District Court for the Northern District of Georgia
The Honorable Steve C. Jones, Presiding
No. 1:23-CV-3621-SCJ

———————————————

**Emergency Motion for Stay Pending Appeal and for Expedited Review**

John S. Moran
George J. Terwilliger, III*
Michael Francisco
Francis J. Aul
MCGUIREWOODS LLP
888 16th Street NW, Suite 500
Washington, DC 20006
(202) 857-1700

*Application for Admission Forthcoming

*Counsel for Defendant-Appellant Mark R. Meadows*

No. 23-12958, *State of Georgia v. Meadows*

## CERTIFICATE OF INTERESTED PERSONS
## AND CORPORATE DISCLOSURE STATEMENT

To the best of Appellant's knowledge, no associations of persons, partnerships, or corporations have an interest in the outcome of this case or appeal, including subsidiaries, conglomerates, affiliates, parent corporations, any publicly held corporation that owns 10% or more of the party's stock; the following is a list, in alphabetical order, of all trial judges, attorneys, law firms, and persons with such an interest[*]:

1.    Alksne, Cynthia, *amicus* below

2.    Anulewicz, Christopher Scott, attorney for Robert David Cheeley

3.    Arora, Manubir, attorney for Kenneth John Chesebro

4.    Aul, Francis, attorney for Mark R. Meadows

5.    Ayer, Donald B., *amicus* below

6.    Barron, Lynsey M., attorney for Scott Graham Hall

7.    Beckermann, Wayne R., attorney for Robert David Cheeley

8.    Bever, Thomas Dean, attorney for Shawn Micah Tresher Still

9.    Bittman, Robert, attorney for Mark R. Meadows

10.    Bondurant Mixson & Elmore LLP

---

[*] For all parties who appeared below, Appellant has included the parties, their attorneys, and their attorneys' law firms. In order to facilitate this Court's review for potential conflicts, Appellant has also included the other named defendants in the state proceeding and their attorneys, where available.

