# Exhibit 4

Declaration of S. Gast
*Defense Exhibit 3, August 28 Hearing*

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA

| | |
|---|---|
| THE STATE OF GEORGIA, | )<br>)<br>) |
| v. | ) Case No. 1:23-cv-03621-SCJ<br>) |
| MARK R. MEADOWS, | )<br>) |
| *Defendant.* | )<br>) |

## DECLARATION OF SCOTT GAST

I, Scott Gast, declare as follows:

1. I am an attorney and I served in the White House Counsel's Office, holding a variety of positions, including Deputy Assistant to the President and Deputy Counsel to the President, from January 22, 2017, until January 20, 2021.

2. Mark R. Meadows served as Chief of Staff to the President during my tenure in the White House, specifically from March 2020 until the end of the Trump Administration on January 20, 2021.

3. Based on my experience and personal observations and understanding, Mark Meadows had broad responsibilities as Chief of Staff that included advising and assisting the President and managing the staff of the White House Office within the Executive Office of the President.

Defense
Ex. 3

1

4. I understood the position of Chief of Staff to have been a full-time job that required Mark to be "on duty" at all hours, even when he or the President was away from the White House.

5. I further understood that the Chief of Staff and his office were also responsible for managing the President's calendar, arranging meetings, calls, and other discussions with federal, state, and local officials, as well as private citizens.

6. It was my observation and my understanding that as Chief of Staff, Mark provided advice and guidance to the President on a full range of matters.

7. Various policies and rules generally apply to political activity by members of the White House staff, including the Hatch Act, 5 U.S.C. § 7323, which restricts executive branch staff (excluding the President and Vice President) from using "official authority or influence" for the "purpose of interfering with an election or affecting the result thereof." The Hatch Act has been interpreted and applied generally to preclude public statements made in official capacity that are directed toward the success or failure of a political party or candidate. These restrictions are administered at the federal level to ensure that federal programs are administered in a nonpartisan fashion and to protect employees from political coercion in the workplace.

2

8. During my time serving in the Office of White House Counsel, I was responsible for compliance and ethics matters in the White House Office of the Executive Office of the President, including advising on compliance with the Hatch Act and providing advice on whether certain conduct constituted official versus political activity. This role also involved advising White House staff to ensure that their interactions with campaign matters complied with federal law.

9. During my time at the White House, the President had a reelection campaign apparatus that operated separately from his exercise of his official duties.

10. Although Mark did not have an official role in President Trump's reelection campaign, my understanding was that, in his capacity as Chief of Staff, he stayed in communication with the campaign to ensure that the demands on the President's time and attention were considered and coordinated and so that Mark could anticipate and address any situation where developments from the campaign could affect the President's exercise of his official duties.

11. It was not uncommon for questions to arise within the Executive Branch about whether particular conduct involving the political or electoral processes was appropriate under the executive branch ethics rules and policies. In assessing these issues, I considered not only the Hatch Act regulations but

3

other sources, including Office of Special Counsel guidance and previous enforcement actions. These questions often involved difficult lines to draw and frequently the question of whether a staffer's proposed conduct would cross a legal line came down to prudential judgment. As such, the Counsel's Office often advised staff to avoid conduct that could be seen to violate a legal standard, even if it ultimately may not.

12. I am aware of and have reviewed the report from the U.S. Office of Special Counsel, titled, *Investigation of Political Activities by Senior Trump Administration Officials During the 2020 Presidential Election* (Nov. 9, 2021) ("OSC Report").

13. As noted in OSC Report, the Trump White House Counsel's Office did not agree with many of OSC's conclusions regarding various White House officials' conduct.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Executed on this, the 27th day of August, 2023.

_____
Scott Gast

4