IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

| | | |
|---|---|---|
| THE STATE OF GEORGIA, | ) | |
| | ) | **No. 23-12958** |
| | ) | |
| | ) | From the United States District |
| | ) | Court for the Northern District |
| | ) | of Georgia, |
| v. | ) | No. 1-23-cv-3621-SCJ |
| | ) | |
| | ) | Re: Notice of Removal of |
| | ) | of Fulton County Superior |
| | ) | Court Indictment No. |
| MARK RANDALL MEADOWS | ) | 23SC188947 |
| | ) | |

### THE STATE OF GEORGIA'S RESPONSE IN OPPOSITION TO THE DEFENDANT'S EMERGENCY MOTION FOR STAY PENDING APPEAL AND FOR EXPEDITED REVIEW

Defendant Mark R. Meadows has moved this Court for an Emergency Motion for Stay Pending Appeal. Pursuant to this Court's Order, the State of Georgia, by and through Fulton County District Attorney Fani T. Willis, responds that the defendant's motion does not show he can carry the heavy burden required to receive such a stay and that he requests additional relief in contravention of federal law. The State of Georgia respectfully asks that this Court deny the defendant's Motion.

On August 14, 2023, a Fulton County grand jury indicted the defendant as part of a RICO conspiracy involving eighteen additional co-defendants. The next day, the defendant filed a Notice of Removal. Doc. [1]. Pursuant to 28 U.S.C. § 1455,

Judge Steve C. Jones of the Northern District of Georgia declined summary remand two days later and set an evidentiary hearing for August 28. Doc. [6]. Despite the express language of section 1455 that the filing of a removal notice will not prevent a criminal case from proceeding, the defendant then asked the district court to enjoin the State of Georgia from taking any further action below. Doc. [17]. Citing the statute, the district court denied the request. Doc. [25]. Following the evidentiary hearing, the district court issued an order refusing to authorize removal on Friday, September 8, remanding the case to the Fulton County Superior Court. Doc [69] (hereinafter "Remand Order"). The defendant appealed the same day, Doc. [71], and filed the instant motion on Monday, September 11, 2023, as well as a similar motion before the district court. The next day, September 12, the district court denied the defendant's motion. Doc. [80]. Also on September 12, this Court directed the State of Georgia to respond by noon, today, September 13.

## INTRODUCTION

In its Remand Order declining to authorize the removal of the defendant's case, the district court summarized its decision succinctly:

> [T]he Court concludes that if it were to agree with Meadows's arguments regarding removal, the Court would have to turn a blind eye to express constitutional power granted to the States to determine their election procedures, as well as federal statutory and regulatory limitations on political activities of executive branch officials. The Court would be ignoring the evidence Meadows himself submitted of his post-election related activities and the purpose of the federal officer

removal statute. It would be legally and factually erroneous for the Court to do so.

Doc. [69] at 47-48. In response, the defendant now asks *this* Court to endorse his arguments and turn "a blind eye" toward clear constitutional authority, federal regulatory constraints, and the defendant's own testimony. The defendant seeks to invoke a jurisdictional benefit designed to protect federal authority from state interference even though the evidence demonstrates that the exact opposite has taken place: a former federal official strayed outside his authority to attempt to affect the outcome of a state's presidential election. *See id.* at 47 (the instant case involves "not *state interference* with constitutionally protected federal activities, but—*federal interference* with constitutionally protected state actions") (emphasis original). The State of Georgia respectfully submits that the defendant's requests for relief[1] should be denied.

## ARGUMENT

In considering a motion for a stay, courts apply a four part test: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3)

---

[1] Although the defendant asserts that his motion should be considered an "emergency motion" because his requests will become "moot, in part" within seven days, he does not articulate which requests, or how they will become moot. To the extent that he defendant refers to his ongoing participation in Superior Court proceedings, such activity is explicitly authorized by 28 U.S.C. § 1455 and does not constitute any kind of "injury," as discussed below.

