No. 23-12958

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

State of Georgia,

*Plaintiff-Appellee*,

v.

Mark R. Meadows,

*Defendant-Appellant*.

From the United States District Court for the Northern District of Georgia
The Honorable Steve C. Jones, Presiding
No. 1:23-CV-3621-SCJ

**Response Brief to September 12 Order**
**re Removal Under 28 U.S.C. § 1442(a)(1) by Former Officials**

John S. Moran
George J. Terwilliger, III*
Michael Francisco
Francis J. Aul
MCGUIREWOODS LLP
888 16th Street NW, Suite 500
Washington, DC 20006
(202) 857-1700

*Application for Admission Pending

*Counsel for Defendant-Appellant Mark R. Meadows*

No. 23-12958, *State of Georgia v. Meadows*

## CERTIFICATE OF INTERESTED PERSONS
## AND CORPORATE DISCLOSURE STATEMENT

To the best of Appellant's knowledge, no associations of persons, partnerships, or corporations have an interest in the outcome of this case or appeal, including subsidiaries, conglomerates, affiliates, parent corporations, any publicly held corporation that owns 10% or more of the party's stock; the following is a list, in alphabetical order, of all trial judges, attorneys, law firms, and persons with such an interest[*]:

1.  Alksne, Cynthia, *amicus* below

2.  Anulewicz, Christopher Scott, attorney for Robert David Cheeley

3.  Arora, Manubir, attorney for Kenneth John Chesebro

4.  Aul, Francis, attorney for Mark R. Meadows

5.  Ayer, Donald B., *amicus* below

6.  Barron, Lynsey M., attorney for Scott Graham Hall

7.  Beckermann, Wayne R., attorney for Robert David Cheeley

8.  Bever, Thomas Dean, attorney for Shawn Micah Tresher Still

9.  Bittman, Robert, attorney for Mark R. Meadows

10. Bondurant Mixson & Elmore LLP

---

[*] For all parties who appeared below, Appellant has included the parties, their attorneys, and their attorneys' law firms. In order to facilitate this Court's review for potential conflicts, Appellant has also included the other named defendants in the state proceeding and their attorneys, where available.