11.   Carr, Christopher M., Attorney General of the State of Georgia

12.   Cheeley, Robert David, Defendant in *Georgia v. Trump*

13.   Chemerinsky, Erwin, *amicus* below

14.   Chesebro, Kenneth John, Defendant in *Georgia v. Trump*

15.   Christenson, David Andrew, *pro se*, denied intervention below

16.   Clark, Jeffrey Bossert, Defendant in *Georgia v. Trump*

17.   Cohen, Darryl B., attorney for Trevian C. Kutti

18.   Copeland, Amy, *amicus* below

19.   Cromwell, William Grant, attorney for Cathleen Alston Latham

20.   Cross, Anna Green, Fulton County District Attorney's Office

21.   Cross Kincaid LLC

22.   Durham, James D., attorney for Mark R. Meadows in *Georgia v. Trump*

23.   Eastman, John Charles, Defendant in *Georgia v. Trump*

24.   Ellis, Jenna Lynn, Defendant in *Georgia v. Trump*

25.   Englert, Joseph Matthew, attorney for Mark R. Meadows

26.   Farmer, John J. Jr., *amicus* below

27.   Floyd, Harrison William Prescott, Defendant in *Georgia v. Trump*

28.   Floyd, John Earl, Fulton County District Attorney's Office

29.   Francisco, Michael Lee, attorney for Mark R. Meadows

30.   Fried, Charles A., *amicus* below

31.   Fulton County District Attorney's Office

No. 23-12958, *State of Georgia v. Meadows*

32.  Gerson, Stuart M., *amicus* below

33.  Gillen, Craig A., attorney for David James Shafer

34.  Giuliani, Rudolph William Louis, Defendant in *Georgia v. Trump*

35.  Griffin Durham Tanner & Clarkson LLC

36.  Grohovsky, Julie, *amicus* below

37.  Grubman, Scott R., attorney for Kenneth John Chesebro

38.  Hall, Scott Graham, Defendant in *Georgia v. Trump*

39.  Hampton, Misty (a/k/a Emily Misty Hayes), Defendant in *Georgia v. Trump*

40.  Harding, Todd A., attorney for Harrison William Prescott Floyd

41.  Hogue, Franklin James, attorney for Jenna Lynn Ellis

42.  Hogue, Laura Diane, attorney for Jenna Lynn Ellis

43.  Jones, Steve C., U.S. District Court Judge for the Northern District of Georgia

44.  Kammer, Brian S., attorney for *amici* below

45.  Kelley, Emily E., attorney for Mark R. Meadows

46.  Kutti, Trevian C., Defendant in *Georgia v. Trump*

47.  Lake, Anthony C., attorney for David James Shafer

48.  Latham, Cathleen Alston, Defendant in *Georgia v. Trump*

49.  Lee, Stephen Cliffgard, Defendant in *Georgia v. Trump*

50.  Little, Jennifer L., attorney for Donald J. Trump

51.  Luttig, J. Michael, *amicus* below

No. 23-12958, *State of Georgia v. Meadows*

52.  MacDougald, Harry W., attorney for Jeffrey Bossert Clark

53.  McAfee, Scott, Fulton County Superior Court Judge

54.  McFerren, William Coleman, attorney for Shawn Micah Tresher Still

55.  McGuireWoods, LLP

56.  Meyer, Joseph Michael, attorney for *amici* below

57.  Moran, John S., attorney for Mark R. Meadows

58.  Morgan, John Thomas III, attorney for *amici* below

59.  Morris, Bruce H., attorney for Ray Stallings Smith, III

60.  Ney, Adam, Fulton County District Attorney's Office

61.  Novay, Kristen Wright, attorney for Ray Stallings Smith, III

62.  Palmer, Amanda, attorney for Ray Stallings Smith, III

63.  Parker, Wilmer, attorney for John Charles Eastman

64.  Pierson, Holly Anne, attorney for David James Shafer

65.  Powell, Sidney Katherine, Defendant in *Georgia v. Trump*

66.  Rafferty, Brian T., attorney for Sidney Katherine Powell

67.  Ragas, Arnold M., attorney for Harrison William Prescott Floyd

68.  Raul, Alan Charles, *amicus* below

69.  Rice, Richard A., Jr., attorney for Robert David Cheeley

70.  Roman, Michael A., Defendant in *Georgia v. Trump*

71.  Rood, Grant H., Fulton County District Attorney's Office

72.  Sadow, Steven H., attorney for Donald J. Trump

No. 23-12958, *State of Georgia v. Meadows*

73.   Saldana, Sarah R., *amicus* below

74.   Samuel, Donald Franklin, attorney for Ray Stallings Smith, III

75.   Shafer, David James, Defendant in *Georgia v. Trump*

76.   Smith, Ray Stallings, III, Defendant in *Georgia v. Trump*

77.   Still, Shawn Micah Tresher, Defendant in *Georgia v. Trump*

78.   Terwilliger, George J., III, attorney for Mark R. Meadows

79.   Trump, Donald J., Defendant in *Georgia v. Trump*

80.   Twardy, Stanley A. Jr., *amicus* below

81.   Volchok, Daniel, attorney for *amici* below

82.   Wade, Nathan J., Fulton County District Attorney's Office

83.   Wade & Campbell Firm

84.   Wakeford, Francis McDonald IV, Fulton County District Attorney's Office

85.   Waxman, Seth P., attorney for *amici* below

86.   Weld, William F., *amicus* below

87.   Wertheimer, Fred, attorney for *amici* below

88.   Willis, Fani T., Fulton County District Attorney's Office

89.   Wilmer Cutler Pickering Hale and Dorr LLP

90.   Wooten, John William, Fulton County District Attorney's Office

91.   Wu, Shan, *amicus* below

92.   Young, Daysha D'Anya, Fulton County District Attorney's Office

## TABLE OF CONTENTS

BASIS FOR EMERGENCY CONSIDERATION ....................................................1

INTRODUCTION ................................................................................................1

RELIEF SOUGHT ................................................................................................3

JURISDICTION....................................................................................................4

LEGAL STANDARD...........................................................................................4

REASONS FOR GRANTING RELIEF ..............................................................5

I.      The Court Should Stay the Remand Order Pending Appeal ........................5

        A.      Meadows is likely to succeed on the merits.........................................5

                i.      Meadows has far exceeded the low threshold for removal........6

                ii.     The Remand Order is clearly erroneous ...................................11

        B.      Meadows will suffer irreparable injury absent a stay ........................18

        C.      A stay will not substantially prejudice the State or other parties........19

        D.      The public interest favors a stay.........................................................19

II.     The Court Should Grant Expedited Review................................................20

III.    Alternatively, If the Court Needs More Time, It Should Enjoin the Fulton
        County District Attorney from Prosecuting Meadows in State Court Pending
        Appeal.................................................................................................................21

CONCLUSION ...................................................................................................23

# TABLE OF AUTHORITIES

## Cases

*Ackerman v. ExxonMobil Corp.*,
  734 F.3d 237 (4th Cir. 2013) ..................................................................22

*Caver v. Central Alabama Elec. Cooperative*,
  845 F.3d 1135 (11th Cir. 2017) ................................................ 1, 6, 9, 10, 11, 13

*Convent Corp. v. City of N. Little Rock*,
  784 F.3d 479 (8th Cir. 2015) ..................................................................13

*Corey v. United States*,
  375 U.S. 169 (1963) ...........................................................................5

*Davis Int'l, LLC v. New Start Grp. Corp.*,
  367 F. App'x 334 (3d Cir. 2010) ..............................................................22

*Denson v. United States*,
  574 F.3d 1318 (11th Cir. 2009) ....................................................... 3, 11, 13

*Garcia-Mir v. Meese*,
  781 F.2d 1450 (11th Cir. 1986) ............................................................4, 5

*Hand v. Scott*,
  888 F.3d 1206 (11th Cir. 2018) ................................................................4

*In re Asbestos Prod. Liab. Litig. (No. VI)*,
  770 F. Supp. 2d 736 (E.D. Pa. 2011) ...........................................................2

*In re Lindsey*,
  158 F.3d 1263 (D.C. Cir. 1998) (per curiam) (Tatel, J., concurring in part and
  dissenting in part) ..........................................................................14

*In re Neagle*,
  135 U.S. 1 (1890) ............................................................................20

*Jefferson Cnty. v. Acker*,
  527 U.S. 423 (1999) .................................................................. 11, 13, 17

*Johnson v. Maryland*,
    254 U.S. 51 (1920) ..............................................................................13

*Jones v. Governor of Fla.*,
    950 F.3d 795 (11th Cir. 2020)...........................................................18

*Kaepa, Inc. v. Achilles Corp.*,
    76 F.3d 624 (5th Cir. 1996)...............................................................22

*Kentucky v. Long*,
    837 F.2d 727 (6th Cir. 1988) .............................................................10

*Kircher v. Putnam Funds Tr.*,
    547 U.S. 633 (2006) ...........................................................................12

*Kordash v. United States*,
    51 F.4th 1289 (11th Cir. 2022)................................................... 10, 11

*Magnin v. Teledyne Cont'l Motors*,
    91 F.3d 1424 (11th Cir. 1996)........................................................6, 10

*Maryland v. Soper*,
    270 U.S. 9 (1926) ...............................................................................10

*Myers v. United States*,
    272 U.S. 52 (1926) .............................................................................15

*Nadler v. Mann*,
    951 F.2d 301 (11th Cir. 1992) ...........................................................12