3

whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Hand v. Scott*, 888 F.3d 1206, 1207 (11th Cir. 2018). These factors "contemplate individualized judgment in each case, [and] the formula cannot be reduced to a set of rigid rules." *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987). "A stay is considered 'extraordinary relief' for which the moving party bears a 'heavy burden.'" *Larios v. Cox*, 305 F. Supp. 2d 1335, 1336 (N.D. Ga. 2004) (quoting *Winston-Salem/Forsyth Cty. Bd. Of Educ. v. Scott*, 404 U.S. 1221, 1231 (1971)). The defendant also argues that his motion should be subject to an appreciably lower standard, requiring him to "only present a substantial case on the merits." *See League of Women Voters of Fla., Inc. v. Fla. Sec'y of State*, 32 F.4th 1363, 1370 (11th Cir. 2002). However, as the district court has held, this lower standard should not apply here because the "balance of the equities" does not "weigh[] heavily in favor of granting the stay." *Ruiz v. Estelle*, 650 F.2d 555, 565 (5th Cir. 1981); Doc. [80] at 6.

   **A. The defendant has not made a strong showing that his appeal is likely to succeed on the merits.**

The first factor requires the court to "determine whether there is a strong likelihood that the issues presented on appeal could be rationally resolved in favor of the party seeking the stay." *Northrop Grumman Tech. Servs., Inc. v. DynCorp Int'l LLC*, No. 1:16CV534, 2016 WL 3346349, at *2 (E.D. Va. June 16, 2016). "A finding that the movant demonstrates a probable likelihood of success on the merits

on appeal requires that we determine that the trial court below was clearly erroneous." *Garcia-Mir v. Meese*, 781 F.2d 1450, 1453 (11th Cir. 1986), citing *In re Grand Jury Proceedings*, 689 F.2d 1351, 1353 (11th Cir. 1982) (per curiam).

In seeking to show that the district court's Remand Order is clearly erroneous, the defendant fails to reckon with the same fundamental weaknesses which doomed his efforts at removal below. The defendant treats his burden for achieving removal, widely acknowledged as generally permissive, as essentially nonexistent. He does not address the precedents cited by the district court clarifying that "acts" under 28 U.S.C. § 1442 are defined as the "claims" or "charges" actually at issue in the case. He cannot demonstrate how his actions are not examples of "political activity" expressly forbidden by federal regulations and statutes, and so he attempts to ignore them. And because he cannot explain his own failure to articulate the scope of his duties, he argues essentially that *there is no scope* for his duties.

The defendant first asserts that the district court clearly erred by "flipping the standard on its head" and "effectively creat[ing] a 'conspiracy' exception to federal officer removal." Motion at 12. The district court's considerate evaluation of the facts actually demonstrates its adherence to precedent, not its repudiation of it. The Remand Order explains how a case is removable if any discrete *claims* or *charges*, not merely "any portion," relate to acts taken within the scope of federal office. Doc [69] at 12-13. In light of this, the Court then analyzed the nature of the

5

RICO charge and made the uncontroversial observation that the prosecution does not have to prove all, or indeed *any*, overt acts attributed to the defendant to achieve a conviction against him for a RICO conspiracy charge, and that therefore the relevant "act" was not any (or every) overt act but instead the defendant's "alleged *association* with the conspiracy." *Id.* at 20-21. The Court then drew from precedent from both the Eleventh Circuit (*Baucom v. Martin*, 677 F.2d 1346, 1347–48 (11th Cir. 1982)) and the Fourth Circuit (*Mayor & City Council of Balt. v. BP P.L.C.*, 31 F.4th 178, 234 (4th Cir. 2022)) to determine that it had to identify the "heart" or "gravamen" of the RICO charge and analyzed the overt acts "in order to determine whether Meadows's association with the alleged conspiracy (the conduct for which he was charged) related to the scope of his federal duties." *Id.* at 21-22. The conclusion reached by the Court regarding overt acts was *not* "that the State can defeat removal if it is possible to convict without relying on an official act," as the defendant insists. Motion at 12. Instead, the Court reached the rational conclusion required by the established precedents it had identified: "Because the inquiry hinges on whether Meadows's association with the conspiracy related to the color of his office, however, jurisdiction is not *conferred* simply because a single overt act relates to Meadows's federal office." Doc. [69] at 22 (emphasis added). The Court did not find that a single overt act can defeat jurisdiction; it found that a