No. 23-12958, *State of Georgia v. Meadows*

11. Carr, Christopher M., Attorney General of the State of Georgia

12. Cheeley, Robert David, Defendant in *Georgia v. Trump*

13. Chemerinsky, Erwin, *amicus* below

14. Chesebro, Kenneth John, Defendant in *Georgia v. Trump*

15. Christenson, David Andrew, *pro se*, denied intervention below

16. Clark, Jeffrey Bossert, Defendant in *Georgia v. Trump*

17. Cohen, Darryl B., attorney for Trevian C. Kutti

18. Copeland, Amy, *amicus* below

19. Cromwell, William Grant, attorney for Cathleen Alston Latham

20. Cross, Anna Green, Fulton County District Attorney's Office

21. Cross Kincaid LLC

22. Durham, James D., attorney for Mark R. Meadows in *Georgia v. Trump*

23. Eastman, John Charles, Defendant in *Georgia v. Trump*

24. Ellis, Jenna Lynn, Defendant in *Georgia v. Trump*

25. Englert, Joseph Matthew, attorney for Mark R. Meadows

26. Farmer, John J. Jr., *amicus* below

27. Floyd, Harrison William Prescott, Defendant in *Georgia v. Trump*

28. Floyd, John Earl, Fulton County District Attorney's Office

29. Francisco, Michael Lee, attorney for Mark R. Meadows

30. Fried, Charles A., *amicus* below

31. Fulton County District Attorney's Office

32.  Gerson, Stuart M., *amicus* below

33.  Gillen, Craig A., attorney for David James Shafer

34.  Giuliani, Rudolph William Louis, Defendant in *Georgia v. Trump*

35.  Griffin Durham Tanner & Clarkson LLC

36.  Grohovsky, Julie, *amicus* below

37.  Grubman, Scott R., attorney for Kenneth John Chesebro

38.  Hall, Scott Graham, Defendant in *Georgia v. Trump*

39.  Hampton, Misty (a/k/a Emily Misty Hayes), Defendant in *Georgia v. Trump*

40.  Harding, Todd A., attorney for Harrison William Prescott Floyd

41.  Hogue, Franklin James, attorney for Jenna Lynn Ellis

42.  Hogue, Laura Diane, attorney for Jenna Lynn Ellis

43.  Jones, Steve C., U.S. District Court Judge for the Northern District of Georgia

44.  Kammer, Brian S., attorney for *amici* below

45.  Kelley, Emily E., attorney for Mark R. Meadows

46.  Kutti, Trevian C., Defendant in *Georgia v. Trump*

47.  Lake, Anthony C., attorney for David James Shafer

48.  Latham, Cathleen Alston, Defendant in *Georgia v. Trump*

49.  Lee, Stephen Cliffgard, Defendant in *Georgia v. Trump*

50.  Little, Jennifer L., attorney for Donald J. Trump

51.  Luttig, J. Michael, *amicus* below

52.  MacDougald, Harry W., attorney for Jeffrey Bossert Clark

53.  McAfee, Scott, Fulton County Superior Court Judge

54.  McFerren, William Coleman, attorney for Shawn Micah Tresher Still

55.  McGuireWoods, LLP

56.  Meyer, Joseph Michael, attorney for *amici* below

57.  Moran, John S., attorney for Mark R. Meadows

58.  Morgan, John Thomas III, attorney for *amici* below

59.  Morris, Bruce H., attorney for Ray Stallings Smith, III

60.  Ney, Adam, Fulton County District Attorney's Office

61.  Novay, Kristen Wright, attorney for Ray Stallings Smith, III

62.  Palmer, Amanda, attorney for Ray Stallings Smith, III

63.  Parker, Wilmer, attorney for John Charles Eastman

64.  Pierson, Holly Anne, attorney for David James Shafer

65.  Powell, Sidney Katherine, Defendant in *Georgia v. Trump*

66.  Rafferty, Brian T., attorney for Sidney Katherine Powell

67.  Ragas, Arnold M., attorney for Harrison William Prescott Floyd

68.  Raul, Alan Charles, *amicus* below

69.  Rice, Richard A., Jr., attorney for Robert David Cheeley

70.  Roman, Michael A., Defendant in *Georgia v. Trump*

71.  Rood, Grant H., Fulton County District Attorney's Office

72.  Sadow, Steven H., attorney for Donald J. Trump

No. 23-12958, *State of Georgia v. Meadows*

73.    Saldana, Sarah R., *amicus* below

74.    Samuel, Donald Franklin, attorney for Ray Stallings Smith, III

75.    Shafer, David James, Defendant in *Georgia v. Trump*

76.    Smith, Ray Stallings, III, Defendant in *Georgia v. Trump*

77.    Still, Shawn Micah Tresher, Defendant in *Georgia v. Trump*

78.    Terwilliger, George J., III, attorney for Mark R. Meadows

79.    Trump, Donald J., Defendant in *Georgia v. Trump*

80.    Twardy, Stanley A. Jr., *amicus* below

81.    Volchok, Daniel, attorney for *amici* below

82.    Wade, Nathan J., Fulton County District Attorney's Office

83.    Wade & Campbell Firm

84.    Wakeford, Francis McDonald IV, Fulton County District Attorney's Office

85.    Waxman, Seth P., attorney for *amici* below

86.    Weld, William F., *amicus* below

87.    Wertheimer, Fred, attorney for *amici* below

88.    Willis, Fani T., Fulton County District Attorney's Office

89.    Wilmer Cutler Pickering Hale and Dorr LLP

90.    Wooten, John William, Fulton County District Attorney's Office

91.    Wu, Shan, *amicus* below

92.    Young, Daysha D'Anya, Fulton County District Attorney's Office

# TABLE OF CONTENTS

Introduction ............................................................................................1