*New York v. Tanella*,
    374 F.3d 141 (2d Cir. 2004) .................................................... 3, 18, 20

*Nixon v. Fitzgerald*,
    457 U.S. 731 (1982) ................................................................. 14, 22

*Quackenbush v. Allstate Ins. Co.*,
    121 F.3d 1372 (9th Cir. 1997)...........................................................22

*Roman Cath. Diocese of Brooklyn v. Cuomo*,
    141 S. Ct. 63 (2020)..............................................................................4

*Ruiz v. Estelle*,
    650 F.2d 555 (5th Cir. 1981) (per curiam) ..............................................5

*Southmark Properties v. Charles House Corp.*,
    742 F.2d 862 (5th Cir. 1984) ...............................................................19

*State of Maryland v. Soper*,
    270 U.S. 9 (1926) .................................................................................3

*Tennessee v. Davis*,
    100 U.S. 257 (1879) ...................................................................... 19, 20

*United States v. Nixon*,
    418 U.S. 683 (1974) ...........................................................................14

*Willingham v. Morgan*,
    395 U.S. 402 (1969) .........................................................................2, 10

*Younger v. Harris*,
    401 U.S. 37 (1971) ....................................................................... 21, 22

*Youngstown Sheet & Tube Co. v. Sawyer*,
    343 U.S. 579 (1952) ...........................................................................16

*Zivotofsky ex rel. Zivotofsky v. Kerry*,
    576 U.S. 1 (2015) ...............................................................................14

**Statutes**

Electoral Count Act, 3 U.S.C. § 5, et. seq. (1887).................................16

28 U.S.C. § 1442 ................................................... 4, 9–10, 12, 21

28 U.S.C. § 1447 ..................................................................................4

28 U.S.C. § 1455 ................................................................... 3–4, 21

28 U.S.C. § 2283 ...............................................................................21

**Other Authorities**

Brief for United States as Amicus Curiae,
*Blassingame v. Trump*, Case Nos. 22-5069, 22-7030, 22-7031 (D.C. Cir. Mar. 2, 2023) ...............................................................................................................14

Office of Legal Counsel, U.S. Dep't of Justice,
*Congressional Oversight of the White House*, slip op. (Jan. 8, 2021) .................15

S. Waxman & T. Morrison,
*What Kind of Immunity? Federal Officers, State Criminal Law, and the Supremacy Clause*, 112 YALE L.J. 2195 (2003).....................................................13

THE NERVE CENTER: LESSONS IN GOVERNING FROM THE WHITE HOUSE CHIEFS OF STAFF (Terry Sullivan ed., College Station: Texas A&M Univ. Press 2004)......15

**Rules**

11th Cir. Rule 27-1(b) ...........................................................................................1, 4

FED. R. APP. P. 2 .......................................................................................................5

FED. R. APP. P. 8(c) ...............................................................................................4, 5

FED. R. CRIM. P. 38 ..................................................................................................5

**BASIS FOR EMERGENCY CONSIDERATION**

Appellant seeks "emergency" consideration; his requests will be moot, in part, if not ruled on within seven days and come within seven days of the district court's order. 11th Cir. Rule 27-1(b).

**INTRODUCTION**

The District Attorney in Fulton County, Georgia, is prosecuting the former White House Chief of Staff, Mark R. Meadows, alleging that, during his government service, he joined a RICO conspiracy with the President and others. The Federal Officer Removal Statute, 28 U.S.C. § 1442, provides a right to remove such cases, as federal officials have done for the better part of two centuries. The court below egregiously erred in rejecting removal. Given the "quite low" bar for removal, *Caver v. Central Alabama Elec. Cooperative*, 845 F.3d 1135, 1144 (11th Cir. 2017), the clear error below, and the important federal interests at stake, this Court should stay remand and expedite review, or enjoin prosecution pending appeal.[1]

---

[1] Earlier today, Meadows moved below for a stay of the Remand Order pending appeal. *See* Motion, Dkt. No. 75. The district court directed the State to respond by Noon tomorrow. *See* Order, Dkt. No. 76. Given the urgency of the requested relief, and because this motion seeks more than just a stay, Meadows brings this motion while the motion below is still pending. Meadows will update this Court as soon as practicable once the district court rules on the stay motion.

Meadows was indicted on Monday, August 14, 2023, and removed the next day. *See* Notice of Removal, Dkt. No. 1. The district court declined summary remand on August 16 and set an evidentiary hearing for August 28. *See* Order, Dkt. No. 6. When the State refused to delay arrest, Meadows sought emergency relief, *see* Motion, Dkt. No. 17, which the district court denied, *see* Order, Dkt. No. 25. Meadows also moved to dismiss based on Supremacy Clause immunity, *see* Motion, Dkt. No. 16, which the district court never reached. At the evidentiary hearing, Meadows testified and presented evidence. Nearly two weeks later, on Friday, September 8, the district court declined jurisdiction and remanded immediately. *See* Order, Dkt. No. 69 (Ex. 1) (hereinafter "Remand Order"). Meadows appealed the same day. *See* Notice of Appeal, Dkt. No. 71.

The Remand Order is severely flawed. It conflicts with clear precedent setting a "quite low" bar for removal, *Caver*, 845 F.3d at 1144; reflects a "narrow, grudging" interpretation of § 1442, *Willingham v. Morgan*, 395 U.S. 402, 407 (1969); and inverts "the presumption under the federal officer removal statute [which] favors removal," *In re Asbestos Prod. Liab. Litig. (No. VI)*, 770 F. Supp. 2d 736, 741 (E.D. Pa. 2011).

Meadows will elaborate on those errors in merits briefing. But for now, he seeks procedural relief so that removal is considered "promptly," 28 U.S.C.