single overt act was not *sufficient to confer* jurisdiction. The defendant elides the careful reasoning of the Remand Order and overstates his case.

The defendant's second (that the district court improperly created a "political" exception that "blinks reality") and third (that the district court imposed a "heightened burden" on the defendant merely by rationally evaluating his own testimony) can be considered together. They demonstrate the defendant's continuing effort to create exceptions *for himself*, despite the obvious implications of the law and even of his own testimony. Far from creating a "political exception," the district court merely considered that statutes and regulations applying to executive branch employees, such as the Hatch Act, could demonstrate the limits of federal officer authority. Doc. [69] at 32. Despite his arguments to this Court, the defendant conceded on the stand that the Hatch Act applied to him as Chief of Staff and that he could not engage in political activity. Hearing Tr. 39:7-25; 135:21-136:5. "Political activity," in turn, has a specific definition under federal regulations applicable to the defendant: it is "activity directed toward the success or failure of a political party, candidate for partisan political office, or partisan political group." 5 C.F.R. § 734.101. The defendant spends much time and effort outlining various "political" duties belonging to the President of the United States, but he does not address that the evidence presented to the district court demonstrated, on its face, that the defendant regularly engaged in *specifically*

7

*forbidden* "political activity" as part of his participation in the conspiracy charged. The defendant thereby associated himself with the conspiracy by taking actions "not included in the outer limits of the role of the White House Chief of Staff." Doc. [69] at 32. The defendant's only response is a series of conclusory statements that either the Hatch Act somehow does not apply to him, that it "has never been understood that way," or that the district court was somehow violating the Separation of Powers. Motion at 16 n.9.

The district court also did not apply a higher standard to the defendant by merely evaluating his testimony as a finder of fact. The trouble for the defendant is his continued inability to persuasively demonstrate what the scope of his duties actually was. What the district court found was that the defendant could not articulate the scope of his duties *at all*: because "Meadows was unable to explain the limits of his authority," the Court gave his testimony in that regard "less weight." *Id.* at 28. This sort of appraisal is "the same as [the Court] does any other witness in an evidentiary hearing." *Id.* at n.12.[2] The Court thus did not hold the

---

[2] The defendant testified that all of his activities were within the scope of his office and none were impermissible campaign-related "political activity." The district court was free to consider that, several times, the defendant insisted that the word "we" somehow did not mean "the defendant and the campaign" despite the obvious context of the defendant's statements. Hearing Tr. 96; 146; 148. The defendant's claimed personal foible of misusing "we" appeared at various points where an ordinary understanding of "we" would include the defendant within the Trump campaign and its efforts.

8

defendant to a higher standard but to precisely the same standard as any other witness. It merely assigned less weight to the defendant's insistence that all of his actions were within the scope of his official duties because the defendant could not describe what the limits to the scope of his official duties actually were.