*Text* ....................................................................................................1

*History* ..............................................................................................4

*Precedent* ..........................................................................................5

*Purpose* .............................................................................................8

Conclusion ..........................................................................................10

# TABLE OF AUTHORITIES

**Cases**

*Al-Tamimi v. Adelson*,
   264 F. Supp. 3d 69 (D.D.C. 2017) ................................................................. 8

*Ameur v. Gates*,
   950 F. Supp. 2d 9057 (E.D. Va. 2013) ......................................................... 8

*Baker v. Atl. Richfield Co.*,
   962 F.3d 937 (7th Cir. 2020) ........................................................................ 6

*Barnhart v. Peabody Coal Co.*,
   537 U.S. 149 (2003) ...................................................................................... 2

*Bradford v. Harding*,
   284 F.2d 307 (2d Cir. 1960) ......................................................................... 2

*Brunson v. Adams*,
   No. 121CV00111JNPJCB, 2021 WL 5403892 (D. Utah Oct. 19, 2021) ...... 5

*Clinton v. Jones*,
   520 U.S. 681 (1997) ................................................................................... 10

*Depascale v. Sylvania Elec. Prod., Inc.*,
   584 F. Supp. 2d 522 (E.D.N.Y. 2008) ........................................................ 6

*Eagar v. Drake*,
   829 F. App'x 878 (10th Cir. 2020) .............................................................. 5

*Forrester v. White*,
   484 U.S. 219 (1988) ................................................................................... 10

*Gallizzi v. Williams*,
   423 F.2d 1213 (5th Cir. 1970) ..................................................................... 9

*Garland v. Aleman Gonzalez*,
   142 S. Ct. 2057 (2022) ................................................................................. 2

*Guancione v. Guevara*,
   No. 23-CV-01924-JSW, 2023 WL 3819368 (N.D. Cal. June 5, 2023) ....... 5

*J.E.M. Ag Supply, Inc. v. Pioneer Hi-Bred Int'l, Inc.*,
   534 U.S. 124 (2001) ...................................................................................... 2

*Jama v. Immigr. & Customs Enf't*,
  543 U.S. 335 (2005) ................................................................................ 2

*Magnin v. Teledyne Control Motors*,
  91 F.3d 1424 (11th Cir. 1996) ................................................................ 7

*Margan v. Chemetron Fire Sys., Inc.*,
  954 F. Supp. 1127 (E.D. Va. 1997) ........................................................ 8

*Meros v. Dimon*,
  No. 2:18-CV-510, 2019 WL 1384390 (S.D. Ohio Mar. 27, 2019) ........... 5

*Mesa v. California*,
  489 U.S. 121 (1989) ............................................................................. 3, 6

*Murray v. Murray*,
  621 F.2d 103 (5th Cir. 1980) .................................................................. 7

*New York v. Tanella*,
  374 F.3d 141 (2d Cir. 2004) ................................................................. 10

*New York v. Trump*,
  No. 23 CIV. 3773 (AKH), 2023 WL 4614689 (S.D.N.Y. July 19, 2023) .......... 1, 6, 9

*Nixon v. Fitzgerald*,
  457 U.S. 731 (1982) ................................................................................ 9

*Osborn v. Haley*,
  549 U.S. 225 (2007) ................................................................................ 8

*Schneider v. Kissinger*,
  310 F. Supp. 2d 251 (D.D.C. 2004) ....................................................... 8

*Smith v. Clinton*,
  886 F.3d 122 (D.C. Cir. 2018) ............................................................... 8

*Smith v. Comcast Corp.*,
  786 F. App'x 935 (11th Cir. 2019) ......................................................... 4

*State of Ariz. v. Elmer*,
  21 F.3d 331 (9th Cir. 1994) .................................................................... 5