2

§ 1455(b)(4)–(5), and he does not irreparably lose protection under § 1442 and the Supremacy Clause. *See New York v. Tanella*, 374 F.3d 141, 147 (2d Cir. 2004) (Supremacy Clause provides federal officials "immunity from suit rather than a mere shield against liability").

Procedural relief is needed because the State seeks to take Meadows to trial ***in 42 days***, with numerous pre-trial deadlines before. This Court's prompt action will preserve the *status quo* and prevent irreparable loss of Meadows's rights.[2] Meadows asks to stay the Remand Order, which will prevent a conviction. *See* 28 U.S.C. § 1455(b)(3). He also requests expedited review to avoid further harm. If the Court needs more time, it can and should enjoin the District Attorney from prosecuting Meadows in state court pending appeal.

## RELIEF SOUGHT

Meadows seeks: (1) a stay of the Remand Order, and (2) expedited review. If the Court does not expedite, he alternatively seeks (3) an injunction against state prosecution pending appeal. Meadows suggests the following expedited schedule:

Opening Brief                              Friday, September 15, 2023

---

[2] Former officials are protected. The question is whether the defendant was a federal official at the time of the conduct charged, not at the time of prosecution or removal, *see State of Maryland v. Soper*, 270 U.S. 9, 34–35 (1926), so that prosecution does not chill *current* federal officials in the exercise of their federal duties, *see Denson v. United States*, 574 F.3d 1318, 1349 (11th Cir. 2009).

3

Response Brief                    Friday, September 22, 2023

Reply Brief                       Monday, September 25, 2023

Oral Argument (If Held)           Week of September 25, 2023

Counsel will present oral argument if the Court desires. Given the urgency, however, Meadows is willing to forgo argument to facilitate a prompt ruling.

## JURISDICTION

The district court had jurisdiction over this removed prosecution. 28 U.S.C. §§ 1442 & 1455. This Court has appellate jurisdiction. *Id.* § 1447(d).

## LEGAL STANDARD

Granting a stay turns on four factors: (1) likelihood of success on the merits; (2) irreparable injury; (3) balance of hardships; and (4) the public interest. *See Roman Cath. Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63, 66 (2020); *Hand v. Scott*, 888 F.3d 1206, 1207 (11th Cir. 2018) (same); FED. R. APP. P. 8; 11th Cir. Rule 27-1(b)(2). The first two factors are "most critical," *Nken v. Holder*, 556 U.S. 418, 434 (2009), and "[o]rdinarily the first factor is the most important," *Garcia-Mir v. Meese*, 781 F.2d 1450, 1453 (11th Cir. 1986). A stay will generally be warranted (a) if the decision below was "clearly erroneous," or (b) if the applicant makes a "lesser showing of a 'substantial case on the merits' when 'the balance of the equities

4

[identified in factors 2, 3, and 4] weighs heavily in favor of granting the stay.'" *Id.* (quoting *Ruiz v. Estelle*, 650 F.2d 555, 565 (5th Cir. 1981) (per curiam)).[3]

## REASONS FOR GRANTING RELIEF

### I.    The Court Should Stay the Remand Order Pending Appeal.

The Federal Officer Removal Statute protects against prosecution in state court, especially where, as here, the prosecution is novel and unprecedented. This case is not about removal for a government contractor; it involves an official at the highest level of the Executive Branch accused of joining an alleged conspiracy with the President. Meadows faces imminent, irreparable harm absent prompt relief.

### A.    Meadows Is Likely to Succeed on the Merits.

Meadows far exceeded the low threshold for removal. He respectfully submits the Remand Order is clearly erroneous, but at a minimum, he has a substantial case on the merits. *See Garcia-Mir*, 781 F.2d at 1453.

---

[3] Appellate Rule 8(c) refers to Criminal Rule 38. This criminal prosecution has been docketed as a civil case for the removal stage, a procedural step Criminal Rule 38 does not address. If the criminal rules control, Meadows is entitled to relief to ensure the appeal is "disposed of as expeditiously as the fair and orderly administration of justice may permit" and the "imposition of actual punishment be avoided pending disposition of an appeal." *Corey v. United States*, 375 U.S. 169, 172 (1963). In any event, this Court has the flexibility to expedite and stay. *See* FED. R. APP. P. 2.

### i.    *Meadows has far exceeded the low threshold for removal.*

Meadows indisputably served as a federal official so needs only to (1) "show 'a causal connection between what [he] has done under asserted official authority and the action against him,'" and (2) "raise a colorable federal defense," *Caver*, 845 F.3d at 1142 (quoting *Magnin v. Teledyne Cont'l Motors*, 91 F.3d 1424, 1427 (11th Cir. 1996)). He has made those easy showings.

The Notice of Removal and record below clearly establish a causal connection between the conduct charged and Meadows's official role. His unrebutted testimony establishes that every act charged in the Indictment[4] occurred during his tenure and as part of his service:

***Act 5 – Oval Office Meeting with Michigan Legislators***. Meadows participated as Chief of Staff, Aug. 28 Hr'g Tr., Dkt. No. 65 (Exs. 2 & 3), at 44:6–7 (hereinafter "Tr."), which was consistent with his responsibilities, including managing the President's time, Tr. 44:9–13; maintaining awareness of matters before the President, Tr. 45:5–7; advising the President, Tr. 44:25–45:3; monitoring post-meeting action items, Tr. 58:20–21; addressing the federal interest in fair

---

[4] As explained below, the district court's holding that charged conduct could be ignored because the State *might* secure a conviction without it is reversible error. *See* pp.12–13 *infra*.

elections, Tr. 59:18–24; and maintaining awareness of matters that could lead to legislation or executive orders, Tr. 62:10–16.