The defendant's arguments thus demonstrate not that the district court committed clear error by creating new exceptions harmful to him, but that it merely *resisted* recognizing exceptions that *the defendant* insists should apply to him as a former Chief of Staff. The defendant has still never articulated an understanding of the scope of his duties that could comply with the clear boundaries established by the Hatch Act and attendant regulations. Instead, he attempts to make his own authority indistinguishable from the President's and then to define that authority as limitless. As his counsel pronounced at the hearing, "He *is* federal operations," the "alter ego of the one person under our constitutional system in which the executive branch is embodied." Hearing Tr. 239. In so doing, he allows his own burden for removal, already minimal, to be erased: he can simply point vaguely to some aspect of federal authority and claim that, by definition, he must have been duly authorized to take all of the actions he did. Motion at 14-15; 16 n.10. This is despite the fact that in criminal cases, "the [Supreme Court's] liberal construction of the statute should be balanced against a 'strong judicial policy against federal interference with state criminal proceedings' because 'preventing and dealing with

9

crime is much more the business of the States than it is of the Federal Government.'" *People v. Trump*, 2023 U.S. Dist. LEXIS 124733, *14 (S.D.N.Y. July 19 2023) (quoting *Mesa v. California*, 489 U.S. 121, 138 (1989) (quoting in turn *Arizona v. Manypenny*, 451 U.S. 232, 243 (1981)). This means "a more detailed showing" is necessary for the removal of a criminal case. *Willingham v. Morgan*, 395 U.S. 402, 409 n.4 (1969).

Far from making a detailed showing, the defendant relies upon grand statements of limitless authority as he seeks to be treated separately from any other federal officer. The district court, as outlined above, found that it simply could not "turn a blind eye" to so many weaknesses in the defendant's arguments for removal. In doing so, it did not clearly err, and no case for an emergency stay of its Remand Order can be made.

### B. The defendant will not be "irreparably injured" absent a stay or injunction.

As the district court found in its order denying the defendant's other motion for a stay, the defendant does not articulate anything more than the "mere possibility" of some future harm. Doc. [80] at 6-8. The defendant's claims that his continued participation in state court proceedings somehow injure him fly directly in the face of 28 U.S.C. § 1455(b)(3), which states that his continued participation is expressly what is supposed to happen even after the filing of a notice of removal. Additionally, the defendant points only to the possibility that he could be *set* for

10

trial in the Superior Court at some point in the next several weeks, not that such a trial has been set nor that such a trial is at all likely to conclude prior to the consideration of his appeal. To find that this factor weighs in the defendant's favor would apply a "too lenient" standard and allow him to receive a stay despite the "mere possibility" of harm. *Nken v. Holder*, 556 U.S. 418, 435 (2009).

### C. A stay would result in prejudice to the State of Georgia.

By contrast, the State of Georgia would suffer prejudice from any federal interference in ongoing criminal prosecution. As noted above, states have substantial interests in prosecuting violations of their laws free from federal involvement, *Willingham*, 395 U.S. at 409 n.4, and there is a "strong judicial policy against federal interference with state criminal proceedings." *Manypenny*, 451 U.S. at 243. This factor weighs in the State of Georgia's favor due to the longstanding reluctance of federal courts to weigh in on state criminal proceedings.

### D. The public interest weighs in favor of the State of Georgia.

In addition to the interests in freeing state criminal matters from federal interference already described, the district court's Remand Order ably describes how the principles of federalism apply to this case. Doc. [69] at 45-46. Not only would state comity be preserved by denial of a stay; a denial would also underline the basic backwardness of the defendant's claims. As noted above, the district court found that the evidence showed the defendant was *outside* the scope of his federal

11

officer authority when he participated in activities seeking to interfere with state elections administration. A stay of the Remand Order would be yet another example of the defendant seeking to disrupt the State of Georgia's lawful exercise of its authority. Indeed, as discussed below, the defendant seeks to disrupt not just state-level operations, but the operation of federal law as well.

### This Court should deny the defendant's additional prayer for relief requesting an injunction freezing the criminal proceedings in Superior Court.