*State of Florida v. Cohen*,
  887 F.2d 1451 (11th Cir. 1989) .............................................................. 6

*State of Maryland v. Soper*,
  270 U.S. 9 (1926) ............................................................................... 6

*Tennessee v. Davis*,
  100 U.S. 257 (1879) ............................................................................ 2

*United States v. Cingari*,
  952 F.3d 1301 (11th Cir. 2020) ....................................................... 10

*United States v. Garcon*,
  54 F.4th 1274 (11th Cir. 2022) ......................................................... 4

*Watson v. Philip Morris Companies, Inc.*,
  551 U.S. 142 (2007) ............................................................................ 2

*Willingham v. Morgan*,
  395 U.S. 402 (1969) ............................................................................ 9

## Statutes

28 U.S.C. §1441 ........................................................................................... 4

28 U.S.C. § 1442(a) ........................................................................... *passim*

28 U.S.C. § 1442(b) ................................................................................. 1–4

28 U.S.C. § 2679(b)(1) ............................................................................ 7–8

*An Act to revise, codify, and enact into law title 28 of the United States Code entitled "Judicial Code and Judiciary,"*
  62 Stat. 869, 938 (June 25, 1948) ..................................................... 1

*An Act further to provide for the collection of duties on imports*, § 3,
  4 Stat. 632, 633 (Mar. 2, 1833) .................................................. 1, 4–5

*An Act in Addition to an Act entitled "An Act to amend an Act entitled 'An Act for the Removal of Causes in certain Cases from State Courts,' approved July twenty-seventh, eighteen hundred and sixty-six," approved March second, eighteen hundred and sixty-seven*,
  17 Stat. 44 (Mar. 30, 1872) ................................................................ 1

## Other Authorities

ANTONIN SCALIA & BRYAN A. GARNER,
    READING LAW: THE INTERPRETATION OF LEGAL TEXTS (2012) ............................4

The Court has directed the parties to brief preliminarily whether 28 U.S.C. § 1442(a)(1) permits removal by former officials, particularly given the reference in § 1442(b) to "any citizen of a State who is, or at the time the alleged action accrued was, a civil officer of the United States." The answer is "*yes*." A former official may remove under § 1442(a)(1). "It would make little sense if this were not the rule, for the very purpose of the Removal Statute is to allow federal courts to adjudicate challenges to acts done under color of federal authority." *New York v. Trump*, No. 23 CIV. 3773 (AKH), 2023 WL 4614689, at *5 (S.D.N.Y. July 19, 2023). Text, history, precedent, and purpose all support removal by former officials.[1]

***Text***. To begin the answer where the Court's question begins, the textual differences in § 1442(a) and § 1442(b) do not undermine removal by former officials. These provisions were not written together but combined in 1948 as part of a broader codification of the U.S. Code. *See* 62 Stat. 938.[2] There is no reason to

---

[1] If the Court wants more time to consider the issue—which no one raised below, and which to Appellant's knowledge, has never been questioned by a federal court adjudicating an officer removal case in over 140 years—that is all the more reason to grant the injunctive relief Meadows sought in his September 11 Emergency Motion to preserve the *status quo* and facilitate this Court's deliberate consideration.
[2] The predecessor to § 1442(b), *see* 17 Stat. 44 (Mar. 30, 1872), was enacted decades after the predecessor to § 1442(a), *see* 4 Stat. 632 (Mar. 2, 1833). Appellant has not identified any case involving removal under § 1442(b), and pre-codification cases are sparse; removal under § 1442(b) and its predecessors was likely displaced by removal under the broader removal statutes Congress later passed.

think the difference in wording reflects a "deliberate choice" by Congress as opposed to mere "inadvertence." *Barnhart v. Peabody Coal Co.*, 537 U.S. 149, 168 (2003).