*Act 6 – Texting to Get a Phone Number for the President*. As the district court agreed, *see* Remand Order at 35, Meadows tracked down this number as Chief of Staff, Tr. 46:24–25, consistent with his responsibilities, namely gathering information for the President, Tr. 46:24–47:1, 47:8–10, 66:14–18.

*Act 9 – White House Meeting with Pennsylvania Legislators*. Meadows "was not actually in this meeting," Tr. 48:11–12, but to the extent he was involved, it was as Chief of Staff, Tr. 48:4–7. He was called down to notify visiting legislators of positive COVID tests, Tr. 48:18–49:9, consistent with his responsibilities, namely ensuring the President's health and physical safety, Tr. 48:23–49:3, 74:6–11.

*Act 19 – Requesting a White House Staff Memo*. Meadows "did not ask" Johnny McEntee for this memo, Tr. 50:12; *see also* Tr. 50:7, 51:7–8, but to the extent he was involved, it would have been as Chief of Staff, Tr. 49:17–19, consistent with his responsibilities, including supervising White House staff in preparing memos and other tasks, Tr. 49:17–19, maintaining awareness of matters before the President, and advising the President on matters of federal law.

*Act 92 – Visiting the Cobb County Civic Center*. Meadows made this visit as Chief of Staff to inform the President, Tr. 51:20–23, 85:7–10, consistent with his

7

responsibilities, including gathering information for the President, Tr. 52:9–14, 53:4–7, 77:11–12, 77:22–24, managing the President's ability to focus on his duties, Tr. 81:9–15, 96:20–97:2, and maintaining knowledge about potential subjects of proposed legislation or executive orders, Tr. 81:10–11, 81:23–82:5.

**Act 93 – *Arranging a Call for the President to a State Official***. Meadows arranged this call as Chief of Staff, Tr. 53:17–21, but did not participate, Tr. 89:10–11. He acted consistent with his responsibilities, including arranging and staffing the President's calls and meetings, Tr. 16:8–15, 89:7–8, and maintaining awareness of matters before the President, Tr. 16:10–13, 19:24–20:5, 33:18–34:5.

**Act 96 – *Texting a State Official About Options for Signature Verification***. Meadows did not text Ms. Watson, as charged, Tr. 54:8–10, though he had a similar exchange with someone else, Tr. 90:14–16.[5] Meadows reached out as Chief of Staff, Tr. 54:3–4, consistent with his responsibilities, including gathering information for the President, Tr. 92:15–17, advising the President, Tr. 92:23–93:2, and managing the President's time and ability to give attention to federal duties by closing out matters of ongoing concern.

---

[5] Contrary to the State and district court's characterization, the message was not a "financial offer" but an inquiry about the ability "to speed things up," Tr. 91:25–92:2, based on a similar development in Wisconsin, Tr. 92:6–17. The court erred in relying on the State's characterization of the text exchange, *see* p.12–13 *infra*, which the State never introduced and which it incorrectly described in the Indictment.

***Act 112 – January 2 Call with Secretary Raffensperger***. Meadows participated as Chief of Staff, Tr. 51:4–11, 124:16–17—which is how he announced himself—consistent with his responsibilities, including maintaining awareness of matters before the President, Tr. 129:16–19, setting up meetings for the President, Tr. 110:16–18, managing the President's time, Tr. 127:23–128:12, 123:21–133:1, 149:24–150:5, 151:2–8, and addressing the federal interest in fair elections, Tr. 110:2–6. The State's witness, Secretary Raffensperger, confirmed Meadows's limited role, noting that he "was acting on behalf of the President," Tr. 219:14; Raffensperger did not believe Meadows did anything "inappropriate," Tr. 220:16.

This testimony, and the declarations Meadows submitted, *see* Exs. 4 & 5, readily clear the low hurdle for removal. The lenient "connection" standard derives from the broad language of the Federal Officer Removal Statute, which covers any prosecution "for or relating to any act" in office. 28 U.S.C. § 1442(a)(1). As this Court has held, "[t]he phrase 'relating to' is broad and requires only a 'connection' or 'association' between the act in question and the federal office." *Caver*, 845 F.3d at 1144 (internal quotation omitted). Meadows has far exceeded this standard. The State and the district court questioned whether Meadows's conduct was actually required or properly considered part of his official duties. *See* Remand Order at 27–28. But that second-guessing, unsupported by actual evidence, does not defeat

removal: "the state cannot overcome that defense merely by way of allegations." *Kentucky v. Long*, 837 F.2d 727, 752 (6th Cir. 1988). That is the whole point of providing federal officials a federal forum. *See Willingham*, 395 U.S. at 409.

Meadows also "raise[s] a colorable federal defense." *Caver*, 845 F.3d at 1142. This Court gives § 1442(a)(1) a "broad reading . . . to encompass all cases where federal officers can raise a colorable defense arising out of their duty to enforce federal law." *Id.* at 1145 (cleaned up). A colorable "defense need only be plausible; its ultimate validity is not to be determined at the time of removal." *Magnin*, 91 F.3d at 1427; *see also Caver*, 845 F.3d at 1145 ("The law does not require that the removing defendant virtually win his case before it can be removed.").

Here again, Meadows clears the low bar. The Supremacy Clause provides immunity from "suits under state law against federal officials carrying out their executive duties," *Kordash v. United States*, 51 F.4th 1289, 1293 (11th Cir. 2022), including former federal officials, *see Maryland v. Soper*, 270 U.S. 9, 34–35 (1926). And it is undisputed that Meadows was a federal official.