In part III of his motion, the defendant asks that this Court enjoin the State of Georgia from continuing to prosecute his criminal case in Fulton County Superior Court. The defendant attempted to receive the same relief from the district court, who made an obvious point as it denied his motion. Section 1455 provides exclusively for state court proceedings to continue while the defendant's notice of removal is being considered. To enjoin the State of Georgia, a federal court would have to explicitly ignore the language of the controlling statute. 28 U.S.C. § 2455(b)(3). Doc. [25] at 2-5. In addition to the clear federalism interests injured by a federal court *enjoining a prosecution*, this Court would arguably be failing to apply the law at all. Against these grave concerns, the defendant offers only the "irreparable loss" suffered by him as he *complies with the clear directives of section 1455*. The State of Georgia respectfully requests that this Court deny the

defendant's second attempt to enjoin his entire case as his notice of removal is considered.

### Expedited briefing

While the State of Georgia acknowledges that expedited review may be appropriate under the circumstances of this appeal and does not object to a form of expedited review, the schedule proposed by defendant is unnecessarily aggressive.[3] In order to resolve the issues before the Court in a timely manner, while also allowing sufficient time for the complexity of these issues to be addressed thoroughly by the parties and by the Court, the State of Georgia respectfully proposes the following schedule for expedited review:

| | |
|---|---|
| Appellant's Opening Brief | Wednesday, September 20, 2023 |
| Appellee's Response Brief | Friday, September 29, 2023 |
| Appellant's Reply Brief | Wednesday, October 4, 2023 |
| Oral Argument (If Held) | Week of October 9, 2023 |

### CONCLUSION

The defendant continues to minimize the already permissive standards applicable to him in order to make sweeping claims of apparently endless

---

[3] The defendant filed a motion to sever in the Superior Court of Fulton County on September 6, 2023, and so the October 23, 2023, trial date set for certain defendants may ultimately be of no consequence to him.

13

authority. He asks that this Court recognize an essentially unlimited scope of power for an executive branch employee that would require ignoring statutes and regulations that he himself admitted were applicable to him. The State of Georgia asks that this Court find that he has not met his "heavy burden" for a stay and deny his motion in all respects.

Respectfully submitted, this 13th day of September 2023.

>FANI T. WILLIS
>DISTRICT ATTORNEY
>ATLANTA JUDICIAL CIRCUIT
>
>By:
>
>*s/ F. McDonald Wakeford*
>F. McDonald Wakeford
>Chief Senior Assistant District Attorney
>Atlanta Judicial Circuit
>Georgia Bar No. 414898
>136 Pryor Street SW, Third Floor
>Atlanta, Georgia 30303
>Fmcdonald.wakeford@fultoncountyga.gov

# CERTIFICATE OF COMPLIANCE

1. This motion complies with the type-volume limit of Federal Rule of Appellate Procedure 27(d)(2)(A) because, excluding the parts of the document exempted by Federal Rule of Appellate Procedure 32(f) and Eleventh Circuit Rule 26.1-3(c), this document contains 3253 words.

2. This motion complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this motion has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman.

    This 13th day of September 2023.

                          *s/ F. McDonald Wakeford*
                          F. McDonald Wakeford

CERTIFICATE OF INTERESTED PERSONS

As authorized by the Eleventh Circuit Rules, I hereby certify that the Certificate of Interested Persons contained in the defendant's Motion appears complete.

*s/ F. McDonald Wakeford*
F. McDonald Wakeford

CERTIFICATE OF SERVICE

I hereby certify the foregoing was served upon the following by email:

  Joseph M. Englert
McGuire Woods LLP
1230 Peachtree Street NE, Suite 2100
Atlanta GA 30309
(404) 443-5500
jenglert@mcguirewoods.com

George J. Terwilliger
John S. Moran
Michael Francisco
McGuire Woods LLP
888 16th Street NW, Suite 500
Washington, DC 20006
(202) 857-1700
gterwilliger@mcguirewoods.com
jmoran@mcguirewoods.com
mfrancisco@mcguirewoods.com

Dated this 13th day of September, 2023.

*s/ F. McDonald Wakeford*

F. McDonald Wakeford