If anything, § 1442(b)'s reference to "any citizen of a State who *is* . . . a civil officer" (emphasis added) suggests that, if Congress wanted to limit § 1442(a)(1) to current officials, "it kn[ew] how to make such a requirement manifest," *Jama v. Immigr. & Customs Enf't*, 543 U.S. 335, 341 (2005); it could have provided for removal by a person "who is a federal officer." A court should not "give much weight to [a] negative inference" where "[i]t is possible that [another provision] simply uses different language," and where the linguistic differences plausibly point to a different reading. *Garland v. Aleman Gonzalez*, 142 S. Ct. 2057, 2068 (2022). Nor should a court rely on negative inferences to "carv[e] out subject matter that otherwise fits comfortably within the expansive language of" a statute. *J.E.M. Ag Supply, Inc. v. Pioneer Hi-Bred Int'l, Inc.*, 534 U.S. 124, 138 (2001); *see also Watson v. Philip Morris Companies, Inc.*, 551 U.S. 142, 147 (2007) (the Federal Officer Removal Statute "must be liberally construed") (quotation omitted).[3]

---

[3] The Supreme Court's admonition that § 1442(a) should be construed broadly is distinct from § 1441, which federal courts construe narrowly. *See Bradford v. Harding*, 284 F.2d 307, 309–10 (2d Cir. 1960) (Friendly, J.) (the Federal Officer Removal Statute "rests upon far stronger considerations of policy. Section 1441 relates to the rights of individuals. Section 1442, although dealing with individuals, vindicates also the interests of government itself.") (citing *Tennessee v. Davis*, 100 U.S. 257, 262 (1879)).

The plain text of § 1442(a)(1) is also consistent with removal by former officials. Prosecution of a former official may naturally be described as a case "against . . . an[] officer . . . of the United States . . . for or relating to any an[] act under color of [his] office"—just as one might brag of "pictures with seven Presidents," even if they are now out of office, and even if they were when the pictures were taken. Moreover, grammatically, § 1442(a)(1), (3), and (4) all focus on whether the action or prosecution is "for or relating to any act" covered by the statute; that focus on official conduct applies equally to current and former officials.[4]

Whereas § 1442(a)(1) focuses on conduct, § 1442(b) focuses on status. Every removable case under § 1442(a)(1) involves a connection to official conduct, but not so with § 1442(b): it allows removal whether or not the action relates to official conduct, so long as the defendant either is an officer at the time the suit is removed or was at the time the action accrued. That distinction between the focus on conduct

---

To illustrate further, one could conceivably read the difference in phrasing between § 1442(a)(1) ("for or relating to any act under color of such office") and § 1442(a)(3) ("for or relating to any act under color of officer *or in the performance of his duties*") (emphasis added) to suggest that an officer removing under (a)(1) may not rely on conduct "in the performance of his duties." But the Supreme Court has specifically rejected any distinction between those two provisions and held that they are coextensive. *See Mesa v. California*, 489 U.S. 121, 135 (1989).

[4] Section 1442(a)(2) instead focus on whether the "action or prosecution affects the validity of any law of the United States," but that inquiry too can come into play in a case against a former property holder, or a property holder whose title was formerly derived from a federal officer.

3

in § 1442(a)(1) and the focus on status in § 1442(b) more than accounts for the "'material variation in terms.'" *United States v. Garcon*, 54 F.4th 1274, 1279 (11th Cir. 2022) (quoting ANTONIN SCALIA & BRYAN A. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS § 25, at 170 (2012)). Congress plausibly addressed current and former officials separately in § 1442(b) because they must make different showings: one that he is a current official (regardless when the claim accrued), the other that he was an official when the claim accrued (regardless whether he is now).[5] Under § 1442(a), by contrast, current and former officials make the same showing: that the case relates to *any act under color of office*. That key language is repeated in (1), (3), and (4), highlighting the focus on prior conduct.