Below, the State and district court suggest that Meadows is not entitled to immunity based on the conduct charged and the scope of his duties. But if immunity were in doubt (which, bluntly, it should not be), that would not preclude removal. Even on the merits, immunity requires showing only that the "federal official's acts

have **some nexus** with furthering federal policy and can reasonably be characterized as complying with the full range of federal law." *Kordash*, 51 F.4th at 1293 (emphasis added; internal quotation omitted). The official need not prove that he stayed within his lawful authority, only that he reasonably believed he was.[6] For removal, "the lenient colorable federal defense requirement" focuses on the official's version of the case, not the State's competing narrative. *Caver*, 845 F.3d at 1145–46. The court "need not . . . determine the merits of that position" to reach removal. *Id.* at 1146. Meadows has easily met this final requirement of asserting a colorable immunity defense. *See generally* Motion to Dismiss, Dkt. No. 16.

### ii.    *The Remand Order is clearly erroneous.*

The district court's task was straightforward: to determine whether Meadows's "acts have some nexus with furthering federal policy and can reasonably be characterized as complying with the full range of federal law," *Denson v. United States*, 574 F.3d 1318, 1348 (11th Cir. 2009), and to "credit[] [Meadows's] theory of the case," *Jefferson Cnty. v. Acker*, 527 U.S. 423, 432 (1999). The court should have readily permitted removal. Instead, it abandoned that framework for its own

---

[6] Only a clear and willful federal-law violation defeats immunity. *See Baucom v. Martin*, 677 F.2d 1346, 1350 (11th Cir. 1982). The district court did not find a federal legal violation, let alone a "willful" one. *See* Remand Order at 32 ("[T]he Court does not rely on the merits of a Hatch Act violation.").

"novel" theory of removal which has no basis in Supreme Court or Eleventh Circuit precedent. The following examples highlight clear grounds for reversing the decision below.

*First*, rather than applying the statutory text and settled precedent which allow removal if any portion of the "prosecution" relates to "any act" of a federal official, 28 U.S.C. § 1442(a); *Nadler v. Mann*, 951 F.2d 301, 305 n.9 (11th Cir. 1992), the district court took a "novel" approach based on the State's charge under the Georgia RICO Act. Remand Order at 14. The court flipped the standard on its head, holding that the State can defeat removal if it is possible to convict without relying on an official act, even if official acts appear *on the face of the Indictment*. *Id.* at 17–21.

The court effectively created a "conspiracy" exception to federal officer removal, and that was reversible error. What controls is Meadows's articulation of his federal defense, not the State's articulation of its state charges. *See Kircher v. Putnam Funds Tr.*, 547 U.S. 633, 644 (2006) (explaining that § 1442(a) "is an exception to the 'well-pleaded complaint' rule" and allows "suits against federal officers [to] be removed despite the nonfederal cast of the complaint") (citations

omitted).[7] The alleged ease with which the State can shift theories and obtain a conviction under Georgia law is immaterial.

Relying on Justice Scalia's partial dissent in *Acker* and an out-of-circuit environmental case involving private companies, the district court looked to the "gravamen" or "heart" of the Indictment (whatever that may be) rather than the Indictment itself. Remand Order at 15–16, 21. But that is not the law—certainly not as this Court has articulated it. The *Acker* majority made clear that courts should "credit the [official's] theory of the case for purposes of both elements of the jurisdiction inquiry." 527 U.S. at 432; *accord Caver*, 845 F.3d at 1142; *Denson* 574 F.3d at 1348. If the "prosecution" relates to "any act," 28 U.S.C. § 1442(a), the case is removable. *See Convent Corp. v. City of N. Little Rock*, 784 F.3d 479, 483 (8th Cir. 2015).

**Second**, the court drew an untenable line between official acts and "political" activity, which, it said, "exceeds the outer limits of the Office of the White House Chief of Staff." Remand Order at 27. For all but one act, the court held that Meadows exceeded his official duties (*e.g.*, in setting up an Oval Office meeting) because the

---

[7] Even after removal, "entitlement to Supremacy Clause immunity is to be ascertained by looking only at federal law." S. Waxman & T. Morrison, *What Kind of Immunity? Federal Officers, State Criminal Law, and the Supremacy Clause*, 112 YALE L.J. 2195, 2233 (2003); *see Johnson v. Maryland*, 254 U.S. 51, 56–57 (1920).

meetings and calls were "political" and thus did not "relate[] to any legitimate purpose of the executive branch." *Id.* at 37, 38, 40, 42.

This "political" exception to removal blinks reality. The President is an inherently "political leader[]," *United States v. Nixon*, 418 U.S. 683, 715 (1974), who "occupies a unique position in the constitutional scheme," *Nixon v. Fitzgerald*, 457 U.S. 731, 749 (1982). He embodies in himself one of "the two ***political*** branches." *Zivotofsky ex rel. Zivotofsky v. Kerry*, 576 U.S. 1, 14 (2015) (emphasis added). And his engagement on political issues is part of his official role, even when he extends beyond specifically enumerated authority. *See* Brief for United States as Amicus Curiae, *Blassingame v. Trump*, Case Nos. 22-5069, 22-7030, 22-7031, at 11 (D.C. Cir. Mar. 2, 2023) ("[A] President acts within the scope of his office when he urges Members of Congress to act in a particular way with respect to a given legislative matter—even a matter, such as a congressional investigation, in which the President has no constitutional role."). When a President runs for reelection, "'because the Presidency is tied so tightly to the persona of its occupant,' 'the line between official and personal' is 'both elusive and difficult to discern.'" *Id.* at 1–2 (quoting *In re Lindsey*, 158 F.3d 1263, 1286 (D.C. Cir. 1998) (per curiam) (Tatel, J., concurring in part and dissenting in part)).