*History*. The history of the Federal Officer Removal Statute reinforces the same conclusion. In 1833, Congress enacted Section 3 of the "Force Act," the statutory precursor to § 1442(a), which provided for removal "in any case where suit or prosecution shall be commenced in a court of any state, against any officer of the United States, or other person, *for or on account of any act* done under the revenue laws of the United States, or under colour thereof . . ." *An Act further to provide for*

---

[5] That reading tracks the diversity removal statute, 28 U.S.C. §1441, which turns on the status (diversity) of the parties currently, not at the time the underlying conduct occurred or claims accrued. *See, e.g.*, *Smith v. Comcast Corp.*, 786 F. App'x 935, 939 (11th Cir. 2019) ("And for a removed case, diversity jurisdiction is determined at the time of removal.") (cleaned up).

4

*the collection of duties on imports*, § 3, 4 Stat. 632, 633 (Mar. 2, 1833) (emphasis added). The original phrasing makes clear that being a current officer is not required, and there is no reason to think subsequent revisions added such a requirement.[6] Meadows is not aware of any case suggesting, much less holding, that a former official is categorically ineligible for removal. Not a single case in 140 years.

*Precedent*. Many cases successfully removed under § 1442(a)(1) have involved actions or prosecutions against former officials or persons who formerly acted under a federal official.[7] And a district court has expressly held, in a case

---

[6] Section 3 also further illustrates the lexical point above that "officer" naturally refers to a former officer. The text plainly did *not* require removal by a current officer; it referred to an action against "any officer . . . or other person." 4 Stat. at 633 (The point is not that former officers qualified only as "other persons"; the point is that there was no conceivable textual basis to exclude them.) At the same time, the provision was described with reference to actions "against revenue officers." 4 Stat. at 633 ("Action in state courts against revenue officers to removed.").

[7] *See, e.g.*, *Eagar v. Drake*, 829 F. App'x 878, 881 (10th Cir. 2020) (appeal of action removed under § 1442(a)(1) by "a retired U.S. Bureau of Land Management ('BLM') employee" for acts taken during his official service); *State of Ariz. v. Elmer*, 21 F.3d 331, 333 (9th Cir. 1994) (same by "former United States Border Patrol Agent"); *Guancione v. Guevara*, No. 23-CV-01924-JSW, 2023 WL 3819368, at *1 (N.D. Cal. June 5, 2023) ("[T]he Government removed the action to this court under 28 U.S.C. § 1442(a)(1) alleging that this action is against a former federal employee."); *Brunson v. Adams*, No. 121CV00111JNPJCB, 2021 WL 5403892, at *3 (D. Utah Oct. 19, 2021) (holding that § 1442(a)(1) authorized removal by "former Vice President Pence" and others), *report and recommendation adopted*, No. 121CV00111JNPJCB, 2021 WL 5383788 (D. Utah Nov. 18, 2021); *Meros v. Dimon*, No. 2:18-CV-510, 2019 WL 1384390, at *2 (S.D. Ohio Mar. 27, 2019) (dismissing claims against the "former United States Attorney for the Northern District of Ohio" who removed under § 1442(a)(1)); *see also Baker v. Atl. Richfield*

involving one of the defendants to the underlying action here, that former officials *may* remove under § 1442(a)(1). *See New York v. Trump*, 2023 WL 4614689, at *5.

Removability turns on, and has always been understood to turn on, the defendant's federal duties at the time of the conduct charged, not at the time of prosecution or removal. *See, e.g.*, *Mesa v. California*, 489 U.S. 121, 123 (1989) ("In the summer of 1985 petitioners . . . were employed as mailtruck drivers . . . ."); *State of Maryland v. Soper*, 270 U.S. 9, 34–35 (1926) (analyzing the defendant's conduct at the time of the actions giving rise to the prosecution).