The Chief of Staff too "play[s] a unique role in the Executive Branch, providing the President with close and confidential advice and assistance on a daily basis," and "act[s] as the President's primary information-gathering and policy development-arm." Office of Legal Counsel, U.S. Dep't of Justice, *Congressional Oversight of the White House*, slip op. at 9 (Jan. 8, 2021).[8] Indeed, "[t]he highest and most important duties which [the President's] subordinates perform are those in which they act for him . . . [when] they are exercising not their own but his discretion. This field is a very large one. It is sometimes described as political." *Myers v. United States*, 272 U.S. 52, 132 (1926). As former White House Chief of Staff Jack Watson succinctly put it, "[t]here is literally no way in the real world of the White House and governing of the country and a national political campaign involving an incumbent president where you can separate the politics from the governing that the president and his administration are doing in Washington." THE NERVE CENTER: LESSONS IN GOVERNING FROM THE WHITE HOUSE CHIEFS OF STAFF 80 (Terry Sullivan ed., College Station: Texas A&M Univ. Press 2004).

---

[8] Available at https://www.justice.gov/d9/opinions/attachments/2021/01/16/2021-01-08-wh-oversight.pdf.

The district court erred in holding that "political activity" is inherently outside the Chief of Staff's duties[9] and thereby creating a novel "political" exception to federal officer removal.[10]

***Third***, the district court erred by imposing a heightened burden that contradicts precedent and threatens the very principles removal vindicates.

The court gave Meadows's testimony "less weight" because he "was unable to explain the limits of his authority, other than his inability to stump for the president or work on behalf of the campaign." Remand Order at 28. But no case

_____

[9] While the district court did not determine that Meadows violated the Hatch Act, it nevertheless held that the Act "provides that political activity is not included in the outer limits of the role of the White House Chief of Staff." Remand Order at 32. But (1) the Act does not define a Presidential advisor's duties, (2) Meadows has *at least* a colorable claim the Hatch Act did not apply, (3) the Act has never been understood that way, and (4) such judicial regulation of the Chief of Staff's duties violates the Separation of Powers. Indeed, if anything, the suggestion that Meadows violated the Hatch Act presupposes that he acted in an official capacity; otherwise, the Hatch Act would not apply at all.

[10] To support its novel rule, the district court asserted that "[t]he Constitution does not provide any basis for executive branch involvement with State election and post-election procedures" and "executive power does not extend to overseeing states' elections." Remand Order at 29–32. Not so. Federal law governs administration of elections. *See, e.g.*, Electoral Count Act, 3 U.S.C. § 5, et. seq. (1887). And the President must take care the laws are faithfully executed and recommend legislative amendments to Congress. *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 587 (1952). Secretary Raffensperger too acknowledged the role of "federal law" in elections. Tr. 188:20–23. And it is undisputed DOJ and DHS investigated alleged election fraud in the same period, *see, e.g.*, Tr. 215:7–216:19, which the President necessarily supervised.

16

requires a removing defendant to identify the outer limits of his authority. To the contrary, courts routinely reject state prosecutors' efforts to *cabin* federal authority. Meadows's unrebutted testimony should have carried the day. *See Acker*, 527 U.S. at 432 (requiring courts to "credit[] the [defendant's] theory of the case").

The court also refused to credit Meadows's testimony about the federal interests at stake. For instance, Meadows testified that, when the President met with Pennsylvania legislators (Act 9), his only role was to notify visitors of their positive COVID tests to "keep the President safe and keep him a proper distance away from – [those] individuals." Tr. 48:4–49:9. The district court dismissed this episode as merely "neutral." Remand Order at 36 n.14. But that testimony establishes at least some "nexus" between the prosecution and Meadows's official duties. The court similarly failed to credit Meadows's testimony about the post-election period in which managing the President's time was critical to ensure continued government function and a "peaceful transition of power." *See, e.g.*, Tr. 25:24–27:20, 127:23–128:12, 149:24–150:5, 151:2–8. The court ignored this testimony while asserting that Meadows's conduct did not "relate[] to any legitimate purpose of the executive branch." Remand Order at 37–38, 40, 42.

The district court clearly failed to follow this Court's precedent on the low threshold for removal and imposed a higher burden.

**B.     Meadows will suffer irreparable injury absent a stay.**

Absent a stay, Meadows could suffer irreparable injury, including trial, conviction, and incarceration. "An injury is irreparable if it cannot be undone through monetary remedies." *Jones v. Governor of Fla.*, 950 F.3d 795, 828 (11th Cir. 2020). The federal rights Meadows invokes here include freedom not only from liability (*i.e.*, conviction and incarceration) but from the burdens of a state-court defense. *See Tanella*, 374 F.3d at 147.

Irreparable harm is imminent; indeed, it has already begun. Meadows was compelled to surrender on Wednesday, August 24, after the District Attorney refused a modest delay of arrest pending removal. Meadows has since been compelled to waive arraignment, to post a bond, and to begin preparing a defense for potential state prosecution. Meadows has sought to minimize this harm by asking the state court to sever and stay his case. The state court held a hearing last Thursday on related issues, but to date, has not rejected the State's aggressive timeline. (Nor has the district court stayed the Remand Order as of this filing. *See* n.1 *supra*.)

At a minimum, the Court should stay the Remand Order to protect Meadows from a conviction pending appeal. Absent a stay, the State will continue seeking to try Meadows *in 42 days* starting October 23, 2023. If the State gets its way, Meadows could be forced to stand trial, be convicted, and be incarcerated, all before

18

the standard timeline for a federal appeal would play out. The rights Meadows asserts here "would be effectively nullified." *Southmark Properties v. Charles House Corp.*, 742 F.2d 862, 868 (5th Cir. 1984); *see also Tennessee v. Davis*, 100 U.S. 257, 262–63 (1879) (Supremacy Clause protects against being brought to trial in state court).

As explained below, *see* Part III *infra*, Meadows should be free from state prosecution altogether and broader relief may be appropriate. But at a minimum, the Court should stay the Remand Order.