This Court's own precedents interpreting and applying § 1442(a)(1) strongly support the conclusion that former officials may remove. As this Court explained in *State of Florida v. Cohen*, 887 F.2d 1451, 1453 (11th Cir. 1989), "Section 1442(a)(1) permits the removal of [both] those actions commenced in state court that potentially expose a federal official to civil liability or criminal penalty for an act ***performed in the past*** under color of office, [and] the removal of civil matters that seek to either prohibit or require certain actions by a federal official ***in the future***." (Emphasis added.) Having a current officer for a defendant is not the touchstone. In *Magnin v.*

---

*Co.*, 962 F.3d 937 (7th Cir. 2020) (allowing removal by successor in interest to former government contractor); *Depascale v. Sylvania Elec. Prod., Inc.*, 584 F. Supp. 2d 522, 524 (E.D.N.Y. 2008) (allowing removal by successor in interest to government contractor sued over "industrial chemicals allegedly discharged at a former nuclear rod facility").

*Teledyne Control Motors*, 91 F.3d 1424, 1428 (11th Cir. 1996), this Court held that an aircraft technician properly removed an action brought by the estate of a plane-crash victim because "in executing [an] airworthiness certificate, [he] was acting under an officer or agency of the United States and was acting under color of such office within the meaning of 28 U.S.C. § 1442(a)(1)." The Court did not hold that the technician had to show that he was acting under an officer or agency of the United States at the time of removal.[8] While these decisions did not face the question directly—because neither the parties nor the courts raised it—they persuasively show that this Court, like every other, has understood § 1442(a)(1) to allow removal by former officials who sued or prosecuted for acts under color of office.

Consistent with this view, federal courts have long allowed the United States to substitute itself for former employees under the Westfall Act, which similarly contains generic reference to a "civil action or proceeding for money damages . . . *against the employee* whose act or omission gave rise to the claim." 28 U.S.C. § 2679(b)(1) (emphasis added). Like Supremacy Clause immunity and the Federal Officer Removal Statute, the Westfall Act protects federal officials not just from

---

[8] *See also Murray v. Murray*, 621 F.2d 103, 107 (5th Cir. 1980) (holding that § 1442(a)(1) "permits the removal of those actions commenced in state court that expose a federal official to potential civil liability or criminal penalty *for an act performed in the past* under color of office") (emphasis added).

liability but also from being subject to suit. *See Osborn v. Haley*, 549 U.S. 225, 238–39 (2007). Many former officials have enjoyed such protection.[9] Indeed, the Westfall Act's further reference to "the estate of such employee" further illustrates that the unmodified noun "employee" (like "officer") can naturally refer to someone who previously filled that role but does not currently. *Cf. also Margan v. Chemetron Fire Sys., Inc.*, 954 F. Supp. 1127, 1130 (E.D. Va. 1997) (allowing removal under § 1442A by estate of deceased service-member where "[a]ll parties agree[d] . . . [he] acted in his official capacity . . . when he [engaged in the relevant conduct]").

*Purpose*. Removal by former officials is not only consistent with, but compelled by, the strong federal interests the Federal Officer Removal Statute serves. As the court recently stated in *New York v. Trump*, a former official "can remove a case otherwise qualified for removal. It would make little sense if this were not the rule, for the very purpose of the Removal Statute is to allow federal courts to adjudicate challenges to acts done under color of federal authority." 2023 WL

---

[9] *See, e.g.*, *Smith v. Clinton*, 886 F.3d 122 (D.C. Cir. 2018) (applying Westfall Act to claims against former Secretary of State Hillary Clinton); *Al-Tamimi v. Adelson*, 264 F. Supp. 3d 69 (D.D.C. 2017) (former Deputy National Security Advisor Elliott Abrams), *rev'd on other grounds*, 916 F.3d 1 (D.C. Cir. 2019); *Ameur v. Gates*, 950 F. Supp. 2d 9057 (E.D. Va. 2013) (former Secretaries of Defense Robert Gates and Donald Rumsfeld), *aff'd*, 759 F.3d 317 (4th Cir. 2014); *Schneider v. Kissinger*, 310 F. Supp. 2d 251 (D.D.C. 2004) (former National Security Advisor Dr. Henry Kissinger), *aff'd*, 412 F.3d 190 (D.C. Cir. 2005).