**C.    A stay will not substantially prejudice the State or other parties.**

A stay of the Remand Order will not prejudice the State, nor other defendants in state court, because it would not prevent other ongoing proceedings; it would only prevent entering a verdict against Meadows. And it will not prevent proceeding in state court if the State wins this appeal. Whatever minimal burden the State faces from a stay pales in comparison to the burden on Meadows. This factor thus strongly favors a stay.

**D.    The public interest favors a stay.**

The public interest also strongly favors a stay. The very premise of Supremacy Clause immunity and the Federal Officer Removal Statute is that it is vitally important to the functioning of our Federal Government that federal officials be free

19

from state arrest and prosecution when carrying out their duties. *See Davis*, 100 U.S. at 263. For the State to seek a conviction pending appeal would give rise to the very "chilling effect" that federal law goes out of its way to protect against. *Tanella*, 374 F.3d at 147; *see generally In re Neagle*, 135 U.S. 1 (1890).

## II.   The Court Should Grant Expedited Review

Meadows does not seek to unnecessarily delay the underlying proceedings and respectfully submits that expedited review would best serve the interests of "prompt" removal under 28 U.S.C. § 1442. This case was already litigated on a tight timeline in federal court. Meadows removed within 24 hours of indictment, and the parties conducted full briefing, an evidentiary hearing, and supplemental briefing in about two-and-a-half weeks below.

Subject to this Court's preference, Meadows suggests the following schedule for expedited review:

| | |
|---|---|
| Appellant's Opening Brief | Friday, September 15, 2023 |
| Appellee's Response Brief | Friday, September 22, 2023 |
| Appellant's Reply Brief | Monday, September 25, 2023 |
| Oral Argument (If Held) | Week of September 25, 2023 |

Meadows would be pleased to present oral argument if the Court desires it. But given the urgency of the matter and his clear entitlement to reversal under the low threshold

20

for removal, he is willing to forgo oral argument to facilitate a prompt ruling. Meadows respectfully submits that expedited review on the timeline above, or a similar timeline of the Court's choosing, would facility the timely resolution of Meadows's appeal without unduly delaying the pending proceedings.

Alternatively, if neither the district court nor this Court stays the Remand Order, expedited review will help to minimize the irreparable loss of Meadows's substantive and procedural rights while the appeal plays out.

## III.    Alternatively, If the Court Needs More Time, It Should Enjoin the Fulton County District Attorney from Prosecuting Meadows in State Court Pending Appeal

Alternatively, the Court should enjoin the District Attorney from prosecuting Meadows in state court while this appeal is pending. That short-term relief would prevent the irreparable loss of Meadows's rights and facilitate this Court's orderly deliberation. While federal courts will not enjoin pending state proceedings lightly, a temporary pause for Meadows would protect the important federal interests at stake without running afoul of the Anti-Injunction Act, *see* 28 U.S.C. § 2283, or the abstention doctrine articulated in *Younger v. Harris*, 401 U.S. 37 (1971).

The Anti-Injunction Act does not bar such relief. *See* 28 U.S.C. § 2283. The Court need not enjoin the state court directly; it can enjoin District Attorney Willis as a party to this case. In any event, §§ 1442(a) & 1455(b) "expressly" authorize a

21

halt of state proceedings. *See Ackerman v. ExxonMobil Corp.*, 734 F.3d 237, 250 (4th Cir. 2013) (construing parallel "proceed no further" language from civil removal statute as express authorization).

Nor does *Younger* bar relief. There are strong reasons to grant relief pending appeal, *see* Part I *supra*, including "irreparable loss" of Meadows's rights that "is both great and immediate," *Younger*, 401 U.S. at 45, which justifies a modest stay. *Cf. Fitzgerald*, 457 U.S. at 742 (denied immunity is immediately appealable because it cannot be vindicated on a later appeal).

The Court may enjoin parties from pursuing other litigation inconsistent with the defendant's right to removal. *See Quackenbush v. Allstate Ins. Co.*, 121 F.3d 1372, 1378 (9th Cir. 1997). A litigant's efforts to "subvert the removal statute implicate[] the expressly authorized exception to the Anti–Injunction Act and may warrant the granting of an anti-suit injunction." *Davis Int'l, LLC v. New Start Grp. Corp.*, 367 F. App'x 334, 337 (3d Cir. 2010). Federal courts have thus enjoined parties from pursuing litigation that "would result in unwarranted inconvenience, expense, and vexation," even if the court would not have any ability to control that litigation directly. *Kaepa, Inc. v. Achilles Corp.*, 76 F.3d 624, 627 (5th Cir. 1996).

## CONCLUSION

The Court should promptly (1) stay the Remand Order, and (2) grant expedited review; or in the alternative, (3) enjoin the District Attorney from further prosecuting Meadows in state court pending appeal.

Dated: September 11, 2023

Respectfully submitted,

*/s/ John S. Moran*
John S. Moran
George J. Terwilliger III*
Michael Francisco
Francis J. Aul
MCGUIREWOODS LLP
888 16th Street NW, Suite 500
Washington, DC 20006
(202) 857-1700
jmoran@mcguirewoods.com
mfrancisco@mcguirewoods.com
faul@mcguirewoods.com

*Counsel to Mark R. Meadows*

* Application for admission to the Eleventh Circuit Bar forthcoming.

**CERTIFICATE OF COMPLIANCE**

I hereby certify that this brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 27(d) and Eleventh Circuit Rule 27-1. This brief contains 5,195 words and uses a Times New Roman 14-point font.

Respectfully submitted this 11th day of September, 2023.

*/s/ John S. Moran*

John S. Moran

*Counsel for Defendant-Appellant Mark R. Meadows*