4614689, at *5. The Supreme Court has admonished that the important federal interests underlying the Federal Officer Removal Statute "should not be frustrated by a narrow, grudging interpretation of § 1442(a)(1)." *Willingham v. Morgan*, 395 U.S. 402, 407 (1969).[10] That is why federal officer removal is construed broadly, whereas normal diversity removal is construed narrowly. *See* n.2 *supra*.

"[O]ne of the most important reasons for removal is to have the validity of the defense of official immunity tried in a federal court." *Willingham v. Morgan*, 395 U.S. 402, 407 (1969). That interest does not depend on whether the defendant remains an official at removal (or for that matter, when immunity is adjudicated). Immunity continues after federal service. *See, e.g.*, *Nixon v. Fitzgerald*, 457 U.S. 731, 756 (1982) (holding that Richard Nixon retained "absolute Presidential immunity . . . for acts within the 'outer perimeter' of his official responsibility"); *Gallizzi v. Williams*, 423 F.2d 1213, 1214 (5th Cir. 1970) (holding that claims against "former employees at the Veterans Administration Center" were "plainly barred by the doctrine of official immunity"). This is consistent with the principle that "immunities are grounded in the 'nature of the function performed, not the identity

---

[10] In the same passage, the Supreme Court emphasized that the Federal Officer Removal Statute protects not just "federal officers" but also "the Federal Government itself." *Id*. That protection would be significantly narrowed if States could prosecute federal officials as soon as they leave office without any subsequent right to remove.

of the actor who performed it.'" *Clinton v. Jones*, 520 U.S. 681, 695 (1997) (quoting *Forrester v. White*, 484 U.S. 219, 228 (1988)). And it is critical to "protect[] federal operations from the chilling effect of state prosecution, *New York v. Tanella*, 374 F.3d 141, 147 (2d Cir. 2004), a purpose which would be severely undermined if States could initiate state-court prosecution as soon as an official's service ends. As far as Meadows is aware, no court (or commentator, for that matter) has ever suggested that *current* officials may remove to federal court and have immunity decided there while *former* officials must litigate immunity defenses in state court.

Finally, reading the phrase "any officer . . . of the United States" to allow removal only by current officials would produce anomalous results compare to cases involving "any person acting under that officer." 28 U.S.C. § 1442(a)(1). Either (1) the defendant must still be acting under that officer, which would serve little federal interest and require substantial litigation that removal cases do not presently address; or (2) he need not be, in which case federal officials would receive less durable protection than the individuals who act under them. The court should not construe § 1442(a)(1) to produce such "strange—if not absurd—results." *United States v. Cingari*, 952 F.3d 1301, 1310 (11th Cir. 2020).

\*    \*    \*    \*    \*

A former official like Meadows is permitted to remove under § 1442(a)(1).

10

Dated: September 13, 2023

Respectfully submitted,

*/s/ John S. Moran*
John S. Moran
George J. Terwilliger III*
Michael Francisco
Francis J. Aul
MCGUIREWOODS LLP
888 16th Street NW, Suite 500
Washington, DC 20006
(202) 857-1700
jmoran@mcguirewoods.com
mfrancisco@mcguirewoods.com
faul@mcguirewoods.com

*Counsel to Mark R. Meadows*

* Application for admission to the Eleventh Circuit Bar pending.

## CERTIFICATE OF COMPLIANCE

I hereby certify that this brief complies with the ten-page limit set forth in the Court's September 12 order. This brief is 10 pages long and uses a Times New Roman 14-point font.

Respectfully submitted this 13th day of September, 2023.

*/s/ John S. Moran*

John S. Moran

*Counsel for Defendant-Appellant Mark R. Meadows*