**No. 23-12958**

**IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT**

————————

The State of Georgia

*Plaintiff-Appellee*,

v.

Mark R. Meadows,

*Defendant-Appellant*.

————————

On Appeal from the United States District Court
for the Northern District of Georgia, No. 1:23-cv-03621-SCJ

————————

**DEFENDANT-APPELLANT'S APPENDIX
VOLUME I OF V**

————————

George J. Terwilliger, III
John S. Moran
Michael L. Francisco
Francis J. Aul
MCGUIREWOODS LLP
888 16th Street N.W.
Suite 500
Washington, D.C. 20006
(202) 857-2473
gterwilliger@mcguirewoods.com

*Counsel for Defendant-Appellant Mark R. Meadows*

# INDEX

**Docket/
Tab No.**

## Volume I

District Court Docket Sheet, No. 1:23-cv-3621-SCJ...............................................A

Indictment, 23SC188947 (Fulton Cnty. Sup. Ct. Aug. 14, 2023) ...........................B

Notice of Removal (Aug. 15, 2023)...........................................................................1

Order that the Parties Participate in an Evidentiary Hearing Concerning the Notice
of Removal (Aug. 16, 2023).............................................................................6

Motion to Dismiss Charges Based on Supremacy Clause Immunity (Aug. 18,
2023) ...............................................................................................................15

Corrected Brief in Support of Motion to Dismiss (Aug. 19, 2023) .......... 16-1

Emergency Motion for Relief Immediate Removal, or an Order Prohibiting DA
Willis from Arresting Defendant Mark Meadows (Aug. 22, 2023)..............17

Declaration of John S. Moran (Aug. 22, 2023)......................................... 17-1

Email from John Moran to DA Willis (Aug. 16, 2023) ............................ 17-2

Email from DA Willis to John Moran (Aug. 16, 2023) ............................ 17-3

Letter from John Moran to DA Willis (Aug. 21, 2023) ............................ 17-4

Email from DA Willis to John Moran (Aug. 22, 2023) ............................ 17-5

Letter from John Moran to DA Willis (Aug. 22, 2023) ............................ 17-6

Motion for Entry of Pretrial Scheduling Order and Proposed Pretrial
Scheduling Order, 23SC188947 (Fulton Cnty. Sup. Ct. Aug. 16, 2023)
.................................................................................................... 17-7

State's Response to Emergency Motion for Relief Immediate Removal, or an Order
Prohibiting DA Willis from Arresting Defendant Mark Meadows (Aug. 23,
2023) ...............................................................................................................23

**Docket/**
**Tab No.**

## Volume II

Order Denying Emergency Motion for Immediate Removal or an Order Prohibiting DA Willis from Arresting Defendant Mark Meadows (Aug. 23, 2023).......25

State's Response to Notice of Removal (Aug. 23, 2023)........................................27

Excerpt of Michael Shirkey Interview (June 8, 2022) ............................ 27-1

Excerpt of Cassidy Hutchinson Interview (Mar. 7, 2022) ....................... 27-2

Excerpt of John McEntee Deposition (Mar. 28, 2022) ............................ 27-3

Excerpt of Office of Special Counsel Hatch Act Report (Nov. 9, 2021).. 27-4

Reply to State's Response to Notice of Removal (Aug. 25, 2023) ........................45

Order Requesting Supplemental Briefing (Aug. 29, 2023) ....................................63

## Volume III

Transcript of Evidentiary Proceedings (August 28, 2023), *1 of 2*...........................65

Mark Randall Meadows

Direct Examination....................................................................*App.380*
Cross Examination ...................................................................*App.426*
Redirect Examination................................................................*App.518*

## Volume IV

Transcript of Evidentiary Proceedings (August 28, 2023), *2 of 2*...........................65

Kurt Robert Hilbert

Direct Examination....................................................................*App.532*
Cross Examination ...................................................................*App.554*

**Docket/
Tab No.**

Brad Raffensperger

   Direct Examination......................................................*App.557*
   Cross Examination ......................................................*App.586*
   Redirect Examination ...............................................*App.593*

Exhibits Admitted During Evidentiary Proceedings

   Mark Meadows's Commission (Mar. 31, 2020) [Def.'s Ex. 1] ....................C

   Declaration of Scott Gast (Aug. 27, 2023) [Def.'s Ex. 3]..............................D

   Declaration of Benjamin Williamson (Aug. 27, 2023) [Def.'s Ex. 4] ..........E

   Email from Mark Meadows to Jason Miller (Dec. 6, 2020) [State's Ex. 1] .. F

   Entry of Appearance for Kurt R. Hilbert, *Trump v. Raffensperger*, 2020-cv-343255 (Dec. 7, 2020) [State's Ex. 2] ...................................G

   Recording of Call with Secretary Raffensperger (Jan. 2, 2021) [State's Ex. 3].........................................................................................................H

**<u>Volume V</u>**

State's Supplemental Brief (Aug. 31, 2023)...........................................66

Meadows's Supplemental Brief (Aug. 31, 2023) ...................................67

Order Declining Jurisdiction and Remanding Case to Fulton County Superior Court (Sept. 8, 2023)...........................................................69

Notice of Appeal (Sept. 8, 2023) .........................................................71

Emergency Motion to Stay Remand Order (Sept. 11, 2023)..................74

State's Opposition to Emergency Motion to Stay Remand Order (Sept. 12, 2023) .................................................................................................78

Order Denying Emergency Motion to Stay Pending Appeal (Sept. 12, 2023) .......80

## **<u>Tab A</u>**

4months,APPEAL,CLOSED

# U.S. District Court
## Northern District of Georgia (Atlanta)
## CIVIL DOCKET FOR CASE #: 1:23-cv-03621-SCJ

The State of Georgia v Meadows
Assigned to: Judge Steve C. Jones
Related-miscellaneous Cases: 1:23-cv-03721-SCJ
                             1:23-cv-03720-SCJ
                             1:23-cv-03792-SCJ
                             1:23-cv-03803-SCJ
Case in other court: USCA- 11th Circuit, 23-12958-H
                     Fulton County Superior Court, 23SC188947
Cause  28 1442 Petition for Removal   Suit against Federal Officer

Date Filed  08/15/2023
Date Terminated: 09/08/2023
Jury Demand  None
Nature of Suit: 441 Civil Rights: Voting
Jurisdiction  Federal Question

**Plaintiff**

**The State of Georgia**

represented by **Fani T. Willis**
Fulton County District Attorney's Office
136 Pryor Street
Atlanta, GA 30303
404-612-8904
Email: fani.willisda@fultoncountyga.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Adam Ney**
Office of the Fulton County District
Attorney
Third Floor
136 Pryor Street, S.W.
Atlanta, GA 30303
404-606-0783
Email: ney.adam@gmail.com
*ATTORNEY TO BE NOTICED*

**Anna Green Cross**
Office of the Fulton County District
Attorney
Third Floor
136 Pryor Street, S.W.
Atlanta, GA 30303
404-948-3022
Email: anna@crosskincaid.com
*ATTORNEY TO BE NOTICED*

**Daysha D'Anya Young**
Fulton County
District Attorney's Office

136 Pryor Street
3rd Floor
Atlanta, GA 30303
470-637-1920
Email  daysha young@fultoncountyga gov
*ATTORNEY TO BE NOTICED*

**Francis McDonald Wakeford , IV**
Fulton County District Attorney's Office
3rd Floor
136 Pryor Street, SW
Atlanta, GA 30303
404 613 4670
Email:
fmcdonald wakeford@fultoncountyga gov
*ATTORNEY TO BE NOTICED*

**John Earl Floyd**
Bondurant Mixson & Elmore, LLP
1201 West Peachtree Street, N.W.
Ste 3900
Atlanta, GA 30309-3417
404 881 4100
Email: floyd@bmelaw.com
*ATTORNEY TO BE NOTICED*

**John William Wooten**
Fulton County District Attorney's Office
136 Pryor Street SW
3rd Floor
Atlanta, GA 30303
404-612-6560
Email  will wooten@fultoncountyga gov
*ATTORNEY TO BE NOTICED*

V

**Defendant**

**Mark Randall Meadows**                    represented by **Emily E. Kelley**
McGuireWoods LLP
888 16th Street, NW
Black Lives Matter Plaza
Suite 500
Washington, DC 20006 1040
316-706-5171
Fax  202 828 2988
Email: ekelley@mcguirewoods.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Francis Aul**
McGuireWoods LLP

888 16th Street, NW
Black Lives Matter Plaza
Suite 500
Washington, DC 20006-1040
202 857 1713
Email: faul@mcguirewoods.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**George J. Terwilliger , III**
McGuireWoods LLP
888 16th Street
Suite 500
Washington, DC 20006-1040
202 857 2473
Fax: 202-828-2965
Email  gterwilliger@mcguirewoods com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**John S. Moran**
McGuireWoods LLP
888 16th Street, NW
Black Lives Matter Plaza
Suite 500
Washington, DC 20006 1040
202-525-0356
Email  jmoran@mcguirewoods com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Joseph Matthew Englert**
McGuireWoods LLP
1230 Peachtree Street
Suite 2100
Atlanta, GA 30309
404 443 5730
Email: jenglert@mcguirewoods.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Michael Lee Francisco**
McGuireWoods LLP
888 16th Street, NW
Black Lives Matter Plaza
Suite 500
Washington, DC 20006 1040
202-857-1722
Fax  202 828 3345
Email: mfrancisco@mcguirewoods.com
*LEAD ATTORNEY*
*PRO HAC VICE*

*ATTORNEY TO BE NOTICED*

**Robert Bittman**
McGuireWoods, LLP-DC
888 16th St. N.W.
Washington, DC 20006
202-857-1700
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

<u>Amicus</u>

**Cynthia Alksne**    represented by  **Brian S. Kammer**
241 E Lake Dr
Decatur, GA 30030
678-642-9951
Email: attybkammer@gmail.com
*ATTORNEY TO BE NOTICED*

<u>Amicus</u>

**Erwin Chemerinsky**    represented by  **Brian S. Kammer**
(See above for address)
*ATTORNEY TO BE NOTICED*

<u>Amicus</u>

**Amy Copeland**    represented by  **Brian S. Kammer**
(See above for address)
*ATTORNEY TO BE NOTICED*

<u>Amicus</u>

**Julie Grohovsky**    represented by  **Brian S. Kammer**
(See above for address)
*ATTORNEY TO BE NOTICED*

<u>Amicus</u>

**Sarah R. Saldana**    represented by  **Brian S. Kammer**
(See above for address)
*ATTORNEY TO BE NOTICED*

<u>Amicus</u>

**Shan Wu**    represented by  **Brian S. Kammer**
(See above for address)
*ATTORNEY TO BE NOTICED*

<u>Amicus</u>

**Former Judges, Prosecutors, and State**    represented by  **Daniel Volchok**
**and Federal Executive Officials**
Wilmer Cutler Pickering Hale and Dorr LLP
-DC
2100 Pennsylvania Avenue, NW
Washington, DC 20037
202-663-6103
Fax: 202-663-6363
Email: daniel.volchok@wilmerhale.com

*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Fred Wertheimer**
Democracy 21 Education Fund
2000 Massachusetts Ave  NW
Washington, DC 20036
202 355 9600
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Joseph Michael Meyer**
Wilmer Cutler Pickering Hale and Dorr LLP
-DC
2100 Pennsylvania Avenue, NW
Washington, DC 20037
202 663 6030
Email: joseph.meyer@wilmerhale.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Seth P. Waxman**
Wilmer Cutler Pickering Hale and Dorr LLP
 DC
2100 Pennsylvania Avenue, NW
Washington, DC 20037
202-663-6800
Fax  202 663 6363
Email: seth.waxman@wilmerhale.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**John Thomas Morgan , III**
J. Tom Morgan, Attorney, LLC
Suite 425
160 Clairmont Avenue
Decatur, GA 30030
404-687-1002
Email  jtom@jtommorganlaw com
*ATTORNEY TO BE NOTICED*

**Movant**

| | | |
|---|---|---|
| **David Andrew Christenson** | represented by | **David Andrew Christenson** |
| *TERMINATED: 08/29/2023* | | P.O. Box 9063 |
| | | Miramar Beach, FL 32550 |
| | | 504-715-3086 |
| | | PRO SE |

| Date Filed | # | Docket Text |
|---|---|---|

| 08/15/2023 | 1 | NOTICE OF REMOVAL with CRIMINAL INDICTMENT filed by Mark Randall Meadows. (Filing fee $402 receipt number BGANDC-12816805) (Attachments: # 1 Fulton County Superior Court Indictment, # 2 Civil Cover Sheet) (bgt) Please visit our website at http://www.gand.uscourts.gov/commonly-used-forms to obtain Pretrial Instructions and Pretrial Associated Forms which includes the Consent To Proceed Before U.S. Magistrate form. (Entered: 08/15/2023) |
|---|---|---|
| 08/15/2023 | 2 | NOTICE Of Filing by Mark Randall Meadows *Civil Cover Sheet* (Englert, Joseph) (Entered  08/15/2023) |
| 08/16/2023 | 3 | NOTICE of Appearance by Joseph Matthew Englert on behalf of Mark Randall Meadows (Englert, Joseph) (Entered: 08/16/2023) |
| 08/16/2023 | 4 | APPLICATION for Admission of Michael Lee Francisco Pro Hac Vice (Application fee $ 150, receipt number AGANDC-12820660).by Mark Randall Meadows. (Attachments: # 1 Exhibit Certificate of Good Standing [M  Francisco])(Englert, Joseph) Documents for this entry are not available for viewing outside the courthouse. (Entered: 08/16/2023) |
| 08/16/2023 | 5 | APPLICATION for Admission of John Savage Moran Pro Hac Vice (Application fee $ 150, receipt number AGANDC-12821210).by Mark Randall Meadows. (Attachments: # 1 Exhibit Certificate of Good Standing [J. Moran])(Englert, Joseph) Documents for this entry are not available for viewing outside the courthouse. (Entered: 08/16/2023) |
| 08/16/2023 | 6 | ORDER re 1 Notice of Removal filed by Mark Randall Meadows. The Court concludes the face of the Notice of Removal 1 and attached Indictment [1 1] do not clearly indicate that summary remand of this matter is required. No opinion about whether removal will be permitted or on a federal immunity defense is being made at this time  Pursuant to 28 U.S.C. § 1455(b)(5), the Court ORDERS that the Parties participate in an evidentiary hearing concerning the Notice of Removal of the Indictment against Mark R  Meadows on Monday, August 28, 2023, at 10:00 A.M. at the Richard B. Russell Federal Building and United States Courthouse, 75 Ted Turner Drive, S W , Atlanta, Georgia, in Courtroom 1907.The Court furthermore ORDERS that Defendant Meadows immediately SERVE the Fulton County District Attorney, Fani Willis, with a copy of the Notice of Removal and a copy of this Order. Once the Fulton County District Attorney has been served, she may submit a written response to Defendant Meadows's Notice of Removal no later than Wednesday, August 23, 2023. Any response submitted must not exceed 25 pages in length. In the interim, pursuant to 28 U S C  § 1455(b)(3), proceedings may continue in the Superior Court of Fulton County, Georgia. Signed by Judge Steve C. Jones on 8/16/2023. (pdw) (Entered  08/16/2023) |
| 08/16/2023 | 7 | APPLICATION for Admission of George James Terwilliger, III Pro Hac Vice (Application fee $ 150, receipt number AGANDC-12821596).by Mark Randall Meadows. (Attachments: # 1 Exhibit Certificate of Good Standing)(Englert, Joseph) Documents for this entry are not available for viewing outside the courthouse. (Entered: 08/16/2023) |
| 08/17/2023 | | APPROVAL by Clerks Office re  4 APPLICATION for Admission of Michael Lee Francisco Pro Hac Vice (Application fee $ 150, receipt number AGANDC-12820660). Attorney Michael Lee Francisco added appearing on behalf of Mark Randall Meadows  E filing access may be requested after an order granting the application is entered. (rvb) (Entered  08/17/2023) |
| 08/17/2023 | | APPROVAL by Clerks Office re: 5 APPLICATION for Admission of John Savage Moran Pro Hac Vice (Application fee $ 150, receipt number AGANDC-12821210). Attorney John S. Moran added appearing on behalf of Mark Randall Meadows. E-filing access may be requested after an order granting the application is entered. (rvb) (Entered: 08/17/2023) |

| 08/17/2023 | | APPROVAL by Clerks Office re: 7 APPLICATION for Admission of George James Terwilliger, III Pro Hac Vice (Application fee $ 150, receipt number AGANDC 12821596). Attorney George J. Terwilliger, III added appearing on behalf of Mark Randall Meadows  E filing access may be requested after an order granting the application is entered. (rvb) (Entered: 08/17/2023) |
|---|---|---|
| 08/17/2023 | 8 | NOTICE of Appearance by John Wooten on behalf of The State of Georgia (Wooten, John) (Entered: 08/17/2023) |
| 08/17/2023 | 9 | ORDER granting 4 Application for Admission of Michael Lee Francisco Pro Hac Vice. Signed by Judge Steve C  Jones on 8/17/23 If the applicant does not have CM/ECF access in the Northern District of Georgia already, they must request access at http://pacer.gov. If they have electronically filed in this district in a previous case, please omit this step (rsg) (Entered: 08/17/2023) |
| 08/17/2023 | 10 | ORDER granting 5 Application for Admission of John Savage Moran Pro Hac Vice. Signed by Judge Steve C. Jones on 8/17/23. If the applicant does not have CM/ECF access in the Northern District of Georgia already, they must request access at http://pacer.gov. If they have electronically filed in this district in a previous case, please omit this step.(rsg) (Entered: 08/17/2023) |
| 08/17/2023 | | Clerk's Certificate of Mailing as to John Savage Moran re 10 Order on Application for Admission PHV. (rsg) (Entered: 08/17/2023) |
| 08/17/2023 | 11 | ORDER granting 7 Application for Admission of George James Terwilliger, III Pro Hac Vice. Signed by Judge Steve C. Jones on 8/17/23. If the applicant does not have CM/ECF access in the Northern District of Georgia already, they must request access at http://pacer.gov. If they have electronically filed in this district in a previous case, please omit this step.(rsg) (Entered: 08/17/2023) |
| 08/17/2023 | 12 | NOTICE by Mark Randall Meadows *Regarding Service* (Englert, Joseph) (Entered 08/17/2023) |
| 08/18/2023 | 13 | NOTICE by Mark Randall Meadows *Regarding a Prompt Hearing* (Englert, Joseph) (Entered: 08/18/2023) |
| 08/18/2023 | 14 | CERTIFICATE OF SERVICE filed by Mark Randall Meadows (Attachments: # 1 Affidavit of Service)(Englert, Joseph) (Entered  08/18/2023) |
| 08/18/2023 | 15 | MOTION to Dismiss *Charges against Mark R. Meadows Based on Supremacy Clause Immunity* with Brief In Support by Mark Randall Meadows. (Attachments: # 1 Brief Brief in Support of Meadows Motion to Dismiss)(Francisco, Michael) (Entered: 08/18/2023) |
| 08/19/2023 | 16 | *Notice of Corrected Brief in Support* to 15 MOTION to Dismiss *Charges against Mark R. Meadows Based on Supremacy Clause Immunity filed by Mark Randall Meadows (Attachments: # 1 Brief Corrected Brief in Support of Meadows Motion to Dismiss) (Francisco, Michael) Modified on 8/21/2023 to edit docket text (ddm)  (Entered 08/19/2023)* |
| 08/22/2023 | 17 | Emergency MOTION for Relief Immediate Removal, or an Order Prohibiting DA Willis from Arresting Defendant Mark Meadows by Mark Randall Meadows. (Attachments: # 1 Affidavit Declaration of John S. Moran, # 2 Exhibit Ex. 1, # 3 Exhibit Ex. 2, # 4 Exhibit Ex. 3, # 5 Exhibit Ex. 4, # 6 Exhibit Ex. 5, # 7 Exhibit Ex. 6, # 8 Text of Proposed Order) (Moran, John) (Entered: 08/22/2023) |
| 08/22/2023 | 18 | CERTIFICATE OF SERVICE filed by The State of Georgia *of Subpoena upon Kurt Robert Hilbert* (Wooten, John) (Entered: 08/22/2023) |

| | | |
|---|---|---|
| 08/22/2023 | 19 | CERTIFICATE OF SERVICE filed by The State of Georgia *of Subpoena upon Alex Benjamin Kaufman* (Wooten, John) (Entered: 08/22/2023) |
| 08/22/2023 | 20 | ORDER directing the Fulton County District Attorneys' Office to respond to Defendant Mark Meadow's Emergency Motion for Immediate Removal or to Prohibit His Arrest 17 by 3 p.m. tomorrow, Wednesday August 23, 2023. This response may not exceed 25 pages. No reply will be permitted. Signed by Judge Steve C. Jones on 08/22/2023. (ddm) (Entered: 08/22/2023) |
| 08/22/2023 | 21 | ADMINISTRATIVE ORDER NO. 23-03: IN RE USE OF CELLULAR TELEPHONES AND ELECTRONIC EQUIPMENT ON THE 19TH FLOOR OF THE RICHARD B. RUSSELL BUILDING ON AUGUST 28, 2023. Signed by Chief Judge Timothy C. Batten, Sr. on 8/22/2023. (bgt) (Entered: 08/22/2023) |
| 08/23/2023 | 22 | NOTICE of Appearance by Francis McDonald Wakeford, IV on behalf of The State of Georgia (Wakeford, Francis) (Entered: 08/23/2023) |
| 08/23/2023 | 23 | RESPONSE in Opposition re 17 Emergency MOTION for Relief Immediate Removal, or an Order Prohibiting DA Willis from Arresting Defendant Mark Meadows filed by The State of Georgia. (Wakeford, Francis) (Entered: 08/23/2023) |
| 08/23/2023 | 24 | MOTION for Leave to File Brief as Amici Curiae with Brief In Support by Cynthia Alksne, Erwin Chemerinsky, Amy Copeland, Julie Grohovsky, Sarah R. Saldana, Shan Wu. (Attachments: # 1 Brief Brief of Amicus Curiae In Opposition to Emergency Motion of Defendant Mark R. Meadows)(Kammer, Brian) (Entered: 08/23/2023) |
| 08/23/2023 | 25 | ORDER denying Defendant Mark Meadows's 17 Emergency Motion for Immediate Removal or an Order Prohibiting DA Willis from Arresting Defendant Mark Meadows. Signed by Judge Steve C. Jones on 8/23/2023. (pdw) (Entered: 08/23/2023) |
| 08/23/2023 | 26 | ORDER denying as moot 24 Motion for Leave to File Brief as Amici Curiae with Brief In Support by Cynthia Alksne, Erwin Chemerinsky, Amy Copeland, Julie Grohovsky, Sarah R. Saldana, Shan Wu. Signed by Judge Steve C. Jones on 8/23/2023. (pdw) (Entered: 08/23/2023) |
| 08/23/2023 | 27 | RESPONSE re 1 Notice of Removal, filed by The State of Georgia. (Attachments: # 1 Exhibit Excerpt - Michael Shirkey Deposition, # 2 Exhibit Excerpt - Cassidy Hutchinson Deposition, # 3 Exhibit Excerpt - John McEntee Deposition, # 4 Exhibit Excerpt - OSC Report)(Wakeford, Francis) (Entered: 08/23/2023) |
| 08/23/2023 | 28 | NOTICE Of Filing Deposition of Cassidy Hutchinson Taken on March 7, 2022 by The State of Georgia (Attachments: # 1 Exhibit Cassidy Hutchinson Deposition)(Wooten, John) (Entered: 08/23/2023) |
| 08/23/2023 | 29 | NOTICE Of Filing Deposition of John McEntee Taken on March 28, 2022 by The State of Georgia (Attachments: # 1 Exhibit John McEntee Deposition)(Wooten, John) (Entered: 08/23/2023) |
| 08/23/2023 | 30 | NOTICE Of Filing Deposition of Michael Shirkey Taken on June 8, 2022 by The State of Georgia (Attachments: # 1 Exhibit Michael Shirkey Deposition)(Wooten, John) (Entered: 08/23/2023) |
| 08/23/2023 | 31 | APPLICATION for Admission of Fred Wertheimer Pro Hac Vice (Application fee $ 150, receipt number AGANDC-12837300).by Former Judges, Prosecutors, and State and Federal Executive Officials. (Morgan, John) Documents for this entry are not available for viewing outside the courthouse. (Entered: 08/23/2023) |
| 08/23/2023 | 32 | APPLICATION for Admission of Seth Waxman Pro Hac Vice (Application fee $ 150, receipt number AGANDC-12837304).by Former Judges, Prosecutors, and State and |

| | | |
|---|---|---|
| | | Federal Executive Officials. (Morgan, John) Documents for this entry are not available for viewing outside the courthouse. (Entered: 08/23/2023) |
| 08/23/2023 | 33 | APPLICATION for Admission of Daniel Volchok Pro Hac Vice (Application fee $ 150, receipt number AGANDC-12837307).by Former Judges, Prosecutors, and State and Federal Executive Officials. (Morgan, John) Documents for this entry are not available for viewing outside the courthouse. (Entered: 08/23/2023) |
| 08/23/2023 | 34 | APPLICATION for Admission of Joseph Meyer Pro Hac Vice (Application fee $ 150, receipt number AGANDC-12837309).by Former Judges, Prosecutors, and State and Federal Executive Officials. (Morgan, John) Documents for this entry are not available for viewing outside the courthouse. (Entered: 08/23/2023) |
| 08/23/2023 | 35 | MOTION for Leave to File *Brief* by Former Judges, Prosecutors, and State and Federal Executive Officials. (Attachments: # 1 Brief)(Morgan, John) (Entered: 08/23/2023) |
| 08/24/2023 | 36 | CERTIFICATE OF SERVICE filed by The State of Georgia *of Subpoena upon Brad Raffensperger* (Wooten, John) (Entered: 08/24/2023) |
| 08/24/2023 | 37 | CERTIFICATE OF SERVICE filed by The State of Georgia *of Subpoena upon Frances Watson* (Wooten, John) (Entered: 08/24/2023) |
| 08/24/2023 | 38 | ORDER re 35 MOTION for Leave to File. If any party opposes the Court granting leave, said Party shall file an opposition brief by **3:00 P.M. on FRIDAY, AUGUST 25, 2023**. Signed by Judge Steve C. Jones on 08/24/2023. (rsg) (Entered: 08/24/2023) |
| 08/24/2023 | 39 | NOTICE Of Filing Correction to Application for Admission of Fred Wertheimer Pro Hac Vice by Former Judges, Prosecutors, and State and Federal Executive Officials re 31 APPLICATION for Admission of Fred Wertheimer Pro Hac Vice (Application fee $ 150, receipt number AGANDC-12837300). (Morgan, John) (Entered: 08/24/2023) |
| 08/24/2023 | 57 | MOTION to Intervene by David Andrew Christenson. (rsg) (Entered: 08/28/2023) |
| 08/25/2023 | 40 | NOTICE of Appearance by Adam Ney on behalf of The State of Georgia (Ney, Adam) (Entered: 08/25/2023) |
| 08/25/2023 | 41 | NOTICE of Appearance by Daysha D'Anya Young on behalf of The State of Georgia (Young, Daysha) (Entered: 08/25/2023) |
| 08/25/2023 | 42 | NOTICE of Appearance by Anna Green Cross on behalf of The State of Georgia (Cross, Anna) (Entered: 08/25/2023) |
| 08/25/2023 | 43 | APPLICATION for Admission of Emily Erb Kelley Pro Hac Vice (Application fee $ 150, receipt number AGANDC-12841644).by Mark Randall Meadows. (Attachments: # 1 Exhibit Certificate of Good Standing)(Englert, Joseph) Documents for this entry are not available for viewing outside the courthouse. (Entered: 08/25/2023) |
| 08/25/2023 | | RETURN of 32 APPLICATION for Admission of Seth Waxman Pro Hac Vice (Application fee $ 150, receipt number AGANDC-12837304) to attorney for correction. Reason for Return: The font size and margins on your application are not in compliance with this Court's Local Rules. Please use the PHV application on this court's website. After you complete the application, select submit and print to PDF. (rvb) (Entered: 08/25/2023) |
| 08/25/2023 | | RETURN of 33 APPLICATION for Admission of Daniel Volchok Pro Hac Vice (Application fee $ 150, receipt number AGANDC-12837307) to attorney for correction. Reason for Return: The font size and margins on your application are not in compliance with this Court's Local Rules. Please use the PHV application on this court's website. After you complete the application, select submit and print to PDF. (rvb) (Entered: 08/25/2023) |

| | | |
|---|---|---|
| 08/25/2023 | | RETURN of 34 APPLICATION for Admission of Joseph Meyer Pro Hac Vice (Application fee $ 150, receipt number AGANDC-12837309) to attorney for correction. Reason for Return: The font size and margins on your application are not in compliance with this Court's Local Rules. Please use the PHV application on this court's website. After you complete the application, select submit and print to PDF. (rvb) (Entered: 08/25/2023) |
| 08/25/2023 | 44 | ORDER ALLOWING AUDIO/VISUAL EQUIPMENT IN THE COURTROOM: Each of the following counsels of record in the above-entitled action will be permitted to bring one (1) laptop computer to Courtroom 1907 on the 19th floor of the United States Courthouse for the purpose of presentation of evidence or perpetuation of the record during a hearing scheduled before the Honorable Steve C. Jones on August 28, 2023 at 10:00 AM. The prohibition pursuant to Administrative Order No. 23-03 on cellular phones and other electronic devices with camera or other recording technology remains in full force and effect. Signed by Judge Steve C. Jones on 8/25/2023. (rsg) (Entered: 08/25/2023) |
| 08/25/2023 | 45 | *Reply* to 27 The State of Georgia's Response to Notice of Removal filed by Mark Randall Meadows. (Moran, John) Modified on 8/25/2023 to edit docket text (ddm). (Entered: 08/25/2023) |
| 08/25/2023 | 46 | NOTICE Of Filing Correction to Application for Admission of Seth Waxman Pro Hac Vice by Former Judges, Prosecutors, and State and Federal Executive Officials re Return of Application for Admission Pro Hac Vice, (Morgan, John) (Entered: 08/25/2023) |
| 08/25/2023 | 47 | NOTICE Of Filing Correction to Application for Admission of Daniel Volchok Pro Hac Vice by Former Judges, Prosecutors, and State and Federal Executive Officials re Return of Application for Admission Pro Hac Vice, (Morgan, John) (Entered: 08/25/2023) |
| 08/25/2023 | 48 | NOTICE Of Filing Correction to Application for Admission of Joseph Meyer Pro Hac Vice by Former Judges, Prosecutors, and State and Federal Executive Officials re Return of Application for Admission Pro Hac Vice, (Morgan, John) (Entered: 08/25/2023) |
| 08/25/2023 | 49 | APPLICATION for Admission of Seth Waxman Pro Hac Vice.by Former Judges, Prosecutors, and State and Federal Executive Officials. (Morgan, John) Documents for this entry are not available for viewing outside the courthouse. (Entered: 08/25/2023) |
| 08/25/2023 | 50 | APPLICATION for Admission of Daniel Volchok Pro Hac Vice.by Former Judges, Prosecutors, and State and Federal Executive Officials. (Morgan, John) Documents for this entry are not available for viewing outside the courthouse. (Entered: 08/25/2023) |
| 08/25/2023 | 51 | APPLICATION for Admission of Joseph Meyer Pro Hac Vice.by Former Judges, Prosecutors, and State and Federal Executive Officials. (Morgan, John) Documents for this entry are not available for viewing outside the courthouse. (Entered: 08/25/2023) |
| 08/25/2023 | | APPROVAL by Clerks Office re: 49 APPLICATION for Admission of Seth Waxman Pro Hac Vice (Application fee $ 150, receipt number AGANDC-12837304). Attorney Seth P. Waxman added appearing on behalf of Former Judges, Prosecutors, and State and Federal Executive Officials. E-filing access may be requested after an order granting the application is entered. (rvb) (Entered: 08/25/2023) |
| 08/25/2023 | | APPROVAL by Clerks Office re: 50 APPLICATION for Admission of Daniel Volchok Pro Hac Vice (Application fee $ 150, receipt number AGANDC-12837307). Attorney Daniel Volchok added appearing on behalf of Former Judges, Prosecutors, and State and Federal Executive Officials. E-filing access may be requested after an order granting the application is entered. (rvb) (Entered: 08/25/2023) |
| 08/25/2023 | | APPROVAL by Clerks Office re: 51 APPLICATION for Admission of Joseph Meyer Pro Hac Vice (Application fee $ 150, receipt number AGANDC-12837309). Attorney Joseph Michael Meyer added appearing on behalf of Former Judges, Prosecutors, and State and |

| | | |
|---|---|---|
| | | Federal Executive Officials. E-filing access may be requested after an order granting the application is entered. (rvb) (Entered: 08/25/2023) |
| 08/25/2023 | | APPROVAL by Clerks Office re: 31 and 39 APPLICATION for Admission of Fred Wertheimer Pro Hac Vice (Application fee $ 150, receipt number AGANDC-12837300). Attorney Fred Wertheimer added appearing on behalf of Former Judges, Prosecutors, and State and Federal Executive Officials. E-filing access may be requested after an order granting the application is entered. (rvb) (Entered: 08/25/2023) |
| 08/25/2023 | 52 | APPLICATION for Admission of Francis Aul Pro Hac Vice (Application fee $ 150, receipt number AGANDC-12842610).by Mark Randall Meadows. (Englert, Joseph) Documents for this entry are not available for viewing outside the courthouse. (Entered: 08/25/2023) |
| 08/25/2023 | | DOCKET ORDER granting 31 Application for Admission Pro Hac Vice of Fred Wertheimer. Entered by Judge Steve C. Jones on 8/25/2023. If the applicant does not have CM/ECF access in the Northern District of Georgia already, they must request access at http://pacer.gov. If they have electronically filed in this district in a previous case, please omit this step.(pdw) (Entered: 08/25/2023) |
| 08/25/2023 | | DOCKET ORDER granting 49 Application for Admission Pro Hac Vice of Seth Waxman. Entered by Judge Steve C. Jones on 8/25/2023. If the applicant does not have CM/ECF access in the Northern District of Georgia already, they must request access at http://pacer.gov. If they have electronically filed in this district in a previous case, please omit this step.(pdw) (Entered: 08/25/2023) |
| 08/25/2023 | | DOCKET ORDER granting 50 Application for Admission Pro Hac Vice of Daniel Volchok. Entered by Judge Steve C. Jones on 8/25/2023. If the applicant does not have CM/ECF access in the Northern District of Georgia already, they must request access at http://pacer.gov. If they have electronically filed in this district in a previous case, please omit this step.(pdw) (Entered: 08/25/2023) |
| 08/25/2023 | | DOCKET ORDER granting 51 Application for Admission Pro Hac Vice of Joseph Meyer. Entered by Judge Steve C. Jones on 8/25/2023. If the applicant does not have CM/ECF access in the Northern District of Georgia already, they must request access at http://pacer.gov. If they have electronically filed in this district in a previous case, please omit this step.(pdw) Modified on 8/25/2023 to correct applicant's info (rvb). (Entered: 08/25/2023) |
| 08/25/2023 | 53 | NOTICE of Appearance by John Earl Floyd on behalf of The State of Georgia (Floyd, John) (Entered: 08/25/2023) |
| 08/25/2023 | 54 | ORDER GRANTING the Motion for Leave to File an Amicus Curiae in Support of Remand (Doc. No. 35 ) and directing the Clerk to refile Doc. No. [35-1] as a new docket entry on CM/ECF. Signed by Judge Steve C. Jones on 08/25/2023. (ddm) (Entered: 08/25/2023) |
| 08/25/2023 | 55 | Amicus Curiae in Support of Remand filed by Former Judges, Prosecutors, and State and Federal Executive Officials. (ddm) (Entered: 08/25/2023) |
| 08/27/2023 | 56 | APPLICATION for Admission of Robert Bittman Pro Hac Vice (Application fee $ 150, receipt number AGANDC-12844476).by Mark Randall Meadows. (Englert, Joseph) Documents for this entry are not available for viewing outside the courthouse. (Entered: 08/27/2023) |
| 08/28/2023 | | APPROVAL by Clerks Office re: 52 APPLICATION for Admission of Francis Aul Pro Hac Vice (Application fee $ 150, receipt number AGANDC-12842610).. Attorney Francis Aul added appearing on behalf of Mark Randall Meadows. E-filing access may be requested after an order granting the application is entered. (djs) (Entered: 08/28/2023) |

| 08/28/2023 | | APPROVAL by Clerks Office re: 56 APPLICATION for Admission of Robert Bittman Pro Hac Vice (Application fee $ 150, receipt number AGANDC-12844476). Attorney Robert Bittman added appearing on behalf of Mark Randall Meadows. E-filing access may be requested after an order granting the application is entered. (djs) (Entered: 08/28/2023) |
|---|---|---|
| 08/28/2023 | | APPROVAL by Clerks Office re: 43 APPLICATION for Admission of Emily Erb Kelley Pro Hac Vice (Application fee $ 150, receipt number AGANDC-12841644). Attorney Emily E. Kelly added appearing on behalf of Mark Randall Meadows. E-filing access may be requested after an order granting the application is entered. (djs) (Entered: 08/28/2023) |
| 08/28/2023 | | DOCKET ORDER granting 43 Application for Admission Pro Hac Vice of Emily Erb Kelley. Entered by Judge Steve C. Jones on 8/28/2023. If the applicant does not have CM/ECF access in the Northern District of Georgia already, they must request access at http://pacer.gov. If they have electronically filed in this district in a previous case, please omit this step.(pdw) (Entered: 08/28/2023) |
| 08/28/2023 | | DOCKET ORDER granting 52 Application for Admission Pro Hac Vice of Francis Aul. Entered by Judge Steve C. Jones on 8/28/2023. If the applicant does not have CM/ECF access in the Northern District of Georgia already, they must request access at http://pacer.gov. If they have electronically filed in this district in a previous case, please omit this step.(pdw) (Entered: 08/28/2023) |
| 08/28/2023 | | DOCKET ORDER granting 56 Application for Admission Pro Hac Vice of Robert Bittman. Entered by Judge Steve C. Jones on 8/28/2023. If the applicant does not have CM/ECF access in the Northern District of Georgia already, they must request access at http://pacer.gov. If they have electronically filed in this district in a previous case, please omit this step.(pdw) (Entered: 08/28/2023) |
| 08/28/2023 | 58 | Witness List by The State of Georgia. (rsg) (Entered: 08/28/2023) |
| 08/28/2023 | 59 | Witness List by Mark Randall Meadows. (rsg) (Entered: 08/28/2023) |
| 08/28/2023 | 60 | Exhibit List - State of Georgia. (pdw) (Entered: 08/28/2023) |
| 08/28/2023 | 61 | Exhibit List - Mark Randall Meadows. (pdw) (Entered: 08/28/2023) |
| 08/28/2023 | 62 | Minute Entry for proceedings held before Judge Steve C. Jones: Evidentiary Hearing held on 8/28/2023 pursuant to the Court's 6 Order regarding Defendant's Notice of Removal 1 . Defendant Meadows's case presented. Mark Meadows sworn and testified. Defendant's exhibits 1 and 2 admitted. Cross-examination by Plaintiff State of Georgia. Lunch break. Cross-exam continued. Plaintiff's exhibit 1 admitted. Redirect. Defendant's exhibits 3 and 4 admitted over objection. Defendant rested. Plaintiff's case presented. Kurt Hilbert sworn and testified. Plaintiff's exhibit 2 admitted. Oral motion by Defendant for Plaintiff to produce statements pursuant to FedRCivP 26.2. The Court issued a verbal order denying the motion. Brad Raffensperger sworn and testified. Plaintiff's exhibit 3 admitted. Cross-exam. Renewed oral motion by Defendant for Plaintiff to produce statements pursuant to FedRCivP 26.2. The Court issued a verbal order denying the motion. Redirect, no re-cross. Plaintiff rested. Closing arguments presented by each side. The matter was TAKEN UNDER ADVISEMENT by the Court with ruling to issue in due course by written order. (Court Reporter V. Zborowski & P. Coudriet)(pdw) (Entered: 08/28/2023) |
| 08/29/2023 | 63 | ORDER advising the parties that the Court requests limited additional briefing on the following issue: Count 1 of the Indictment (pertaining to Georgia's Racketeer Influenced and Corrupt Organizations Act (RICO), O.C.G.A. § 16-14-4(c)) contains a number of overt acts attributed to Mr. Meadows. Would a finding that at least one (but not all) of the overt acts charged occurred under the color of Meadows's office, be sufficient for federal removal of a criminal prosecution under 28 U.S.C. § 1442(a)(l)? The Parties shall file |

| | | supplemental briefing by 5:00 p.m., Thursday, August 31, 2023. Signed by Judge Steve C. Jones on 08/29/2023. (ddm) (Entered: 08/29/2023) |
|---|---|---|
| 08/29/2023 | 64 | ORDER denying Mr. Christenson's 57 Motion to Intervene. Other than the timeliness of his motion, Mr. Christenson has not shown that he has any basis, under the Federal Rules of Civil Procedure, to intervene as of right or otherwise. Signed by Judge Steve C. Jones on 8/29/23. (rsg) (Entered: 08/29/2023) |
| 08/29/2023 | | Clerk's Certificate of Mailing as to David Andrew Christenson re 64 Order on Motion to Intervene. (rsg) (Entered: 08/29/2023) |
| 08/31/2023 | 65 | TRANSCRIPT of Evidentiary Proceedings held on Monday, 8/28/2023, before Judge Steve C. Jones. Court Reporter/Transcriber Viola S. Zborowski & Penny Coudriet. A full directory of court reporters and their contact information can be found at www.gand.uscourts.gov/directory-court-reporters. Tape Number: 1. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 9/21/2023. Redacted Transcript Deadline set for 10/2/2023. Release of Transcript Restriction set for 11/29/2023. (Attachments: # 1 Appendix Notice of Filing Transcript) Modified on 9/1/2023 to correct date of hearing (anc). (Entered: 08/31/2023) |
| 08/31/2023 | 66 | NOTICE Of Filing State of Georgia's Post-Hearing Brief by The State of Georgia re 63 Order. (Wakeford, Francis) (Entered: 08/31/2023) |
| 08/31/2023 | 67 | *Supplemental Brief in Support of Removal* by Mark Randall Meadows re 63 Order. (Moran, John) Modified on 9/1/2023 to edit docket text (ddm). (Entered: 08/31/2023) |
| 08/31/2023 | 68 | NOTICE Of Filing Recent State Court Filings by Mark Randall Meadows (Attachments: # 1 Exhibit Ex. A - 08/24 Order, # 2 Exhibit Ex. B - 08/29 Motion, # 3 Exhibit Ex. C - 08/30 Motion)(Moran, John) (Entered: 08/31/2023) |
| 09/08/2023 | 69 | ORDER. The Court DECLINES to assume jurisdiction over the State's criminal prosecution of Meadows under Section 1455 and REMANDS the case to Fulton County Superior Court. The Court also DIRECTS the Clerk of Court to TERMINATE all pending motions and CLOSE this case. Signed by Judge Steve C. Jones on 9/8/2023. (adg) (Entered: 09/08/2023) |
| 09/08/2023 | | Civil Case Terminated. (adg) (Entered: 09/08/2023) |
| 09/08/2023 | 70 | Electronic transmittal of certified copy of 69 Remand Order to Fulton County Superior Court (Case: 23SC188947) (adg) (Entered: 09/08/2023) |
| 09/08/2023 | 71 | NOTICE OF APPEAL as to 69 Order, by Mark Randall Meadows. Filing fee $ 505, receipt number AGANDC-12873016. Transcript Order Form due on 9/22/2023 (Moran, John) (Entered: 09/08/2023) |
| 09/08/2023 | 72 | USCA Appeal Transmission Letter to USCA- 11th Circuit re: 71 Notice of Appeal filed by Mark Randall Meadows. (pjm) (Entered: 09/08/2023) |
| 09/08/2023 | 73 | Transmission of Certified Copy of Notice of Appeal, USCA Appeal Fees, Order and Docket Sheet to US Court of Appeals re: 71 Notice of Appeal. (pjm) (Entered: 09/08/2023) |
| 09/11/2023 | 74 | Emergency MOTION to Stay *Remand Order* by Mark Randall Meadows. (Moran, John) (Entered: 09/11/2023) |
| 09/11/2023 | 75 | USCA Acknowledgment of 71 Notice of Appeal filed by Mark Randall Meadows. Case Appealed to USCA- 11th Circuit. Case Number 23-12958-H. (pjm) (Entered: 09/11/2023) |

| 09/11/2023 | 76 | ORDER re 74 Emergency MOTION to Stay *Remand Order*. The Court orders expedited briefing. To this regard, the State shall file a response brief by 12 p.m., September 12, 2023. Signed by Judge Steve C. Jones on 09/11/2023. (rsg) (Entered: 09/11/2023) |
| --- | --- | --- |
| 09/11/2023 | 79 | Pro Se MOTION for Reconsideration of 64 Order filed by David Andrew Christenson. (ddm) (Entered: 09/12/2023) |
| 09/12/2023 | 77 | Filing Accepted by Fulton County Superior Court re Electronic transmittal of certified copy of 69 Remand Order. (Case: 23SC188947) (adg) (Entered: 09/12/2023) |
| 09/12/2023 | 78 | RESPONSE in Opposition re 74 Emergency MOTION to Stay *Remand Order* filed by The State of Georgia. (Wakeford, Francis) (Entered: 09/12/2023) |
| 09/12/2023 | 80 | ORDER denying Defendant Mark R. Meadows's 74 Emergency Motion for a Stay Pending Appeal. Signed by Judge Steve C. Jones on 9/12/2023. (bgt) (Entered: 09/12/2023) |
| 09/13/2023 | 81 | ORDER denying Mr. Christenson's 79 MOTION for Reconsideration re 64 Order on Motion to Intervene. Mr. Christenson made no showing of necessity for reconsideration. Furthermore, Mr. Christenson has a lengthy history of submitting motions to intervene and various correspondence related to high-profile cases before the Eleventh Circuit Court of Appeals. Accordingly, the Court DIRECTS the Clerk of Court to not docket any future filings by Mr. Christenson in the case sub judice. The Clerk shall instead hold said matters in abatement in a miscellaneous case file. Mr. Christenson is hereby warned that any future filings in cases in which he is not a named party that are deemed frivolous by the presiding judge may lead to sanctions. Signed by Judge Steve C. Jones on 9/13/23. (rsg) (Entered: 09/13/2023) |
| 09/13/2023 | | Clerk's Certificate of Mailing as to David Andrew Christenson re 81 Order on Motion for Reconsideration. (rsg) (Entered: 09/13/2023) |
| 09/13/2023 | 82 | USCA Order: The Motion of Amici Curiae Erwin Chemerinsky, Amy Lee Copeland, Sarah R. Saldaa, and Shan Wu for Leave to File Response in Opposition to Defendant-Appellant Mark R. Meadowss Request for Injunctive Relief in his Emergency Motion is GRANTED re: 71 Notice of Appeal filed by Mark Randall Meadows. Case Appealed to USCA- 11th Circuit. Case Number 23-12958-H. (pjm) (Entered: 09/13/2023) |
| 09/13/2023 | 83 | USCA Order: Appellants request to expedite this appeal is GRANTED as follows: Appellants initial brief is due by Monday, September 18. Appellees response brief is due by Monday, September 25. Appellants reply brief is due by Thursday, September 28. If the Court determines that oral argument is warranted, it will be scheduled at a later date re: 71 Notice of Appeal filed by Mark Randall Meadows. Case Appealed to USCA- 11th Circuit. Case Number 23-12958-H. (pjm) (Entered: 09/13/2023) |

| PACER Service Center | | |
| --- | --- | --- |
| **Transaction Receipt** | | |
| 09/17/2023 17:05:15 | | |
| **PACER Login:** | mcguire888 | **Client Code:** | 0014469-0200 |
| **Description:** | Docket Report | **Search Criteria:** | 1:23-cv-03621-SCJ |
| **Billable Pages:** | 12 | **Cost:** | 1.20 |

# **Tab B**

*GC*

Fulton County Superior Court

\*\*FILED\*\* CA

Date: August 14, 2023

Che Alexander, Clerk of Court

**INDICTMENT**

*EJ15. McAfee*

Clerk No. *23SC188947*

## FULTON SUPERIOR COURT

**THE STATE OF GEORGIA**

V.

**DONALD JOHN TRUMP**
Counts 1, 5, 9, 11, 13, 15, 17, 19, 27-29, 38-39

**RUDOLPH WILLIAM LOUIS GIULIANI**
Counts 1-3, 6-7, 9, 11, 13, 15, 17, 19, 23-24

**JOHN CHARLES EASTMAN**
Counts 1-2, 9, 11, 13, 15, 17, 19, 27

**MARK RANDALL MEADOWS**
Counts 1, 28

**KENNETH JOHN CHESEBRO**
Counts 1, 9, 11, 13, 15, 17, 19

**JEFFREY BOSSERT CLARK**
Counts 1, 22

**JENNA LYNN ELLIS**
Counts 1-2

**RAY STALLINGS SMITH III**
Counts 1-2, 4, 6, 9, 11, 13, 15, 17, 19, 23, 25

**ROBERT DAVID CHEELEY**
Counts 1, 9, 11, 13, 15, 17, 19, 23, 26, 41

**MICHAEL A. ROMAN**
Counts 1, 9, 11, 13, 15, 17, 19

**DAVID JAMES SHAFER**
Counts 1, 8, 10, 12, 14, 16, 18, 40

1 **VIOLATION OF THE GEORGIA RICO (RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS) ACT**
O.C.G.A. § 16-14-4(c)

2 **SOLICITATION OF VIOLATION OF OATH BY PUBLIC OFFICER**
O.C.G.A. §§ 16-4-7 & 16-10-1

3 **FALSE STATEMENTS AND WRITINGS**
O.C.G.A. § 16-10-20

4 **FALSE STATEMENTS AND WRITINGS**
O.C.G.A. § 16-10-20

5 **SOLICITATION OF VIOLATION OF OATH BY PUBLIC OFFICER**
O.C.G.A. §§ 16-4-7 & 16-10-1

6 **SOLICITATION OF VIOLATION OF OATH BY PUBLIC OFFICER**
O.C.G.A. §§ 16-4-7 & 16-10-1

7 **FALSE STATEMENTS AND WRITINGS**
O.C.G.A. § 16-10-20

8 **IMPERSONATING A PUBLIC OFFICER**
O.C.G.A. § 16-10-23

9 **CONSPIRACY TO COMMIT IMPERSONATING A PUBLIC OFFICER**
O.C.G.A. §§ 16-4-8 & 16-10-23

10 **FORGERY IN THE FIRST DEGREE**
O.C.G.A. § 16-9-1(b)

11 **CONSPIRACY TO COMMIT FORGERY IN THE FIRST DEGREE**
O.C.G.A. §§ 16-4-8 & 16-9-1(b)

**SHAWN MICAH TRESHER STILL**
Counts 1, 8, 10, 12, 14, 16, 18

**STEPHEN CLIFFGARD LEE**
Counts 1, 20-21, 30-31

**HARRISON WILLIAM PRESCOTT FLOYD**
Counts 1, 30-31

**TREVIAN C. KUTTI**
Counts 1, 30-31

**SIDNEY KATHERINE POWELL**
Counts 1, 32-37

**CATHLEEN ALSTON LATHAM**
Counts 1, 8, 10, 12, 14, 32-37

**SCOTT GRAHAM HALL**
Counts 1, 32-37

**MISTY HAMPTON
AKA EMILY MISTY HAYES**
Counts 1, 32-37

**12   FALSE STATEMENTS AND WRITINGS**
O.C.G.A. § 16-10-20

**13   CONSPIRACY TO COMMIT
FALSE STATEMENTS AND WRITINGS**
O.C.G.A. §§ 16-4-8 & 16-10-20

**14   CRIMINAL ATTEMPT TO COMMIT
FILING FALSE DOCUMENTS**
O.C.G.A. §§ 16-4-1 & 16-10-20.1(b)(1)

**15   CONSPIRACY TO COMMIT
FILING FALSE DOCUMENTS**
O.C.G.A. §§ 16-4-8 & 16-10-20.1(b)(1)

**16   FORGERY IN THE FIRST DEGREE**
O.C.G.A. § 16-9-1(b)

**17   CONSPIRACY TO COMMIT
FORGERY IN THE FIRST DEGREE**
O.C.G.A. §§ 16-4-8 & 16-9-1(b)

**18   FALSE STATEMENTS AND WRITINGS**
O.C.G.A. § 16-10-20

**19   CONSPIRACY TO COMMIT
FALSE STATEMENTS AND WRITINGS**
O.C.G.A. §§ 16-4-8 & 16-10-20

**20   CRIMINAL ATTEMPT TO COMMIT
INFLUENCING WITNESSES**
O.C.G.A. §§ 16-4-1 & 16-10-93(b)(1)(A)

**21   CRIMINAL ATTEMPT TO COMMIT
INFLUENCING WITNESSES**
O.C.G.A. §§ 16-4-1 & 16-10-93(b)(1)(A)

**22   CRIMINAL ATTEMPT TO COMMIT
FALSE STATEMENTS AND WRITINGS**
O.C.G.A. §§ 16-4-1 & 16-10-20

**23   SOLICITATION OF VIOLATION OF OATH
BY PUBLIC OFFICER**
O.C.G.A. §§ 16-4-7 & 16-10-1

**24   FALSE STATEMENTS AND WRITINGS**
O.C.G.A. § 16-10-20

**25   FALSE STATEMENTS AND WRITINGS**
O.C.G.A. § 16-10-20

2

26  **FALSE STATEMENTS AND WRITINGS**
O.C.G.A. § 16-10-20

27  **FILING FALSE DOCUMENTS**
O.C.G.A. § 16-10-20.1(b)(1)

28  **SOLICITATION OF VIOLATION OF OATH
BY PUBLIC OFFICER**
O.C.G.A. §§ 16-4-7 & 16-10-1

29  **FALSE STATEMENTS AND WRITINGS**
O.C.G.A. § 16-10-20

30  **CONSPIRACY TO COMMIT SOLICITATION OF
FALSE STATEMENTS AND WRITINGS**
O.C.G.A. §§ 16-4-8, 16-4-7 & 16-10-20

31  **INFLUENCING WITNESSES**
O.C.G.A. § 16-10-93(b)(1)(A)

32  **CONSPIRACY TO COMMIT ELECTION FRAUD**
O.C.G.A. §§ 21-2-603 & 21-2-566

33  **CONSPIRACY TO COMMIT ELECTION FRAUD**
O.C.G.A. §§ 21-2-603 & 21-2-574

34  **CONSPIRACY TO COMMIT
COMPUTER THEFT**
O.C.G.A. §§ 16-4-8 & 16-9-93(a)

35  **CONSPIRACY TO COMMIT
COMPUTER TRESPASS**
O.C.G.A. §§ 16-4-8 & 16-9-93(b)

36  **CONSPIRACY TO COMMIT
COMPUTER INVASION OF PRIVACY**
O.C.G.A. §§ 16-4-8 & 16-9-93(c)

37  **CONSPIRACY TO DEFRAUD THE STATE**
O.C.G.A. § 16-10-21

38  **SOLICITATION OF VIOLATION OF OATH
BY PUBLIC OFFICER**
O.C.G.A. §§ 16-4-7 & 16-10-1

39  **FALSE STATEMENTS AND WRITINGS**
O.C.G.A. § 16-10-20

40  **FALSE STATEMENTS AND WRITINGS**
O.C.G.A. § 16-10-20

**41    PERJURY**
O.C.G.A. § 16-10-70(a)

_True_ BILL

_____, 2023

Grand Jury Foreperson

_____    **FANI T. WILLIS, District Attorney**

| | | |
|---|---|---|
| The Defendant waives copy of indictment, list of witnesses, formal arraignment and pleads _____ Guilty. | The Defendant waives copy of indictment, list of witnesses, formal arraignment and pleads _____ Guilty. | The Defendant waives copy of indictment, list of witnesses, formal arraignment and pleads _____ Guilty. |
| _____ Defendant | _____ Defendant | _____ Defendant |
| _____ Attorney for Defendant | _____ Attorney for Defendant | _____ Attorney for Defendant |
| _____ Assistant District Attorney | _____ Assistant District Attorney | _____ Assistant District Attorney |
| This___ day of_____, ____ | This___ day of_____, ____ | This___ day of_____, ____ |

4

The Defendant waives copy of indictment, list of witnesses, formal arraignment and pleads _____ Guilty.

_____
Defendant

_____
Attorney for Defendant

_____
Assistant District Attorney

This____day of_____,_____

The Defendant waives copy of indictment, list of witnesses, formal arraignment and pleads _____ Guilty.

_____
Defendant

_____
Attorney for Defendant

_____
Assistant District Attorney

This____day of_____,_____

The Defendant waives copy of indictment, list of witnesses, formal arraignment and pleads _____ Guilty.

_____
Defendant

_____
Attorney for Defendant

_____
Assistant District Attorney

This____day of_____,_____

The Defendant waives copy of indictment, list of witnesses, formal arraignment and pleads _____ Guilty.

_____
Defendant

_____
Attorney for Defendant

_____
Assistant District Attorney

This____day of_____,_____

The Defendant waives copy of indictment, list of witnesses, formal arraignment and pleads _____ Guilty.

_____
Defendant

_____
Attorney for Defendant

_____
Assistant District Attorney

This____day of_____,_____

The Defendant waives copy of indictment, list of witnesses, formal arraignment and pleads _____ Guilty.

_____
Defendant

_____
Attorney for Defendant

_____
Assistant District Attorney

This____day of_____,_____

The Defendant waives copy of indictment, list of witnesses, formal arraignment and pleads _____ Guilty.

_____
Defendant

_____
Attorney for Defendant

_____
Assistant District Attorney

This____day of_____,_____

The Defendant waives copy of indictment, list of witnesses, formal arraignment and pleads _____ Guilty.

_____
Defendant

_____
Attorney for Defendant

_____
Assistant District Attorney

This____day of_____,_____

The Defendant waives copy of indictment, list of witnesses, formal arraignment and pleads _____ Guilty.

_____
Defendant

_____
Attorney for Defendant

_____
Assistant District Attorney

This____day of_____,_____

5

The Defendant waives copy of indictment, list of witnesses, formal arraignment and pleads _____ Guilty.

_____
Defendant

_____
Attorney for Defendant

_____
Assistant District Attorney

This____day of_____,_____

The Defendant waives copy of indictment, list of witnesses, formal arraignment and pleads _____ Guilty.

_____
Defendant

_____
Attorney for Defendant

_____
Assistant District Attorney

This____day of_____,_____

The Defendant waives copy of indictment, list of witnesses, formal arraignment and pleads _____ Guilty.

_____
Defendant

_____
Attorney for Defendant

_____
Assistant District Attorney

This____day of_____,_____

The Defendant waives copy of indictment, list of witnesses, formal arraignment and pleads _____ Guilty.

_____
Defendant

_____
Attorney for Defendant

_____
Assistant District Attorney

This____day of_____,_____

The Defendant waives copy of indictment, list of witnesses, formal arraignment and pleads _____ Guilty.

_____
Defendant

_____
Attorney for Defendant

_____
Assistant District Attorney

This____day of_____,_____

The Defendant waives copy of indictment, list of witnesses, formal arraignment and pleads _____ Guilty.

_____
Defendant

_____
Attorney for Defendant

_____
Assistant District Attorney

This____day of_____,_____

The Defendant waives copy of indictment, list of witnesses, formal arraignment and pleads _____ Guilty.

_____
Defendant

_____
Attorney for Defendant

_____
Assistant District Attorney

This____day of_____,_____

The Defendant waives copy of indictment, list of witnesses, formal arraignment and pleads _____ Guilty.

_____
Defendant

_____
Attorney for Defendant

_____
Assistant District Attorney

This____day of_____,_____

The Defendant waives copy of indictment, list of witnesses, formal arraignment and pleads _____ Guilty.

_____
Defendant

_____
Attorney for Defendant

_____
Assistant District Attorney

This____day of_____,_____

6

The Defendant waives copy of indictment, list of witnesses, formal arraignment and pleads _____ Guilty.

_____
Defendant

_____
Attorney for Defendant

_____
Assistant District Attorney

This_____day of_____,_____

The Defendant waives copy of indictment, list of witnesses, formal arraignment and pleads _____ Guilty.

_____
Defendant

_____
Attorney for Defendant

_____
Assistant District Attorney

This____day of_____,_____

The Defendant waives copy of indictment, list of witnesses, formal arraignment and pleads _____ Guilty.

_____
Defendant

_____
Attorney for Defendant

_____
Assistant District Attorney

This____day of_____,_____

The Defendant waives copy of indictment, list of witnesses, formal arraignment and pleads _____ Guilty.

_____
Defendant

_____
Attorney for Defendant

_____
Assistant District Attorney

This_____day of_____,_____

The Defendant waives copy of indictment, list of witnesses, formal arraignment and pleads _____ Guilty.

_____
Defendant

_____
Attorney for Defendant

_____
Assistant District Attorney

This____day of_____,_____

The Defendant waives copy of indictment, list of witnesses, formal arraignment and pleads _____ Guilty.

_____
Defendant

_____
Attorney for Defendant

_____
Assistant District Attorney

This____day of_____,_____

The Defendant waives copy of indictment, list of witnesses, formal arraignment and pleads _____ Guilty.

_____
Defendant

_____
Attorney for Defendant

_____
Assistant District Attorney

This____day of_____,_____

The Defendant waives copy of indictment, list of witnesses, formal arraignment and pleads _____ Guilty.

_____
Defendant

_____
Attorney for Defendant

_____
Assistant District Attorney

This____day of_____,_____

The Defendant waives copy of indictment, list of witnesses, formal arraignment and pleads _____ Guilty.

_____
Defendant

_____
Attorney for Defendant

_____
Assistant District Attorney

This____day of_____,_____

7

The Defendant waives copy of indictment, list of witnesses, formal arraignment and pleads _____ Guilty.

_____
Defendant

_____
Attorney for Defendant

_____
Assistant District Attorney

This____day of_____,_____

The Defendant waives copy of indictment, list of witnesses, formal arraignment and pleads _____ Guilty.

_____
Defendant

_____
Attorney for Defendant

_____
Assistant District Attorney

This____day of_____,_____

The Defendant waives copy of indictment, list of witnesses, formal arraignment and pleads _____ Guilty.

_____
Defendant

_____
Attorney for Defendant

_____
Assistant District Attorney

This____day of_____,_____

The Defendant waives copy of indictment, list of witnesses, formal arraignment and pleads _____ Guilty.

_____
Defendant

_____
Attorney for Defendant

_____
Assistant District Attorney

This____day of_____,_____

The Defendant waives copy of indictment, list of witnesses, formal arraignment and pleads _____ Guilty.

_____
Defendant

_____
Attorney for Defendant

_____
Assistant District Attorney

This____day of_____,_____

The Defendant waives copy of indictment, list of witnesses, formal arraignment and pleads _____ Guilty.

_____
Defendant

_____
Attorney for Defendant

_____
Assistant District Attorney

This____day of_____,_____

The Defendant waives copy of indictment, list of witnesses, formal arraignment and pleads _____ Guilty.

_____
Defendant

_____
Attorney for Defendant

_____
Assistant District Attorney

This____day of_____,_____

The Defendant waives copy of indictment, list of witnesses, formal arraignment and pleads _____ Guilty.

_____
Defendant

_____
Attorney for Defendant

_____
Assistant District Attorney

This____day of_____,_____

The Defendant waives copy of indictment, list of witnesses, formal arraignment and pleads _____ Guilty.

_____
Defendant

_____
Attorney for Defendant

_____
Assistant District Attorney

This____day of_____,_____

8

**STATE OF GEORGIA, COUNTY OF FULTON**

**IN THE SUPERIOR COURT OF SAID COUNTY**

**THE GRAND JURORS,** selected, chosen, and sworn for the County of Fulton, to wit:

1. ROBERT WELLS, Foreperson
2. ASHLEY MELVIN, Asst. FP
3. CLARISSA BRYAN, Secretary
4. JULIA DECREDICO, Asst. Sec.
5. ERLE ARNOLD
6. DANIELLE BROWN
7. CAROL DICK
8. KATHY GOLD
9. WILLIS HARDY
10. BRENDA HART
11. ANTIONETTE HUDSON
12. ILE LIN
13. MAX MORTENSEN

14. GREGORY PETRALIA
15. JENNIFER PRICE
16. GEORGE PRINGLE
17. PAVAN PULAVARTY
18. FRANEEN SARIF
19. EMMA ST. JOHN
20. VLADIMIR TCHAKAROV
21. CEDRIC TRICE
22. ESTHER UDOJI
23. MARCUS WELBORN
24. JASMINE CASTRO
25. KATHLEEN CHEN
26. CHRISTOPHER SUTTON

9

## TABLE OF CONTENTS

**COUNT 1:**   **VIOLATION OF THE GEORGIA RICO**
**(RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS) ACT**
O.C.G.A. § 16-14-4(c) ........................................................................13
Introduction.......................................................................................14
The Enterprise...................................................................................15
Manner and Methods of the Enterprise.............................................16
Acts of Racketeering Activity and Overt Acts in Furtherance of the
Conspiracy ........................................................................................20

**COUNT 2:**   **SOLICITATION OF VIOLATION OF OATH BY PUBLIC OFFICER**
O.C.G.A. §§ 16-4-7 & 16-10-1 .........................................................72

**COUNT 3:**   **FALSE STATEMENTS AND WRITINGS**
O.C.G.A. § 16-10-20...........................................................................72

**COUNT 4:**   **FALSE STATEMENTS AND WRITINGS**
O.C.G.A. § 16-10-20...........................................................................73

**COUNT 5:**   **SOLICITATION OF VIOLATION OF OATH BY PUBLIC OFFICER,**
O.C.G.A. §§ 16-4-7 & 16-10-1 .........................................................74

**COUNT 6:**   **SOLICITATION OF VIOLATION OF OATH BY PUBLIC OFFICER**
O.C.G.A. §§ 16-4-7 & 16-10-1 .........................................................74

**COUNT 7:**   **FALSE STATEMENTS AND WRITINGS**
O.C.G.A. § 16-10-20...........................................................................75

**COUNT 8:**   **IMPERSONATING A PUBLIC OFFICER**
O.C.G.A. § 16-10-23...........................................................................76

**COUNT 9:**   **CONSPIRACY TO COMMIT IMPERSONATING A PUBLIC OFFICER**
O.C.G.A. §§ 16-4-8 & 16-10-23 .........................................................76

**COUNT 10:**   **FORGERY IN THE FIRST DEGREE**
O.C.G.A. § 16-9-1(b)...........................................................................77

**COUNT 11:**   **CONSPIRACY TO COMMIT FORGERY IN THE FIRST DEGREE**
O.C.G.A. §§ 16-4-8 & 16-9-1(b) .........................................................77

**COUNT 12:**   **FALSE STATEMENTS AND WRITINGS**
O.C.G.A. § 16-10-20...........................................................................78

**COUNT 13:**   **CONSPIRACY TO COMMIT FALSE STATEMENTS AND WRITINGS**
O.C.G.A. §§ 16-4-8 & 16-10-20 .........................................................78

10

**COUNT 14:** **CRIMINAL ATTEMPT TO COMMIT FILING FALSE DOCUMENTS**
O.C.G.A. §§ 16-4-1 & 16-10-20.1(b)(1) .................................................79

**COUNT 15:** **CONSPIRACY TO COMMIT FILING FALSE DOCUMENTS**
O.C.G.A. §§ 16-4-8 & 16-10-20.1(b)(1) ................................................79

**COUNT 16:** **FORGERY IN THE FIRST DEGREE**
O.C.G.A. § 16-9-1(b)...........................................................................80

**COUNT 17:** **CONSPIRACY TO COMMIT FORGERY IN THE FIRST DEGREE**
O.C.G.A. §§ 16-4-8 & 16-9-1(b) ...........................................................80

**COUNT 18:** **FALSE STATEMENTS AND WRITINGS**
O.C.G.A. § 16-10-20............................................................................81

**COUNT 19:** **CONSPIRACY TO COMMIT FALSE STATEMENTS AND WRITINGS**
O.C.G.A. §§ 16-4-8 & 16-10-20............................................................81

**COUNT 20:** **CRIMINAL ATTEMPT TO COMMIT INFLUENCING WITNESSES**
O.C.G.A. §§ 16-4-1 & 16-10-93(b)(1)(A)..............................................82

**COUNT 21:** **CRIMINAL ATTEMPT TO COMMIT INFLUENCING WITNESSES**
O.C.G.A. §§ 16-4-1 & 16-10-93(b)(1)(A)..............................................82

**COUNT 22:** **CRIMINAL ATTEMPT TO COMMIT
FALSE STATEMENTS AND WRITINGS**
O.C.G.A. §§ 16-4-1 & 16-10-20............................................................83

**COUNT 23:** **SOLICITATION OF VIOLATION OF OATH BY PUBLIC OFFICER**
O.C.G.A. §§ 16-4-7 & 16-10-1..............................................................84

**COUNT 24:** **FALSE STATEMENTS AND WRITINGS**
O.C.G.A. § 16-10-20............................................................................84

**COUNT 25:** **FALSE STATEMENTS AND WRITINGS**
O.C.G.A. § 16-10-20............................................................................85

**COUNT 26:** **FALSE STATEMENTS AND WRITINGS**
O.C.G.A. § 16-10-20............................................................................85

**COUNT 27:** **FILING FALSE DOCUMENTS**
O.C.G.A. § 16-10-20.1(b)(1) ................................................................86

**COUNT 28:** **SOLICITATION OF VIOLATION OF OATH BY PUBLIC OFFICER**
O.C.G.A. §§ 16-4-7 & 16-10-1..............................................................87

**COUNT 29: FALSE STATEMENTS AND WRITINGS**
O.C.G.A. § 16-10-20.....................................................................88

**COUNT 30: CONSPIRACY TO COMMIT SOLICITATION OF FALSE STATEMENTS AND WRITINGS**
O.C.G.A. §§ 16-4-8, 16-4-7, & 16-10-20.............................89

**COUNT 31: INFLUENCING WITNESSES**
O.C.G.A. § 16-10-93(b)(1)(A)....................................................89

**COUNT 32: CONSPIRACY TO COMMIT ELECTION FRAUD**
O.C.G.A. §§ 21-2-603 & 21-2-566.........................................90

**COUNT 33: CONSPIRACY TO COMMIT ELECTION FRAUD**
O.C.G.A. §§ 21-2-603 & 21-2-574.........................................91

**COUNT 34: CONSPIRACY TO COMMIT COMPUTER THEFT**
O.C.G.A. §§ 16-4-8 & 16-9-93(a) ...........................................92

**COUNT 35: CONSPIRACY TO COMMIT COMPUTER TRESPASS**
O.C.G.A. §§ 16-4-8 & 16-9-93(b) ...........................................93

**COUNT 36: CONSPIRACY TO COMMIT COMPUTER INVASION OF PRIVACY**
O.C.G.A. §§ 16-4-8 & 16-9-93(c) ...........................................94

**COUNT 37: CONSPIRACY TO DEFRAUD THE STATE**
O.C.G.A. § 16-10-21.....................................................................95

**COUNT 38: SOLICITATION OF VIOLATION OF OATH BY PUBLIC OFFICER**
O.C.G.A. §§ 16-4-7 & 16-10-1 ..................................................95

**COUNT 39: FALSE STATEMENTS AND WRITINGS**
O.C.G.A. § 16-10-20.....................................................................96

**COUNT 40: FALSE STATEMENTS AND WRITINGS**
O.C.G.A. § 16-10-20.....................................................................96

**COUNT 41: PERJURY**
O.C.G.A. § 16-10-70(a) ...............................................................97

## COUNT 1 of 41

The Grand Jurors aforesaid, in the name and behalf of the citizens of Georgia, do hereby charge and accuse:

**DONALD JOHN TRUMP,**
**RUDOLPH WILLIAM LOUIS GIULIANI,**
**JOHN CHARLES EASTMAN,**
**MARK RANDALL MEADOWS,**
**KENNETH JOHN CHESEBRO,**
**JEFFREY BOSSERT CLARK,**
**JENNA LYNN ELLIS,**
**RAY STALLINGS SMITH III,**
**ROBERT DAVID CHEELEY,**
**MICHAEL A. ROMAN,**
**DAVID JAMES SHAFER,**
**SHAWN MICAH TRESHER STILL,**
**STEPHEN CLIFFGARD LEE,**
**HARRISON WILLIAM PRESCOTT FLOYD,**
**TREVIAN C. KUTTI,**
**SIDNEY KATHERINE POWELL,**
**CATHLEEN ALSTON LATHAM,**
**SCOTT GRAHAM HALL, and**
**MISTY HAMPTON**

with the offense of **VIOLATION OF THE GEORGIA RICO (RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS) ACT**, **O.C.G.A. § 16-14-4(c),** for the said accused, individually and as persons concerned in the commission of a crime, and together with unindicted co-conspirators, in the State of Georgia and County of Fulton, on and between the **4th day of November 2020 and the 15th day of September 2022,** while associated with an enterprise, unlawfully conspired and endeavored to conduct and participate in, directly and indirectly, such enterprise through a pattern of racketeering activity in violation of **O.C.G.A. § 16-14-4(b),** as described below and incorporated by reference as if fully set forth herein, contrary to the laws of said State, the good order, peace, and dignity thereof;

13

## INTRODUCTION

Defendant Donald John Trump lost the United States presidential election held on November 3, 2020. One of the states he lost was Georgia. Trump and the other Defendants charged in this Indictment refused to accept that Trump lost, and they knowingly and willfully joined a conspiracy to unlawfully change the outcome of the election in favor of Trump. That conspiracy contained a common plan and purpose to commit two or more acts of racketeering activity in Fulton County, Georgia, elsewhere in the State of Georgia, and in other states.

## THE ENTERPRISE

At all times relevant to this Count of the Indictment, the Defendants, as well as others not named as defendants, unlawfully conspired and endeavored to conduct and participate in a criminal enterprise in Fulton County, Georgia, and elsewhere. Defendants Donald John Trump, Rudolph William Louis Giuliani, John Charles Eastman, Mark Randall Meadows, Kenneth John Chesebro, Jeffrey Bossert Clark, Jenna Lynn Ellis, Ray Stallings Smith III, Robert David Cheeley, Michael A. Roman, David James Shafer, Shawn Micah Tresher Still, Stephen Cliffgard Lee, Harrison William Prescott Floyd, Trevian C. Kutti, Sidney Katherine Powell, Cathleen Alston Latham, Scott Graham Hall, Misty Hampton, unindicted co-conspirators Individual 1 through Individual 30, and others known and unknown to the Grand Jury, constituted a criminal organization whose members and associates engaged in various related criminal activities including, but not limited to, false statements and writings, impersonating a public officer, forgery, filing false documents, influencing witnesses, computer theft, computer trespass, computer invasion of privacy, conspiracy to defraud the state, acts involving theft, and perjury.

This criminal organization constituted an enterprise as that term is defined in O.C.G.A. § 16-14-3(3), that is, a group of individuals associated in fact. The Defendants and other members and associates of the enterprise had connections and relationships with one another and with the enterprise. The enterprise constituted an ongoing organization whose members and associates functioned as a continuing unit for a common purpose of achieving the objectives of the enterprise. The enterprise operated in Fulton County, Georgia, elsewhere in the State of Georgia, in other states, including, but not limited to, Arizona, Michigan, Nevada, New Mexico, Pennsylvania, and Wisconsin, and in the District of Columbia. The enterprise operated for a period of time sufficient to permit its members and associates to pursue its objectives.

## MANNER AND METHODS OF THE ENTERPRISE

The manner and methods used by the Defendants and other members and associates of the enterprise to further the goals of the enterprise and to achieve its purposes included, but were not limited to, the following:

### 1.  False Statements to and Solicitation of State Legislatures

Members of the enterprise, including several of the Defendants, appeared at hearings in Fulton County, Georgia, before members of the Georgia General Assembly on December 3, 2020, December 10, 2020, and December 30, 2020. At these hearings, members of the enterprise made false statements concerning fraud in the November 3, 2020, presidential election. The purpose of these false statements was to persuade Georgia legislators to reject lawful electoral votes cast by the duly elected and qualified presidential electors from Georgia. Members of the enterprise corruptly solicited Georgia legislators instead to unlawfully appoint their own presidential electors for the purpose of casting electoral votes for Donald Trump. Members of the enterprise also made false statements to state legislators during hearings and meetings in Arizona, Michigan, and Pennsylvania in November and December 2020 to persuade legislators in those states to unlawfully appoint their own presidential electors.

### 2.  False Statements to and Solicitation of High-Ranking State Officials

Members of the enterprise, including several of the Defendants, made false statements in Fulton County and elsewhere in the State of Georgia to Georgia officials, including the Governor, the Secretary of State, and the Speaker of the House of Representatives. Members of the enterprise also corruptly solicited Georgia officials, including the Secretary of State and the Speaker of the House of Representatives, to violate their oaths to the Georgia Constitution and to the United States Constitution by unlawfully changing the outcome of the November 3, 2020,

16

presidential election in Georgia in favor of Donald Trump. Members of the enterprise also made false statements to and solicited state officials in Arizona, Michigan, and Pennsylvania.

### 3.  Creation and Distribution of False Electoral College Documents

Members of the enterprise, including several of the Defendants, created false Electoral College documents and recruited individuals to convene and cast false Electoral College votes at the Georgia State Capitol, in Fulton County, on December 14, 2020. After the false Electoral College votes were cast, members of the enterprise transmitted the votes to the President of the United States Senate, the Archivist of the United States, the Georgia Secretary of State, and the Chief Judge of the United States District Court for the Northern District of Georgia. The false documents were intended to disrupt and delay the joint session of Congress on January 6, 2021, in order to unlawfully change the outcome of the November 3, 2020, presidential election in favor of Donald Trump. Similar schemes were executed by members of the enterprise in Arizona, Michigan, Nevada, New Mexico, Pennsylvania, and Wisconsin.

### 4.  Harassment and Intimidation of Fulton County Election Worker Ruby Freeman

Members of the enterprise, including several of the Defendants, falsely accused Fulton County election worker Ruby Freeman of committing election crimes in Fulton County, Georgia. These false accusations were repeated to Georgia legislators and other Georgia officials in an effort to persuade them to unlawfully change the outcome of the November 3, 2020, presidential election in favor of Donald Trump. In furtherance of this scheme, members of the enterprise traveled from out of state to harass Freeman, intimidate her, and solicit her to falsely confess to election crimes that she did not commit.

5. **Solicitation of High-Ranking United States Department of Justice Officials**

Members of the enterprise, including several of the Defendants, corruptly solicited high-ranking United States Department of Justice officials to make false statements to government officials in Fulton County, Georgia, including the Governor, the Speaker of the House of Representatives, and the President Pro Tempore of the Senate. In one instance, Donald Trump stated to the Acting United States Attorney General, "Just say that the election was corrupt, and leave the rest to me and the Republican congressmen."

6. **Solicitation of the Vice President of the United States**

Members of the enterprise, including several of the Defendants, corruptly solicited the Vice President of the United States to violate the United States Constitution and federal law by unlawfully rejecting Electoral College votes cast in Fulton County, Georgia, by the duly elected and qualified presidential electors from Georgia. Members of the enterprise also corruptly solicited the Vice President to reject votes cast by the duly elected and qualified presidential electors from several other states.

7. **Unlawful Breach of Election Equipment in Georgia and Elsewhere**

Members of the enterprise, including several of the Defendants, corruptly conspired in Fulton County, Georgia, and elsewhere to unlawfully access secure voting equipment and voter data. In Georgia, members of the enterprise stole data, including ballot images, voting equipment software, and personal voter information. The stolen data was then distributed to other members of the enterprise, including members in other states.

### 8. <u>Obstructive Acts in Furtherance of the Conspiracy and the Cover Up</u>

Members of the enterprise, including several of the Defendants, filed false documents, made false statements to government investigators, and committed perjury in judicial proceedings in Fulton County, Georgia, and elsewhere in furtherance of and to cover up the conspiracy.

## ACTS OF RACKETEERING ACTIVITY AND
## OVERT ACTS IN FURTHERANCE OF THE CONSPIRACY

As part of and on behalf of the criminal enterprise detailed above, the Defendants and

other members and associates of the enterprise committed overt acts to effect the objectives of

the enterprise, including but not limited to:

### Act 1.

On or about the **4th day of November 2020, DONALD JOHN TRUMP** made a nationally televised speech falsely declaring victory in the 2020 presidential election. Approximately four days earlier, on or about October 31, 2020, **DONALD JOHN TRUMP** discussed a draft speech with unindicted co-conspirator Individual 1, whose identity is known to the Grand Jury, that falsely declared victory and falsely claimed voter fraud. The speech was an overt act in furtherance of the conspiracy.

### Act 2.

On or about the **15th day of November 2020, RUDOLPH WILLIAM LOUIS GIULIANI** placed a telephone call to unindicted co-conspirator Individual 2, whose identity is known to the Grand Jury, and left an approximately 83-second-long voicemail message for unindicted co-conspirator Individual 2 making statements concerning fraud in the November 3, 2020, election in Fulton County, Georgia. This telephone call was an overt act in furtherance of the conspiracy.

### Act 2.

On or about the **19th day of November 2020, RUDOLPH WILLIAM LOUIS GIULIANI, JENNA LYNN ELLIS, SIDNEY KATHERINE POWELL,** and unindicted co-conspirator Individual 3, whose identity is known to the Grand Jury, appeared at a press conference at the Republican National Committee Headquarters on behalf of **DONALD JOHN TRUMP** and Donald J. Trump for President, Inc. (the "Trump Campaign") and made false statements concerning fraud in the November 3, 2020, presidential election in Georgia and elsewhere. These were overt acts in furtherance of the conspiracy.

### Act 4.

On or about the **20th day of November 2020, DAVID JAMES SHAFER** sent an e-mail to unindicted co-conspirator Individual 4, whose identity is known to the Grand Jury, and other individuals. In the e-mail, **DAVID JAMES SHAFER** stated that **SCOTT GRAHAM HALL**, a Georgia bail bondsman, "has been looking into the election on behalf of the President at the request of David Bossie" and asked unindicted co-conspirator Individual 4 to exchange contact information with **SCOTT GRAHAM HALL** and to "help him as needed." This was an overt act in furtherance of the conspiracy.

20

### Act 5.

On or about the **20th day of November 2020, DONALD JOHN TRUMP** and **MARK RANDALL MEADOWS** met with Majority Leader of the Michigan Senate Michael Shirkey, Speaker of the Michigan House of Representatives Lee Chatfield, and other Michigan legislators in the Oval Office at the White House, and **DONALD JOHN TRUMP** made false statements concerning fraud in the November 3, 2020, presidential election in Michigan. **RUDOLPH WILLIAM LOUIS GIULIANI** joined the meeting by telephone. This meeting was an overt act in furtherance of the conspiracy.

### Act 6.

On or about the **21st day of November 2020, MARK RANDALL MEADOWS** sent a text message to United States Representative Scott Perry from Pennsylvania and stated, "Can you send me the number for the speaker and the leader of PA Legislature. POTUS wants to chat with them." This was an overt act in furtherance of the conspiracy.

### Act 7.

On or about the **22nd day of November 2020, DONALD JOHN TRUMP** and **RUDOLPH WILLIAM LOUIS GIULIANI** placed a telephone call to Speaker of the Arizona House of Representatives Russell "Rusty" Bowers. During the telephone call, **RUDOLPH WILLIAM LOUIS GIULIANI** made false statements concerning fraud in the November 3, 2020, presidential election in Arizona and solicited, requested, and importuned Bowers to unlawfully appoint presidential electors from Arizona. Bowers declined and later testified to the United States House of Representatives Select Committee to Investigate the January 6th Attack on the United States Capitol that he told **DONALD JOHN TRUMP,** "I would not break my oath." The false statements and solicitations were overt acts in furtherance of the conspiracy.

### Act 8.

On or about the **25th day of November 2020, RUDOLPH WILLIAM LOUIS GIULIANI** and **JENNA LYNN ELLIS** appeared, spoke, and presented witnesses at a meeting of Pennsylvania legislators in Gettysburg, Pennsylvania. During the meeting, **RUDOLPH WILLIAM LOUIS GIULIANI** made false statements concerning fraud in the November 3, 2020, presidential election in Pennsylvania and solicited, requested, and importuned the Pennsylvania legislators present at the meeting to unlawfully appoint presidential electors from Pennsylvania. During the meeting, **JENNA LYNN ELLIS** solicited, requested, and importuned the Pennsylvania legislators present at the meeting to unlawfully appoint presidential electors from Pennsylvania. **DONALD JOHN TRUMP** joined the meeting by telephone, made false statements concerning fraud in the November 3, 2020, presidential election in Pennsylvania, and solicited, requested, and importuned the Pennsylvania legislators present at the meeting to unlawfully appoint presidential electors from Pennsylvania. These were overt acts in furtherance of the conspiracy.

21

### Act 9.

On or about the **25th day of November 2020**, immediately after the meeting of Pennsylvania legislators in Gettysburg, Pennsylvania, where **RUDOLPH WILLIAM LOUIS GIULIANI** and **JENNA LYNN ELLIS** appeared, spoke, and presented witnesses, **DONALD JOHN TRUMP** invited a group of the Pennsylvania legislators and others to meet with him at the White House. Later that day, **DONALD JOHN TRUMP, MARK RANDALL MEADOWS, RUDOLPH WILLIAM LOUIS GIULIANI, JENNA LYNN ELLIS** and unindicted co-conspirators Individual 5 and Individual 6, whose identities are known to the Grand Jury, met with the group of Pennsylvania legislators at the White House and discussed holding a special session of the Pennsylvania General Assembly. These were overt acts in furtherance of the conspiracy.

### Act 10.

On or about the **26th day of November 2020, RUDOLPH WILLIAM LOUIS GIULIANI** and **JENNA LYNN ELLIS** placed a telephone call to Speaker of the Pennsylvania House of Representatives Bryan Cutler and left Cutler a voicemail message for the purpose of soliciting, requesting, and importuning him to unlawfully appoint presidential electors from Pennsylvania. This was an overt act in furtherance of the conspiracy.

### Act 11.

On or about the **26th day of November 2020, RUDOLPH WILLIAM LOUIS GIULIANI** placed a telephone call to President Pro Tempore of the Pennsylvania Senate Jacob "Jake" Corman for the purpose of soliciting, requesting, and importuning Corman to unlawfully appoint presidential electors from Pennsylvania. This was an overt act in furtherance of the conspiracy.

### Act 12.

On or about the **27th day of November 2020, RUDOLPH WILLIAM LOUIS GIULIANI** and **JENNA LYNN ELLIS** placed a telephone call to Speaker of the Pennsylvania House of Representatives Bryan Cutler and left Cutler a voicemail message for the purpose of soliciting, requesting, and importuning him to unlawfully appoint presidential electors from Pennsylvania. This was an overt act in furtherance of the conspiracy.

### Act 12.

On or about the **27th day of November 2020, RUDOLPH WILLIAM LOUIS GIULIANI** and **JENNA LYNN ELLIS** placed a telephone call to President Pro Tempore of the Pennsylvania Senate Jake Corman for the purpose of soliciting, requesting, and importuning Corman to unlawfully appoint presidential electors from Pennsylvania. This was an overt act in furtherance of the conspiracy.

22

## Act 14.

On or about the **27th day of November 2020, DONALD JOHN TRUMP** placed a telephone call to President Pro Tempore of the Pennsylvania Senate Jake Corman for the purpose of soliciting, requesting, and importuning Corman to unlawfully appoint presidential electors from Pennsylvania. This was an overt act in furtherance of the conspiracy.

## Act 15.

On or about the **28th day of November 2020, RUDOLPH WILLIAM LOUIS GIULIANI** placed a telephone call to Speaker of the Pennsylvania House of Representatives Bryan Cutler and left Cutler a voicemail message for the purpose of soliciting, requesting, and importuning him to unlawfully appoint presidential electors from Pennsylvania. This was an overt act in furtherance of the conspiracy.

## Act 16.

On or about the **29th day of November 2020, RUDOLPH WILLIAM LOUIS GIULIANI** placed a telephone call to Speaker of the Pennsylvania House of Representatives Bryan Cutler and left Cutler a voicemail message for the purpose of soliciting, requesting, and importuning him to unlawfully appoint presidential electors from Pennsylvania. This was an overt act in furtherance of the conspiracy.

## Act 17.

On or about the **30th day of November 2020, RUDOLPH WILLIAM LOUIS GIULIANI** and **JENNA LYNN ELLIS** appeared, spoke, and presented witnesses at a meeting of Arizona legislators in Phoenix, Arizona. Unindicted co-conspirators Individual 5 and Individual 6, whose identities are known to the Grand Jury, were also present. During the meeting, **RUDOLPH WILLIAM LOUIS GIULIANI** made false statements concerning fraud in the November 3, 2020, presidential election in Arizona and solicited, requested, and importuned the Arizona legislators present at the meeting to unlawfully appoint presidential electors from Arizona. During the meeting, **JENNA LYNN ELLIS** solicited, requested, and importuned the Arizona legislators present at the meeting to unlawfully appoint presidential electors from Arizona. **DONALD JOHN TRUMP** joined the meeting by telephone and made false statements concerning fraud in the November 3, 2020, presidential election in Arizona. These were overt acts in furtherance of the conspiracy.

## Act 18.

On or about the **30th day of November 2020, MICHAEL A. ROMAN** instructed unindicted co-conspirator Individual 7, whose identity is known to the Grand Jury, to coordinate with individuals associated with the Trump Campaign to contact state legislators in Georgia and elsewhere on behalf of **DONALD JOHN TRUMP** and to encourage them to unlawfully appoint presidential electors from their respective states. This was an overt act in furtherance of the conspiracy.

## Act 19.

On or between the **1st day of December 2020 and the 31st day of December 2020**, **DONALD JOHN TRUMP** and **MARK RANDALL MEADOWS** met with John McEntee and requested that McEntee prepare a memorandum outlining a strategy for disrupting and delaying the joint session of Congress on January 6, 2021, the day prescribed by law for counting votes cast by the duly elected and qualified presidential electors from Georgia and the other states. The strategy included having Vice President Michael R. "Mike" Pence count only half of the electoral votes from certain states and then return the remaining electoral votes to state legislatures. The request was an overt act in furtherance of the conspiracy.

## Act 20.

On or about the **1st day of December 2020**, **RUDOLPH WILLIAM LOUIS GIULIANI** and **JENNA LYNN ELLIS** met with Speaker of the Arizona House of Representatives Rusty Bowers, President of the Arizona Senate Kareń Fann, and other Arizona legislators in Phoenix, Arizona. Unindicted co-conspirator Individual 5, whose identity is known to the Grand Jury, was also present. During the meeting, **RUDOLPH WILLIAM LOUIS GIULIANI** made false statements concerning fraud in the November 3, 2020, presidential election in Arizona and solicited, requested, and importuned the legislators present to call a special session of the Arizona State Legislature. These were overt acts in furtherance of the conspiracy.

## Act 21.

On or about the **2nd day of December 2020**, **RUDOLPH WILLIAM LOUIS GIULIANI** and **JENNA LYNN ELLIS** appeared, spoke, and presented witnesses at a meeting of the Michigan House of Representatives Oversight Committee. During the meeting, **RUDOLPH WILLIAM LOUIS GIULIANI** made false statements concerning fraud in the November 3, 2020, presidential election in Michigan and solicited, requested, and importuned the Michigan legislators present at the meeting to unlawfully appoint presidential electors from Michigan. During the meeting, **JENNA LYNN ELLIS** solicited, requested, and importuned the Michigan legislators present at the meeting to unlawfully appoint presidential electors from Michigan. These were overt acts in furtherance of the conspiracy.

## Act 22.

On or about the **3rd day of December 2020**, **DONALD JOHN TRUMP** caused to be tweeted from the Twitter account @RealDonaldTrump, "Georgia hearings now on @OANN. Amazing!" This was an overt act in furtherance of the conspiracy.

## Act 23.

On or about the **3rd day of December 2020**, **RUDOLPH WILLIAM LOUIS GIULIANI, JOHN CHARLES EASTMAN, JENNA LYNN ELLIS**, and **RAY STALLINGS SMITH III** committed the felony offense of **SOLICITATION OF VIOLATION OF OATH BY PUBLIC OFFICER**, in violation of **O.C.G.A. §§ 16-4-7 & 16-10-1**, in Fulton County, Georgia, by unlawfully soliciting, requesting, and importuning certain public officers then serving as elected members of the Georgia Senate and present at a Senate Judiciary Subcommittee meeting, including unindicted co-conspirator Individual 8, whose identity is known to the Grand Jury, Senators Lee Anderson, Brandon Beach, Matt Brass, Greg Dolezal, Steve Gooch, Tyler Harper, Bill Heath, Jen Jordan, John F. Kennedy, William Ligon, Elena Parent, Michael Rhett, Carden Summers, and Blake Tillery, to engage in conduct constituting the felony offense of Violation of Oath by Public Officer, O.C.G.A. § 16-10-1, by unlawfully appointing presidential electors from Georgia, in willful and intentional violation of the terms of the oath of said persons as prescribed by law, with intent that said persons engage in said conduct. This was an overt act in furtherance of the conspiracy.

## Act 24.

On or about the **3rd day of December 2020**, **RUDOLPH WILLIAM LOUIS GIULIANI** committed the felony offense of **FALSE STATEMENTS AND WRITINGS**, in violation of **O.C.G.A. § 16-10-20**, in Fulton County, Georgia, by knowingly, willfully, and unlawfully making at least one of the following false statements and representations to members of the Georgia Senate present at a Senate Judiciary Subcommittee meeting:

1.  That at least 96,600 mail-in ballots were counted in the November 3, 2020, presidential election in Georgia, despite there being no record of those ballots having been returned to a county elections office;

2.  That Dominion Voting Systems equipment used in the November 3, 2020, presidential election in Antrim County, Michigan, mistakenly recorded 6,000 votes for Joseph R. Biden when the votes were actually cast for Donald John Trump;

said statements being within the jurisdiction of the Office of the Georgia Secretary of State and the Georgia Bureau of Investigation, departments and agencies of state government, and county and city law enforcement agencies. This was an act of racketeering activity under O.C.G.A. § 16-14-3(5)(A)(xxii) and an overt act in furtherance of the conspiracy.

## Act 25.

On or about the **3rd day of December 2020**, **RAY STALLINGS SMITH III** committed the felony offense of **FALSE STATEMENTS AND WRITINGS**, in violation of **O.C.G.A. § 16-10-20**, in Fulton County, Georgia, by knowingly, willfully, and unlawfully making at least one of the following false statements and representations to members of the Georgia Senate present at a Senate Judiciary Subcommittee meeting:

1. That 2,506 felons voted illegally in the November 3, 2020, presidential election in Georgia;

2. That 66,248 underage people illegally registered to vote before their seventeenth birthday prior to the November 3, 2020, presidential election in Georgia;

3. That at least 2,423 people voted in the November 3, 2020, presidential election in Georgia who were not listed as registered to vote;

4. That 1,043 people voted in the November 3, 2020, presidential election in Georgia who had illegally registered to vote using a post office box;

5. That 10,315 or more dead people voted in the November 3, 2020, presidential election in Georgia;

6. That Fulton County election workers at State Farm Arena ordered poll watchers and members of the media to leave the tabulation area on the night of November 3, 2020, and continued to operate after ordering everyone to leave;

said statements being within the jurisdiction of the Office of the Georgia Secretary of State and the Georgia Bureau of Investigation, departments and agencies of state government, and county and city law enforcement agencies. This was an act of racketeering activity under O.C.G.A. § 16-14-3(5)(A)(xxii) and an overt act in furtherance of the conspiracy.

## Act 26.

On or about the **3rd day of December 2020**, **DONALD JOHN TRUMP** caused to be tweeted from the Twitter account @RealDonaldTrump, "Wow! Blockbuster testimony taking place right now in Georgia. Ballot stuffing by Dems when Republicans were forced to leave the large counting room. Plenty more coming, but this alone leads to an easy win of the State!" This was an overt act in furtherance of the conspiracy.

## Act 27.

On or about the **3rd day of December 2020**, **DONALD JOHN TRUMP** caused to be tweeted from the Twitter account @RealDonaldTrump, "People in Georgia got caught cold bringing in massive numbers of ballots and putting them in 'voting' machines. Great job @BrianKempGA!" This was an overt act in furtherance of the conspiracy.

26

### Act 28.

On or about the **3rd day of December 2020, DONALD JOHN TRUMP** met with Speaker of the Pennsylvania House of Representatives Bryan Cutler in the Oval Office at the White House and discussed holding a special session of the Pennsylvania General Assembly. This was an overt act in furtherance of the conspiracy.

### Act 29.

On or between the **3rd day of December 2020** and the **26th day of December 2020, RUDOLPH WILLIAM LOUIS GIULIANI** placed a telephone call to President Pro Tempore of the Georgia Senate Cecil Terrell "Butch" Miller for the purpose of making false statements concerning fraud in the November 3, 2020, presidential election in Georgia. This was an overt act in furtherance of the conspiracy.

### Act 30.

On or between the **3rd day of December 2020** and the **26th day of December 2020, DONALD JOHN TRUMP** placed a telephone call to President Pro Tempore of the Georgia Senate Butch Miller. This was an overt act in furtherance of the conspiracy.

### Act 31.

On or about the **5th day of December 2020, DONALD JOHN TRUMP** placed a telephone call to Georgia Governor Brian Kemp and solicited, requested, and importuned Kemp to call a special session of the Georgia General Assembly. This was an overt act in furtherance of the conspiracy.

### Act 32.

On or about the **6th day of December 2020, DONALD JOHN TRUMP** caused to be tweeted from the Twitter account @RealDonaldTrump, "Gee, what a surprise. Has anyone informed the so-called (says he has no power to do anything!) Governor @BrianKempGA & his puppet Lt. Governor @GeoffDuncanGA, that they could easily solve this mess, & WIN. Signature verification & call a Special Session. So easy! https://t.co/5cb4QdYzpU." This was an overt act in furtherance of the conspiracy.

### Act 33.

On or about the **6th day of December 2020, SIDNEY KATHERINE POWELL** entered into a written engagement agreement with SullivanStrickler LLC, a forensic data firm located in Fulton County, Georgia, for the performance of computer forensic collections and analytics on Dominion Voting Systems equipment in Michigan and elsewhere. The unlawful breach of election equipment in Coffee County, Georgia, was subsequently performed under this agreement. This was an overt act in furtherance of the conspiracy.

27

## Act 34.

On or about the **6th day of December 2020**, **ROBERT DAVID CHEELEY** sent an e-mail to **JOHN CHARLES EASTMAN**, unindicted co-conspirator Individual 8, whose identity is known to the Grand Jury, and Georgia Senator Brandon Beach that stated, "I am working on setting up a call for you with the Speaker and the President Pro Tempore tomorrow. I am also making the leadership aware of the importance for Trump electors to meet on December 14. Please provide the citation to the requirements of the duties which they must comply with." This was an overt act in furtherance of the conspiracy.

## Act 35.

On or about the **6th day of December 2020**, **JOHN CHARLES EASTMAN** sent an e-mail to **ROBERT DAVID CHEELEY**, unindicted co-conspirator Individual 8, whose identity is known to the Grand Jury, and Georgia Senator Brandon Beach that stated that the Trump presidential elector nominees in Georgia needed to meet on December 14, 2020, sign six sets of certificates of vote, and mail them "to the President of the Senate and to other officials." This was an overt act in furtherance of the conspiracy.

## Act 36.

On or about the **6th day of December 2020**, **ROBERT DAVID CHEELEY** sent an e-mail to unindicted co-conspirator Individual 2, whose identity is known to the Grand Jury, that stated he had been speaking with **JOHN CHARLES EASTMAN** and was attempting to set up a call with Speaker of the Georgia House of Representatives David Ralston and President Pro Tempore of the Georgia Senate Butch Miller to encourage them to call a special session of the Georgia General Assembly. In the e-mail, **ROBERT DAVID CHEELEY** stated, "Professor Eastman told me tonight that it is *critical* that the 16 Electors for President Trump meet next Monday and vote in accordance with 3 U.S.C. § 7." In the e-mail, **ROBERT DAVID CHEELEY** further stated, "I assume you can make sure this happens." This was an overt act in furtherance of the conspiracy.

## Act 37.

On or about the **7th day of December 2020**, unindicted co-conspirator Individual 2, whose identity is known to the Grand Jury, sent an e-mail to **ROBERT DAVID CHEELEY** and **DAVID JAMES SHAFER** that stated, "Bob, can u get on a call with David Shafer, state GOP chair and I later this morning to discuss. David has been on top of a lot of efforts in the state. I get off of a board call around 10:30." This was an overt act in furtherance of the conspiracy.

28

## Act 38.

On or about the **7th day of December 2020**, **RUDOLPH WILLIAM LOUIS GIULIANI** caused to be tweeted from the Twitter account @RudyGiuliani a retweet of unindicted co-conspirator Individual 8, whose identity is known to the Grand Jury, that stated, "Georgia Patriot Call to Action: today is the day we need you to call your state Senate & House Reps & ask them to sign the petition for a special session. We must have free & fair elections in GA & a this is our only path to ensuring every legal vote is counted. @realDonaldTrump." This was an overt act in furtherance of the conspiracy.

## Act 39.

On or about the **7th day of December 2020**, **JOHN CHARLES EASTMAN** sent an e-mail to **RUDOLPH WILLIAM LOUIS GIULIANI** with an attached memorandum titled "The Real Deadline for Settling a State's Electoral Votes." The body of the e-mail stated, "Here's the memo we discussed." The memorandum was written by **KENNETH JOHN CHESEBRO** to James R. Troupis, an attorney associated with the Trump Campaign, and advocates for the position that Trump presidential elector nominees in Wisconsin should meet and cast electoral votes for **DONALD JOHN TRUMP** on December 14, 2020, despite the fact that **DONALD JOHN TRUMP** lost the November 3, 2020, presidential election in Wisconsin. This e-mail was an overt act in furtherance of the conspiracy.

## Act 40.

On or about the **7th day of December 2020**, **DONALD JOHN TRUMP** requested that Bill White, an individual associated with the Trump Campaign then residing in Fulton County, Georgia, provide him with certain information, including contact information for Majority Leader of the Georgia Senate Mike Dugan and President Pro Tempore of the Georgia Senate Butch Miller. The following day, White sent an e-mail containing the requested information to **RUDOLPH WILLIAM LOUIS GIULIANI**, unindicted co-conspirator Individual 5, whose identity is known to the Grand Jury, and others. This request was an overt act in furtherance of the conspiracy.

## Act 41.

On or about the **7th day of December 2020**, **RUDOLPH WILLIAM LOUIS GIULIANI** placed a telephone call to Speaker of the Georgia House of Representatives David Ralston and discussed holding a special session of the Georgia General Assembly. This was an overt act in furtherance of the conspiracy.

## Act 42.

On or about the **7th day of December 2020**, **DONALD JOHN TRUMP** committed the felony offense of **SOLICITATION OF VIOLATION OF OATH BY PUBLIC OFFICER**, in violation of **O.C.G.A. §§ 16-4-7 & 16-10-1**, in Fulton County, Georgia, by unlawfully soliciting, requesting, and importuning Speaker of the Georgia House of Representatives David Ralston, a public officer, to engage in conduct constituting the felony offense of Violation of Oath by Public Officer, O.C.G.A. § 16-10-1, by calling a special session of the Georgia General Assembly for the purpose of unlawfully appointing presidential electors from Georgia, in willful and intentional violation of the terms of the oath of said person as prescribed by law, with intent that said person engage in said conduct. This was an overt act in furtherance of the conspiracy.

## Act 43.

On or about the **8th day of December 2020**, **DONALD JOHN TRUMP** placed a telephone call to Georgia Attorney General Chris Carr for the purpose of making false statements concerning fraud in the November 3, 2020, presidential election in Georgia and elsewhere. During the telephone call, **DONALD JOHN TRUMP** asked Carr not to discourage other state attorneys general from joining a federal lawsuit filed by the State of Texas contesting the administration of the November 3, 2020, presidential election in Georgia, Michigan, Pennsylvania, and Wisconsin. This was an overt act in furtherance of the conspiracy.

## Act 44.

On or about the **8th day of December 2020**, **DONALD JOHN TRUMP** and **JOHN CHARLES EASTMAN** placed a telephone call to Republican National Committee Chairwoman Ronna McDaniel to request her assistance gathering certain individuals to meet and cast electoral votes for **DONALD JOHN TRUMP** on December 14, 2020, in certain states despite the fact that **DONALD JOHN TRUMP** lost the November 3, 2020, presidential election in those states. This was an overt act in furtherance of the conspiracy.

## Act 45.

On or about the **8th day of December 2020**, **MICHAEL A. ROMAN** sent a text message to unindicted co-conspirator Individual 4, whose identity is known to the Grand Jury, stated that he had spoken to **MISTY HAMPTON**, and asked unindicted co-conspirator Individual 4 to "get" **MISTY HAMPTON** to attend the hearing before the Georgia House of Representatives Governmental Affairs Committee on December 10, 2020. This was an overt act in furtherance of the conspiracy.

### Act 46.

On or about the **9th day of December 2020, KENNETH JOHN CHESEBRO** wrote a memorandum titled "Statutory Requirements for December 14 Electoral Votes" to James R. Troupis, an attorney associated with the Trump Campaign. The memorandum provides detailed, state-specific instructions for how Trump presidential elector nominees in Georgia, Arizona, Michigan, Nevada, Pennsylvania, and Wisconsin would meet and cast electoral votes for **DONALD JOHN TRUMP** on December 14, 2020, despite the fact that **DONALD JOHN TRUMP** lost the November 3, 2020, presidential election in those states. This was an overt act in furtherance of the conspiracy.

### Act 47.

On or about the **10th day of December 2020, KENNETH JOHN CHESEBRO** sent an e-mail to Georgia Republican Party Chairman **DAVID JAMES SHAFER** and unindicted co-conspirator Individual 9, whose identity is known to the Grand Jury. **KENNETH JOHN CHESEBRO** stated in the e-mail that certain individuals associated with the Trump Campaign asked him "to help coordinate with the other 5 contested States, to help with logistics of the electors in other States hopefully joining in casting their votes on Monday." This was an overt act in furtherance of the conspiracy.

### Act 48.

On or about the **10th day of December 2020, KENNETH JOHN CHESEBRO** sent an e-mail with attached documents to **DAVID JAMES SHAFER** and unindicted co-conspirators Individual 9, Individual 10, and Individual 11, whose identities are known to the Grand Jury. The documents were to be used by Trump presidential elector nominees in Georgia for the purpose of casting electoral votes for **DONALD JOHN TRUMP** on December 14, 2020, despite the fact that **DONALD JOHN TRUMP** lost the November 3, 2020, presidential election in Georgia. This was an overt act in furtherance of the conspiracy.

### Act 49.

On or about the **10th day of December 2020, KENNETH JOHN CHESEBRO** sent an e-mail with attached documents to Arizona Republican Party Executive Director Greg Safsten and others. The documents were to be used by Trump presidential elector nominees in Arizona for the purpose of casting electoral votes for **DONALD JOHN TRUMP** on December 14, 2020, despite the fact that **DONALD JOHN TRUMP** lost the November 3, 2020, presidential election in Arizona. This was an overt act in furtherance of the conspiracy.

## Act 50.

On or about the **10th day of December 2020, KENNETH JOHN CHESEBRO** sent an e-mail to Republican Party of Wisconsin Chairman Brian Schimming with proposed language for documents to be used by Trump presidential elector nominees in Wisconsin for the purpose of casting electoral votes for **DONALD JOHN TRUMP** on December 14, 2020, despite the fact that **DONALD JOHN TRUMP** lost the November 3, 2020, presidential election in Wisconsin. This was an overt act in furtherance of the conspiracy.

## Act 51.

On or about the **10th day of December 2020, KENNETH JOHN CHESEBRO** sent an e-mail to Nevada Republican Party Vice Chairman Jim DeGraffenreid. **KENNETH JOHN CHESEBRO** stated in the e-mail that **RUDOLPH WILLIAM LOUIS GIULIANI** and other individuals associated with the Trump Campaign asked him "to reach out to you and the other Nevada electors to run point on the plan to have all Trump-Pence electors in all six contested States meet and transmit their votes to Congress on Monday, Dec. 14." This was an overt act in furtherance of the conspiracy.

## Act 52.

On or about the **10th day of December 2020, KENNETH JOHN CHESEBRO** sent an e-mail with attached documents to Jim DeGraffenreid. The documents were to be used by Trump presidential elector nominees in Nevada for the purpose of casting electoral votes for **DONALD JOHN TRUMP** on December 14, 2020, despite the fact that **DONALD JOHN TRUMP** lost the November 3, 2020, presidential election in Nevada. This was an overt act in furtherance of the conspiracy.

## Act 52.

On or about the **10th day of December 2020, KENNETH JOHN CHESEBRO** sent an e-mail with attached documents to Republican Party of Pennsylvania General Counsel Thomas W. King III. The documents were to be used by Trump presidential elector nominees in Pennsylvania for the purpose of casting electoral votes for **DONALD JOHN TRUMP** on December 14, 2020, despite the fact that **DONALD JOHN TRUMP** lost the November 3, 2020, presidential election in Pennsylvania. This was an overt act in furtherance of the conspiracy.

## Act 54.

On or between the **10th day of December 2020 and the 14th day of December 2020, DAVID JAMES SHAFER** contacted unindicted co-conspirator Individual 2, whose identity is known to the Grand Jury, by telephone and discussed unindicted co-conspirator Individual 2's attendance at the December 14, 2020, meeting of Trump presidential elector nominees in Fulton County, Georgia. This was an overt act in furtherance of the conspiracy.

## Act 55.

On or about the **10th day of December 2020**, **RUDOLPH WILLIAM LOUIS GIULIANI** and **RAY STALLINGS SMITH III** committed the felony offense of **SOLICITATION OF VIOLATION OF OATH BY PUBLIC OFFICER**, in violation of **O.C.G.A. §§ 16-4-7 & 16-10-1**, in Fulton County, Georgia, by unlawfully soliciting, requesting, and importuning certain public officers then serving as elected members of the Georgia House of Representatives and present at a House Governmental Affairs Committee meeting, including Representatives Shaw Blackmon, Jon Burns, Barry Fleming, Todd Jones, Bee Nguyen, Mary Margaret Oliver, Alan Powell, Renitta Shannon, Robert Trammell, Scot Turner, and Bruce Williamson, to engage in conduct constituting the felony offense of Violation of Oath by Public Officer, O.C.G.A. § 16-10-1, by unlawfully appointing presidential electors from Georgia, in willful and intentional violation of the terms of the oath of said persons as prescribed by law, with intent that said persons engage in said conduct. This was an overt act in furtherance of the conspiracy.

## Act 56.

On or about the **10th day of December 2020**, **RUDOLPH WILLIAM LOUIS GIULIANI** committed the felony offense of **FALSE STATEMENTS AND WRITINGS**, in violation of **O.C.G.A. § 16-10-20**, in Fulton County, Georgia, by knowingly, willfully, and unlawfully making at least one of the following false statements and representations to members of the Georgia House of Representatives present at a House Governmental Affairs Committee meeting:

1. That it is quite clear from the State Farm Arena video from November 3, 2020, that Fulton County election workers were stealing votes and that Georgia officials were covering up a crime in plain sight;

2. That at State Farm Arena on November 3, 2020, Democratic officials "got rid of all of the reporters, all the observers, anyone that couldn't be trusted," used the excuse of a watermain break, cleared out the voting area and then "went about their dirty, crooked business";

3. That between 12,000 and 24,000 ballots were illegally counted by Fulton County election workers at State Farm Arena on November 3, 2020;

4. That in Michigan, there were 700,000 more ballots counted than were sent out to voters in the November 3, 2020, presidential election, which was accounted for by quadruple counting ballots;

5. That Ruby Freeman, Shaye Moss, and an unidentified man were "quite obviously surreptitiously passing around USB ports as if they're vials of heroin or cocaine" at State Farm Arena to be used to "infiltrate the crooked Dominion voting machines";

6. That 96,600 mail-in ballots were counted in the November 3, 2020, presidential election in Georgia, despite there being no record of those ballots having been returned to a county elections office;

said statements being within the jurisdiction of the Office of the Georgia Secretary of State and the Georgia Bureau of Investigation, departments and agencies of state government, and county and city law enforcement agencies. This was an act of racketeering activity under O.C.G.A. § 16-14-3(5)(A)(xxii) and an overt act in furtherance of the conspiracy.

### Act 57.

On or about the **11th day of December 2020**, **DAVID JAMES SHAFER** reserved Room 216 at the Georgia State Capitol in Fulton County, Georgia, for the December 14, 2020, meeting of Trump presidential elector nominees in Fulton County, Georgia. This was an overt act in furtherance of the conspiracy.

### Act 58.

On or about the **11th day of December 2020**, **KENNETH JOHN CHESEBRO** sent an e-mail to Jim DeGraffenreid and stated that "the purpose of having the electoral votes sent in to Congress is to provide the opportunity to debate the election irregularities in Congress, and to keep alive the possibility that the votes could be flipped to Trump." This was an overt act in furtherance of the conspiracy.

### Act 59.

On or about the **11th day of December 2020**, **KENNETH JOHN CHESEBRO** sent an e-mail with attached documents to Greg Safsten and others. The documents were to be used by Trump presidential elector nominees in Arizona for the purpose of casting electoral votes for **DONALD JOHN TRUMP** on December 14, 2020, despite the fact that **DONALD JOHN TRUMP** lost the November 3, 2020, presidential election in Arizona. This was an overt act in furtherance of the conspiracy.

### Act 60.

On or about the **11th day of December 2020**, **KENNETH JOHN CHESEBRO** sent an e-mail with attached documents to **MICHAEL A. ROMAN** and other individuals associated with the Trump Campaign. The documents were to be used by Trump presidential elector nominees in Nevada for the purpose of casting electoral votes for **DONALD JOHN TRUMP** on December 14, 2020, despite the fact that **DONALD JOHN TRUMP** lost the November 3, 2020, presidential election in Nevada. This was an overt act in furtherance of the conspiracy.

### Act 61.

On or about the **11th day of December 2020**, **KENNETH JOHN CHESEBRO** sent an e-mail with attached documents to **MICHAEL A. ROMAN**, unindicted co-conspirator Individual 5, whose identity is known to the Grand Jury, and others. The documents were to be used by Trump presidential elector nominees in Georgia for the purpose of casting electoral votes for **DONALD JOHN TRUMP** on December 14, 2020, despite the fact that **DONALD JOHN TRUMP** lost the November 3, 2020, presidential election in Georgia. This was an overt act in furtherance of the conspiracy.

35

## Act 62.

On or about the **12th day of December 2020, DAVID JAMES SHAFER** contacted unindicted co-conspirator Individual 12, whose identity is known to the Grand Jury, and discussed unindicted co-conspirator Individual 12's attendance at the December 14, 2020, meeting of Trump presidential elector nominees in Fulton County, Georgia. This was an overt act in furtherance of the conspiracy.

## Act 63.

On or about the **12th day of December 2020, MICHAEL A. ROMAN** sent an e-mail to unindicted co-conspirators Individual 4 and Individual 7, whose identities are known to the Grand Jury, and other individuals associated with the Trump Campaign. In the e-mail, **MICHAEL A. ROMAN** stated, "I need a tracker for the electors," and instructed individuals associated with the Trump Campaign to populate entries on a shared spreadsheet listing Trump presidential elector nominees in Georgia, Arizona, Michigan, Nevada, Pennsylvania, and Wisconsin. The entries on the spreadsheet included contact information for the Trump presidential elector nominees, whether the Trump presidential elector nominees had been contacted, and whether the Trump presidential elector nominees had confirmed that they would attend the December 14, 2020, meetings of Trump presidential elector nominees in their respective states, despite the fact that **DONALD JOHN TRUMP** lost the November 3, 2020, presidential election in those states. This was an overt act in furtherance of the conspiracy.

## Act 64.

On or about the **12th day of December 2020, KENNETH JOHN CHESEBRO** met with Brian Schimming and discussed the December 14, 2020, meeting of Trump presidential elector nominees in Wisconsin. **RUDOLPH WILLIAM LOUIS GIULIANI** joined the meeting by telephone and stated that the media should not be notified of the December 14, 2020, meeting of Trump presidential elector nominees in Wisconsin. These were overt acts in furtherance of the conspiracy.

## Act 65.

On or about the **12th day of December 2020, MICHAEL A. ROMAN** instructed an individual associated with the Trump Campaign to distribute certain information related to the December 14, 2020, meetings of Trump presidential elector nominees in Georgia, Arizona, Michigan, Nevada, New Mexico, Pennsylvania, and Wisconsin to unindicted co-conspirator Individual 4, whose identity is known to the Grand Jury, and to other individuals associated with the Trump Campaign. This was an overt act in furtherance of the conspiracy.

### Act 66.

On or about the **12th day of December 2020**, unindicted co-conspirator Individual 4, whose identity is known to the Grand Jury, sent an e-mail to **MICHAEL A. ROMAN** and **DAVID JAMES SHAFER** with updates on the progress of organizing the December 14, 2020, meeting of Trump presidential elector nominees in Fulton County, Georgia. The e-mail stated which elector nominees had confirmed they would attend the meeting, that other individuals had been secured in case some of the elector nominees refused to participate in the meeting, that Georgia legislators had been contacted to ensure access to the Georgia Capitol, and that **DAVID JAMES SHAFER** had reserved Room 216 for the meeting. This was an overt act in furtherance of the conspiracy.

### Act 67.

On or about the **12th day of December 2020**, **DAVID JAMES SHAFER** sent an e-mail to unindicted co-conspirator Individual 4, whose identity is known to the Grand Jury, advising them to "touch base" with each of the Trump presidential elector nominees in Georgia in advance of the December 14, 2020, meeting to confirm their attendance. This was an overt act in furtherance of the conspiracy.

### Act 68.

On or about the **12th day of December 2020**, unindicted co-conspirator Individual 4, whose identity is known to the Grand Jury, sent a text message with contact information for unindicted co-conspirator Individual 8, whose identity is known to the Grand Jury, and Georgia Senator Brandon Beach to **MICHAEL A. ROMAN** for the purpose of providing the contact information to **RUDOLPH WILLIAM LOUIS GIULIANI**. This was an overt act in furtherance of the conspiracy.

### Act 69.

On or about the **13th day of December 2020**, **KENNETH JOHN CHESEBRO** sent an e-mail with attached documents to **MICHAEL A. ROMAN**. The documents were to be used by Trump presidential elector nominees in New Mexico for the purpose of casting electoral votes for **DONALD JOHN TRUMP** on December 14, 2020, despite the fact that **DONALD JOHN TRUMP** lost the November 3, 2020, presidential election in New Mexico. This was an overt act in furtherance of the conspiracy.

### Act 70.

On or about the **13th day of December 2020**, **KENNETH JOHN CHESEBRO** sent an e-mail to **RUDOLPH WILLIAM LOUIS GIULIANI** with the subject "PRIVILEGED AND CONFIDENTIAL – Brief notes on 'President of the Senate' strategy." In the e-mail, **KENNETH JOHN CHESEBRO** outlined multiple strategies for disrupting and delaying the joint session of Congress on January 6, 2021, the day prescribed by law for counting votes cast by the duly elected and qualified presidential electors from Georgia and the other states. In the e-mail, **KENNETH JOHN CHESEBRO** stated that the strategies outlined by him were "preferable to allowing the Electoral Count Act to operate by its terms." This was an overt act in furtherance of the conspiracy.

### Act 71.

On or about the **13th day of December 2020**, **KENNETH JOHN CHESEBRO** sent an e-mail with attached documents to **MICHAEL A. ROMAN** and unindicted co-conspirator Individual 4, whose identity is known to the Grand Jury. The documents were to be used by Trump presidential elector nominees in Georgia for the purpose of casting electoral votes for **DONALD JOHN TRUMP** on December 14, 2020, despite the fact that **DONALD JOHN TRUMP** lost the November 3, 2020, presidential election in Georgia. This was an overt act in furtherance of the conspiracy.

### Act 72.

On or about the **13th day of December 2020**, **KENNETH JOHN CHESEBRO** sent an e-mail to **MICHAEL A. ROMAN** and unindicted co-conspirator Individual 4, whose identity is known to the Grand Jury, and stated that **RUDOLPH WILLIAM LOUIS GIULIANI** "wants to keep this quiet until after all the voting is done," in reference to the December 14, 2020, meeting of Trump presidential elector nominees in Fulton County, Georgia. This was an overt act in furtherance of the conspiracy.

### Act 73.

On or about the **13th day of December 2020**, **DAVID JAMES SHAFER** sent a text message to unindicted co-conspirator Individual 4, whose identity is known to the Grand Jury, and stated that unindicted co-conspirator Individual 8, whose identity is known to the Grand Jury, would attend the December 14, 2020, meeting of Trump presidential elector nominees in Fulton County, Georgia, in the place of a Trump presidential elector nominee who refused to participate in the meeting. This was an overt act in furtherance of the conspiracy.

## Act 74.

On or about the **13th day of December 2020**, unindicted co-conspirator Individual 9, whose identity is known to the Grand Jury, sent a text message to **DAVID JAMES SHAFER** and confirmed that he and unindicted co-conspirator Individual 13, whose identity is known to the Grand Jury, would attend the December 14, 2020, meeting of Trump presidential elector nominees in Fulton County, Georgia. This was an overt act in furtherance of the conspiracy.

## Act 75.

On or about the **14th day of December 2020**, **DONALD JOHN TRUMP** caused to be tweeted from the Twitter account @RealDonaldTrump, "What a fool Governor @BrianKempGA of Georgia is. Could have been so easy, but now we have to do it the hard way. Demand this clown call a Special Session and open up signature verification, NOW. Otherwise, could be a bad day for two GREAT Senators on January 5th." This was an overt act in furtherance of the conspiracy.

## Act 76.

On or about the **14th day of December 2020**, **DAVID JAMES SHAFER** sent a text message to unindicted co-conspirator Individual 4, whose identity is known to the Grand Jury that stated, "Listen. Tell them to go straight to Room 216 to avoid drawing attention to what we are doing," in reference to the December 14, 2020, meeting of Trump presidential elector nominees in Fulton County, Georgia. This was an overt act in furtherance of the conspiracy.

## Act 77.

On or about the **14th day of December 2020**, **MICHAEL A. ROMAN** sent an e-mail to unindicted co-conspirators Individual 4 and Individual 7, whose identities are known to the Grand Jury, and stated, "Please send me an update as soon as the State Electoral College has adjourned and all paperwork is secured." This was an overt act in furtherance of the conspiracy.

## Act 78.

On or about the **14th day of December 2020**, **RAY STALLINGS SMITH III** and **DAVID JAMES SHAFER** encouraged certain individuals present at the December 14, 2020, meeting of Trump presidential elector nominees in Fulton County, Georgia, to sign the document titled "CERTIFICATE OF THE VOTES OF THE 2020 ELECTORS FROM GEORGIA." This was an overt act in furtherance of the conspiracy.

### Act 79.

On or about the **14th day of December 2020**, **DAVID JAMES SHAFER, SHAWN MICAH TRESHER STILL, CATHLEEN ALSTON LATHAM,** and unindicted co-conspirators Individual 2, Individual 8, Individual 9, Individual 10, Individual 11, Individual 12, Individual 13, Individual 14, Individual 15, Individual 16, Individual 17, Individual 18, and Individual 19, whose identities are known to the Grand Jury, committed the felony offense of **IMPERSONATING A PUBLIC OFFICER**, in violation of **O.C.G.A. § 16-10-23**, in Fulton County, Georgia, by unlawfully falsely holding themselves out as the duly elected and qualified presidential electors from the State of Georgia, public officers, with intent to mislead the President of the United States Senate, the Archivist of the United States, the Georgia Secretary of State, and the Chief Judge of the United States District Court for the Northern District of Georgia into believing that they actually were such officers by placing in the United States mail to said persons a document titled "CERTIFICATE OF THE VOTES OF THE 2020 ELECTORS FROM GEORGIA." This was an act of racketeering activity under O.C.G.A. § 16-14-3(5)(A)(xxiii) and an overt act in furtherance of the conspiracy.

### Act 80.

On or about the **14th day of December 2020**, **DAVID JAMES SHAFER, SHAWN MICAH TRESHER STILL, CATHLEEN ALSTON LATHAM,** and unindicted co-conspirators Individual 2, Individual 8, Individual 9, Individual 10, Individual 11, Individual 12, Individual 13, Individual 14, Individual 15, Individual 16, Individual 17, Individual 18, and Individual 19, whose identities are known to the Grand Jury, committed the felony offense of **FORGERY IN THE FIRST DEGREE**, in violation of **O.C.G.A. § 16-9-1(b)**, in Fulton County, Georgia, by, with the intent to defraud, knowingly making a document titled "CERTIFICATE OF THE VOTES OF THE 2020 ELECTORS FROM GEORGIA," a writing other than a check, in such manner that the writing as made purports to have been made by authority of the duly elected and qualified presidential electors from the State of Georgia, who did not give such authority, and uttered and delivered said document to the Archivist of the United States. This was an act of racketeering activity under O.C.G.A. § 16-14-3(5)(A)(xvi) and an overt act in furtherance of the conspiracy.

## Act 81.

On or about the **14th day of December 2020**, **DAVID JAMES SHAFER, SHAWN MICAH TRESHER STILL, CATHLEEN ALSTON LATHAM**, and unindicted co-conspirators Individual 2, Individual 8, Individual 9, Individual 10, Individual 11, Individual 12, Individual 13, Individual 14, Individual 15, Individual 16, Individual 17, Individual 18, and Individual 19, whose identities are known to the Grand Jury, committed the felony offense of **FALSE STATEMENTS AND WRITINGS**, in violation of **O.C.G.A. § 16-10-20**, in Fulton County, Georgia, by knowingly, willfully, and unlawfully making and using a false document titled "CERTIFICATE OF THE VOTES OF THE 2020 ELECTORS FROM GEORGIA," with knowledge that said document contained the false statement, "WE, THE UNDERSIGNED, being the duly elected and qualified Electors for President and Vice President of the United States of America from the State of Georgia, do hereby certify the following," said document being within the jurisdiction of the Office of the Georgia Secretary of State and the Office of the Governor of Georgia, departments and agencies of state government. This was an act of racketeering activity under O.C.G.A. § 16-14-3(5)(A)(xxii) and an overt act in furtherance of the conspiracy.

## Act 82.

On or about the **14th day of December 2020**, **DAVID JAMES SHAFER, SHAWN MICAH TRESHER STILL, CATHLEEN ALSTON LATHAM**, and unindicted co-conspirators Individual 2, Individual 8, Individual 9, Individual 10, Individual 11, Individual 12, Individual 13, Individual 14, Individual 15, Individual 16, Individual 17, Individual 18, and Individual 19, whose identities are known to the Grand Jury, attempted to commit the felony offense of **FILING FALSE DOCUMENTS**, in violation of **O.C.G.A. § 16-10-20.1(b)(1)**, in Fulton County, Georgia, by placing in the United States mail a document titled "CERTIFICATE OF THE VOTES OF THE 2020 ELECTORS FROM GEORGIA," addressed to Chief Judge, U.S. District Court, Northern District of Georgia, 2188 Richard D. Russell Federal Office Building and U.S. Courthouse, 75 Ted Turner Drive, SW, Atlanta, GA 30303, with intent to knowingly file, enter, and record said document in a court of the United States, having reason to know that said document contained the materially false statement, "WE, THE UNDERSIGNED, being the duly elected and qualified Electors for President and Vice President of the United States of America from the State of Georgia, do hereby certify the following." This was an act of racketeering activity under O.C.G.A. § 16-14-3(5)(A)(xxii) and an overt act in furtherance of the conspiracy.

## Act 83.

On or about the **14th day of December 2020**, **DAVID JAMES SHAFER** and **SHAWN MICAH TRESHER STILL** committed the felony offense of **FORGERY IN THE FIRST DEGREE**, in violation of **O.C.G.A. § 16-9-1(b)**, in Fulton County, Georgia, by, with the intent to defraud, knowingly making a document titled "RE: Notice of Filling of Electoral College Vacancy," a writing other than a check, in such manner that the writing as made purports to have been made by the authority of the duly elected and qualified presidential electors from the State of Georgia, who did not give such authority, and uttered and delivered said document to the Archivist of the United States. This was an act of racketeering activity under O.C.G.A. § 16-14-3(5)(A)(xvi) and an overt act in furtherance of the conspiracy.

## Act 84.

On or about the **14th day of December 2020**, **DAVID JAMES SHAFER** and **SHAWN MICAH TRESHER STILL** committed the felony offense of **FALSE STATEMENTS AND WRITINGS**, in violation of **O.C.G.A. § 16-10-20**, in Fulton County, Georgia, by knowingly, willfully, and unlawfully making and using a false document titled "RE: Notice of Filling of Electoral College Vacancy," with knowledge that said document contained the false statements that **DAVID JAMES SHAFER** was Chairman of the 2020 Georgia Electoral College Meeting and **SHAWN MICAH TRESHER STILL** was Secretary of the 2020 Georgia Electoral College Meeting, said document being within the jurisdiction of the Office of the Georgia Secretary of State and the Office of the Governor of Georgia, departments and agencies of state government. This was an act of racketeering activity under O.C.G.A. § 16-14-3(5)(A)(xxii) and an overt act in furtherance of the conspiracy.

## Act 85.

On or about the **14th day of December 2020**, **DAVID JAMES SHAFER** instructed unindicted co-conspirator Individual 15, whose identity is known to the Grand Jury, to deliver to the Office of the Governor of Georgia a document signed by **DAVID JAMES SHAFER** and **SHAWN MICAH TRESHER STILL** titled "RE: Notice of Filling of Electoral College Vacancy." The document contained multiple false statements. This was an overt act in furtherance of the conspiracy.

## Act 86.

On or about the **14th day of December 2020**, unindicted co-conspirator Individual 4, whose identity is known to the Grand Jury, sent an e-mail to **MICHAEL A. ROMAN**, unindicted co-conspirator Individual 7, whose identity is known to the Grand Jury, and others that stated, "All votes cast, paperwork complete, being mailed now. Ran pretty smoothly," in reference to the December 14, 2020, meeting of Trump presidential elector nominees in Fulton County, Georgia. This was an overt act in furtherance of the conspiracy.

### Act 87.

On or about the **14th day of December 2020, STEPHEN CLIFFGARD LEE** attempted to commit the felony offense of **INFLUENCING WITNESSES**, in violation of **O.C.G.A. § 16-10-93(b)(1)(A)**, in Fulton County, Georgia, by traveling to the home of Ruby Freeman, a Fulton County, Georgia, election worker, and speaking to her neighbor, with intent to knowingly engage in misleading conduct toward Ruby Freeman, by purporting to offer her help, and with intent to influence her testimony in an official proceeding in Fulton County, Georgia, concerning events at State Farm Arena in the November 3, 2020, presidential election in Georgia. This was an act of racketeering activity pursuant to O.C.G.A. § 16-14-3(5)(A)(xxvii) and an overt act in furtherance of the conspiracy.

### Act 88.

On or about the **15th day of December 2020, STEPHEN CLIFFGARD LEE** attempted to commit the felony offense of **INFLUENCING WITNESSES**, in violation of **O.C.G.A. § 16-10-93(b)(1)(A)**, in Fulton County, Georgia, by traveling to the home of Ruby Freeman, a Fulton County, Georgia, election worker, and knocking on her door, with intent to knowingly engage in misleading conduct toward Ruby Freeman, by purporting to offer her help, and with intent to influence her testimony in an official proceeding in Fulton County, Georgia, concerning events at State Farm Arena in the November 3, 2020, presidential election in Georgia. This was an act of racketeering activity pursuant to O.C.G.A. § 16-14-3(5)(A)(xxvii) and an overt act in furtherance of the conspiracy.

### Act 89.

On or between the **15th day of December 2020 and the 4th day of January 2021, STEPHEN CLIFFGARD LEE** solicited **HARRISON WILLIAM PRESCOTT FLOYD**, an individual associated with the organization Black Voices for Trump, to assist with his effort to speak to Ruby Freeman, a Fulton County, Georgia, election worker. **STEPHEN CLIFFGARD LEE** stated to **HARRISON WILLIAM PRESCOTT FLOYD** that Freeman was afraid to talk to **STEPHEN CLIFFGARD LEE** because he was a white man. These were overt acts in furtherance of the conspiracy.

### Act 90.

On or about the **18th day of December 2020, DONALD JOHN TRUMP** met with **RUDOLPH WILLIAM LOUIS GIULIANI, SIDNEY KATHERINE POWELL**, unindicted co-conspirator Individual 20, whose identity is known to the Grand Jury, and others at the White House. The individuals present at the meeting discussed certain strategies and theories intended to influence the outcome of the November 3, 2020, presidential election, including seizing voting equipment and appointing **SIDNEY KATHERINE POWELL** as special counsel with broad authority to investigate allegations of voter fraud in Georgia and elsewhere. This was an overt act in furtherance of the conspiracy.

**Act 91.**

On or about the **21st day of December 2020**, **SIDNEY KATHERINE POWELL** sent an e-mail to the Chief Operations Officer of SullivanStrickler LLC and instructed him that she and unindicted co-conspirators Individual 6, Individual 21, and Individual 22, whose identities are known to the Grand Jury, were to immediately "receive a copy of all data" obtained by SullivanStrickler LLC from Dominion Voting Systems equipment in Michigan. This was an overt act in furtherance of the conspiracy.

**Act 92.**

On or about the **22nd day of December 2020**, **MARK RANDALL MEADOWS** traveled to the Cobb County Civic Center in Cobb County, Georgia, and attempted to observe the signature match audit being performed there by law enforcement officers from the Georgia Bureau of Investigation and the Office of the Georgia Secretary of State, despite the fact that the audit process was not open to the public. While present at the center, **MARK RANDALL MEADOWS** spoke to Georgia Deputy Secretary of State Jordan Fuchs, Office of the Georgia Secretary of State Chief Investigator Frances Watson, Georgia Bureau of Investigation Special Agent in Charge Bahan Rich, and others, who prevented **MARK RANDALL MEADOWS** from entering into the space where the audit was being conducted. This was an overt act in furtherance of the conspiracy.

**Act 93.**

On or about the **23rd day of December 2020**, **DONALD JOHN TRUMP** placed a telephone call to Office of the Georgia Secretary of State Chief Investigator Frances Watson that had been previously arranged by **MARK RANDALL MEADOWS**. During the phone call, **DONALD JOHN TRUMP** falsely stated that he had won the November 3, 2020, presidential election in Georgia "by hundreds of thousands of votes" and stated to Watson that "when the right answer comes out you'll be praised." This was an overt act in furtherance of the conspiracy.

**Act 94.**

On or about the **23rd day of December 2020**, **JOHN CHARLES EASTMAN** sent an e-mail to **KENNETH JOHN CHESEBRO** and unindicted co-conspirator Individual 3, whose identity is known to the Grand Jury, with the subject "FW: Draft 2, with edits." In the e-mail, **JOHN CHARLES EASTMAN** attached a memorandum titled "PRIVILEGED AND CONFIDENTIAL -- Dec 23 memo on Jan 6 scenario.docx" and stated, "As for hearings, I think both are unnecessary. The fact that we have multiple slates of electors demonstrates the uncertainty of either. That should be enough. And I agree with Ken that Judiciary Committee hearings on the constitutionality of the Electoral Count Act could invite counter views that we do not believe should constrain Pence (or Grassley) in the exercise of power they have under the 12[th] Amendment. Better for them just to act boldly and be challenged, since the challenge would likely lead to the Court denying review on nonjusticiable political question grounds." This was an overt act in furtherance of the conspiracy.

### Act 95.

On or about the **25th day of December 2020**, **DONALD JOHN TRUMP** placed a telephone call to Speaker of the Arizona House of Representatives Rusty Bowers for the purpose of soliciting, requesting, and importuning Bowers to unlawfully appoint presidential electors from Arizona. During the call, Bowers stated to Trump, "I voted for you. I worked for you. I campaigned for you. I just won't do anything illegal for you." This telephone call was an overt act in furtherance of the conspiracy.

### Act 96.

On or about the **27th day of December 2020**, **MARK RANDALL MEADOWS** sent a text message to Office of the Georgia Secretary of State Chief Investigator Frances Watson that stated in part, "Is there a way to speed up Fulton county signature verification in order to have results before Jan 6 if the trump campaign assist financially." This was an overt act in furtherance of the conspiracy.

### Act 97.

On or about the **27th day of December 2020**, **DONALD JOHN TRUMP** solicited Acting United States Attorney General Jeffrey Rosen and Acting United States Deputy Attorney General Richard Donoghue to make a false statement by stating, "Just say that the election was corrupt, and leave the rest to me and the Republican congressmen." This was an overt act in furtherance of the conspiracy.

### Act 98.

On or about the **28th day of December 2020**, **JEFFREY BOSSERT CLARK** attempted to commit the felony offense of **FALSE STATEMENTS AND WRITINGS**, in violation of **O.C.G.A. § 16-10-20**, in Fulton County, Georgia, by knowingly and willfully making a false writing and document knowing the same to contain the false statement that the United States Department of Justice had "identified significant concerns that may have impacted the outcome of the election in multiple States, including the State of Georgia," said statement being within the jurisdiction of the Office of the Georgia Secretary of State and the Georgia Bureau of Investigation, departments and agencies of state government, and county and city law enforcement agencies;

And on or about the **28th day of December 2020**, **JEFFREY BOSSERT CLARK** sent an e-mail to Acting United States Attorney General Jeffrey Rosen and Acting United States Deputy Attorney General Richard Donoghue and requested authorization to send said false writing and document to Georgia Governor Brian Kemp, Speaker of the Georgia House of Representatives David Ralston, and President Pro Tempore of the Georgia Senate Butch Miller, which constitutes a substantial step toward the commission of False Statements and Writings, O.C.G.A. § 16-10-20. This was an act of racketeering activity under O.C.G.A. § 16-14-3(5)(A)(xxii) and an overt act in furtherance of the conspiracy.

### Act 99.

On or about the **28th day of December 2020**, **JEFFREY BOSSERT CLARK** solicited Acting United States Attorney General Jeffrey Rosen and Acting United States Deputy Attorney General Richard Donoghue to sign and send a document that falsely stated that the United States Department of Justice had "identified significant concerns that may have impacted the outcome of the election in multiple States, including the State of Georgia," to Georgia Governor Brian Kemp, Speaker of the Georgia House of Representatives David Ralston, and President Pro Tempore of the Georgia Senate Butch Miller. This was an overt act in furtherance of the conspiracy.

### Act 100.

On or about the **30th day of December 2020**, **DONALD JOHN TRUMP** caused to be tweeted from the Twitter account @RealDonaldTrump, "Hearings from Atlanta on the Georgia Election overturn now being broadcast. Check it out. @OANN @newsmax and many more. @BrianKempGA should resign from office. He is an obstructionist who refuses to admit that we won Georgia, BIG! Also won the other Swing States." This was an overt act in furtherance of the conspiracy.

### Act 101.

On or about the **30th day of December 2020**, **DONALD JOHN TRUMP** caused to be tweeted from the Twitter account @RealDonaldTrump, "Hearings from Atlanta on the Georgia Election overturn now being broadcast LIVE via @RSBNetwork! https://t.co/ogBvLbKfqG." This was an overt act in furtherance of the conspiracy.

### Act 102.

On or about the **30th day of December 2020**, **RUDOLPH WILLIAM LOUIS GIULIANI, RAY STALLINGS SMITH III**, and **ROBERT DAVID CHEELEY** committed the felony offense of **SOLICITATION OF VIOLATION OF OATH BY PUBLIC OFFICER**, in violation of **O.C.G.A. §§ 16-4-7 & 16-10-1**, in Fulton County, Georgia, by soliciting, requesting, and importuning certain public officers then serving as elected members of the Georgia Senate and present at a Senate Judiciary Subcommittee meeting, including unindicted co-conspirator Individual 8, whose identity is known to the Grand Jury, Senators Brandon Beach, Bill Heath, William Ligon, Michael Rhett, and Blake Tillery, to engage in conduct constituting the felony offense of Violation of Oath by Public Officer, O.C.G.A. § 16-10-1, by unlawfully appointing presidential electors from the State of Georgia, in willful and intentional violation of the terms of the oath of said persons as prescribed by law, with intent that said persons engage in said conduct. This was an overt act in furtherance of the conspiracy.

### Act 103.

On or about the **30th day of December 2020**, **RUDOLPH WILLIAM LOUIS GIULIANI** committed the felony offense of **FALSE STATEMENTS AND WRITINGS**, in violation of **O.C.G.A. § 16-10-20**, in Fulton County, Georgia, by knowingly, willfully, and unlawfully making at least one of the following false statements and representations to members of the Georgia Senate present at a Senate Judiciary Subcommittee meeting:

1. That Fulton County election workers fraudulently counted certain ballots as many as five times at State Farm Arena on November 3, 2020;

2. That 2,560 felons voted illegally in the November 3, 2020, presidential election in Georgia;

3. That 10,315 dead people voted in the November 3, 2020, presidential election in Georgia;

said statements being within the jurisdiction of the Office of the Georgia Secretary of State and the Georgia Bureau of Investigation, departments and agencies of state government, and county and city law enforcement agencies. This was an act of racketeering activity under O.C.G.A. § 16-14-3(5)(A)(xxii) and an overt act in furtherance of the conspiracy.

### Act 104.

On or about the **30th day of December 2020**, **RAY STALLINGS SMITH III** committed the felony offense of **FALSE STATEMENTS AND WRITINGS**, in violation of **O.C.G.A. § 16-10-20**, in Fulton County, Georgia, by knowingly, willfully, and unlawfully making at least one of the following false statements and representations to members of the Georgia Senate present at a Senate Judiciary Subcommittee meeting:

1. That Georgia Secretary of State General Counsel Ryan Germany stated that his office had sent letters to 8,000 people who voted illegally in the November 3, 2020, presidential election and told them not to vote in the January 5, 2021, runoff election;

2. That the Georgia Secretary of State admitted "that they had a 90% accuracy rate" in the November 3, 2020, presidential election and that "there's still a 10% margin that's not accurate";

said statements being within the jurisdiction of the Office of the Georgia Secretary of State and the Georgia Bureau of Investigation, departments and agencies of state government, and county and city law enforcement agencies. This was an act of racketeering activity under O.C.G.A. § 16-14-3(5)(A)(xxii) and an overt act in furtherance of the conspiracy.

**Act 105.**

On or about the **30th day of December 2020**, **ROBERT DAVID CHEELEY** committed the felony offense of **FALSE STATEMENTS AND WRITINGS**, in violation of **O.C.G.A. § 16-10-20**, in Fulton County, Georgia, by knowingly, willfully, and unlawfully making at least one of the following false statements and representations to members of the Georgia Senate present at a Senate Judiciary Subcommittee meeting:

1. That poll watchers and media at State Farm Arena were told late in the evening of November 3, 2020, that the vote count was being suspended until the next morning and to go home because of "a major watermain break";

2. That Fulton County election workers at State Farm Arena "voted" the same ballots "over and over again" on November 3, 2020;

said statements being within the jurisdiction of the Office of the Georgia Secretary of State and the Georgia Bureau of Investigation, departments and agencies of state government, and county and city law enforcement agencies. This was an act of racketeering activity under O.C.G.A. § 16-14-3(5)(A)(xxii) and an overt act in furtherance of the conspiracy.

**Act 106.**

On or about the **30th day of December 2020**, **DONALD JOHN TRUMP** caused to be tweeted from the Twitter account @RealDonaldTrump, "We now have far more votes than needed to flip Georgia in the Presidential race. Massive VOTER FRAUD took place. Thank you to the Georgia Legislature for today's revealing meeting!" This was an overt act in furtherance of the conspiracy.

**Act 107.**

On or about the **31st day of December 2020**, **JENNA LYNN ELLIS** wrote a memorandum titled "Memorandum Re: Constitutional Analysis of Vice President Authority for January 6, 2021 Electoral College Vote Count" to **DONALD JOHN TRUMP**. The memorandum outlined a strategy for disrupting and delaying the joint session of Congress on January 6, 2021, the day prescribed by law for counting votes cast by the duly elected and qualified presidential electors from Georgia and the other states, and stated, "the Vice President should therefore not open any of the votes" from six states, including Georgia, that were falsely characterized as having "electoral delegates in dispute." This was an overt act in furtherance of the conspiracy.

## Act 108.

On or about the **31st day of December 2020**, **DONALD JOHN TRUMP** and **JOHN CHARLES EASTMAN** committed the felony offense of **FILING FALSE DOCUMENTS**, in violation of **O.C.G.A. § 16-10-20.1(b)(1)**, in Fulton County, Georgia, by knowingly filing a document titled "VERIFIED COMPLAINT FOR EMERGENCY INJUNCTIVE AND DECLARATORY RELIEF" in the matter of Trump v. Kemp, Case 1:20-cv-05310-MHC, in the United States District Court for the Northern District of Georgia, a court of the United States having reason to know that said document contained at least one of the following materially false statements:

1. That "as many as 2,506 felons with an uncompleted sentence" voted illegally in the November 3, 2020, presidential election in Georgia;

2. That "at least 66,247 underage" people voted illegally in the November 3, 2020, presidential election in Georgia;

3. That "at least 2,423 individuals" voted illegally in the November 3, 2020, presidential election in Georgia "who were not listed in the State's records as having been registered to vote";

4. That "at least 1,043 individuals" voted illegally in the November 3, 2020, presidential election "who had illegally registered to vote using a postal office box as their habitation";

5. That "as many as 10,315 or more" dead people voted in the November 3, 2020, presidential election in Georgia;

6. That "[d]eliberate misinformation was used to instruct Republican poll watchers and members of the press to leave the premises for the night at approximately 10:00 p.m. on November 3, 2020" at State Farm Arena in Fulton County, Georgia;

Earlier on the same day, **JOHN CHARLES EASTMAN** sent an e-mail to attorneys associated with the Trump Campaign admitting his knowledge that at least some of the allegations in the verified complaint were not accurate. This filing was an act of racketeering activity under O.C.G.A. § 16-14-3(5)(A)(xxii) and an overt act in furtherance of the conspiracy.

## Act 109.

On or about the **1st day of January 2021**, **KENNETH JOHN CHESEBRO** sent an e-mail to **JOHN CHARLES EASTMAN** and unindicted co-conspirator Individual 3, whose identity is known to the Grand Jury. In the e-mail, **KENNETH JOHN CHESEBRO** outlined a strategy for disrupting and delaying the joint session of Congress on January 6, 2021, the day prescribed by law for counting votes cast by the duly elected and qualified presidential electors from Georgia and the other states. This was an overt act in furtherance of the conspiracy.

### Act 110.

On or about the **2nd day of January 2021**, **SCOTT GRAHAM HALL**, a Georgia bail bondsman, placed a telephone call to **JEFFREY BOSSERT CLARK** and discussed the November 3, 2020, presidential election in Georgia. The telephone call was 63 minutes in duration. This was an overt act in furtherance of the conspiracy.

### Act 111.

On or about the **2nd day of January 2021**, **JEFFREY BOSSERT CLARK** solicited Acting United States Attorney General Jeffrey Rosen and Acting United States Deputy Attorney General Richard Donoghue to sign and send a document that falsely stated that the United States Department of Justice had "identified significant concerns that may have impacted the outcome of the election in multiple States, including the State of Georgia," to Georgia Governor Brian Kemp, Speaker of the Georgia House of Representatives David Ralston, and President Pro Tempore of the Georgia Senate Butch Miller. This was an overt act in furtherance of the conspiracy.

### Act 112.

On or about the **2nd day of January 2021**, **DONALD JOHN TRUMP** and **MARK RANDALL MEADOWS** committed the felony offense of **SOLICITATION OF VIOLATION OF OATH BY PUBLIC OFFICER**, in violation of **O.C.G.A. §§ 16-4-7 & 16-10-1**, in Fulton County, Georgia, by unlawfully soliciting, requesting, and importuning Georgia Secretary of State Brad Raffensperger, a public officer, to engage in conduct constituting the felony offense of Violation of Oath by Public Officer, O.C.G.A. § 16-10-1, by unlawfully altering, unlawfully adjusting, and otherwise unlawfully influencing the certified returns for presidential electors for the November 3, 2020, presidential election in Georgia, in willful and intentional violation of the terms of the oath of said person as prescribed by law, with intent that said person engage in said conduct. This was an overt act in furtherance of the conspiracy.

## Act 113.

On or about the **2nd day of January 2021**, **DONALD JOHN TRUMP** committed the felony offense of **FALSE STATEMENTS AND WRITINGS**, in violation of **O.C.G.A. § 16-10-20**, in Fulton County, Georgia, by knowingly, willfully, and unlawfully making at least one of the following false statements and representations to Georgia Secretary of State Brad Raffensperger, Georgia Deputy Secretary of State Jordan Fuchs, and Georgia Secretary of State General Counsel Ryan Germany:

1. That anywhere from 250,000 to 300,000 ballots were dropped mysteriously into the rolls in the November 3, 2020, presidential election in Georgia;

2. That thousands of people attempted to vote in the November 3, 2020, presidential election in Georgia and were told they could not because a ballot had already been cast in their name;

3. That 4,502 people voted in the November 3, 2020, presidential election in Georgia who were not on the voter registration list;

4. That 904 people voted in the November 3, 2020, presidential election in Georgia who were registered at an address that was a post office box;

5. That Ruby Freeman was a professional vote scammer and a known political operative;

6. That Ruby Freeman, her daughter, and others were responsible for fraudulently awarding at least 18,000 ballots to Joseph R. Biden at State Farm Arena in the November 3, 2020, presidential election in Georgia;

7. That close to 5,000 dead people voted in the November 3, 2020, presidential election in Georgia;

8. That 139% of people voted in the November 3, 2020, presidential election in Detroit;

9. That 200,000 more votes were recorded than the number of people who voted in the November 3, 2020, presidential election in Pennsylvania;

10. That thousands of dead people voted in the November 3, 2020, presidential election in Michigan;

11. That Ruby Freeman stuffed the ballot boxes;

12. That hundreds of thousands of ballots had been "dumped" into Fulton County and another county adjacent to Fulton County in the November 3, 2020, presidential election in Georgia;

13. That he won the November 3, 2020, presidential election in Georgia by 400,000 votes;

said statements being within the jurisdiction of the Office of the Georgia Secretary of State and the Georgia Bureau of Investigation, departments and agencies of state government. This was an act of racketeering activity under O.C.G.A. § 16-14-3(5)(A)(xxii) and an overt act in furtherance of the conspiracy.

### Act 114.

On or about the **3rd day of January 2021**, **DONALD JOHN TRUMP** caused to be tweeted from the Twitter account @RealDonaldTrump, "I spoke to Secretary of State Brad Raffensperger yesterday about Fulton County and voter fraud in Georgia. He was unwilling, or unable, to answer questions such as the 'ballots under table' scam, ballot destruction, out of state 'voters', dead voters, and more. He has no clue!" This was an overt act in furtherance of the conspiracy.

<u>**Act 115.**</u>

On or about the **3rd day of January 2021, STEPHEN CLIFFGARD LEE, HARRISON WILLIAM PRESCOTT FLOYD, and TREVIAN C. KUTTI** placed multiple telephone calls and sent text messages to each other and to other individuals involved in the conspiracy. They include the following:

1.  At 7:48 p.m., **HARRISON WILLIAM PRESCOTT FLOYD** placed a telephone call to Ruby Freeman, a Fulton County, Georgia, election worker, that was unsuccessful.

2.  At 7:49 p.m., **HARRISON WILLIAM PRESCOTT FLOYD** placed a telephone call to Ruby Freeman that was unsuccessful.

3.  At 7:49 p.m., **HARRISON WILLIAM PRESCOTT FLOYD** placed a telephone call to **TREVIAN C. KUTTI.**

4.  At 7:53 p.m., **HARRISON WILLIAM PRESCOTT FLOYD** sent a text message to Ruby Freeman.

5.  At 8:03 p.m., **TREVIAN C. KUTTI** placed a telephone call to **HARRISON WILLIAM PRESCOTT FLOYD.**

6.  At 8:11 p.m., **HARRISON WILLIAM PRESCOTT FLOYD** placed a telephone call to unindicted co-conspirator Individual 23, whose identity is known to the Grand Jury.

7.  At 8:18 p.m., **HARRISON WILLIAM PRESCOTT FLOYD** placed a telephone call to **STEPHEN CLIFFGARD LEE.**

8.  At 8:48 p.m., **HARRISON WILLIAM PRESCOTT FLOYD** placed a telephone call to **TREVIAN C. KUTTI.**

9.  At 9:16 p.m., **HARRISON WILLIAM PRESCOTT FLOYD** placed a telephone call to **TREVIAN C. KUTTI.**

10. At 9:33 p.m., **HARRISON WILLIAM PRESCOTT FLOYD** placed a telephone call to **TREVIAN C. KUTTI.**

11. At 9:50 p.m., **HARRISON WILLIAM PRESCOTT FLOYD** placed a telephone call to **STEPHEN CLIFFGARD LEE.**

These were overt acts in furtherance of the conspiracy.

### Act 116.

On or about the **4th day of January 2021, TREVIAN C. KUTTI**, having been recruited by **HARRISON WILLIAM PRESCOTT FLOYD**, traveled from Chicago, Illinois, to Atlanta, Georgia, and caused a certain individual, whose identity is known to the Grand Jury, to pick her up from a train station in Fulton County, Georgia, for the purpose of attempting to contact Ruby Freeman, a Fulton County, Georgia, election worker. This was an overt act in furtherance of the conspiracy.

### Act 117.

On or about the **4th day of January 2021, TREVIAN C. KUTTI** traveled to Ruby Freeman's home in Cobb County, Georgia, and attempted to contact her but was unsuccessful. **TREVIAN C. KUTTI** spoke with Freeman's neighbor and falsely stated that she was a crisis manager attempting to "help" Freeman before leaving Freeman's home. This was an overt act in furtherance of the conspiracy.

### Act 118.

On or about the **4th day of January 2021, TREVIAN C. KUTTI**, while in Fulton County, Georgia, placed a telephone call to Ruby Freeman and stated that Freeman was in danger. **TREVIAN C. KUTTI** stated that she could "help" Freeman and requested that Freeman meet with and speak to her that night at a Cobb County Police Department precinct in Cobb County, Georgia. This was an overt act in furtherance of the conspiracy.

### Act 119.

On or about the **4th day of January 2021, TREVIAN C. KUTTI** traveled to a Cobb County Police Department precinct in Cobb County, Georgia, and met with and spoke to Ruby Freeman for approximately one hour. **HARRISON WILLIAM PRESCOTT FLOYD** joined the meeting by telephone. **TREVIAN C. KUTTI** and **HARRISON WILLIAM PRESCOTT FLOYD** stated to Freeman that she needed protection and purported to offer her help. This was an overt act in furtherance of the conspiracy.

**Act 120.**

On or about the **4th day of January 2021 STEPHEN CLIFFGARD LEE, HARRISON WILLIAM PRESCOTT FLOYD**, and **TREVIAN C. KUTTI** committed the felony offense of **SOLICITATION OF FALSE STATEMENTS AND WRITINGS**, in violation of **O.C.G.A. §§ 16-4-7 & 16-10-20**, in Cobb County, Georgia, by soliciting, requesting, and importuning Ruby Freeman, a Fulton County, Georgia, election worker, to engage in conduct constituting the felony offense of False Statements and Writings, O.C.G.A. § 16-10-20, by knowingly and willfully making a false statement and representation concerning events at State Farm Arena in the November 3, 2020, presidential election in Georgia, said statement and representation being within the jurisdiction of the Office of the Georgia Secretary of State and the Georgia Bureau of Investigation, departments and agencies of state government, and county and city law enforcement agencies, with intent that said person engage in said conduct. This was an act of racketeering activity under O.C.G.A. § 16-14-3(5)(A)(xxii) and an overt act in furtherance of the conspiracy.

**Act 121.**

On or about the **4th day of January 2021 STEPHEN CLIFFGARD LEE, HARRISON WILLIAM PRESCOTT FLOYD**, and **TREVIAN C. KUTTI** committed the felony offense of **INFLUENCING WITNESSES**, in violation of **O.C.G.A. § 16-10-93(b)(1)(A)**, in Fulton County, Georgia, by knowingly and unlawfully engaging in misleading conduct toward Ruby Freeman, a Fulton County, Georgia, election worker, by stating that she needed protection and by purporting to offer her help, with intent to influence her testimony in an official proceeding in Fulton County, Georgia, concerning events at State Farm Arena in the November 3, 2020, presidential election in Georgia. This was an act of racketeering activity under O.C.G.A. § 16-14-3(5)(A)(xxvii) and an overt act in furtherance of the conspiracy.

**Act 122.**

On or about the **4th day of January 2021, STEPHEN CLIFFGARD LEE, HARRISON WILLIAM PRESCOTT FLOYD, and TREVIAN C. KUTTI** placed multiple telephone calls and sent text messages to each other and to other individuals involved in the conspiracy. They include the following:

1. At 9:41 a.m., **STEPHEN CLIFFGARD LEE** placed a telephone call to **HARRISON WILLIAM PRESCOTT FLOYD.**

2. At 11:24 a.m., **HARRISON WILLIAM PRESCOTT FLOYD** placed a telephone call to **DAVID JAMES SHAFER.**

3. At 12:25 p.m., **STEPHEN CLIFFGARD LEE** placed a telephone call to **HARRISON WILLIAM PRESCOTT FLOYD.**

4. At 12:32 p.m., **STEPHEN CLIFFGARD LEE** sent a text message to **HARRISON WILLIAM PRESCOTT FLOYD.**

5. At 8:10 p.m., **HARRISON WILLIAM PRESCOTT FLOYD** placed a telephone call to **DAVID JAMES SHAFER.**

6. At 10:00 p.m., **HARRISON WILLIAM PRESCOTT FLOYD** placed a telephone call to **STEPHEN CLIFFGARD LEE.**

7. At 10:19 p.m., **HARRISON WILLIAM PRESCOTT FLOYD** placed a telephone call to **TREVIAN C. KUTTI.**

8. At 10:43 p.m., **TREVIAN C. KUTTI** placed a telephone call to **HARRISON WILLIAM PRESCOTT FLOYD.**

9. At 11:10 p.m., **TREVIAN C. KUTTI** placed a telephone call to **HARRISON WILLIAM PRESCOTT FLOYD.**

10. At 12:12 a.m. on January 5, 2021, **TREVIAN C. KUTTI** placed a telephone call to **HARRISON WILLIAM PRESCOTT FLOYD.**

These were overt acts in furtherance of the conspiracy.

### Act 123.

On or about the **4th day of January 2020, JOHN CHARLES EASTMAN** placed a telephone call to Speaker of the Arizona House of Representatives Rusty Bowers and solicited, requested, and importuned Bowers to unlawfully appoint presidential electors from Arizona. During the telephone call, Bowers declined to comply with Eastman's request and stated that he would not risk violating his oath of office. The request was an overt act in furtherance of the conspiracy.

### Act 124.

On or about the **4th day of January 2021, KENNETH JOHN CHESEBRO** sent an e-mail to **JOHN CHARLES EASTMAN** with the subject "Fwd: Draft 2, with edits" and included within the body of the e-mail another e-mail that **KENNETH JOHN CHESEBRO** previously sent to **RUDOLPH WILLIAM LOUIS GIULIANI** with the subject "PRIVILEGED AND CONFIDENTIAL – Brief notes on 'President of the Senate' strategy." In the e-mail, **KENNETH JOHN CHESEBRO** outlined multiple strategies for disrupting and delaying the joint session of Congress on January 6, 2021, the day prescribed by law for counting votes cast by the duly elected and qualified presidential electors from Georgia and the other states, and stated that the outcomes of any of these strategies were "preferable to allowing the Electoral Count Act to operate by its terms." This was an overt act in furtherance of the conspiracy.

### Act 123.

On or about the **4th day of January 2021, DONALD JOHN TRUMP** and **JOHN CHARLES EASTMAN** met with Vice President Mike Pence, Chief of Staff to the Vice President Marc Short, and Counsel to the Vice President Greg Jacob in the Oval Office at the White House. During the meeting, **DONALD JOHN TRUMP** and **JOHN CHARLES EASTMAN** argued to Pence that he could either reject electoral votes from certain states or delay the joint session of Congress on January 6, 2021, the day prescribed by law for counting votes cast by the duly elected and qualified presidential electors from Georgia and the other states, for the purpose of allowing certain state legislatures to unlawfully appoint presidential electors in favor of **DONALD JOHN TRUMP**. During the meeting, **JOHN CHARLES EASTMAN** admitted both options violated the Electoral Count Act. This was an overt act in furtherance of the conspiracy.

## Act 126.

On or about the **5th day of January 2021**, **JENNA LYNN ELLIS** wrote a memorandum titled "Re: Vice President Authority in Counting Electors pursuant to U.S. Constitution and 3 U.S. Code §§ 5 and 15" to an attorney associated with **DONALD JOHN TRUMP**. The memorandum outlined a strategy for disrupting and delaying the joint session of Congress on January 6, 2021, the day prescribed by law for counting votes cast by the duly elected and qualified presidential electors from Georgia and the other states, and stated, "the Vice President should begin alphabetically in order of the states, and coming first to Arizona, not open the purported certification, but simply stop the count at that juncture." This was an overt act in furtherance of the conspiracy.

## Act 127.

On or about the **5th day of January 2021, ROBERT DAVID CHEELEY, STEPHEN CLIFFGARD LEE, HARRISON WILLIAM PRESCOTT FLOYD, TREVIAN C. KUTTI, and SCOTT GRAHAM HALL** placed multiple telephone calls to each other and to other individuals involved in the conspiracy. They include the following:

1. At 11:32 a.m., **STEPHEN CLIFFGARD LEE** placed a telephone call to **TREVIAN C. KUTTI**.

2. At 12:14 p.m., **HARRISON WILLIAM PRESCOTT FLOYD, TREVIAN C. KUTTI, STEPHEN CLIFFGARD LEE**, and unindicted co-conspirator Individual 23, whose identity is known to the Grand Jury, participated in a four-way telephone call.

3. At 12:19 p.m., **SCOTT GRAHAM HALL** placed a telephone call to **ROBERT DAVID CHEELEY**.

4. At 12:34 p.m., **SCOTT GRAHAM HALL** placed a telephone call to **ROBERT DAVID CHEELEY**.

5. At 1:07 p.m., **ROBERT DAVID CHEELEY** placed a telephone call to **SCOTT GRAHAM HALL**.

6. At 1:09 p.m., **ROBERT DAVID CHEELEY** placed a telephone call to **SCOTT GRAHAM HALL**.

7. At 2:30 p.m., **ROBERT DAVID CHEELEY** placed a telephone call to **HARRISON WILLIAM PRESCOTT FLOYD**.

8. At 2:45 p.m., **HARRISON WILLIAM PRESCOTT FLOYD** placed a telephone call to **ROBERT DAVID CHEELEY**.

9. At 3:59 p.m., **ROBERT DAVID CHEELEY** placed a telephone call to **SCOTT GRAHAM HALL**.

10. At 4:42 p.m., **STEPHEN CLIFFGARD LEE** placed a telephone call to **ROBERT DAVID CHEELEY**.

11. At 4:50 p.m., **STEPHEN CLIFFGARD LEE** placed a telephone call to **HARRISON WILLIAM PRESCOTT FLOYD**.

12. At 5:05 p.m., **STEPHEN CLIFFGARD LEE** placed a telephone call to **HARRISON WILLIAM PRESCOTT FLOYD**.

13. At 7:19 p.m., **TREVIAN C. KUTTI** placed a telephone call to **ROBERT DAVID CHEELEY**.

14. At 7:48 p.m., **ROBERT DAVID CHEELEY** placed a telephone call to **TREVIAN C. KUTTI**.

15. At 8:27 p.m., **ROBERT DAVID CHEELEY** placed a telephone call to **TREVIAN C. KUTTI**.

16. At 8:49 p.m., **ROBERT DAVID CHEELEY** placed a telephone call to **STEPHEN CLIFFGARD LEE**.

17. At 9:18 p.m., **SCOTT GRAHAM HALL** placed a telephone call to **ROBERT DAVID CHEELEY**.

18. At 9:31 p.m., **TREVIAN C. KUTTI** placed a telephone call to **ROBERT DAVID CHEELEY**.

19. At 10:14 p.m., **ROBERT DAVID CHEELEY** placed a telephone call to **STEPHEN CLIFFGARD LEE**.

20. At 11:16 p.m., **ROBERT DAVID CHEELEY** placed a telephone call to **TREVIAN C. KUTTI**.

21. At 11:25 p.m., **SCOTT GRAHAM HALL** placed a telephone call to **ROBERT DAVID CHEELEY**.

22. At 11:35 p.m., **ROBERT DAVID CHEELEY, TREVIAN C. KUTTI**, and **SCOTT GRAHAM HALL** participated in a three-way telephone call.

23. At 12:09 a.m. on January 6, 2021, **TREVIAN C. KUTTI** placed a telephone call to **ROBERT DAVID CHEELEY**.

These were overt acts in furtherance of the conspiracy.

### Act 128.

On or about the **5th day of January 2021, DONALD JOHN TRUMP** caused to be tweeted from the Twitter account @RealDonaldTrump, "The Vice President has the power to reject fraudulently chosen electors." This was an overt act in furtherance of the conspiracy.

### Act 129.

On or about the **5th day of January 2021, JOHN CHARLES EASTMAN** met with Chief of Staff to the Vice President Marc Short and Counsel to the Vice President Greg Jacob for the purpose of requesting that Vice President Mike Pence reject slates of presidential electors from Georgia and certain other states during the joint session of Congress on January 6, 2021, the day prescribed by law for counting votes cast by the duly elected and qualified presidential electors from Georgia and the other states. This was an overt act in furtherance of the conspiracy.

### Act 130.

On or about the **5th day of January 2021, DONALD JOHN TRUMP** met with Vice President Mike Pence in the Oval Office at the White House. During the meeting, **DONALD JOHN TRUMP** stated that Pence had the power to decertify the November 3, 2020, presidential election results, that people cheated, and that Pence wanted to "play by Marquess of Queensberry rules." When Pence stated that it was his duty to support and defend the Constitution and that only Congress had the power to decide to reject slates of presidential electors, **DONALD JOHN TRUMP** stated that Pence was naive, implied that he lacked courage, and stated that Pence was doing "a great disservice." This was an overt act in furtherance of the conspiracy.

### Act 131.

On or about the **5th day of January 2021, DONALD JOHN TRUMP** placed a telephone call to Vice President Mike Pence. During the telephone call, **DONALD JOHN TRUMP** and **JOHN CHARLES EASTMAN** attempted to persuade Pence to reject slates of presidential electors or return the slates of presidential electors to state legislatures. This was an overt act in furtherance of the conspiracy.

### Act 132.

On or about the **5th day of January 2021, DONALD JOHN TRUMP** placed a second telephone call to Vice President Mike Pence. During the telephone call, **DONALD JOHN TRUMP** asked Pence if he had received a copy of a letter from a group of Pennsylvania legislators urging Congress to return the state's electoral college votes and stated to Pence, "You gotta be tough tomorrow." This was an overt act in furtherance of the conspiracy.

### Act 133.

On or about the **5th day of January 2021, DONALD JOHN TRUMP** issued a statement through the Trump Campaign that falsely stated, "The Vice President and I are in total agreement that the Vice President has the power to act. ... Our Vice President has several options under the U.S. Constitution. He can decertify the results or send them back to the states for change and certification. He can also decertify the illegal and corrupt results and send them to the House of Representatives for the one vote for one state tabulation." This was an overt act in furtherance of the conspiracy.

### Act 134.

On or about the **6th day of January 2021**, CATHLEEN ALSTON LATHAM placed a telephone call to **SCOTT GRAHAM HALL**. Several hours later, **SCOTT GRAHAM HALL** placed a telephone call to **CATHLEEN ALSTON LATHAM**. During at least one of the phone calls, they discussed **SCOTT GRAHAM HALL**'s request to assist with the unlawful breach of election equipment at the Coffee County Board of Elections & Registration Office in Coffee County, Georgia. These were overt acts in furtherance of the conspiracy.

### Act 135.

On or about the **6th day of January 2021**, DONALD JOHN TRUMP appeared and spoke at a rally at the Ellipse in Washington, D.C. During the rally, **DONALD JOHN TRUMP** made false statements concerning fraud in the November 3, 2020, presidential election in Georgia and elsewhere, solicited Vice President Mike Pence to disrupt and delay the joint session of Congress on January 6, 2021, the day prescribed by law for counting votes cast by the duly elected and qualified presidential electors from Georgia and the other states, and encouraged those in attendance at the rally to march to the United States Capitol. This was an overt act in furtherance of the conspiracy.

### Act 136.

On or about the **6th day of January 2021**, RUDOLPH WILLIAM LOUIS GIULIANI appeared and spoke at a rally at the Ellipse in Washington, D.C. During the rally, **RUDOLPH WILLIAM LOUIS GIULIANI** made false statements concerning fraud in the November 3, 2020, presidential election in Georgia and elsewhere and solicited Vice President Mike Pence to disrupt and delay the joint session of Congress on January 6, 2021, the day prescribed by law for counting votes cast by the duly elected and qualified presidential electors from Georgia and the other states. This was an overt act in furtherance of the conspiracy.

### Act 137.

On or about the **6th day of January 2021**, JOHN CHARLES EASTMAN appeared and spoke at a rally at the Ellipse in Washington, D.C. During the rally, **JOHN CHARLES EASTMAN** made false statements concerning fraud in the November 3, 2020, presidential election and solicited Vice President Mike Pence to disrupt and delay the joint session of Congress on January 6, 2021, the day prescribed by law for counting votes cast by the duly elected and qualified presidential electors from Georgia and the other states. This was an overt act in furtherance of the conspiracy.

**Act 138.**

On or about the **6th day of January 2021**, **DONALD JOHN TRUMP** caused to be tweeted from the Twitter account @RealDonaldTrump, "If Vice President @Mike_Pence comes through for us, we will win the Presidency. Many States want to decertify the mistake they made in certifying incorrect & even fraudulent numbers in a process NOT approved by their State Legislatures (which it must be). Mike can send it back!" This was an overt act in furtherance of the conspiracy.

**Act 139.**

On or about the **6th day of January 2021**, **DONALD JOHN TRUMP** caused to be tweeted from the Twitter account @RealDonaldTrump, "States want to correct their votes, which they now know were based on irregularities and fraud, plus corrupt process never received legislative approval. All Mike Pence has to do is send them back to the States, AND WE WIN. Do it Mike, this is a time for extreme courage!" This was an overt act in furtherance of the conspiracy.

**Act 140.**

On or about the **6th day of January 2021**, **DONALD JOHN TRUMP** placed a telephone call to Vice President Mike Pence and solicited him to disrupt and delay the joint session of Congress on January 6, 2021, the day prescribed by law for counting votes cast by the duly elected and qualified presidential electors from Georgia and the other states. When Pence refused, **DONALD JOHN TRUMP** stated that Pence would "go down as a wimp" and that Pence was not protecting the United States. This was an overt act in furtherance of the conspiracy.

## Act 141.

On or about the **6th day of January 2021**, **JOHN CHARLES EASTMAN** sent an e-mail to Counsel to the Vice President Greg Jacob that stated:

> "The Senate and House have both violated the Electoral Count Act this evening – they debated the Arizona objections for more than 2 hours.  Violation of 3 USC 17.  And the VP allowed further debate or statements by leadership after the question had been voted upon.  Violation of 3 USC 17.  And they had that debate upon motion approved by the VP, in violation of the requirement in 3 USC 15 that after the vote in the separate houses, 'they shall immediately again meet.'

> So now that the precedent has been set that the Electoral Count Act is not quite so sacrosanct as was previously claimed, I implore you to consider one more relatively minor violation and adjourn for 10 days to allow the legislatures to finish their investigations, as well as to allow a full forensic audit of the massive amount of illegal activity that has occurred here.  If none of that moves the needle, at least a good portion of the 75 million people who supported President Trump will have seen a process that allowed the illegality to be aired.

> John"

This was an overt act in furtherance of the conspiracy.

## Act 142.

On or about the **7th day of January 2021**, **CATHLEEN ALSTON LATHAM** sent a text message to the Chief Operations Officer of SullivanStrickler LLC with the address for the Douglas Municipal Airport in Coffee County, Georgia, to coordinate picking up **SCOTT GRAHAM HALL** from the airport and driving him to the Coffee County Board of Elections & Registration Office for the purpose of assisting with the unlawful breach of election equipment at the Coffee County Board of Elections & Registration Office. This was an act of racketeering activity under O.C.G.A. § 16-14-3(5)(B) and an overt act in furtherance of the conspiracy.

## Act 143.

On or about the **7th day of January 2021**, **SCOTT GRAHAM HALL** and unindicted co-conspirator Individual 24, whose identity is known to the Grand Jury, flew from DeKalb-Peachtree Airport in DeKalb County, Georgia, to Douglas Municipal Airport in Coffee County, Georgia, for the purpose of assisting with the unlawful breach of election equipment at the Coffee County Board of Elections & Registration Office. This was an act of racketeering activity under O.C.G.A. § 16-14-3(5)(B) and an overt act in furtherance of the conspiracy.

## Act 144.

On or about the **7th day of January 2021**, **SIDNEY KATHERINE POWELL**, **CATHLEEN ALSTON LATHAM**, **SCOTT GRAHAM HALL**, and **MISTY HAMPTON** committed the felony offense of **INTERFERENCE WITH PRIMARIES AND ELECTIONS**, in violation of **O.C.G.A. § 21-2-566**, in Coffee County, Georgia, by willfully and unlawfully tampering with electronic ballot markers and tabulating machines in Coffee County, Georgia. This was an overt act in furtherance of the conspiracy.

## Act 145.

On or about the **7th day of January 2021**, **SIDNEY KATHERINE POWELL**, **CATHLEEN ALSTON LATHAM**, **SCOTT GRAHAM HALL**, and **MISTY HAMPTON** committed the felony offense of **UNLAWFUL POSSESSION OF BALLOTS**, in violation of **O.C.G.A. § 21-2-574**, in Coffee County, Georgia, by causing certain members of the conspiracy, who were not officers charged by law with the care of ballots and who were not persons entrusted by any such officer with the care of ballots for a purpose required by law, to possess official ballots outside of the polling place in Coffee County, Georgia. This was an overt act in furtherance of the conspiracy.

## Act 146.

On or about the **7th day of January 2021**, **SIDNEY KATHERINE POWELL**, **CATHLEEN ALSTON LATHAM**, **SCOTT GRAHAM HALL**, and **MISTY HAMPTON** committed the felony offense of **COMPUTER THEFT**, in violation of **O.C.G.A. § 16-9-93(a)**, in Coffee County, Georgia, by using a computer with knowledge that such use was without authority and with the intention of taking and appropriating information, data, and software, the property of Dominion Voting Systems Corporation in Coffee County, Georgia. This was an act of racketeering activity under O.C.G.A. § 16-14-3(5)(A)(xix) and an overt act in furtherance of the conspiracy.

## Act 147.

On or about the **7th day of January 2021**, **SIDNEY KATHERINE POWELL**, **CATHLEEN ALSTON LATHAM**, **SCOTT GRAHAM HALL**, and **MISTY HAMPTON** committed the felony offense of **COMPUTER TRESPASS**, in violation of **O.C.G.A. § 16-9-93(b)**, in Coffee County, Georgia, by using a computer with knowledge that such use was without authority and with the intention of removing voter data and Dominion Voting Systems Corporation data from said computer in Coffee County, Georgia. This was an act of racketeering activity under O.C.G.A. § 16-14-3(5)(A)(xix) and an overt act in furtherance of the conspiracy.

## Act 148.

On or about the **7th day of January 2021, SIDNEY KATHERINE POWELL, CATHLEEN ALSTON LATHAM, SCOTT GRAHAM HALL,** and **MISTY HAMPTON** committed the felony offense of **COMPUTER INVASION OF PRIVACY**, in violation of **O.C.G.A. § 16-9-93(c)**, in Coffee County, Georgia, by using a computer with the intention of examining personal voter data with knowledge that such examination was without authority. This was an act of racketeering activity under O.C.G.A. § 16-14-3(5)(A)(xix) and an overt act in furtherance of the conspiracy.

## Act 149.

On and between the **6th day of December 2020 and the 7th day of January 2021, SIDNEY KATHERINE POWELL, CATHLEEN ALSTON LATHAM, SCOTT GRAHAM HALL,** and **MISTY HAMPTON** committed the felony offense of **CONSPIRACY TO DEFRAUD THE STATE**, in violation of **O.C.G.A. § 16-10-21**, in Coffee County, Georgia, by unlawfully conspiring and agreeing to commit theft of voter data, property which was under the control of Georgia Secretary of State Brad Raffensperger, a state officer, in his official capacity. This was an act of racketeering activity under O.C.G.A. § 16-14-3(5)(B) and an overt act in furtherance of the conspiracy.

## Act 150.

On or about the **9th day of January 2021, the 10th day of January 2021, the 11th day of January 2021, and the 13th day of January 2021,** unindicted co-conspirator Individual 25, whose identity is known to the Grand Jury, unlawfully accessed certain data copied from Dominion Voting Systems equipment at the Coffee County Board of Elections & Registration Office in Coffee County, Georgia, by downloading said data from a server maintained by SullivanStrickler LLC. This was an act of racketeering activity under O.C.G.A. § 16-14-3(5)(B) and an overt act in furtherance of the conspiracy.

## Act 151.

On or about the **9th day of January 2021, the 10th day of January 2021, the 11th day of January 2021, the 18th day of January 2021, and the 19th day of January 2021,** unindicted co-conspirator Individual 26, whose identity is unknown to the Grand Jury, unlawfully accessed certain data copied from Dominion Voting Systems equipment at the Coffee County Board of Elections & Registration Office in Coffee County, Georgia, by downloading said data from a server maintained by SullivanStrickler LLC. This was an act of racketeering activity under O.C.G.A. § 16-14-3(5)(B) and an overt act in furtherance of the conspiracy.

## Act 152.

On or about the **10th day of January 2021, the 12th day of January 2021, the 13th day of January 2021, the 25th day of February 2021, and the 26th day of February 2021,** unindicted co-conspirator Individual 27, whose identity is unknown to the Grand Jury, unlawfully accessed certain data copied from Dominion Voting Systems equipment at the Coffee County Board of Elections & Registration Office in Coffee County, Georgia, by downloading said data from a server maintained by SullivanStrickler LLC. This was an act of racketeering activity under O.C.G.A. § 16-14-3(5)(B) and an overt act in furtherance of the conspiracy.

## Act 153.

On or about the **13th day of January 2021,** unindicted co-conspirator Individual 28, whose identity is known to the Grand Jury, unlawfully accessed certain data copied from Dominion Voting Systems equipment at the Coffee County Board of Elections & Registration Office in Coffee County, Georgia, by downloading said data from a server maintained by SullivanStrickler LLC. This was an act of racketeering activity under O.C.G.A. § 16-14-3(5)(B) and an overt act in furtherance of the conspiracy.

## Act 154.

On or about the **18th day of January 2021, MISTY HAMPTON** allowed unindicted co-conspirators Individual 25 and Individual 29, whose identities are known to the Grand Jury, to access non-public areas of the Coffee County Board of Elections & Registration Office in Coffee County, Georgia, and facilitated their access to Dominion Voting Systems equipment. This was an overt act in furtherance of the conspiracy.

## Act 155.

On or about the **22nd day of April 2021,** unindicted co-conspirator Individual 28, whose identity is known to the Grand Jury, sent an e-mail to the Chief Operations Officer of SullivanStrickler LLC directing him to transmit all data copied from Dominion Voting Systems equipment at the Coffee County Board of Elections & Registration Office in Coffee County, Georgia, to unindicted co-conspirator Individual 30, whose identity is known to the Grand Jury, an attorney associated with **SIDNEY KATHERINE POWELL** and the Trump Campaign. This was an act of racketeering activity under O.C.G.A. § 16-14-3(5)(B) and an overt act in furtherance of the conspiracy.

### Act 156.

On or about the **17th day of September 2021**, **DONALD JOHN TRUMP** committed the felony offense of **SOLICITATION OF VIOLATION OF OATH BY PUBLIC OFFICER**, in violation of **O.C.G.A. §§ 16-4-7 and 16-10-1**, in Fulton County, Georgia, by unlawfully soliciting, requesting, and importuning Georgia Secretary of State Brad Raffensperger, a public officer, to engage in conduct constituting the felony offense of Violation of Oath by Public Officer, O.C.G.A. § 16-10-1, by unlawfully "decertifying the Election, or whatever the correct legal remedy is, and announce the true winner," in willful and intentional violation of the terms of the oath of said person as prescribed by law, with intent that said person engage in said conduct. This was an overt act in furtherance of the conspiracy.

### Act 157.

On or about the **17th day of September 2021**, **DONALD JOHN TRUMP** committed the felony offense of **FALSE STATEMENTS AND WRITINGS**, in violation of **O.C.G.A. § 16-10-20**, in Fulton County, Georgia, by knowingly, willfully, and unlawfully making the following false statement and representation to Georgia Secretary of State Brad Raffensperger:

1. "As stated to you previously, the number of false and/or irregular votes is far greater than needed to change the Georgia election result";

said statement being within the jurisdiction of the Office of the Georgia Secretary of State and the Georgia Bureau of Investigation, departments and agencies of state government, and county and city law enforcement agencies. This was an act of racketeering activity under O.C.G.A. § 16-14-3(5)(A)(xxii) and an overt act in furtherance of the conspiracy.

## Act 158.

On or about the **25th day of April 2022, DAVID JAMES SHAFER** committed the felony offense of **FALSE STATEMENTS AND WRITINGS**, in violation of **O.C.G.A. § 16-10-20**, in Fulton County, Georgia, by knowingly, willfully, and unlawfully making at least one of the following false statements and representations in the presence of Fulton County District Attorney's Office investigators:

1. That he "attended and convened" the December 14, 2020, meeting of Trump presidential elector nominees in Fulton County, Georgia, but that he did not "call each of the individual members and notify them of the meeting or make any of the other preparations necessary for the meeting";

2. That a court reporter was not present at the December 14, 2020, meeting of Trump presidential elector nominees in Fulton County, Georgia;

said statements being within the jurisdiction of the Fulton County District Attorney's Office, a department and agency of the government of a county of this state. This was an act of racketeering activity under O.C.G.A. § 16-14-3(5)(A)(xxii) and an overt act in furtherance of the conspiracy.

## Act 159.

On or about the **7th day of May 2022, SIDNEY KATHERINE POWELL** made at least one of the following false statements and representations in a sworn deposition with the United States House of Representatives Select Committee to Investigate the January 6th Attack on the United States Capitol:

1. That she "didn't have any role in really setting up" efforts to access voting machines in Coffee County, Georgia, or Antrim County, Michigan;

2. That she was aware there was an "effort by some people" to get access to voting machines in Georgia but that she did not "know what happened with that" and did not "remember whether that was Rudy or other folks."

This was an overt act in furtherance of the conspiracy.

## Act 160.

On or about the **1st day of September 2022**, **CATHLEEN ALSTON LATHAM** committed the felony offense of **PERJURY**, in violation of **O.C.G.A. § 16-10-70(a)**, in Houston County, Georgia, by knowingly, willfully, and unlawfully making at least one of the following false statements in a deposition in the matter of Curling v. Raffensperger, Case 1:17-cv-02989-AT in the United States District Court for the Northern District of Georgia, a judicial proceeding, after having been administered a lawful oath:

1. That she was only present at the Coffee County Board of Elections & Registration Office in Coffee County, Georgia, for "just a few minutes" on January 7, 2021;

2. That she only "walked into the front part" of the Coffee County Board of Elections & Registration Office on January 7, 2021, and "didn't go into the office";

3. That she had "no idea" if employees of SullivanStrickler met Eric Chaney at the Coffee County Board of Elections & Registration Office on January 7, 2021;

4. That she did not see Misty Hampton at the Coffee County Board of Elections & Registration Office on January 7, 2021;

5. That her only interaction with Scott Hall at the Coffee County Board of Elections & Registration Office on January 7, 2021, was meeting him, speaking to him outside of the office, and then leaving the office;

6. That she did not see Scott Hall speak to anyone other than herself at the Coffee County Board of Elections & Registration Office on January 7, 2021;

said statements being material to the accused's own involvement in the January 7, 2021, unlawful breach of election equipment at the Coffee County Board of Elections & Registration Office and to the accused's communications with others involved, the issues in question. This was an act of racketeering activity under O.C.G.A. § 16-14-3(5)(A)(xxv) and an overt act in furtherance of the conspiracy.

70

## Act 161.

On or about the **15th day of September 2022**, **ROBERT DAVID CHEELEY** committed the felony offense of **PERJURY**, in violation of **O.C.G.A. § 16-10-70(a)**, in Fulton County, Georgia, by knowingly, willfully, and unlawfully making at least one of the following false statements before the Fulton County Special Purpose Grand Jury, a judicial proceeding, after having been administered a lawful oath:

1. That he was unaware of the December 14, 2020, meeting of Trump presidential elector nominees in Fulton County, Georgia, until after the meeting had already taken place;

2. That he had no substantive conversations with anyone concerning the December 14, 2020, meeting of Trump presidential elector nominees in Fulton County, Georgia, until after the meeting had already taken place;

3. That he never suggested to anyone that the Trump presidential elector nominees in Georgia should meet on December 14, 2020;

4. That the only communication he had with John Eastman concerning the November 3, 2020, presidential election was for the purpose of connecting Eastman to Georgia Senator Brandon Beach and unindicted co-conspirator Individual 8, whose identity is known to the Grand Jury, for possible legal representation;

5. That he never worked to connect John Eastman with any Georgia legislators other than Georgia Senator Brandon Beach and unindicted co-conspirator Individual 8, whose identity is known to the Grand Jury;

said statements being material to the accused's own involvement in the December 14, 2020, meeting of Trump presidential elector nominees in Fulton County, Georgia, and to the accused's communications with others involved in the meeting, the issues in question. This was an act of racketeering activity under O.C.G.A. § 16-14-3(5)(A)(xxv) and an overt act in furtherance of the conspiracy.

\*     \*     \*

The acts set forth above were committed in furtherance of the conspiracy alleged above and had the same and similar intents, results, accomplices, victims, and methods of commission and otherwise were interrelated by distinguishing characteristics and were not isolated acts.

71

## COUNT 2 of 41

And the Grand Jurors aforesaid, in the name and behalf of the citizens of Georgia, do charge and accuse **RUDOLPH WILLIAM LOUIS GIULIANI, JOHN CHARLES EASTMAN, JENNA LYNN ELLIS,** and **RAY STALLINGS SMITH III** with the offense of **SOLICITATION OF VIOLATION OF OATH BY PUBLIC OFFICER, O.C.G.A. §§ 16-4-7 & 16-10-1,** for the said accused, individually and as persons concerned in the commission of a crime, and together with unindicted co-conspirators, in the County of Fulton and State of Georgia, on the **3rd day of December 2020,** unlawfully solicited, requested, and importuned certain public officers then serving as elected members of the Georgia Senate and present at a Senate Judiciary Subcommittee meeting, including unindicted co-conspirator Individual 8, whose identity is known to the Grand Jury, Senators Lee Anderson, Brandon Beach, Matt Brass, Greg Dolezal, Steve Gooch, Tyler Harper, Bill Heath, Jen Jordan, John F. Kennedy, William Ligon, Elena Parent, Michael Rhett, Carden Summers, and Blake Tillery, to engage in conduct constituting the felony offense of Violation of Oath by Public Officer, O.C.G.A. § 16-10-1, by unlawfully appointing presidential electors from the State of Georgia, in willful and intentional violation of the terms of the oath of said persons as prescribed by law, with intent that said persons engage in said conduct, said date being a material element of the offense, contrary to the laws of said State, the good order, peace and dignity thereof;

## COUNT 3 of 41

And the Grand Jurors aforesaid, in the name and behalf of the citizens of Georgia, do charge and accuse **RUDOLPH WILLIAM LOUIS GIULIANI** with the offense of **FALSE STATEMENTS AND WRITINGS, O.C.G.A. § 16-10-20,** for the said accused, in the County of Fulton and State of Georgia, on or about the **3rd day of December 2020,** knowingly, willfully, and unlawfully made at least one of the following false statements and representations to members of the Georgia Senate present at a Senate Judiciary Subcommittee meeting:

1. That at least 96,600 mail-in ballots were counted in the November 3, 2020, presidential election in Georgia, despite there being no record of those ballots having been returned to a county elections office;

2. That a Dominion Voting Systems machine used in the November 3, 2020, presidential election in Antrim County, Michigan, mistakenly recorded 6,000 votes for Joseph R. Biden when the votes were actually cast for Donald Trump;

said statements being within the jurisdiction of the Office of the Georgia Secretary of State and the Georgia Bureau of Investigation, departments and agencies of state government, and county and city law enforcement agencies, contrary to the laws of said State, the good order, peace and dignity thereof;

## COUNT 4 of 41

And the Grand Jurors aforesaid, in the name and behalf of the citizens of Georgia, do charge and accuse **RAY STALLINGS SMITH III** with the offense of **FALSE STATEMENTS AND WRITINGS, O.C.G.A. § 16-10-20,** for the said accused, in the County of Fulton and State of Georgia, on or about the **3rd day of December 2020,** knowingly, willfully, and unlawfully made at least one of the following false statements and representations to members of the Georgia Senate present at a Senate Judiciary Subcommittee meeting:

1. That 2,506 felons voted illegally in the November 3, 2020, presidential election in Georgia;

2. That 66,248 underage people illegally registered to vote before their seventeenth birthday prior to the November 3, 2020, presidential election in Georgia;

3. That at least 2,423 people voted in the November 3, 2020, presidential election in Georgia who were not listed as registered to vote;

4. That 1,043 people voted in the November 3, 2020, presidential election in Georgia who had illegally registered to vote using a post office box;

5. That 10,315 or more dead people voted in the November 3, 2020, presidential election in Georgia;

6. That Fulton County election workers at State Farm Arena ordered poll watchers and members of the media to leave the tabulation area on the night of November 3, 2020, and continued to operate after ordering everyone to leave;

said statements being within the jurisdiction of the Office of the Georgia Secretary of State and the Georgia Bureau of Investigation, departments and agencies of state government, and county and city law enforcement agencies, contrary to the laws of said State, the good order, peace and dignity thereof;

## COUNT 5 of 41

And the Grand Jurors aforesaid, in the name and behalf of the citizens of Georgia, do charge and accuse **DONALD JOHN TRUMP** with the offense of **SOLICITATION OF VIOLATION OF OATH BY PUBLIC OFFICER, O.C.G.A. §§ 16-4-7 & 16-10-1,** for the said accused, in the County of Fulton and State of Georgia, on or about the **7th day of December 2020,** unlawfully solicited, requested, and importuned Speaker of the Georgia House of Representatives David Ralston, a public officer, to engage in conduct constituting the felony offense of Violation of Oath by Public Officer, O.C.G.A. § 16-10-1, by calling for a special session of the Georgia General Assembly for the purpose of unlawfully appointing presidential electors from the State of Georgia, in willful and intentional violation of the terms of the oath of said person as prescribed by law, with intent that said person engage in said conduct, contrary to the laws of said State, the good order, peace and dignity thereof;

## COUNT 6 of 41

And the Grand Jurors aforesaid, in the name and behalf of the citizens of Georgia, do charge and accuse **RUDOLPH WILLIAM LOUIS GIULIANI** and **RAY STALLINGS SMITH III** with the offense of **SOLICITATION OF VIOLATION OF OATH BY PUBLIC OFFICER, O.C.G.A. §§ 16-4-7 & 16-10-1,** for the said accused, individually and as persons concerned in the commission of a crime, and together with unindicted co-conspirators, in the County of Fulton and State of Georgia, on the **10th day of December 2020,** unlawfully solicited, requested, and importuned certain public officers then serving as elected members of the Georgia House of Representatives and present at a House Governmental Affairs Committee meeting, including Representatives Shaw Blackmon, Jon Burns, Barry Fleming, Todd Jones, Bee Nguyen, Mary Margaret Oliver, Alan Powell, Renitta Shannon, Robert Trammell, Scot Turner, and Bruce Williamson, to engage in conduct constituting the felony offense of Violation of Oath by Public Officer, O.C.G.A. § 16-10-1, by unlawfully appointing presidential electors from the State of Georgia, in willful and intentional violation of the terms of the oath of said persons as prescribed by law, with intent that said persons engage in said conduct, said date being a material element of the offense, contrary to the laws of said State, the good order, peace and dignity thereof;

**COUNT 7 of 41**

And the Grand Jurors aforesaid, in the name and behalf of the citizens of Georgia, do charge and accuse **RUDOLPH WILLIAM LOUIS GIULIANI** with the offense of **FALSE STATEMENTS AND WRITINGS, O.C.G.A. § 16-10-20,** for the said accused, in the County of Fulton and State of Georgia, on or about the **10th day of December 2020,** knowingly, willfully, and unlawfully made at least one of the following false statements and representations to members of the Georgia House of Representatives present at a House Governmental Affairs Committee meeting:

1. That it is quite clear from the State Farm Arena video from November 3, 2020, that Fulton County election workers were stealing votes and that Georgia officials were covering up a crime in plain sight;

2. That at State Farm Arena on November 3, 2020, Democratic officials "got rid of all of the reporters, all the observers, anyone that couldn't be trusted," used the excuse of a watermain break, cleared out the voting area and then "went about their dirty, crooked business";

3. That between 12,000 and 24,000 ballots were illegally counted by Fulton County election workers at State Farm Arena on November 3, 2020;

4. That in Michigan, there were 700,000 more ballots counted than were sent out to voters in the November 3, 2020, presidential election, which was accounted for by quadruple counting ballots;

5. That Ruby Freeman, Shaye Moss, and an unidentified man were "quite obviously surreptitiously passing around USB ports as if they're vials of heroin or cocaine" at State Farm Arena to be used to "infiltrate the crooked Dominion voting machines";

6. That 96,600 mail-in ballots were counted in the November 3, 2020, presidential election in Georgia, despite there being no record of those ballots having been returned to a county elections office;

said statements being within the jurisdiction of the Office of the Georgia Secretary of State and the Georgia Bureau of Investigation, departments and agencies of state government, and county and city law enforcement agencies, contrary to the laws of said State, the good order, peace and dignity thereof;

## COUNT 8 of 41

And the Grand Jurors aforesaid, in the name and behalf of the citizens of Georgia, do charge and accuse **DAVID JAMES SHAFER, SHAWN MICAH TRESHER STILL,** and **CATHLEEN ALSTON LATHAM** with the offense of **IMPERSONATING A PUBLIC OFFICER, O.C.G.A. § 16-10-23,** for the said accused, individually and as persons concerned in the commission of a crime, and together with unindicted co-conspirators, in the County of Fulton and State of Georgia, on or about the **14th day of December 2020,** unlawfully falsely held themselves out as the duly elected and qualified presidential electors from the State of Georgia, public officers, with intent to mislead the President of the United States Senate, the Archivist of the United States, the Georgia Secretary of State, and the Chief Judge of the United States District Court for the Northern District of Georgia into believing that they actually were such officers by placing in the United States mail to said persons a document titled "CERTIFICATE OF THE VOTES OF THE 2020 ELECTORS FROM GEORGIA," contrary to the laws of said State, the good order, peace and dignity thereof;

## COUNT 9 of 41

And the Grand Jurors aforesaid, in the name and behalf of the citizens of Georgia, do charge and accuse **DONALD JOHN TRUMP, RUDOLPH WILLIAM LOUIS GIULIANI, JOHN CHARLES EASTMAN, KENNETH JOHN CHESEBRO, RAY STALLINGS SMITH III, ROBERT DAVID CHEELEY,** and **MICHAEL A. ROMAN** with the offense of **CONSPIRACY TO COMMIT IMPERSONATING A PUBLIC OFFICER, O.C.G.A. §§ 16-4-8 & 16-10-23,** for the said accused, individually and as persons concerned in the commission of a crime, and together with indicted and unindicted co-conspirators, in the County of Fulton and State of Georgia, on and between the **6th day of December 2020 and the 14th day of December 2020,** unlawfully conspired to cause certain individuals to falsely hold themselves out as the duly elected and qualified presidential electors from the State of Georgia, public officers, with intent to mislead the President of the United States Senate, the Archivist of the United States, the Georgia Secretary of State, and the Chief Judge of the United States District Court for the Northern District of Georgia into believing that they actually were such officers;

And the Defendants named in Count 8, acting as co-conspirators, as described above and incorporated by reference as if fully set forth herein, falsely held themselves out as said public officers by placing in the United States mail to said persons a document titled "CERTIFICATE OF THE VOTES OF THE 2020 ELECTORS FROM GEORGIA" in Fulton County, Georgia, which was an overt act to effect the object of the conspiracy, contrary to the laws of said State, the good order, peace and dignity thereof;

76

## COUNT 10 of 41

And the Grand Jurors aforesaid, in the name and behalf of the citizens of Georgia, do charge and accuse **DAVID JAMES SHAFER, SHAWN MICAH TRESHER STILL**, and **CATHLEEN ALSTON LATHAM** with the offense of **FORGERY IN THE FIRST DEGREE, O.C.G.A. § 16-9-1(b)**, for the said accused, individually and as persons concerned in the commission of a crime, and together with unindicted co-conspirators, in the County of Fulton and State of Georgia, on or about the **14th day of December 2020**, unlawfully and with the intent to defraud, knowingly made a document titled "CERTIFICATE OF THE VOTES OF THE 2020 ELECTORS FROM GEORGIA," a writing other than a check, in such manner that the writing as made purports to have been made by authority of the duly elected and qualified presidential electors from the State of Georgia, who did not give such authority, and uttered and delivered said document to the Archivist of the United States, contrary to the laws of said State, the good order, peace and dignity thereof;

## COUNT 11 of 41

And the Grand Jurors aforesaid, in the name and behalf of the citizens of Georgia, do charge and accuse **DONALD JOHN TRUMP, RUDOLPH WILLIAM LOUIS GIULIANI, JOHN CHARLES EASTMAN, KENNETH JOHN CHESEBRO, RAY STALLINGS SMITH III, ROBERT DAVID CHEELEY**, and **MICHAEL A. ROMAN** with the offense of **CONSPIRACY TO COMMIT FORGERY IN THE FIRST DEGREE, O.C.G.A. §§ 16-4-8 & 16-9-1(b)**, for the said accused, individually and as persons concerned in the commission of a crime, and together with indicted and unindicted co-conspirators, in the County of Fulton and State of Georgia, on and between the **6th day of December 2020 and the 14th day of December 2020**, unlawfully conspired, with the intent to defraud, to knowingly make a document titled "CERTIFICATE OF THE VOTES OF THE 2020 ELECTORS FROM GEORGIA," a writing other than a check, in such manner that the writing as made purports to have been made by authority of the duly elected and qualified presidential electors from the State of Georgia, who did not give such authority, and to utter and deliver said document to the Archivist of the United States;

And the Defendants named in Count 10, acting as co-conspirators, as described above and incorporated by reference as if fully set forth herein, made said document in Fulton County, Georgia, and uttered and delivered said document to the Archivist of the United States in Fulton County, Georgia, which were overt acts to effect the object of the conspiracy, contrary to the laws of said State, the good order, peace and dignity thereof;

## COUNT 12 of 41

And the Grand Jurors aforesaid, in the name and behalf of the citizens of Georgia, do charge and accuse **DAVID JAMES SHAFER, SHAWN MICAH TRESHER STILL,** and **CATHLEEN ALSTON LATHAM** with the offense of **FALSE STATEMENTS AND WRITINGS, O.C.G.A. § 16-10-20,** for the said accused, individually and as persons concerned in the commission of a crime, and together with unindicted co-conspirators, in the County of Fulton and State of Georgia, on or about the **14th day of December 2020,** knowingly, willfully, and unlawfully made and used a false document titled "CERTIFICATE OF THE VOTES OF THE 2020 ELECTORS FROM GEORGIA," with knowledge that said document contained the false statement, "WE, THE UNDERSIGNED, being the duly elected and qualified Electors for President and Vice President of the United States of America from the State of Georgia, do hereby certify the following," said document being within the jurisdiction of the Office of the Georgia Secretary of State and the Office of the Governor of Georgia, departments and agencies of state government, contrary to the laws of said State, the good order, peace and dignity thereof;

## COUNT 13 of 41

And the Grand Jurors aforesaid, in the name and behalf of the citizens of Georgia, do charge and accuse **DONALD JOHN TRUMP, RUDOLPH WILLIAM LOUIS GIULIANI, JOHN CHARLES EASTMAN, KENNETH JOHN CHESEBRO, RAY STALLINGS SMITH III, ROBERT DAVID CHEELEY,** and **MICHAEL A. ROMAN** with the offense of **CONSPIRACY TO COMMIT FALSE STATEMENTS AND WRITINGS, O.C.G.A. §§ 16-4-8 & 16-10-20,** for the said accused, individually and as persons concerned in the commission of a crime, and together with indicted and unindicted co-conspirators, in the County of Fulton and State of Georgia, on and between the **6th day of December 2020 and the 14th day of December 2020,** unlawfully conspired to knowingly and willfully make and use a false document titled "CERTIFICATE OF THE VOTES OF THE 2020 ELECTORS FROM GEORGIA," with knowledge that said document contained the false statement, "WE, THE UNDERSIGNED, being the duly elected and qualified Electors for President and Vice President of the United States of America from the State of Georgia, do hereby certify the following," said document being within the jurisdiction of the Office of the Georgia Secretary of State and the Office of the Governor of Georgia, departments and agencies of state government;

And the Defendants named in Count 12, acting as co-conspirators, as described above and incorporated by reference as if fully set forth herein, made and used said document in Fulton County, Georgia, which were overt acts to effect the object of the conspiracy, contrary to the laws of said State, the good order, peace and dignity thereof;

## COUNT 14 of 41

And the Grand Jurors aforesaid, in the name and behalf of the citizens of Georgia, do charge and accuse **DAVID JAMES SHAFER, SHAWN MICAH TRESHER STILL**, and **CATHLEEN ALSTON LATHAM** with the offense of **CRIMINAL ATTEMPT TO COMMIT FILING FALSE DOCUMENTS, O.C.G.A. §§ 16-4-1 & 16-10-20.1(b)(1)**, for the said accused, individually and as persons concerned in the commission of a crime, and together with unindicted co-conspirators, in the County of Fulton and State of Georgia, on or about the **14th day of December 2020**, unlawfully, with intent to commit the crime of Filing False Documents, O.C.G.A. § 16-10-20.1(b)(1), placed in the United States mail a document titled "CERTIFICATE OF THE VOTES OF THE 2020 ELECTORS FROM GEORGIA," addressed to Chief Judge, U.S. District Court, Northern District of Georgia, 2188 Richard D. Russell Federal Office Building and U.S. Courthouse, 75 Ted Turner Drive, SW, Atlanta, GA 30303, a substantial step toward the commission of Filing False Documents, O.C.G.A. § 16-10-20.1(b)(1), with intent to knowingly file, enter, and record said document in a court of the United States, having reason to know that said document contained the materially false statement, "WE, THE UNDERSIGNED, being the duly elected and qualified Electors for President and Vice President of the United States of America from the State of Georgia, do hereby certify the following," contrary to the laws of said State, the good order, peace and dignity thereof;

## COUNT 15 of 41

And the Grand Jurors aforesaid, in the name and behalf of the citizens of Georgia, do charge and accuse **DONALD JOHN TRUMP, RUDOLPH WILLIAM LOUIS GIULIANI, JOHN CHARLES EASTMAN, KENNETH JOHN CHESEBRO, RAY STALLINGS SMITH III, ROBERT DAVID CHEELEY**, and **MICHAEL A. ROMAN** with the offense of **CONSPIRACY TO COMMIT FILING FALSE DOCUMENTS, O.C.G.A. §§ 16-4-8 & 16-10-20.1(b)(1)**, for the said accused, individually and as persons concerned in the commission of a crime, and together with indicted and unindicted co-conspirators, in the County of Fulton and State of Georgia, on and between the **6th day of December 2020 and the 14th day of December 2020**, unlawfully conspired to knowingly file, enter, and record a document titled "CERTIFICATE OF THE VOTES OF THE 2020 ELECTORS FROM GEORGIA," in a court of the United States, having reason to know that said document contained the materially false statement, "WE, THE UNDERSIGNED, being the duly elected and qualified Electors for President and Vice President of the United States of America from the State of Georgia, do hereby certify the following";

And the Defendants named in Count 14, acting as co-conspirators, as described above and incorporated by reference as if fully set forth herein, placed in the United States mail said document, addressed to Chief Judge, U.S. District Court, Northern District of Georgia, 2188 Richard D. Russell Federal Office Building and U.S. Courthouse, 75 Ted Turner Drive, SW, Atlanta, GA 30303, in Fulton County, Georgia, which was an overt act to effect the object of the conspiracy, contrary to the laws of said State, the good order, peace and dignity thereof;

## COUNT 16 of 41

And the Grand Jurors aforesaid, in the name and behalf of the citizens of Georgia, do charge and accuse **DAVID JAMES SHAFER** and **SHAWN MICAH TRESHER STILL** with the offense of **FORGERY IN THE FIRST DEGREE, O.C.G.A. § 16-9-1(b)**, for the said accused, individually and as persons concerned in the commission of a crime, and together with unindicted co-conspirators, in the County of Fulton and State of Georgia, on or about the **14th day of December 2020**, unlawfully and with the intent to defraud, knowingly made a document titled "RE: Notice of Filling of Electoral College Vacancy," a writing other than a check, in such manner that the writing as made purports to have been made by the authority of the duly elected and qualified presidential electors from the State of Georgia, who did not give such authority, and uttered and delivered said document to the Archivist of the United States and the Office of the Governor of Georgia, contrary to the laws of said State, the good order, peace and dignity thereof;

## COUNT 17 of 41

And the Grand Jurors aforesaid, in the name and behalf of the citizens of Georgia, do charge and accuse **DONALD JOHN TRUMP, RUDOLPH WILLIAM LOUIS GIULIANI, JOHN CHARLES EASTMAN, KENNETH JOHN CHESEBRO, RAY STALLINGS SMITH III, ROBERT DAVID CHEELEY,** and **MICHAEL A. ROMAN** with the offense of **CONSPIRACY TO COMMIT FORGERY IN THE FIRST DEGREE, O.C.G.A. §§ 16-4-8 & 16-9-1(b)**, for the said accused, individually and as persons concerned in the commission of a crime, and together with indicted and unindicted co-conspirators, in the County of Fulton and State of Georgia, on and between the **6th day of December 2020 and the 14th day of December 2020**, unlawfully conspired, with the intent to defraud, to knowingly make a document titled "RE: Notice of Filling of Electoral College Vacancy," a writing other than a check, in such manner that the writing as made purports to have been made by the authority of the duly elected and qualified presidential electors from the State of Georgia, who did not give such authority, and to utter and deliver said document to the Archivist of the United States and the Office of the Governor of Georgia;

And the Defendants named in Count 16, acting as co-conspirators, as described above and incorporated by reference as if fully set forth herein, made said document in Fulton County, Georgia, and uttered and delivered said document to the Archivist of the United States and the Office of the Governor of Georgia in Fulton County, Georgia, which were overt acts to effect the object of the conspiracy, contrary to the laws of said State, the good order, peace and dignity thereof;

## COUNT 18 of 41

And the Grand Jurors aforesaid, in the name and behalf of the citizens of Georgia, do charge and accuse **DAVID JAMES SHAFER** and **SHAWN MICAH TRESHER STILL** with the offense of **FALSE STATEMENTS AND WRITINGS, O.C.G.A. § 16-10-20**, for the said accused, individually and as persons concerned in the commission of a crime, and together with unindicted co-conspirators, in the County of Fulton and State of Georgia, on or about the **14th day of December 2020**, knowingly, willfully, and unlawfully made and used a false document titled "RE: Notice of Filling of Electoral College Vacancy," with knowledge that said document contained the false statements that **DAVID JAMES SHAFER** was Chairman of the 2020 Georgia Electoral College Meeting and **SHAWN MICAH TRESHER STILL** was Secretary of the 2020 Georgia Electoral College Meeting, said document being within the jurisdiction of the Office of the Georgia Secretary of State and the Office of the Governor of Georgia, departments and agencies of state government, contrary to the laws of said State, the good order, peace and dignity thereof;

## COUNT 19 of 41

And the Grand Jurors aforesaid, in the name and behalf of the citizens of Georgia, do charge and accuse **DONALD JOHN TRUMP, RUDOLPH WILLIAM LOUIS GIULIANI, JOHN CHARLES EASTMAN, KENNETH JOHN CHESEBRO, RAY STALLINGS SMITH III, ROBERT DAVID CHEELEY** and **MICHAEL A. ROMAN** with the offense of **CONSPIRACY TO COMMIT FALSE STATEMENTS AND WRITINGS, O.C.G.A. §§ 16-4-8 & 16-10-20**, for the said accused, individually and as persons concerned in the commission of a crime, and together with indicted and unindicted co-conspirators, in the County of Fulton and State of Georgia, on and between the **6th day of December 2020 and the 14th day of December 2020**, unlawfully conspired to knowingly and willfully make and use a false document titled "RE: Notice of Filling of Electoral College Vacancy," with knowledge that said document contained the false statements that **DAVID JAMES SHAFER** was Chairman of the 2020 Georgia Electoral College Meeting and **SHAWN MICAH TRESHER STILL** was Secretary of the 2020 Georgia Electoral College Meeting, said document being within the jurisdiction of the Office of the Georgia Secretary of State and the Office of the Governor of Georgia, departments and agencies of state government;

And the Defendants named in Count 18, acting as co-conspirators, as described above and incorporated by reference as if fully set forth herein, made and used said document in Fulton County, Georgia, which were overt acts to effect the object of the conspiracy, contrary to the laws of said State, the good order, peace and dignity thereof;

## COUNT 20 of 41

And the Grand Jurors aforesaid, in the name and behalf of the citizens of Georgia, do charge and accuse **STEPHEN CLIFFGARD LEE** with the offense of **CRIMINAL ATTEMPT TO COMMIT INFLUENCING WITNESSES, O.C.G.A. §§ 16-4-1 & 16-10-93(b)(1)(A),** for the said accused, in the County of Fulton and State of Georgia, on the **14th day of December 2020**, unlawfully, with intent to commit the crime of Influencing Witnesses, O.C.G.A. § 16-10-93(b)(1)(A), traveled to the home of Ruby Freeman, a Fulton County, Georgia, election worker, and spoke to her neighbor, a substantial step toward the commission of Influencing Witnesses, O.C.G.A. § 16-10-93(b)(1)(A), with intent to knowingly engage in misleading conduct toward Ruby Freeman, by purporting to offer her help, and with intent to influence her testimony in an official proceeding in Fulton County, Georgia, concerning events at State Farm Arena in the November 3, 2020, presidential election in Georgia, said date being a material element of the offense, contrary to the laws of said State, the good order, peace and dignity thereof;

## COUNT 21 of 41

And the Grand Jurors aforesaid, in the name and behalf of the citizens of Georgia, do charge and accuse **STEPHEN CLIFFGARD LEE** with the offense of **CRIMINAL ATTEMPT TO COMMIT INFLUENCING WITNESSES, O.C.G.A. §§ 16-4-1 & 16-10-93(b)(1)(A),** for the said accused, in the County of Fulton and State of Georgia, on the **15th day of December 2020**, unlawfully, with intent to commit the crime of Influencing Witnesses, O.C.G.A. § 16-10-93(b)(1)(A), traveled to the home of Ruby Freeman, a Fulton County, Georgia, election worker, and knocked on her door, a substantial step toward the commission of Influencing Witnesses, O.C.G.A. § 16-10-93(b)(1)(A), with intent to knowingly engage in misleading conduct toward Ruby Freeman, by purporting to offer her help, and with intent to influence her testimony in an official proceeding in Fulton County, Georgia, concerning events at State Farm Arena in the November 3, 2020, presidential election in Georgia, said date being a material element of the offense, contrary to the laws of said State, the good order, peace and dignity thereof;

App.96

## COUNT 22 of 41

And the Grand Jurors aforesaid, in the name and behalf of the citizens of Georgia, do charge and accuse **JEFFREY BOSSERT CLARK** with the offense of **CRIMINAL ATTEMPT TO COMMIT FALSE STATEMENTS AND WRITINGS, O.C.G.A. §§ 16-4-1 & 16-10-20**, for the said accused, individually and as a person concerned in the commission of a crime, and together with unindicted co-conspirators, in the County of Fulton and State of Georgia, on and between the **28th day of December 2020 and the 2nd day of January 2021**, unlawfully, with intent to commit the crime of False Statements and Writings, O.C.G.A. § 16-10-20, knowingly and willfully made a false writing and document knowing the same to contain the false statement that the United States Department of Justice had "identified significant concerns that may have impacted the outcome of the election in multiple States, including the State of Georgia," said statement being within the jurisdiction of the Office of the Georgia Secretary of State and the Georgia Bureau of Investigation, departments and agencies of state government, and county and city law enforcement agencies;

And, on or about the **28th day of December 2020**, the said accused sent an e-mail to Acting United States Attorney General Jeffrey Rosen and Acting United States Deputy Attorney General Richard Donoghue and requested authorization to send said false writing and document to Georgia Governor Brian Kemp, Speaker of the Georgia House of Representatives David Ralston, and President Pro Tempore of the Georgia Senate Butch Miller;

And, on or about the **2nd day of January 2021**, the said accused met with Acting United States Attorney General Jeffrey Rosen and Acting United States Deputy Attorney General Richard Donoghue and requested authorization to send said false writing and document to Georgia Governor Brian Kemp, Speaker of the Georgia House of Representatives David Ralston, and President Pro Tempore of the Georgia Senate Butch Miller;

And said acts constituted substantial steps toward the commission of False Statements and Writings, O.C.G.A. § 16-10-20, and said conduct committed outside the state of Georgia constituted an attempt to commit a crime within the state of Georgia, pursuant to O.C.G.A. § 17-2-1(b)(2), contrary to the laws of said State, the good order, peace and dignity thereof;

## COUNT 23 of 41

And the Grand Jurors aforesaid, in the name and behalf of the citizens of Georgia, do charge and accuse **RUDOLPH WILLIAM LOUIS GIULIANI, RAY STALLINGS SMITH III,** and **ROBERT DAVID CHEELEY** with the offense of **SOLICITATION OF VIOLATION OF OATH BY PUBLIC OFFICER, O.C.G.A. §§ 16-4-7 & 16-10-1,** for the said accused, individually and as persons concerned in the commission of a crime, and together with unindicted co-conspirators, in the County of Fulton and State of Georgia, on the **30th day of December 2020,** unlawfully solicited, requested, and importuned certain public officers then serving as elected members of the Georgia Senate and present at a Senate Judiciary Subcommittee meeting, including unindicted co-conspirator Individual 8, whose identity is known to the Grand Jury, Senators Brandon Beach, Bill Heath, William Ligon, Michael Rhett, and Blake Tillery, to engage in conduct constituting the felony offense of Violation of Oath by Public Officer, O.C.G.A. § 16-10-1, by unlawfully appointing presidential electors from the State of Georgia, in willful and intentional violation of the terms of the oath of said persons as prescribed by law, with intent that said persons engage in said conduct, said date being a material element of the offense, contrary to the laws of said State, the good order, peace and dignity thereof;

## COUNT 24 of 41

And the Grand Jurors aforesaid, in the name and behalf of the citizens of Georgia, do charge and accuse **RUDOLPH WILLIAM LOUIS GIULIANI** with the offense of **FALSE STATEMENTS AND WRITINGS, O.C.G.A. § 16-10-20,** for the said accused, in the County of Fulton and State of Georgia, on or about the **30th day of December 2020,** knowingly, willfully, and unlawfully made at least one of the following false statements and representations to members of the Georgia Senate present at a Senate Judiciary Subcommittee meeting:

1. That Fulton County election workers fraudulently counted certain ballots as many as five times at State Farm Arena on November 3, 2020;

2. That 2,560 felons voted illegally in the November 3, 2020, presidential election in Georgia;

3. That 10,315 dead people voted in the November 3, 2020, presidential election in Georgia;

said statements being within the jurisdiction of the Office of the Georgia Secretary of State and the Georgia Bureau of Investigation, departments and agencies of state government, and county and city law enforcement agencies, contrary to the laws of said State, the good order, peace and dignity thereof;

## COUNT 25 of 41

And the Grand Jurors aforesaid, in the name and behalf of the citizens of Georgia, do charge and accuse **RAY STALLINGS SMITH III** with the offense of **FALSE STATEMENTS AND WRITINGS, O.C.G.A. § 16-10-20**, for the said accused, in the County of Fulton and State of Georgia, on or about the **30th day of December 2020**, knowingly, willfully, and unlawfully made at least one of the following false statements and representations to members of the Georgia Senate present at a Senate Judiciary Subcommittee meeting:

1. That Georgia Secretary of State General Counsel Ryan Germany stated that his office had sent letters to 8,000 people who voted illegally in the November 3, 2020, presidential election and told them not to vote in the January 5, 2021, runoff election;

2. That the Georgia Secretary of State admitted "that they had a 90% accuracy rate" in the November 3, 2020, presidential election and that "there's still a 10% margin that's not accurate";

said statements being within the jurisdiction of the Office of the Georgia Secretary of State and the Georgia Bureau of Investigation, departments and agencies of state government, and county and city law enforcement agencies, contrary to the laws of said State, the good order, peace and dignity thereof;

## COUNT 26 of 41

And the Grand Jurors aforesaid, in the name and behalf of the citizens of Georgia, do charge and accuse **ROBERT DAVID CHEELEY** with the offense of **FALSE STATEMENTS AND WRITINGS, O.C.G.A. § 16-10-20**, for the said accused, in the County of Fulton and State of Georgia, on or about the **30th day of December 2020**, knowingly, willfully, and unlawfully made at least one of the following false statements and representations to members of the Georgia Senate present at a Senate Judiciary Subcommittee meeting:

1. That poll watchers and media at State Farm Arena were told late in the evening of November 3, 2020, that the vote count was being suspended until the next morning and to go home because of "a major watermain break";

2. That Fulton County election workers at State Farm Arena "voted" the same ballots "over and over again" on November 3, 2020;

said statements being within the jurisdiction of the Office of the Georgia Secretary of State and the Georgia Bureau of Investigation, departments and agencies of state government, and county and city law enforcement agencies, contrary to the laws of said State, the good order, peace and dignity thereof;

## COUNT 27 of 41

And the Grand Jurors aforesaid, in the name and behalf of the citizens of Georgia, do charge and accuse **DONALD JOHN TRUMP** and **JOHN CHARLES EASTMAN** with the offense of **FILING FALSE DOCUMENTS, O.C.G.A. § 16-10-20.1(b)(1)**, for the said accused, individually and as persons concerned in the commission of a crime, and together with unindicted co-conspirators, in the County of Fulton and State of Georgia, on or about the **31st day of December 2020**, knowingly and unlawfully filed a document titled "VERIFIED COMPLAINT FOR EMERGENCY INJUNCTIVE AND DECLARATORY RELIEF" in the matter of Trump v. Kemp, Case 1:20-cv-05310-MHC, in the United States District Court for the Northern District of Georgia, a court of the United States, having reason to know that said document contained at least one of the following materially false statements:

1. That "as many as 2,506 felons with an uncompleted sentence" voted illegally in the November 3, 2020, presidential election in Georgia;

2. That "at least 66,247 underage" people voted illegally in the November 3, 2020, presidential election in Georgia;

3. That "at least 2,423 individuals" voted illegally in the November 3, 2020, presidential election in Georgia "who were not listed in the State's records as having been registered to vote";

4. That "at least 1,043 individuals" voted illegally in the November 3, 2020, presidential election "who had illegally registered to vote using a postal office box as their habitation";

5. That "as many as 10,315 or more" dead people voted in the November 3, 2020, presidential election in Georgia;

6. That "[d]eliberate misinformation was used to instruct Republican poll watchers and members of the press to leave the premises for the night at approximately 10:00 p.m. on November 3, 2020" at State Farm Arena in Fulton County, Georgia;

contrary to the laws of said State, the good order, peace and dignity thereof;

## COUNT 28 of 41

And the Grand Jurors aforesaid, in the name and behalf of the citizens of Georgia, do charge and accuse **DONALD JOHN TRUMP** and **MARK RANDALL MEADOWS** with the offense of **SOLICITATION OF VIOLATION OF OATH BY PUBLIC OFFICER, O.C.G.A. §§ 16-4-7 & 16-10-1,** for the said accused, individually and as persons concerned in the commission of a crime, and together with unindicted co-conspirators, in the County of Fulton and State of Georgia, on or about the **2nd day of January 2021,** unlawfully solicited, requested, and importuned Georgia Secretary of State Brad Raffensperger, a public officer, to engage in conduct constituting the felony offense of Violation of Oath by Public Officer, O.C.G.A. § 16-10-1, by unlawfully altering, unlawfully adjusting, and otherwise unlawfully influencing the certified returns for presidential electors for the November 3, 2020, presidential election in Georgia, in willful and intentional violation of the terms of the oath of said person as prescribed by law, with intent that said person engage in said conduct, contrary to the laws of said State, the good order, peace and dignity thereof;

**COUNT 29 of 41**

And the Grand Jurors aforesaid, in the name and behalf of the citizens of Georgia, do charge and accuse **DONALD JOHN TRUMP** with the offense of **FALSE STATEMENTS AND WRITINGS, O.C.G.A. § 16-10-20,** for the said accused, in the County of Fulton and State of Georgia, on or about the **2nd day of January 2021,** knowingly, willfully, and unlawfully made at least one of the following false statements and representations to Georgia Secretary of State Brad Raffensperger, Georgia Deputy Secretary of State Jordan Fuchs, and Georgia Secretary of State General Counsel Ryan Germany:

1. That anywhere from 250,000 to 300,000 ballots were dropped mysteriously into the rolls in the November 3, 2020, presidential election in Georgia;

2. That thousands of people attempted to vote in the November 3, 2020, presidential election in Georgia and were told they could not because a ballot had already been cast in their name;

3. That 4,502 people voted in the November 3, 2020, presidential election in Georgia who were not on the voter registration list;

4. That 904 people voted in the November 3, 2020, presidential election in Georgia who were registered at an address that was a post office box;

5. That Ruby Freeman was a professional vote scammer and a known political operative;

6. That Ruby Freeman, her daughter, and others were responsible for fraudulently awarding at least 18,000 ballots to Joseph R. Biden at State Farm Arena in the November 3, 2020, presidential election in Georgia;

7. That close to 5,000 dead people voted in the November 3, 2020, presidential election in Georgia;

8. That 139% of people voted in the November 3, 2020, presidential election in Detroit;

9. That 200,000 more votes were recorded than the number of people who voted in the November 3, 2020, presidential election in Pennsylvania;

10. That thousands of dead people voted in the November 3, 2020, presidential election in Michigan;

11. That Ruby Freeman stuffed the ballot boxes;

12. That hundreds of thousands of ballots had been "dumped" into Fulton County and another county adjacent to Fulton County in the November 3, 2020, presidential election in Georgia;

13. That he won the November 3, 2020, presidential election in Georgia by 400,000 votes;

said statements being within the jurisdiction of the Office of the Georgia Secretary of State and the Georgia Bureau of Investigation, departments and agencies of state government, contrary to the laws of said State, the good order, peace and dignity thereof;

## COUNT 30 of 41

And the Grand Jurors aforesaid, in the name and behalf of the citizens of Georgia, do charge and accuse **STEPHEN CLIFFGARD LEE, HARRISON WILLIAM PRESCOTT FLOYD**, and **TREVIAN C. KUTTI** with the offense of **CONSPIRACY TO COMMIT SOLICITATION OF FALSE STATEMENTS AND WRITINGS, O.C.G.A. §§ 16-4-8, 16-4-7, & 16-10-20**, for the said accused, individually and as persons concerned in the commission of a crime, and together with unindicted co-conspirators, in the County of Fulton and State of Georgia, on or about the **4th day of January 2021**, unlawfully conspired to solicit, request, and importune Ruby Freeman, a Fulton County, Georgia, election worker, to engage in conduct constituting the felony offense of False Statements and Writings, O.C.G.A. § 16-10-20, by knowingly and willfully making a false statement and representation concerning events at State Farm Arena in the November 3, 2020, presidential election in Georgia, said statement and representation being within the jurisdiction of the Office of the Georgia Secretary of State and the Georgia Bureau of Investigation, departments and agencies of state government, and county and city law enforcement agencies, with intent that said person engage in said conduct; and **TREVIAN C. KUTTI** traveled to Fulton County, Georgia, and placed a telephone call to Ruby Freeman while in Fulton County, Georgia, which were overt acts to effect the object of the conspiracy, contrary to the laws of said State, the good order, peace and dignity thereof;

## COUNT 31 of 41

And the Grand Jurors aforesaid, in the name and behalf of the citizens of Georgia, do charge and accuse **STEPHEN CLIFFGARD LEE, HARRISON WILLIAM PRESCOTT FLOYD** and **TREVIAN C. KUTTI** with the offense of **INFLUENCING WITNESSES, O.C.G.A. § 16-10-93(b)(1)(A)**, for the said accused, individually and as persons concerned in the commission of a crime, and together with unindicted co-conspirators, in the County of Fulton and State of Georgia, on or about the **4th day of January 2021**, knowingly and unlawfully engaged in misleading conduct toward Ruby Freeman, a Fulton County, Georgia, election worker, by stating that she needed protection and by purporting to offer her help, with intent to influence her testimony in an official proceeding in Fulton County, Georgia, concerning events at State Farm Arena in the November 3, 2020, presidential election in Georgia, contrary to the laws of said State, the good order, peace and dignity thereof;

## COUNT 32 of 41

And the Grand Jurors aforesaid, in the name and behalf of the citizens of Georgia, do charge and accuse **SIDNEY KATHERINE POWELL, CATHLEEN ALSTON LATHAM, SCOTT GRAHAM HALL,** and **MISTY HAMPTON** with the offense of **CONSPIRACY TO COMMIT ELECTION FRAUD, O.C.G.A. §§ 21-2-603 & 21-2-566,** for the said accused, individually and as persons concerned in the commission of a crime, and together with unindicted co-conspirators, in the County of Fulton and State of Georgia, on and between the **1st day of December 2020 and the 7th day of January 2021,** unlawfully conspired and agreed to willfully tamper with electronic ballot markers and tabulating machines in the State of Georgia;

And **SIDNEY KATHERINE POWELL** entered into a contract with SullivanStrickler LLC in Fulton County, Georgia, delivered a payment to SullivanStrickler LLC in Fulton County, Georgia, and caused employees of SullivanStrickler LLC to travel from Fulton County, Georgia, to Coffee County, Georgia, for the purpose of willfully tampering with said electronic ballot markers and tabulating machines, which were overt acts to effect the object of the conspiracy;

And **CATHLEEN ALSTON LATHAM, SCOTT GRAHAM HALL,** and **MISTY HAMPTON** aided, abetted, and encouraged employees of SullivanStrickler LLC in willfully tampering with electronic ballot markers and tabulating machines while inside the Coffee County Elections & Registration Office in Coffee County, Georgia, which were overt acts to effect the object of the conspiracy, contrary to the laws of said State, the good order, peace and dignity thereof;

## COUNT 33 of 41

And the Grand Jurors aforesaid, in the name and behalf of the citizens of Georgia, do charge and accuse **SIDNEY KATHERINE POWELL, CATHLEEN ALSTON LATHAM, SCOTT GRAHAM HALL**, and **MISTY HAMPTON** with the offense of **CONSPIRACY TO COMMIT ELECTION FRAUD, O.C.G.A. §§ 21-2-603 & 21-2-574**, for the said accused, individually and as persons concerned in the commission of a crime, and together with unindicted co-conspirators, in the County of Fulton and State of Georgia, on and between the **1st day of December 2020 and the 7th day of January 2021**, unlawfully conspired and agreed to cause certain members of the conspiracy, who were not officers charged by law with the care of ballots and who were not persons entrusted by any such officer with the care of ballots for a purpose required by law, to possess official ballots outside of the polling place in the State of Georgia;

And **SIDNEY KATHERINE POWELL** entered into a contract with SullivanStrickler LLC in Fulton County, Georgia, delivered a payment to SullivanStrickler LLC in Fulton County, Georgia, and caused employees of SullivanStrickler LLC to travel from Fulton County, Georgia, to Coffee County, Georgia, for the purpose of causing certain members of the conspiracy, who were not officers charged by law with the care of ballots and who were not persons entrusted by any such officer with the care of ballots for a purpose required by law, to possess official ballots outside of the polling place, which were overt acts to effect the object of the conspiracy;

And **CATHLEEN ALSTON LATHAM, SCOTT GRAHAM HALL**, and **MISTY HAMPTON** aided, abetted, and encouraged employees of SullivanStrickler LLC in accessing election equipment while inside the Coffee County Elections & Registration Office in Coffee County, Georgia, for the purpose of causing certain members of the conspiracy, who were not officers charged by law with the care of ballots and who were not persons entrusted by any such officer with the care of ballots for a purpose required by law, to possess official ballots outside of the polling place, which were overt acts to effect the object of the conspiracy, contrary to the laws of said State, the good order, peace and dignity thereof;

## COUNT 34 of 41

And the Grand Jurors aforesaid, in the name and behalf of the citizens of Georgia, do charge and accuse **SIDNEY KATHERINE POWELL, CATHLEEN ALSTON LATHAM, SCOTT GRAHAM HALL,** and **MISTY HAMPTON** with the offense of **CONSPIRACY TO COMMIT COMPUTER THEFT, O.C.G.A. §§ 16-4-8 & 16-9-93(a)**, for the said accused, individually and as persons concerned in the commission of a crime, and together with unindicted co-conspirators, in the County of Fulton and State of Georgia, on and between the **1st day of December 2020 and the 7th day of January 2021**, unlawfully conspired to use a computer with knowledge that such use was without authority and with the intention of taking and appropriating information, data, and software, the property of Dominion Voting Systems Corporation,

And **SIDNEY KATHERINE POWELL** entered into a contract with SullivanStrickler LLC in Fulton County, Georgia, delivered a payment to SullivanStrickler LLC in Fulton County, Georgia, and caused employees of SullivanStrickler LLC to travel from Fulton County, Georgia, to Coffee County, Georgia, for the purpose of using a computer with knowledge that such use was without authority and with the intention of taking and appropriating information, data, and software, the property of Dominion Voting Systems Corporation, which were overt acts to effect the object of the conspiracy;

And **CATHLEEN ALSTON LATHAM, SCOTT GRAHAM HALL,** and **MISTY HAMPTON** aided, abetted, and encouraged employees of SullivanStrickler LLC in using a computer with knowledge that such use was without authority and with the intention of taking and appropriating information, data, and software, the property of Dominion Voting Systems Corporation, while inside the Coffee County Elections & Registration Office in Coffee County, Georgia, which were overt acts to effect the object of the conspiracy, contrary to the laws of said State, the good order, peace and dignity thereof;

## COUNT 35 of 41

And the Grand Jurors aforesaid, in the name and behalf of the citizens of Georgia, do charge and accuse **SIDNEY KATHERINE POWELL, CATHLEEN ALSTON LATHAM, SCOTT GRAHAM HALL**, and **MISTY HAMPTON** with the offense of **CONSPIRACY TO COMMIT COMPUTER TRESPASS, O.C.G.A. §§ 16-4-8 & 16-9-93(b)**, for the said accused, individually and as persons concerned in the commission of a crime, and together with unindicted co-conspirators, in the County of Fulton and State of Georgia, on and between the **1st day of December 2020 and the 7th day of January 2021**, unlawfully conspired to use a computer with knowledge that such use was without authority and with the intention of removing voter data and Dominion Voting Systems Corporation data from said computer;

And **SIDNEY KATHERINE POWELL** entered into a contract with SullivanStrickler LLC in Fulton County, Georgia, delivered a payment to SullivanStrickler LLC in Fulton County, Georgia, and caused employees of SullivanStrickler LLC to travel from Fulton County, Georgia, to Coffee County, Georgia, for the purpose of using a computer with knowledge that such use was without authority and with the intention of removing voter data and Dominion Voting Systems Corporation data from said computer, which were overt acts to effect the object of the conspiracy;

And **CATHLEEN ALSTON LATHAM, SCOTT GRAHAM HALL**, and **MISTY HAMPTON** aided, abetted, and encouraged employees of SullivanStrickler LLC in using a computer with knowledge that such use was without authority and with the intention of removing voter data and Dominion Voting Systems Corporation data from said computer, while inside the Coffee County Elections & Registration Office in Coffee County, Georgia, which were overt acts to effect the object of the conspiracy, contrary to the laws of said State, the good order, peace and dignity thereof;

## COUNT 36 of 41

And the Grand Jurors aforesaid, in the name and behalf of the citizens of Georgia, do charge and accuse **SIDNEY KATHERINE POWELL, CATHLEEN ALSTON LATHAM, SCOTT GRAHAM HALL,** and **MISTY HAMPTON** with the offense of **CONSPIRACY TO COMMIT COMPUTER INVASION OF PRIVACY, O.C.G.A. §§ 16-4-8 & 16-9-93(c),** for the said accused, individually and as persons concerned in the commission of a crime, and together with unindicted co-conspirators, in the County of Fulton and State of Georgia, on and between the **1st day of December 2020 and the 7th day of January 2021,** unlawfully conspired to use a computer with the intention of examining personal voter data with knowledge that such examination was without authority;

And **SIDNEY KATHERINE POWELL** entered into a contract with SullivanStrickler LLC in Fulton County, Georgia, delivered a payment to SullivanStrickler LLC in Fulton County, Georgia, and caused employees of SullivanStrickler LLC to travel from Fulton County, Georgia, to Coffee County, Georgia, for the purpose of using a computer with the intention of examining personal voter data with knowledge that such examination was without authority, which were overt acts to effect the object of the conspiracy;

And **CATHLEEN ALSTON LATHAM, SCOTT GRAHAM HALL,** and **MISTY HAMPTON** aided, abetted, and encouraged employees of SullivanStrickler LLC in using a computer with the intention of examining personal voter data with knowledge that such examination was without authority, while inside the Coffee County Elections & Registration Office in Coffee County, Georgia, which were overt acts to effect the object of the conspiracy, contrary to the laws of said State, the good order, peace and dignity thereof;

## COUNT 37 of 41

And the Grand Jurors aforesaid, in the name and behalf of the citizens of Georgia, do charge and accuse **SIDNEY KATHERINE POWELL, CATHLEEN ALSTON LATHAM, SCOTT GRAHAM HALL**, and **MISTY HAMPTON** with the offense of **CONSPIRACY TO DEFRAUD THE STATE, O.C.G.A. § 16-10-21**, for the said accused, individually and as persons concerned in the commission of a crime, and together with unindicted co-conspirators, in the County of Fulton and State of Georgia, on and between the **1st day of December 2020 and the 7th day of January 2021**, unlawfully conspired and agreed to commit theft of voter data, property which was under the control of Georgia Secretary of State Brad Raffensperger, a state officer, in his official capacity;

And **SIDNEY KATHERINE POWELL** entered into a contract with SullivanStrickler LLC in Fulton County, Georgia, delivered a payment to SullivanStrickler LLC in Fulton County, Georgia, and caused employees of SullivanStrickler LLC to travel from Fulton County, Georgia, to Coffee County, Georgia, for the purpose of committing theft of voter data, property which was under the control of Georgia Secretary of State Brad Raffensperger, a state officer, in his official capacity, which were overt acts to effect the object of the conspiracy;

And **CATHLEEN ALSTON LATHAM, SCOTT GRAHAM HALL**, and **MISTY HAMPTON** aided, abetted, and encouraged employees of SullivanStrickler LLC in accessing election equipment while inside the Coffee County Elections & Registration Office in Douglas, Georgia, for the purpose of committing theft of voter data, property which was under the control of Georgia Secretary of State Brad Raffensperger, a state officer, in his official capacity, which were overt acts to effect the object of the conspiracy, contrary to the laws of said State, the good order, peace and dignity thereof;

## COUNT 38 of 41

And the Grand Jurors aforesaid, in the name and behalf of the citizens of Georgia, do charge and accuse **DONALD JOHN TRUMP** with the offense of **SOLICITATION OF VIOLATION OF OATH BY PUBLIC OFFICER, O.C.G.A. §§ 16-4-7 and 16-10-1**, for the said accused, in the County of Fulton and State of Georgia, on or about the **17th day of September 2021**, unlawfully solicited, requested, and importuned Georgia Secretary of State Brad Raffensperger, a public officer, to engage in conduct constituting the felony offense of Violation of Oath by Public Officer, O.C.G.A. § 16-10-1, by unlawfully "decertifying the Election, or whatever the correct legal remedy is, and announce the true winner," in willful and intentional violation of the terms of the oath of said person as prescribed by law, with intent that said person engage in said conduct, contrary to the laws of said State, the good order, peace and dignity thereof;

## COUNT 39 of 41

And the Grand Jurors aforesaid, in the name and behalf of the citizens of Georgia, do charge and accuse **DONALD JOHN TRUMP** with the offense of **FALSE STATEMENTS AND WRITINGS, O.C.G.A. § 16-10-20**, for the said accused, in the County of Fulton and State of Georgia, on or about the **17th day of September 2021**, knowingly, willfully, and unlawfully made the following false statement and representation to Georgia Secretary of State Brad Raffensperger:

1. "As stated to you previously, the number of false and/or irregular votes is far greater than needed to change the Georgia election result";

said statement being within the jurisdiction of the Office of the Georgia Secretary of State and the Georgia Bureau of Investigation, departments and agencies of state government, and county and city law enforcement agencies, contrary to the laws of said State, the good order, peace and dignity thereof;

## COUNT 40 of 41

And the Grand Jurors aforesaid, in the name and behalf of the citizens of Georgia, do charge and accuse **DAVID JAMES SHAFER** with the offense of **FALSE STATEMENTS AND WRITINGS, O.C.G.A. § 16-10-20**, for the said accused, in the County of Fulton and State of Georgia, on or about the **25th day of April 2022**, knowingly, willfully, and unlawfully made at least one of the following false statements and representations in the presence of Fulton County District Attorney's Office investigators:

1. That he "attended and convened" the December 14, 2020, meeting of Trump presidential elector nominees in Fulton County, Georgia, but that he did not "call each of the individual members and notify them of the meeting or make any of the other preparations necessary for the meeting";

2. That a court reporter was not present at the December 14, 2020, meeting of Trump presidential elector nominees in Fulton County, Georgia;

said statements being within the jurisdiction of the Fulton County District Attorney's Office, a department and agency of the government of a county of this state, contrary to the laws of said State, the good order, peace and dignity thereof;

## COUNT 41 of 41

And the Grand Jurors aforesaid, in the name and behalf of the citizens of Georgia, do charge and accuse **ROBERT DAVID CHEELEY** with the offense of **PERJURY, O.C.G.A. § 16-10-70(a)**, for the said accused, in the County of Fulton and State of Georgia, on or about the **15th day of September 2022**, knowingly, willfully, and unlawfully made at least one of the following false statements before the Fulton County Special Purpose Grand Jury, a judicial proceeding, after having been administered a lawful oath:

1. That he was unaware of the December 14, 2020, meeting of Trump presidential elector nominees in Fulton County, Georgia, until after the meeting had already taken place;

2. That he had no substantive conversations with anyone concerning the December 14, 2020, meeting of Trump presidential elector nominees in Fulton County, Georgia, until after the meeting had already taken place;

3. That he never suggested to anyone that the Trump presidential elector nominees in Georgia should meet on December 14, 2020;

4. That the only communication he had with John Eastman concerning the November 3, 2020, presidential election was for the purpose of connecting Eastman to Georgia Senator Brandon Beach and unindicted co-conspirator Individual 8, whose identity is known to the Grand Jury, for possible legal representation;

5. That he never worked to connect John Eastman with any Georgia legislators other than Georgia Senator Brandon Beach and unindicted co-conspirator Individual 8, whose identity is known to the Grand Jury;

said statements being material to the accused's own involvement in the December 14, 2020, meeting of Trump presidential elector nominees in Fulton County, Georgia, and to the accused's communications with others involved in said meeting, the issues in question, contrary to the laws of said State, the good order, peace and dignity thereof.

**FANI T. WILLIS, District Attorney**

# WITNESS LIST

Asst. Chief Inv. M. Hill – FCDA DA14

Sr. Inv. T. Swanson-Lucas – FCDA DA72

**Tab 1**

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA

|  |  |  |
|---|---|---|
| THE STATE OF GEORGIA, | ) | |
| | ) | |
| v. | ) | Criminal Case No. _____ |
| | ) | |
| MARK R. MEADOWS, | ) | |
| | ) | |
| *Defendant.* | ) | |

## <u>NOTICE OF REMOVAL</u>

Defendant Mark R. Meadows, former Chief of Staff to the President of the United States, removes this proceeding from the Fulton County Superior Court (Case No. 23SC188947, filed August 14, 2023), insofar as it charges Mr. Meadows in two counts (Counts 1 and 28) of a 41-count indictment, to the United States District Court for the Northern District of Georgia under 28 U.S.C. §§ 1442 & 1455.

Mr. Meadows has the right to remove this matter. The conduct giving rise to the charges in the indictment all occurred during his tenure and as part of his service as Chief of Staff. In these circumstances, federal law provides for prompt removal of a "criminal prosecution . . . commenced in a State court . . . against or directed to" a federal official, "in an official or individual capacity, for or relating to any act under color of [his] office." 28 U.S.C. § 1442(a)(1). The removal statute "protect[s] the Federal Government from the interference with its operations that would ensue were a State able, for example, to arrest and bring to trial in a State court for an

alleged offense against the law of the State, officers and agents of the Federal Government acting within the scope of their authority." *Watson v. Philip Morris Companies, Inc.*, 551 U.S. 142, 150 (2007) (cleaned up).[1]

Nothing Mr. Meadows is alleged in the indictment to have done is criminal *per se*: arranging Oval Office meetings, contacting state officials on the President's behalf, visiting a state government building, and setting up a phone call for the President. One would expect a Chief of Staff to the President of the United States to do these sorts of things. And they have far less to do with the interests of state law than, for example, murder charges that have been successfully removed. *E.g.*, *In Re Neagle*, 135 U.S. 1, 71 (1890); *Tennessee v. Davis*, 100 U.S. 257, 260–62 (1879). This is precisely the kind of state interference in a federal official's duties that the Supremacy Clause of the U.S. Constitution prohibits, and that the removal statute shields against. *See Neagle*, 135 U.S. at 76 (holding that a federal official carrying out his duties "is not liable to answer in the courts of [a State]").

Mr. Meadows intends to file a motion to dismiss the indictment pursuant to Rule 12(b) of the Federal Rules of Criminal Procedure as soon as is feasible. Mr.

---

[1] Former officials are protected. The relevant question is whether the defendant was a federal official *at the time of the conduct charged*, not at the time of prosecution or removal. *See State of Maryland v. Soper*, 270 U.S. 9, 34–35 (1926); *Camero v. Kostos*, 253 F. Supp. 331, 335 (D.N.J. 1966). Protection of former federal officials protects *current* federal officials from being chilled in the exercise of their federal duties. *See, e.g.*, *Denson v. United States*, 574 F.3d 1318, 1349 (11th Cir. 2009).

Meadows respectfully requests that the Court "order an evidentiary hearing to be held promptly" and "dispos[e] of the prosecution as justice shall require." 28 U.S.C. § 1455(b)(5). Here, justice requires the prompt dismissal of the charges against Mr. Meadows. At a minimum, in the meantime, federal law requires granting removal, which will halt the state-court proceedings against Mr. Meadows, *see* 28 U.S.C. § 1455(b)(5), while the motion to dismiss is resolved.

## I.   This Court Has Jurisdiction, and Removal Is Warranted

This matter—insofar as it relates to charges against Defendant Mark R. Meadows—arises directly from his service as Chief of Staff. Mr. Meadows served in that role from March 31, 2020, until January 20, 2021. Before that, he served as a Member of the U.S. House of Representatives, representing North Carolina's 11th Congressional District, from January 3, 2013, to March 30, 2020.

The events giving rise to the indictment occurred during Mr. Meadows's tenure as White House Chief of Staff and are directly related to that role. The indictment sets forth the following factual allegations (and only the following factual allegations) as they relate to Mr. Meadows:

- "On or about the **20th day of November 2020**, **DONALD JOHN TRUMP** and **MARK RANDALL MEADOWS** met with Majority Leader of the Michigan Senate Michael Shirkey, Speaker of the Michigan House of Representatives Lee Chatfield, and other Michigan legislators in the Oval Office at the White House, and **DONALD JOHN TRUMP** made false statements concerning fraud in the November 3, 2020, presidential election in Michigan." Indictment at 20, Count I, Act 5.

- "On or about the **21st day of November 2020**, **MARK RANDALL MEADOWS** sent a text message to United States Representative Scott Perry from Pennsylvania and stated, 'Can you send me the number for the speaker and the leader of PA Legislature. POTUS wants to chat with them.'" Indictment at 20, Count I, Act 6.

- "On or about the **25th day of November 2020**, . . . **DONALD JOHN TRUMP**, **MARK RANDALL MEADOWS**, **RUDOLPH WILLIAM LOUIS GIULIANI**, **JENNA LYNN ELLIS** and unindicted co-conspirators Individual 5 and Individual 6, whose identities are known to the Grand Jury, met with the group of Pennsylvania legislators at the White House and discussed holding a special session of the Pennsylvania General Assembly." Indictment at 22, Count I, Act 9.

- "On or between the **1st day of December 2020 and the 31st day of December 2020**, **DONALD JOHN TRUMP** and **MARK RANDALL MEADOWS** met with John McEntee and requested that McEntee prepare a memorandum outlining a strategy for disrupting and delaying the joint session of Congress on January 6, 2021, the day prescribed by law for counting votes cast by the duly elected and qualified presidential electors from Georgia and the other states." Indictment at 24, Count I, Act 19.

- "On or about the **22nd day of December 2020**, **MARK RANDALL MEADOWS** traveled to the Cobb County Civic Center in Cobb County, Georgia, and attempted to observe the signature match audit being performed there by law enforcement officers from the Georgia Bureau of Investigation and the Office of the Georgia Secretary of State, despite the fact that the audit process was not open to the public. While present at the center, **MARK RANDALL MEADOWS** spoke to Georgia Deputy Secretary of State Jordan Fuchs, Office of the Georgia Secretary of State Chief Investigator Frances Watson, Georgia Bureau of Investigation Special Agent in Charge Bahan Rich, and others, who prevented **MARK RANDALL MEADOWS** from entering into the space where the audit was being conducted." Indictment at 44, Count I, Act 92.

4

- "On or about the **23rd day of December 2020**, **DONALD JOHN TRUMP** placed a telephone call to Office of the Georgia Secretary of State Chief Investigator Frances Watson that had been previously arranged by **MARK RANDALL MEADOWS**. During the phone call, **DONALD JOHN TRUMP** falsely stated that he had won the November 3, 2020, presidential election in Georgia 'by hundreds of thousands of votes' and stated to Watson that 'when the right answer comes out you'll be praised.'" Indictment at 44, Count I, Act 93.

- "On or about the **27th day of December 2020**, **MARK RANDALL MEADOWS** sent a text message to Office of the Georgia Secretary of State Chief Investigator Frances Watson that stated in part, 'Is there a way to speed up Fulton county signature verification in order to have results before Jan 6 if the trump campaign assist financially.'" Indictment at 45, Count I, Act 96.

- "On or about the **2nd day of January 2021**, **DONALD JOHN TRUMP** and **MARK RANDALL MEADOWS** committed the felony offense of **SOLICITATION OF VIOLATION OF OATH BY PUBLIC OFFICER**, in violation of **O.C.G.A. §§ 16-4-7 & 16-10-1**, in Fulton County, Georgia, by unlawfully soliciting, requesting, and importuning Georgia Secretary of State Brad Raffensperger, a public officer, to engage in conduct constituting the felony offense of Violation of Oath by Public Officer, O.C.G.A. § 16-10-1, by unlawfully altering, unlawfully adjusting, and otherwise unlawfully influencing the certified returns for presidential electors for the November 3, 2020, presidential election in Georgia, in willful and intentional violation of the terms of the oath of said person as prescribed by law, with intent that said person engage in said conduct." Indictment at 50, Count I, Act 112.

- "And the Grand Jurors aforesaid, in the name and behalf of the citizens of Georgia, do charge and accuse **DONALD JOHN TRUMP** and **MARK RANDALL MEADOWS** with the offense of **SOLICITATION OF VIOLATION OF OATH BY PUBLIC OFFICER, O.C.G.A. §§ 16-4-7 & 16-10-1**, for the said accused, individually and as persons concerned in the commission of a crime, and together with unindicted co-conspirators, in the County of Fulton and State of Georgia, on or about the **2nd day of January 2021**, unlawfully solicited, requested, and importuned Georgia Secretary of

5

State Brad Raffensperger, a public officer, to engage in conduct constituting the felony offense of Violation of Oath by Public Officer, O.C.G.A. § l6-10-1, by unlawfully altering, unlawfully adjusting, and otherwise unlawfully influencing the certified returns for presidential electors for the November 3, 2020, presidential election in Georgia, in willful and intentional violation of the terms of the oath of said person as prescribed by law, with intent that said person engage in said conduct, contrary to the laws of said State, the good order, peace and dignity thereof." Indictment at 87, Count 28.

The charged conduct comprises acts taken by Mr. Meadows, whether in an individual or official capacity, under color of his role as Chief of Staff to the President of the United States. *See* 28 U.S.C. § 1442(a)(1).

As is apparent on the face of the indictment, as part of his official duties as Chief of Staff, Mr. Meadows arranged meetings for the President at the White House and communicated with state lawmakers and officials. Mr. Meadows went to a site in Fulton County where the Chief Investigator was conducting an audit of the results of the 2020 Presidential election because—and only because—he was serving as Chief of Staff. He wanted to report back to the President on how the audit was proceeding and told him the following day that the Georgia officials were conducting their work in exemplary fashion. Shortly thereafter, Mr. Meadows, in his role as Chief of Staff, arranged a phone call between the President and Georgia officials, including the Secretary of State and the Chief Investigator. These and the other acts that form the basis for the charges against Mr. Meadows all fall squarely within his conduct as Chief of Staff.

6

Defendant Meadows has defenses to the charges in this Georgia indictment that arise under federal law, including a federal immunity defense under the Supremacy Clause of the Federal Constitution. *See* U.S. CONST., art. vi, cl. 2; *Neagle*, 135 U.S. at 57; *Kordash v. United States*, 51 F.4th 1289, 1293 (11th Cir. 2022); *Denson v. United States*, 574 F.3d 1318, 1345–46 (11th Cir. 2009).

For purposes of removal under 28 U.S.C. § 1442(a)(1), it is enough that the defendant has a "plausible" federal defense to the charges against him. *Caver v. Cent. Alabama Elec. Coop.*, 845 F.3d 1135, 1145 (11th Cir. 2017). Here, the charges against Mr. Meadows far exceed that low threshold. Indeed, as explained below, it is clear from the face of the indictment that the charges against Mr. Meadows should be dismissed under the Supremacy Clause. But for purposes of removal, the Court need not make that determination. Mr. Meadows is entitled to remove this action to federal court because the charges against him plausibly give rise to a federal defense based on his role at all relevant times as the White House Chief of Staff to the President of the United States.

## II.   This Notice Satisfies the Procedural Requirements of 28 U.S.C. § 1455

Consistent with the requirements of 28 U.S.C. § 1455, Mr. Meadows is filing this notice before trial and no later than 30 days after arraignment, and the grounds for removal are set forth herein. *See id.* § 1455(b)(1)–(2). This notice is filed in the district and division within which is prosecution is pending, it is signed by counsel

7

pursuant to Rule 11 of the Civil Rules, and it contains a short and plain statement of the grounds for removal. *See id.* § 1455(a). No process, pleadings, or orders have yet been served upon Mr. Meadows in this action, *see id.*, but this notice also includes as an attachment the publicly filed indictment, which sets forth the charges against Mr. Meadows and other defendants. While removal can be initiated later in the criminal process, the filing of an indictment has "commence[d]" for a "criminal prosecution in State court," *id.*, at the time of indictment, triggering the right to removal. *See, e.g.*, *Post v. United States*, 161 U.S. 583, 587 (1896) (explaining that a criminal proceeding commences once "a formal charge is openly made against the accused, either by indictment presented or information filed in court, or, at the least, by complaint before a magistrate").

### III.   The Court Should Promptly Hold an Evidentiary Hearing and Either Dismiss the Charges Outright, or at a Minimum, Grant Removal and Notify the State Court

The filing of this notice does not automatically stay the state court proceedings against Mr. Meadows, "except that a judgment of conviction shall not be entered" while this notice remains pending. *Id.* § 1455(b)(3). Mr. Meadows respectfully asks that the Court promptly hold an evidentiary hearing and either dismiss the charges outright based on the Supremacy Clause, or at a minimum, grant removal and notify the state court so as to halt any further state-court proceedings against him. *See id.* § 1455(b)(5). Section 1455(b)(5) provides that, if the Court "does not order the

summary remand of [a removed] prosecution"—which would be wholly unjustified here—then "it shall order an evidentiary hearing to be held promptly and, after such hearing, shall make disposition of the prosecution as justice shall require." *Id*.

Mr. Meadows respectfully submits that the most just disposition is for the charges against him to be promptly dismiss pursuant to the Supremacy Clause. The basis for that conclusion is apparent from the facts of the case and the face of the indictment.[2] Even if the Court is not prepared to dismiss outright at this early stage, however, justice requires granting removal and halting any further state-court proceedings against Mr. Meadows. That will allow for the timely consideration of Mr. Meadows's defenses, including his federal defense under the Supremacy Clause, without requiring him to defend himself in state court simultaneously.

***First***, the Court should "promptly . . . make disposition of the prosecution as justice shall require," 28 U.S.C. § 1455(b)(5), by dismissing all charges against Mr. Meadows—the Chief of Staff to the President of the United States at the time of the alleged conduct—under the Supremacy Clause of the U.S. Constitution. The Supremacy Clause provides that "[t]his Constitution, and the Laws of the United States which shall be made in Pursuance thereof . . . shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, anything in the

---

[2] Mr. Meadows will submit a separate motion to dismiss at a later date which more fully sets forth the facts and the law supporting dismissal.

constitution or laws of any state to the contrary notwithstanding." U.S. CONST., art. VI, cl. 2. The Supreme Court has long interpreted the Supremacy Clause to provide federal officials "immunity from suit" involving state charges in order to "protect[] federal operations from the chilling effect of state prosecution." *New York v. Tanella*, 374 F.3d 141, 147 (2nd Cir. 2004); *see generally In Re Neagle*, 135 U.S. 1 (1890); *Tennessee v. Davis*, 100 U.S. 257 (1879). "[T]he states have no power . . . to retard, impede, burden, or in any manner control, the operations of the constitutional laws enacted by congress to carry into execution the powers vested in the general government." *McCulloch v. Maryland*, 17 U.S. (4 Wheat.) 316, 436 (1819). Thus, while the police power, including the power to define and punish crimes, is generally reserved to the States, that power may not be employed against the Federal Government to "exclude it from the exercise of any authority conferred upon it by the constitution, obstruct its authorized officers against its will, or withhold from it for a moment the cognizance of any subject which that instrument has committed to it." *Neagle*, 135 U.S. at 62 (quoting *Davis*, 100 U.S. at 263).[3]

---

[3] Since *Neagle*, the Supreme Court has addressed Supremacy Clause immunity only rarely. The two most notable decisions came within 20 years of *Neagle*.

In *Ohio v. Thomas*, 173 U.S. 276 (1899), the Court held that Ohio could not prosecute a federal official for serving margarine in a home for disabled veterans without placing a sign in the window, as required under Ohio law. The Court held that Congress had appropriated money to buy the margarine, and that serving it "was therefore legal, any act of the state to the contrary notwithstanding," under the Supremacy Clause. *Id.* at 283–84.

States are thus broadly prohibited from bringing "suits under state law against federal officials carrying out their executive duties." *Kordash*, 51 F.4th at 1293; *see also Denson*, 574 F.3d at 1345–46 ("[T]he Supremacy Clause . . . serves to prevent state law or state law officials from interfering with or otherwise impeding federal officers as they perform their lawful duties."). Federal-officer immunity has been widely recognized and applied robustly, including in cases from the Second, Fifth, Sixth, Ninth, Tenth, and Eleventh Circuits.[4]

A federal official is entitled to immunity if he "'was authorized to do [what he did] by the law of the United States,'" if "'it was his duty to do [it] as [an officer] of the United States,'" and if "'in doing that act he did no more than what was necessary and proper for him to do.'" *Denson*, 574 F.3d at 1347 (quoting *Neagle*, 135 U.S. at 57) (alterations in original). At a general level, the inquiry turns on

---

In *United States ex rel. Drury v. Lewis*, 200 U.S. 1 (1906), the Court affirmed a denial of immunity for soldiers being prosecuted for murder. There was conflicting testimony about whether the fatal shots were fired in hot pursuit of a suspected thief—or instead whether one soldier ordered, and the other soldier carried out, the execution of a civilian who had already surrendered to their pursuit. *See id.* at 3–5. The Court held that pre-trial immunity was unavailable in light of this "conflict of evidence" because it had been "conceded that if [the soldiers had executed the man after he surrendered], it could not reasonably be claimed that the fatal shot was fired in the performance of a duty imposed by the Federal law." *Id.* at 8.

[4] *See New York v. Tanella*, 374 F.3d 141, 144 (2d Cir. 2004); *State v. Kleinert*, 855 F.3d 305, 313 (5th Cir. 2017); *Com. of Ky. v. Long*, 837 F.2d 727, 734 (6th Cir. 1988); *Clifton v. Cox*, 549 F.2d 722, 728 (9th Cir. 1977); *Wyoming v. Livingston*, 443 F.3d 1211, 1217 (10th Cir. 2006); *Baucom v. Martin*, 677 F.2d 1346, 1348 (11th Cir. 1982).

"whether the officer's acts have some nexus with furthering federal policy and can reasonably be characterized as complying with the full range of federal law." *Id.* at 1348. While the phrase "no more than necessary" might suggest a narrow scope of immunity, that is not how the Courts of Appeals have applied it. They unanimously agree that federal authority under *Neagle* is a question of the official's general role and authority, not specific authorization for the conduct that allegedly constitutes a criminal act.[5]

Here, it is unmistakably clear that the indictment charges Mr. Meadows with alleged state crimes based on acts he took as Chief of Staff to the President of the United States and in the course of his duties in the position. *See generally supra* Part I. He is therefore entitled to immunity from suit under the Supremacy Clause, and in order to "make disposition of the prosecution as justice shall require," 28 U.S.C. § 1455(b)(5), the Court should dismiss all charges against Mr. Meadows.

---

[5] *See Tanella*, 374 F.3d at 147 ("No one disputes that Tanella was acting in his capacity as a federal DEA Agent when he shot Dewgard."); *Kleinert*, 855 F.3d at 317 ("With probable cause of two federal felonies, Kleinert was authorized to arrest Jackson under 21 U.S.C. § 878."); *Long*, 837 F.2d at 745 ("[E]ven though an agent exceeds his express authority, he does not necessarily act outside of the authority conferred by the laws of the United States."); *Clifton*, 549 F.2d at 728 ("[E]ven though his acts may have exceeded his express authority, this did not necessarily strip petitioner of his lawful power to act under the scope of authority given to him under the laws of the United States."); *Livingston*, 443 F.3d at 1227–28 ("The question is not whether federal law expressly authorizes violation of state law, but whether the federal official's conduct was reasonably necessary for the performance of his duties."); *Baucom*, 677 F.2d at 1350 ("In *Neagle*, it was held that the necessary authority could be derived from the general scope of the officer's duties.").

**Second**, even if the Court is not prepared to rule summarily on Mr. Meadows's Supremacy Clause immunity, it should at a minimum promptly accept removal in order to stay the state-court proceedings against Mr. Meadows. By statute, the Court is directed "promptly" to consider whether to accept removal, *see* 28 U.S.C. § 1455(b)(5), and whenever the court "determines that removal shall be permitted, it shall so notify the State court . . . which shall proceed no further," *id.* § 1455(c). Mr. Meadows's entitlement to removal is clear and does not turn on any disputed facts. The standard for removal, moreover, is even easier to meet than the standard for asserting a substantive federal defense. *See Caver*, 845 F.3d at 1145 (explaining that removal under § 1442 was proper where the defendant's federal defense was "plausible" and then separately analyzing the actual merits of that defense).

Prompt acceptance is also important to stay the state-court proceedings. The Supremacy Clause provides "immunity from suit rather than a mere shield against liability." *Tanella*, 374 F.3d at 147. The issue should be "decided early in the proceedings so as to avoid requiring a federal officer to run the gauntlet of standing trial and having to wait until later to have the immunity issue decided." *Id.* (cleaned up). Requiring Mr. Meadows to litigate his defenses in parallel in state court would inflict the very injury that Supremacy Clause immunity protects against—both for Mr. Meadows's own sake and for the sake of other federal officials who might be chilled by the prospect of their own state-court prosecution.

\*      \*      \*      \*      \*

The Court should promptly dismiss the charges against Mr. Meadows, or at a

minimum, accept removal so as to stay the state-court proceedings.


Dated: August 15, 2023                          Respectfully submitted,
                                                MARK R. MEADOWS
                                                *By Counsel*

                                                Joseph M. Englert
                                                MᴄGᴜɪʀᴇWᴏᴏᴅs LLP
                                                1230 Peachtree St., N.E., Suite 2100
                                                Georgia Bar No. 112409
                                                Atlanta, GA 30309
                                                (404) 443-5500
                                                jenglert@mcguirewoods.com

                                                George J. Terwilliger, III\*
                                                John S. Moran\*
                                                Michael Francisco\*
                                                MCGUIREWOODS LLP
                                                888 16th Street NW, Suite 500
                                                Washington, DC 20006
                                                (202) 857-1700
                                                gterwilliger@mcguirewoods.com
                                                jmoran@mcguirewoods.com
                                                mfrancisco@mcguirewoods.com

                                                \* Application for admission *pro hac
                                                vice* forthcoming

14

**Tab 6**

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

**THE STATE OF GEORGIA,**

**v.**

**MARK RANDALL MEADOWS,**

    **Defendant.**

**CIVIL ACTION FILE**

**No. 1:23-CV-03621-SCJ**

**RE: NOTICE OF REMOVAL OF
FULTON COUNTY SUPERIOR
COURT INDICTMENT NO.
23SC188947**

<u>**ORDER**</u>

    This matter appears before the Court following Defendant Mark Randall Meadows's Notice of Removal under 28 U.S.C. § 1442 and § 1455.[1] Doc. No. [1]. The Court enters the following Order in satisfaction of the statutory requirements for state criminal prosecutions removed. <u>See</u> 28 U.S.C. § 1455(b). For the following reasons, the Court concludes that summary remand under 28 U.S.C. § 1455(b)(4) is not required based on the face of Meadows's Notice of Removal.

---

[1] All citations are to the electronic docket unless otherwise noted, and all page numbers are those imprinted by the Court's docketing software.

## I.    BACKGROUND

On August 14, 2023, a grand jury in Fulton County, Georgia returned an indictment against Defendant Meadows and 18 co-Defendants.[2] Doc. No. [1-1]. The Indictment alleges that Meadows's actions related to Georgia's election procedures during the 2020 Presidential election violated a number of Georgia criminal statutes. Id. at 10–12 (listing the 41 counts alleged in the Indictment).

Meadows served as White House Chief of Staff under President Donald J. Trump from March 31, 2020, until January 20, 2021. Doc. No. [1], 3. The Indictment first charges Meadows with violating Georgia's Racketeer Influenced and Corrupt Organizations Act (RICO), O.C.G.A. § 16-14-4(c). Doc. No. [1-1], 13 (Count I). It specifically alleges the following as predicate acts in support of the RICO charge against Meadows:

- He met (along with President Donald J. Trump) with Michigan officials about election fraud in Michigan. Id. at 21 (Act 5).

---

[2] To date, only Defendant Meadows has filed a Notice of Removal in this matter, and thus the Court limits its instant inquiry to the charges made against him.

- He messaged the United States Representative from Pennsylvania and then met with Pennsylvania legislators about holding a special session. <u>Id.</u> at 21 (Act 6), 22 (Act 9).

- He met with John McEntee to request a memo about a strategy for "disrupting and delaying the joint session of Congress on January 6, 2021" relating to counting electors' votes. <u>Id.</u> at 24 (Act 19).

- He attempted to and was prohibited from physically observing a nonpublic Georgia election audit. <u>Id.</u> at 44 (Act 92).

- He arranged a phone call between President Trump and the Georgia Secretary of State's Chief Investigator, Frances Watson, regarding the presidential election results in Georgia. <u>Id.</u> (Act 93)

- He messaged Chief Investigator Watson about the potential for a quicker signature verification process of the Fulton County election results if "the [T]rump campaign assist[ed] financially." <u>Id.</u> at 45 (Act 96).

- He solicited (along with President Trump) Georgia Secretary of State Brad Raffensperger to violate his oath of office by altering the certified returns for presidential electors. <u>Id.</u> at 50 (Act 112).

3

See also Doc. No. [1], 3–6. The Indictment further charges Meadows under O.C.G.A. § 16-4-7 and § 16-10-1 for soliciting a violation of a public official's oath. Doc. No. [1-1], 87 (Count 28).

On August 15, 2023, Meadows filed his Notice of Removal of the criminal Indictment to this Court. Doc. No. [1]. Meadows asserts that federal jurisdiction exists under 28 U.S.C. § 1442(a)(1), as he was a federal officer acting under the color of his office at the time of the acts alleged. See Doc. No. [1], 3 ("The events giving rise to the [I]ndictment occurred during Mr. Meadows's tenure as White House Chief of Staff and are directly related to that role."). He specifies that his "official duties" as Chief of Staff included "arrang[ing] [a] meeting for the President at the White House and communicat[ing] with state lawmakers and officials." Doc. No. [1], 6. Furthermore, he states that he attempted to go to the location of Georgia's election audit in his role as White House Chief of Staff so that he could report to the President about the ongoing audit. Doc. No. [1], 6.

With the following background in mind, the Court now determines whether it clearly lacks subject matter jurisdiction over this case, and thus requiring summary remand pursuant to 28 U.S.C. § 1455(b)(4).

4

## II.   LEGAL STANDARD

"Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute[.]" Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994). One such jurisdictional statute provides federal jurisdiction over "any officer (or any person acting under that officer) of the United States" for "any act under color of such office." 28 U.S.C. § 1442(a)(1). Federal officer removal "is an incident of federal supremacy and is designed to provide federal officials with a federal forum in which to raise defenses arising from their official duties." Florida v. Cohen, 887 F.2d 1451, 1453 (11th Cir. 1989) (citing Willingham v. Morgan, 395 U.S. 402, 405 (1969)). Section 1442(a)(1) removal requires "first, the case must be against any officer, agency, or agent of the United States for any act under color of such office; and second, the federal actor or agency being challenged must raise a colorable defense arising out of its duty to enforce federal law." Id. at 1453–54. "[R]egardless of whether the federal court would have had jurisdiction over the matter had it originated in federal court, once the statutory prerequisites to § 1442(a)(1) are satisfied, § 1442(a)(1) provides an independent jurisdictional basis." Id. at 1454.

5

28 U.S.C. § 1455 allows specifically for the removal of a state criminal prosecution under certain conditions. Procedurally, the notice of removal must be filed "not later than 30 days after the arraignment in the State court, or at any time before trial, whichever is earlier" and must contain "all grounds for such removal." 28 U.S.C. § 1455(b)(1)–(2). Upon receiving the notice of removal, the federal district court must "examine the notice promptly" and determine if summary remand ought to be granted based on a clear lack of jurisdiction from "the face of the notice and any exhibits annexed thereto . . . ." Id. § 1455(b)(4). If summary remand is not ordered, then the district court must "promptly" hold an evidentiary hearing to determine "disposition of the prosecution as justice shall require." Id. § 1455(b)(5). Moreover, the filing of a notice of removal of a criminal prosecution under Section 1455 "shall not prevent the State court in which such prosecution is pending from proceeding further" even though a "judgment of conviction" cannot be entered until the prosecution is remanded. 28 U.S.C. § 1455(b)(3).

## III.   ANALYSIS

According to the foregoing standards, the Court first determines that Meadows's removal action meets the procedural prerequisites of 28 U.S.C.

6

§ 1455(b)(1) and (2). Meadows removed this action one day after the Indictment was filed, and thus satisfies the timing requirements of Section 1455(b)(1). Moreover, his filing of removal contains the grounds for removal, including a basis for federal jurisdiction, in satisfaction of Section 1445(b)(2).

The Court now must look at the notice of removal filed and the exhibits attached to determine "if it *clearly appears* . . . that removal should not be permitted." Id. § 1455(b)(3) (emphasis added). Put differently, the Court must determine if it clearly lacks subject matter jurisdiction over the removal action.

The Court has not found any test to govern whether the removal documents "clearly appear[ ]" to preclude removal. To be sure, "28 U.S.C. § 1455 'merely provides procedures that must be followed in order to remove a criminal case from state court when a defendant has the right to do so under another provision.'" Maine v. Counts, No. 22-1841, 2023 WL 3167442, at *1 (1st Cir. Feb. 16, 2023) (quoting Kruebbe v. Beevers, 692 F. App'x 173, 176 (5th Cir. 2017)). Thus, when a removing party fails to meet a requirement of the underlying basis for federal jurisdiction, then removal of the state criminal prosecution is not permitted. See, e.g., United States v. Raquinio, No. CV 23-00231 JMS-WRP, 2023 WL 3791638, at *2 (D. Haw. June 2, 2023) (rejecting removal under Section

7

1455 based on federal officer jurisdiction because the removing party failed to allege that he was a federal officer or agent); cf. also Hammond v. Georgia, No. 1:18-CV-5553-CAP-AJB, 2018 WL 10626009, at *2 (N.D. Ga. Dec. 21, 2018), report and recommendation adopted, No. 1:18-CV-5553-CAP, 2019 WL 8375921 (N.D. Ga. Jan. 16, 2019). Gilmore v. Glynn Cnty. Superior Ct., No. 2:18-CV-68, 2018 WL 6531685, at *2 (S.D. Ga. Dec. 12, 2018), report and recommendation adopted, No. 2:18-CV-68, 2019 WL 339629 (S.D. Ga. Jan. 28, 2019).

Here, the Court determines that the Notice of Removal and attached Indictment are sufficient to show that summary remand is not clearly required. In other words, it is not immediately apparent from the face of the documents that the Court lacks subject matter jurisdiction under Section 1442(a)(1) over this removal action.

Meadows asserts federal officer jurisdiction under 28 U.S.C. § 1442, which requires showing "the case [is] against any officer, agency, or agent of the United States for any act under color of such office" and that "the federal actor or agency being challenged [raises] a colorable defense arising out of its duty to enforce federal law." Cohen, 887 F.2d at 1453–54. The Notice of Removal indicates that Meadows held the federal role of White House Chief of Staff from

8

March 31, 2020, until January 20, 2021. Doc. No. [1], 3. Meadows also submits that he was acting in this capacity when all the criminal acts alleged occurred. Id. at 3–7. Meadows finally asserts he has defenses to these criminal charges that "arise under federal law, including a federal immunity defense under the Supremacy Clause of the Federal Constitution."[3] Id. at 7; see also id. at 11–12 (specifying the federal immunity defense and arguing its application to Meadows).

Accordingly, the Court determines that Meadows's Notice of Removal is sufficient to withstand summary remand under Section 1455(b)(4). The Court emphasizes that this Order offers no opinion on the Court's ultimate determination of its subject matter jurisdiction over this case or Meadows's federal immunity defense. Pursuant to 28 U.S.C. § 1455(b)(5), the Court will make its final determination on these matters once they have been completely argued and briefed and are ripe for the Court's full review. To reiterate, this Order's limited conclusion is that the Court, based solely on the face of the Notice of Removal and the Indictment, does not clearly lack subject matter jurisdiction over

---

[3] Meadows indicates that a more thorough argument of the federal immunity defense is forthcoming in a motion to dismiss. Doc. No. [1], 2–3, 9–12.

9

Meadows's Notice of Removal. Thus, the Court will proceed with an evidentiary hearing pursuant to 28 U.S.C. § 1455(b)(5).

## IV.   CONCLUSION

For the foregoing reasons, the Court concludes the face of the Notice of Removal (Doc. No. [1]) and attached Indictment (Doc. No. [1-1]) do not clearly indicate that summary remand of this matter is required. No opinion about whether removal will be permitted or on a federal immunity defense is being made at this time.

Pursuant to 28 U.S.C. § 1455(b)(5), the Court **ORDERS** that the Parties participate in an evidentiary hearing concerning the Notice of Removal of the Indictment against Mark R. Meadows on **<u>Monday, August 28, 2023, at 10:00 A.M.</u>** at the Richard B. Russell Federal Building and United States Courthouse, 75 Ted Turner Drive, S.W., Atlanta, Georgia, **<u>in Courtroom 1907</u>**.

The Court furthermore **ORDERS** that Defendant Meadows immediately **SERVE** the Fulton County District Attorney, Fani Willis, with a copy of the Notice of Removal and a copy of this Order. Once the Fulton County District Attorney has been served, she **may** submit a written response to Defendant

10

Meadows's Notice of Removal no later than **Wednesday, August 23, 2023**. Any response submitted must not exceed **25 pages** in length.

In the interim, pursuant to 28 U.S.C. § 1455(b)(3), proceedings may continue in the Superior Court of Fulton County, Georgia.

IT IS SO ORDERED this ___16th___ day of August, 2023.

HONORABLE STEVE C. JONES
UNITED STATES DISTRICT JUDGE

11

**Tab 15**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA

|  |  |
|---|---|
| THE STATE OF GEORGIA, | ) |
| | ) |
| v. | ) Case No. 1:23-cv-03621-SCJ |
| | ) |
| MARK R. MEADOWS, | ) **ORAL ARGUMENT REQUESTED** |
| | ) |
| *Defendant.* | ) |
| | ) |

## MOTION TO DISMISS CHARGES AGAINST DEFENDANT MARK R. MEADOWS BASED ON SUPREMACY CLAUSE IMMUNITY

Defendant Mark R. Meadows, by and through his undersigned counsel, moves to dismiss all charges against him pursuant to Federal Rule of Criminal Procedure 12(b). For the reasons set forth more fully in the accompanying Memorandum in Support of Motion to Dismiss Charges Against Defendant Mark R. Meadows Based on Supremacy Clause Immunity, all charges against Mr. Meadows should be dismissed pursuant to immunity under the Supremacy Clause of the U.S. Constitution that apply to all charges against Mr. Meadows.

THEREFORE, Mr. Meadows requests the Court to enter an order (1) granting removal pursuant to 18 U.S.C. §§ 1422, 1455, if not already granted, and (2) dismissing all claims against Mr. Meadows in the indictment filed in Fulton County dated August 14, 2023.

1

FURTHER, given the issues in this case are matters of national importance, involving the Supremacy Clause of the U.S. Constitution and immunity from state criminal proceedings, and for reasons explained in the Memorandum in Support of this Motion, Mr.  Meadows would welcome the opportunity to address the issues and arguments at a hearing.  Therefore, Mr. Meadows respectfully requests that the Court schedule oral argument on its Motion.

Dated: August 18, 2023

Respectfully submitted,

*George J. Terwilliger III*

*Counsel to Mark R. Meadows*

Joseph M. Englert
McGuireWoods LLP
1230 Peachtree St., N.E., Suite 2100
Atlanta, GA 30309
(404) 443-5500
Jenglert@mcguirewoods.com

George J. Terwilliger, III (admitted *pro hac vice*)
John S. Moran (admitted *pro hac vice*)
Michael Francisco (admitted *pro hac vice*)
MCGUIREWOODS LLP
888 16th Street NW, Suite 500
Washington, DC 20006
(202) 857-1700
gterwilliger@mcguirewoods.com
jmoran@mcguirewoods.com
mfrancisco@mcguirewoods.com

2

## <u>CERTIFICATE OF SERVICE</u>

On August 18, 2023, the foregoing ***Motion to dismiss charges against defendant Mark R. Meadows based on Supremacy Clause Immunity*** was electronically filed with the Clerk of Court using the CM/ECF system, which will automatically send email notification of such filing to all attorneys of record.

This 18th day of August, 2023.

<u>/s/ Michael Francisco</u>
Joseph M. Englert
MCGUIREWOODS LLP
888 16TH STREET NW, SUITE 500
WASHINGTON, DC 20006
(202) 857-1700
MFRANCISCO@MCGUIREWOODS.COM

**Tab 16-1**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA

|  |  |  |
|---|---|---|
| THE STATE OF GEORGIA, | ) | |
| | ) | |
| v. | ) | Case No. 1:23-cv-03621-SCJ |
| | ) | |
| MARK R. MEADOWS, | ) | |
| | ) | |
| *Defendant.* | ) | |

## CORRECTED MEMORANDUM IN SUPPORT OF MOTION TO DISMISS CHARGES AGAINST DEFENDANT MARK R. MEADOWS BASED ON SUPREMACY CLAUSE IMMUNITY

1

# **TABLE OF CONTENTS**

INTRODUCTION ................................................................................1

LEGAL BACKGROUND ..................................................................5

ARGUMENT .....................................................................................11

I.      MR. MEADOWS IS IMMUNE FROM THE STATE'S PROSECUTION
        UNDER THE SUPREMACY CLAUSE. .................................................11

        A.      The Charged Conduct, Carried Out While Mr. Meadows Served As
                Chief of Staff to the President of the United States, Has A "Nexus
                with Furthering Federal Policy."........................................................11

        B.      Mr. Meadows's Conduct "Can Reasonably Be Characterized as
                Complying with the Full Range of Federal Law.".............................18

II.     EVEN IF THE COURT WERE TO CONCLUDE THAT MR.
        MEADOWS IS NOT ENTITLED TO SUPREMACY CLAUSE
        IMMUNITY, HIS ACTS WOULD BE PROTECTED BY THE FIRST
        AND FOURTEENTH AMENDMENTS.................................................23

CONCLUSION ..................................................................................25

# TABLE OF AUTHORITIES

## Cases

*Arizona v. United States*,
   567 U.S. 387 (2012) ................................................................6

*Barr v. Matteo*,
   360 U.S. 564 (1959) ..............................................................16

*Baucom v. Martin*,
   677 F.2d 1346 (11th Cir. 1982) .................................... passim

*Buckley v. Valeo*,
   424 U.S. 1 (1976) .................................................................24

*Caver v. Cent. Alabama Elec. Coop.*,
   845 F.3d 1135 (11th Cir. 2017) .............................................3

*Clifton v. Cox*,
   549 F.2d 722 (9th Cir. 1977) ......................................... 9, 10

*Comm. on Judiciary, U.S. House of Representatives v. Miers*,
   558 F. Supp. 2d 53 (D.D.C. 2008) ......................................12

*Democratic Party of Georgia, Inc. v. Crittenden*,
   347 F. Supp. 3d 1324 (N.D. Ga. 2018) ...............................24

*FEC v. Cruz*,
   142 S. Ct. 1638 (2022) .........................................................23

*Free v. Bland*,
   369 U.S. 663 (1962) ..............................................................16

*Georgia v. Heinze*,
   637 F. Supp. 3d 1316 (N.D. Ga. 2022) .................................3

*Idaho v. Horiuchi*,
   215 F.3d 986 (9th Cir. 2000) .............................................2, 9

*In Re Neagle*,
   135 U.S. 1 (1890) ................................................. 1, 4, 7, 18

ii

*In re Sealed Case*,
    121 F.3d 729 (D.C. Cir. 1997) ...............................................................17

*Johnson v. Maryland*,
    254 U.S. 51 (1920) ................................................................................19

*Joyner v. A.C. & R. Insulation Co.*,
    No. CIV. CCB-12-2294, 2013 WL 877125 (D. Md. Mar. 7, 2013) .....................4

*Kentucky v. Long*,
    837 F.2d 727 (6th Cir. 1988)................................................ 2, 9, 10, 22

*Kolender v. Lawson*,
    461 U.S. 352 (1983) ..............................................................................25

*Kordash v. United States*,
    51 F.4th 1289 (11th Cir. 2022)................................................... passim

*McCulloch v. Maryland*,
    17 U.S. (4 Wheat.) 316 (1819) .................................................................6

*Nadler v. Mann*,
    951 F.2d 301 (11th Cir. 1992) ..................................................................4

*New York v. Tanella*,
    374 F.3d 141 (2d Cir. 2004) ....................................................... passim

*Ohio v. Thomas*,
    173 U.S. 276 (1899) ...................................................................... 8, 19

*Osborn v. Bank of United States*,
    22 U.S. (9 Wheat.) 738 (1824) ...................................................... 6, 16

*Skilling v. United States*,
    561 U.S. 358 (2010) ..............................................................................25

*Spencer v. New Orleans Levee Bd.*,
    737 F.2d 435 (5th Cir. 1984)....................................................................4

*Tennessee v. Davis*,
    100 U.S. 257 (1879) ..............................................................................18

iii

*Texas v. Carley,*
  885 F. Supp. 940 (W.D. Tex. 1994) .........................................................2

*Texas v. Kleinert,*
  855 F.3d 305 (5th Cir. 2017) ....................................................... 2, 9, 10

*United States ex rel. Drury v. Lewis,*
  200 U.S. 1 (1906) .....................................................................................8

*United States v. Trump,*
  No. 1:23-cr-00257-TSC (D.D.C.) ....................................................... 5, 20

*Virginia v. Amaya,*
  No. 1:21CR91, 2021 WL 4942808 (E.D. Va. Oct. 22, 2021)...............9

*Willingham v. Morgan,*
  395 U.S. 402 (1969) .................................................................................4

*Wyoming v. Livingston,*
  443 F.3d 1211 (10th Cir. 2006)................................................... passim

**Statutes**

18 U.S.C. § 1455............................................................................................2, 3

28 U.S.C. § 1442............................................................................................2

O.C.G.A. § 16-14-4(c) ............................................................................. 2, 24

O.C.G.A. §§ 16-10-1......................................................................................24

O.C.G.A. §§ 16-4-7.........................................................................................24

Reorganization Act of 1939, Pub. L. No. 76-19, 53 Stat. 561..................13

**Other Authorities**

*Applicability of the Presidential Records Act to the White House Usher's Office*, 31
  Op. O.L.C. 194 (2007)............................................................................17

*Assertion of Executive Privilege With Respect to Clemency Decision*, 23 Op.
  O.L.C. 1 (1999) .......................................................................................12

Elana Kagan, *Presidential Administration*, 114 Harv. L. Rev. 2245 (2001)  1, 4, 12

*Immunity of the Assistant to the President and Director of the Office of Political Strategy and Outreach from Congressional Subpoena*, 38 Op. O.L.C. *5 (July 15, 2014) ........................................................................................ 12, 18

*Immunity of the Former Counsel to the President From Compelled Congressional Testimony*, 31 Op. O.L.C. 191 (2007) ................................................................12

Memorandum for John D. Ehrlichman, Assistant to the President for Domestic Affairs, from William H. Rehnquist, Assistant Attorney General, Office of Legal Counsel, Re: *Power of Congressional Committee to Compel Appearance or Testimony of "White House Staff"* (Feb. 5, 1971) ...............................................12

Office of Legal Counsel, U.S. Dept. of Justice, *Congressional Oversight of the White House*, slip op. at 9 (Jan. 8, 2021)................................................. 12, 13, 17

Saikrishna B. Prakash, *Fragmented Features of the Constitution's Unitary Executive*,
45 Willamette L. Rev. 701 (2009)........................................................................13

Seth P. Waxman & Trevor W. Morrison, *What Kind of Immunity? Federal Officers, State Criminal Law, and the Supremacy Clause*, 112 YALE L.J. 2195 (2003)........................................................................................................ 1, 15, 19

**Rules**

FED. R. CRIM. P. 12(b)...............................................................................................5

**Constitutional Provisions**

U.S. CONST., art. vi, cl. 2 ....................................................................................1, 6

v

Defendant Mark R. Meadows moves to dismiss the indictment against him pursuant to Criminal Rule 12(b)(1).[1] As a federal official at the time of the charged conduct, he is immune from state prosecution under the Supremacy Clause of the Federal Constitution. *See* U.S. CONST., art. vi, cl. 2; *In Re Neagle*, 135 U.S. 1, 57 (1890); *Kordash v. United States*, 51 F.4th 1289, 1293 (11th Cir. 2022). The State's prosecution of Mr. Meadows threatens the important federal interest in providing the President of the United States with close, confidential advice and assistance, firmly entrenched in federal law for nearly 100 years, *see* Elena Kagan, *Presidential Administration*, 114 HARV. L. REV. 2245, 2272–81 (2001), and gives rise to precisely the sort of state interference in federal affairs the Supremacy Clause prohibits. Centuries of federal precedent make clear that "states may not impede or interfere with the actions of federal executive officials when they are carrying out federal laws," *Wyoming v. Livingston*, 443 F.3d 1211, 1217 (10th Cir. 2006), and that a federal official carrying out his duties is not "obliged to consider state criminal law at all before acting." Seth P. Waxman & Trevor W. Morrison, *What Kind of Immunity? Federal Officers, State Criminal Law, and the Supremacy Clause*, 112 YALE L.J. 2195, 2233 (2003). Federal courts enforce these fundamental

---

[1] The Federal Rules apply to "all proceedings after removal," except that "state law governs a dismissal by the prosecution." Fed. R. Crim. P. 1(a)(4).

1

constitutional principles by granting immunity in state prosecutions and dismissing charges under Rule 12(b).[2]

\*       \*       \*

Mr. Meadows removed this proceeding from the Superior Court of Fulton County, Georgia, under the Federal Officer Removal Statute, 28 U.S.C. § 1442, on Tuesday, August 15, 2023, *see* Notice of Removal, Dkt. No. 1, the day after he was indicted on two state-law counts as part of a 19-defendant, 41-count case under the Georgia Racketeer Influenced and Corrupt Organizations Act, O.C.G.A. § 16-14-4(c), *see* Indictment, Dkt. No. 1-1. This Court declined summary remand on Wednesday, August 16, 2023, and set an evidentiary hearing for Monday, August 28, 2023, *see* Order, Dkt. No. 6, after which the Court will "make such disposition of the prosecution as justice shall require." 18 U.S.C. § 1455(b)(5). As set forth in

---

[2] *See Com. of Ky. v. Long*, 837 F.2d 727, 750 (6th Cir. 1988) ("[A] Rule 12(b) motion is a proper vehicle by which to assert the defense of immunity under the Supremacy Clause of the United States Constitution."); *Idaho v. Horiuchi*, 215 F.3d 986, 993 (9th Cir. 2000) ("Supremacy Clause immunity is an issue that should be determined before trial in order to avoid making the federal officer go through an entire state criminal procedure if he is immune."), *vacated as moot*, 266 F.3d 979 (9th Cir. 2001); *see also*, *e.g.*, *Texas v. Kleinert*, 855 F.3d 305, 320 (5th Cir. 2017) (affirming Rule 12(b) dismissal of removed manslaughter charge against local law enforcement official participating in federal joint task force); *New York v. Tanella*, 374 F.3d 141, 146 (2d Cir. 2004) (affirming Rule 12(b) dismissal of removed manslaughter charge against DEA agent); *Texas v. Carley*, 885 F. Supp. 940, 941 (W.D. Tex. 1994) (permitting removal and dismissing charges under Rule 12(b) in state prosecution of U.S. Fish & Wildlife employee for criminal trespass).

the Notice, Mr. Meadows respectfully submits that the most just disposition is for the Court to dismiss the charges against him. *See* Notice of Rem. Dkt. No. 1, at 9.

Mr. Meadows's entitlement to removal and his immunity from prosecution are related but ultimately distinct issues. *See Caver v. Cent. Alabama Elec. Coop.*, 845 F.3d 1135 (11th Cir. 2017) (analyzing removal and immunity separately but concluding that the federal official was entitled to both). The Court certainly can decide to permit removal and notify the state court, which will stop further state-court proceedings, *see* 28 U.S.C. § 1455(b), and then address this motion on a more traditional schedule. Stopping the state criminal proceedings promptly is important. Both the Supremacy Clause and § 1442 protect federal officials from *suit* in state court, not just from liability. *See New York v. Tanella*, 374 F.3d 141, 147 (2d Cir. 2004).[3] But as set forth below, the basis for granting immunity to Mr. Meadows is straightforward under well-settled principles of federal law. The Court would therefore be justified in moving swiftly on both removal and immunity.[4]

---

[3] Moreover, it is clear that the State is seeking to move quickly in the state court such that Mr. Meadows will irreparably lose this constitutional and statutory protection (at least in part) if the Court does not promptly permit removal and notify the state court so as to stop further state criminal proceedings as to him.

[4] The Court would then have discretion in how to proceed. By default, the notice removes to federal court the entire case, not just the charges against Mr. Meadows— whether or not other defendants wish to remove or have a legal basis to do so. *See Georgia v. Heinze*, 637 F. Supp. 3d 1316, 1325 n.8 (N.D. Ga. 2022) ("'It is well settled that if one claim cognizable under Section 1442 is present, the entire action

3

At least since the Supreme Court's 1890 decision in *Neagle*, the Supremacy Clause has been understood to prohibit States from bringing "suits under state law against federal officials carrying out their executive duties." *Kordash*, 51 F.4th at 1293; *see also Denson v. United States*, 574 F.3d 1318, 1345–46 (11th Cir. 2009). A federal official—including a former official in service at the time of the charged conduct—is immune when the charged conduct has "'some nexus with furthering federal policy and can reasonably be characterized as complying with the full range of federal law.'" *Kordash*, 51 F.4th at 1293 (quoting *Denson*, 574 F.3d at 1348).

As Chief of Staff to the President of the United States and leader of the Executive Office of the President, Mr. Meadows served a critically important advice-and-assist function that has been firmly entrenched in federal law for nearly 100 years. *See* Kagan, *Presidential Administration*, 114 Harv. L. Rev. at 2272–81.

---

is removed, regardless of the relationship between the Section 1442 claim and the non-removable claims."") (quoting *Nadler v. Mann*, 951 F.2d 301, 306 n.9 (11th Cir. 1992)). Mr. Meadows, of course, had no control over how the case was presented to the grand jury and seeks removal only on his own behalf. A district court may remand proceedings against remaining defendants *after* dismissing charges against federal officials, *see Spencer v. New Orleans Levee Bd.*, 737 F.2d 435, 438 (5th Cir. 1984), and at least one court has severed a case after permitting removal and remanded the non-removable portion, *see Joyner v. A.C. & R. Insulation Co.*, No. CIV. CCB-12-2294, 2013 WL 877125, at *9-10 (D. Md. Mar. 7, 2013). Regardless of how the Court wishes to proceed, Mr. Meadows has an "absolute" right to have the charges against him heard in federal court. *Willingham v. Morgan*, 395 U.S. 402, 406 (1969).

The charged conduct here has far more than "some nexus" to his official duties and the federal policy underlying them. It involves many of the core aspects of the role.

And while his conduct is alleged to have violated *state* law, it "can reasonably be characterized as complying with the full range of *federal* law," *Denson*, 574 F.3d at 1348—which is what matters for Supremacy Clause immunity. Indeed, neither the State of Georgia in its indictment, nor the United States in its recently charged case involving overlapping conduct, *United States v. Trump*, No. 1:23-cr-00257-TSC (D.D.C.) (initiated Aug. 1, 2023), has accused Mr. Meadows of violating federal law. Even if they had, moreover, a federal official does not lose Supremacy Clause immunity based on a violation of federal law where the violation was not clear and willful. *See, e.g.*, *Baucom v. Martin*, 677 F.2d 1346, 1351 (11th Cir. 1982).

 Mr. Meadows is thus entitled to have the charges against him dismissed under Criminal Rule 12(b). That Rule allows Mr. Meadows to raise a defense which is capable of determination without the trial, *see* Fed. R. Crim. P. 12(b), and is a well-established vehicle for asserting Supremacy Clause immunity. *See supra* n.2.

## LEGAL BACKGROUND

The Supremacy Clause of the Federal Constitution provides:

> This Constitution, and the Laws of the United States which shall be made in Pursuance thereof . . . shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, anything in the constitution or laws of any state to the contrary notwithstanding.

5

U.S. Const., art. VI, cl. 2. "Although the Supremacy Clause explicitly refers only to the 'Constitution' and 'Laws,' its implication is that states may not impede or interfere with the actions of federal executive officials when they are carrying out federal laws." *Livingston*, 443 F.3d at 1217. Consistent with that understanding, the Supreme Court has long interpreted the Supremacy Clause to provide federal officials "immunity from suit" involving state charges in order to "protect[] federal operations from the chilling effect of state prosecution." *Tanella*, 374 F.3d, 147. "It is not necessary for Congress to provide expressly for such immunity in the statutes under which federal officials act; Supremacy Clause immunity is 'incidental to, and is implied in the several acts by which these [federal] institutions are created, and is secured to the individuals employed in them, by the judicial power alone.'" *Livingston*, 443 F.3d at 1217 (quoting *Osborn v. Bank of United States*, 22 U.S. (9 Wheat.) 738, 865–66 (1824) (Marshall, C.J.)).

Under our Constitution, States can neither enact nor enforce laws that "retard, impede, burden, or in any manner control" federal officers in executing their duties. *McCulloch v. Maryland*, 17 U.S. (4 Wheat.) 316, 436 (1819). And what they cannot do expressly—regulate the enforcement of laws "entrusted to the discretion of the Federal Government," *Arizona v. United States*, 567 U.S. 387, 409 (2012)—they cannot do indirectly through ad hoc enforcement of their criminal law.

These principles were well settled when the Supreme Court decided *Neagle* in 1890. There, a Deputy U.S. Marshal, David Neagle, was charged with murder in California for fatally shooting a man while protecting U.S. Supreme Court Justice Stephen J. Field. *See* 135 U.S. 1. After recounting the colorful facts of the case, the Court assessed whether the Constitution and Laws of the United States provided a basis for freeing Deputy Neagle from state custody. *See id*. And the Court concluded that they did. The Court first ascertained that Deputy Neagle was acting under color of federal law in protecting Justice Field, *id.* at 57–58, rejecting California's argument that "there exists no statute authorizing [what Neagle was doing]," *id.* at 58. The Court held that immunity must "extend in a liberal manner . . . to persons imprisoned for the performance of their duty," whether or not federal law authorized the particular task. *Id*. The Court also emphasized that Neagle "did no more than what was necessary and proper for him to do." *Id.* at 75 (emphasis added). As the Eleventh Circuit has since made clear, this analysis turns on whether the federal official's conduct "can reasonably be characterized as complying with the full range of federal law.'" *Denson v. United States*, 574 F.3d 1318, 1348 (11th Cir. 2009).

Since *Neagle*, the Supreme Court has addressed Supremacy Clause immunity only rarely. The two most notable decisions came within 20 years of *Neagle*.

In *Ohio v. Thomas*, 173 U.S. 276 (1899), the Court held that Ohio could not prosecute a federal official for serving margarine in a home for disabled veterans without placing a sign in the window, as required under Ohio law. The Court held that Congress had appropriated money to buy the margarine, and that serving it "was therefore legal, any act of the state to the contrary notwithstanding," under the Supremacy Clause. *Id.* at 283–84.

In *United States ex rel. Drury v. Lewis*, 200 U.S. 1 (1906), the Court affirmed a denial of immunity for soldiers being prosecuted for murder. There was conflicting testimony about whether the fatal shots were fired in hot pursuit of a suspected thief—or instead whether one soldier ordered, and the other soldier carried out, the execution of a civilian who had already surrendered to their pursuit. *See id.* at 3–5. The Court held that pre-trial immunity was unavailable in light of this "conflict of evidence" because it had been "conceded that if [the soldiers had executed the man after he surrendered], it could not reasonably be claimed that the fatal shot was fired in the performance of a duty imposed by the Federal law." *Id.* at 8.

In the modern era, the lower federal courts have applied the doctrine—and done so robustly—in a wide range of cases. As the Eleventh Circuit recently explained, States are broadly prohibited from bringing "suits under state law against federal officials carrying out their executive duties." *Kordash*, 51 F.4th at 1293; *see*

8

*also Denson*, 574 F.3d at 1345–46 ("[T]he Supremacy Clause . . . serves to prevent state law or state law officials from interfering with or otherwise impeding federal officers as they perform their lawful duties."). Federal-officer immunity has been widely recognized and robustly applied, including in cases from the Second, Fifth, Sixth, Ninth, Tenth, and Eleventh Circuits.[5]

Those cases often involve very serious allegations of misconduct under state law, including murder and manslaughter. *E.g.*, *Texas v. Kleinert*, 855 F.3d 305 (5th Cir. 2017); *Tanella*, 374 F.3d at 141; *Horiuchi*, 215 F.3d at 993, *vacated as moot*, 266 F.3d 979 (9th Cir. 2001); *Virginia v. Amaya*, No. 1:21CR91, 2021 WL 4942808 (E.D. Va. Oct. 22, 2021), *appeal dismissed*, No. 21-4584, 2022 WL 1259877 (4th Cir. Apr. 25, 2022).

Under *Neagle*, a federal official is entitled to immunity if he "'was authorized to do [what he did] by the law of the United States,'" if "'it was his duty to do [it] as [an officer] of the United States,'" and if "'in doing that act he did no more than what was necessary and proper for him to do.'" *Denson*, 574 F.3d at 1347 (quoting *Neagle*, 135 U.S. at 57) (alterations in original). At a general level, the inquiry turns on "whether the officer's acts have some nexus with furthering federal policy and

---

[5] *See Tanella*, 374 F.3d at 144; *Kleinert*, 855 F.3d at 313; *Long*, 837 F.2d at 734; *Clifton v. Cox*, 549 F.2d 722, 728 (9th Cir. 1977); *Livingston*, 443 F.3d at 1217; *Baucom*, 677 F.2d at 1348.

9

can reasonably be characterized as complying with the full range of federal law." *Id.*

at 1348. While the phrase "no more than necessary" might suggest a narrow scope

of immunity, that is not how the Courts of Appeals have applied it. They

unanimously agree that immunity turns on the official's general role and authority,

not specific authorization for the conduct that allegedly constitutes a criminal act.[6]

The Eleventh Circuit has simplified *Neagle*'s somewhat archaic and confusing

language: "the inquiry that determines if the Supremacy Clause bars state-law

liability is whether a federal official's acts 'have some nexus with furthering federal

policy and can reasonably be characterized as complying with the full range of

federal law.'" *Kordash*, 51 F.4th at 1293 (quoting *Denson*, 574 F.3d at 1348).

Once a federal officer makes a *prima facie* showing of Supremacy Clause

immunity, the burden shifts to the State. "[I]f the state fails to come forward with

---

[6] *See Tanella*, 374 F.3d at 147 ("No one disputes that Tanella was acting in his capacity as a federal DEA Agent when he shot Dewgard."); *Kleinert*, 855 F.3d at 317 ("With probable cause of two federal felonies, Kleinert was authorized to arrest Jackson under 21 U.S.C. § 878."); *Long*, 837 F.2d at 745 ("[E]ven though an agent exceeds his express authority, he does not necessarily act outside of the authority conferred by the laws of the United States."); *Clifton*, 549 F.2d at 728 ("[E]ven though his acts may have exceeded his express authority, this did not necessarily strip petitioner of his lawful power to act under the scope of authority given to him under the laws of the United States."); *Livingston*, 443 F.3d at 1227–28 ("The question is not whether federal law expressly authorizes violation of state law, but whether the federal official's conduct was reasonably necessary for the performance of his duties."); *Baucom*, 677 F.2d at 1350 ("In *Neagle*, it was held that the necessary authority could be derived from the general scope of the officer's duties.").

10

any evidentiary showing that disputed issues of fact exist to rebut the claim of the federal officer, the district court should sustain the defense of immunity under the Supremacy Clause." *Com. of Ky. v. Long*, 837 F.2d 727, 752 (6th Cir. 1988). "[T]he state cannot overcome that defense merely by way of allegations." *Id.*; *see also Livingston*, 443 F.3d at 1226 ("[O]nce a defendant raises the defense of Supremacy Clause immunity the burden shifts to the state to supply sufficient evidence to raise a 'genuine factual issue' that is supported by more than mere allegations.").

## ARGUMENT

### I.   MR. MEADOWS IS IMMUNE FROM THE STATE'S PROSECUTION UNDER THE SUPREMACY CLAUSE.

Mr. Meadows is immune from prosecution under the Supremacy Clause because his charged conduct has "'some nexus with furthering federal policy and can reasonably be characterized as complying with the full range of federal law.'" *Kordash*, 51 F.4th at 1293 (quoting *Denson*, 574 F.3d at 1348). That is a simple and lenient test, and it is readily met here.

### A. The Charged Conduct, Carried Out While Mr. Meadows Served As Chief of Staff to the President of the United States, Has A "Nexus with Furthering Federal Policy."

The White House Office and the Chief of Staff to the President who leads it "play a unique role in the Executive Branch, providing the President with close and

11

confidential advice and assistance on a daily basis," and "act as the President's primary information-gathering and policy development-arm." Office of Legal Counsel, U.S. Dept. of Justice, *Congressional Oversight of the White House*, slip op. at 9 (Jan. 8, 2021) (hereinafter *Congressional Oversight*).[7] Congress recognized this important federal interest in authorizing the establishment of the Executive Office of the President (EOP); that legislation responded to the simple conclusion of the Brownlow Committee in 1937: "'The President needs help.'" Elana Kagan, *Presidential Administration*, 114 Harv. L. Rev. 2245 (2001) (quoting President's

---

[7] *Available at* https://www.justice.gov/d9/opinions/attachments/2021/01/16/2021-01-08-wh-oversight.pdf. The Executive Branch has maintained for decades—as reflected in opinions from Attorneys General of both parties and attorneys in DOJ's Office of Legal Counsel—that there is a compelling federal interest in protecting the relationship between the President and his most senior aides. *See, e.g.*, *Immunity of the Assistant to the President and Director of the Office of Political Strategy and Outreach from Congressional Subpoena*, 38 Op. O.L.C. *5 (July 15, 2014); *Immunity of the Former Counsel to the President From Compelled Congressional Testimony*, 31 Op. O.L.C. 191, 192 (2007); *Assertion of Executive Privilege With Respect to Clemency Decision*, 23 Op. O.L.C. 1, 4 (1999); Memorandum for John D. Ehrlichman, Assistant to the President for Domestic Affairs, from William H. Rehnquist, Assistant Attorney General, Office of Legal Counsel, Re: *Power of Congressional Committee to Compel Appearance or Testimony of "White House Staff"* (Feb. 5, 1971). Those opinions have arisen in the context of the Separation of Powers and Congress's authority to compel testimony from senior Presidential aides. But they set forth concerns of outside interference on operation of the White House that apply just as strongly as a matter of Federalism and Supremacy. *See also Comm. on Judiciary, U.S. House of Representatives v. Miers*, 558 F. Supp. 2d 53, 99 (D.D.C. 2008) (explaining the persuasive authority of OLC opinions and granting them "as much weight as the force of their reasoning will support").

12

Comm. on Admin. Mgmt., *Report of the Committee with Studies of Administrative Management in the Federal Government* 5 (1937)). To ensure that the President has the help he needs, "Congress authorized President Roosevelt to establish the EOP under the Reorganization Act of 1939, Pub. L. No. 76-19, 53 Stat. 561; soon thereafter, [President Roosevelt] issued Reorganization Plan No. 1, which became effective in July 1939, 4 Fed. Reg. 2727, 53 Stat. 1423." *Congressional Oversight*, slip op. at 7. In the near century since, the EOP has become "something of a central nervous system of the executive branch." Saikrishna B. Prakash, *Fragmented Features of the Constitution's Unitary Executive*, 45 Willamette L. Rev. 701, 714 (2009). As the President's most senior adviser and leader of the White House Office, the Chief of Staff fulfills a critically important federal function.

The conduct charged here falls squarely within the scope of Mr. Meadows's duties as Chief of Staff and the federal policy underlying that role. He need show only "some nexus," *Kordash*, 51 F.4th at 1293, but here, the connection is much closer than what that broad standard embraces. This Court succinctly summarized the charged conduct involving Mr. Meadows in its order declining summary remand:

- He met (along with President Donald J. Trump) with Michigan officials about election fraud in Michigan. [Doc. No. [1-1]] at 21 (Act 5).

- He messaged the United States Representative from Pennsylvania and then met with Pennsylvania legislators about holding a special session. *Id.* at 21 (Act 6), 22 (Act 9).

13

- He met with John McEntee [another member of the White House staff] to request a memo about a strategy for "disrupting and delaying the joint session of Congress on January 6, 2021" relating to counting electors' votes. *Id.* at 24 (Act 19).

- He attempted to and was prohibited from physically observing a nonpublic Georgia election audit. *Id.* at 44 (Act 92).

- He arranged a phone call between President Trump and the Georgia Secretary of State's Chief Investigator, Frances Watson, regarding the presidential election results in Georgia. *Id.* (Act 93)

- He messaged Chief Investigator Watson about the potential for a quicker signature verification process of the Fulton County election results if "the [T]rump campaign assist[ed] financially." *Id.* at 45 (Act 96).

- He solicited (along with President Trump) Georgia Secretary of State to violate his oath of office by altering the certified returns for presidential electors. *Id.* at 50 (Act 112).

Order, Dkt. No. 6, at 2.

Taking these allegations as true for purposes of assessing immunity, they have a clear "nexus" or connection with Mr. Meadows's official duties as Chief of Staff. The question is *not* whether Mr. Meadows was specifically authorized or required to do each act, but whether they fall within "the general scope of [his] duties." *Baucom*, 677 F.2d at 1350. They surely do. As noted, those duties included information-gathering and providing close and confidential advice to the President. Moreover, as explained below, the State's characterization of one of these acts as violating state law is wholly irrelevant. *See* Part II.B, *infra*. Stripped of the State's

14

gloss, the underlying facts entail duties with the core functions of a Chief of Staff to the President of the United States: arranging or attending Oval Office meetings, contacting state officials on the President's behalf, visiting a state government building, and setting up a phone call for the President with a state official. Those activities have a plain connection to his official duties and to the federal policy reflected in establishing the White House Office.

The "nexus" is readily apparent. Only by virtue of his Chief of Staff role was Mr. Meadows involved in the conduct charged. Put another way, his federal position was a but-for cause of his alleged involvement. Moreover, if Mr. Meadows had absented himself from Oval Office meetings or refused to arrange meetings or calls between the President and governmental leaders, that would have affected his ability to provide the close and confidential advice that a Chief of Staff is supposed to provide. It is inescapable that the charged conduct arose from his duties and was material to the carrying out of his duties, providing more than merely "some nexus."

The State's prosecution of Mr. Meadows thus threatens the important federal interest in providing the President of the United States with close, confidential advisers and gives rise to precisely the sort of state interference in federal affairs that the Supremacy Clause immunity doctrine is aimed at preventing. *See* Seth P. Waxman & Trevor W. Morrison, *What Kind of Immunity? Federal Officers, State*

*Criminal Law, and the Supremacy Clause*, 112 Yale L.J. at 2231 ("[S]ubjecting federal officers to state criminal sanctions for carrying out their federally appointed duties could make it extremely difficult, if not impossible, for the federal government to function. Even the most dedicated federal servant would be reluctant to do his job conscientiously if he knew it could mean prison time in the state penitentiary."); *see also Denson*, 574 F.3d at 1348 (explaining that Supremacy Clause immunity prevents the States from "frustrat[ing] and imped[ing] the compelling federal interest of allowing federal officers to effectively discharge their duties") (citing *Barr v. Matteo*, 360 U.S. 564, 571 (1959); *Free v. Bland*, 369 U.S. 663, 666 (1962); *Osborn v. Bank of U.S.*, 22 U.S. (9 Wheat.) 738, 865–66 (1824)).

If Georgia could prosecute a Chief of Staff to the President based on a course of conduct that includes, for instance, arranging meetings with legislators from Michigan and Pennsylvania, presumably those States too—and perhaps others— could investigate and potentially prosecute him as well. The implications are staggering, and that prospect would hobble not just the Chief of Staff's ability to carry out the role effectively, but Presidential operations generally. That is contrary to federal law establishing the Executive Office of the President and White House Office to provide the President nimble and effective advice and assistance. The Supremacy Clause does not permit such conflict.

16

Indeed, in other contexts that present similar concerns of chilling the President's staff, "Congress and the federal courts [have] recognized the need to treat the President's inner circle of advisers differently"—namely, to provide more robust protection. *Congressional Oversight*, slip op. at 8. Federal courts, for instance, have recognized the substantial "public interest" in protecting candid communication and advice between a President and his most senior advisors. *In re Sealed Case*, 121 F.3d 729, 751–52 (D.C. Cir. 1997). The law must thus "provide sufficient elbow room for advisers to obtain information from all knowledgeable sources," whether or not they ultimately relay it to the President. *Id.* at 752. Congress has also acknowledged "that the President should have complete discretion in hiring staff with whom he interacts on a continuing basis." *Applicability of the Presidential Records Act to the White House Usher's Office*, 31 Op. O.L.C. 194, 197 (2007).

As the Department of Justice explained in the Obama Administration, "[a]bsent immunity for a President's closest advisers, congressional committees could wield their compulsory power to attempt to supervise the President's actions, or to harass those advisers in an effort to influence their conduct, retaliate for actions the committee disliked, or embarrass and weaken the President for partisan gain." *Immunity of the Assistant to the President and Director of the Office of Political Strategy and Outreach from Congressional Subpoena*, 38 Op. O.L.C. at *5 (July 15,

17

2014). The same concern applies *mutatis mutandis* to state prosecution. The Supremacy Clause gives federal officials "immunity from suit" on state charges to "protect[] federal operations from the chilling effect of state prosecution." *Tanella*, 374 F.3d at 147; *see generally In Re Neagle*, 135 U.S. 1 (1890); *Tennessee v. Davis*, 100 U.S. 257 (1879).

This prosecution—insofar as it charges Mr. Meadows with state-law offenses based on his conduct as Chief of Staff to the President of the United States—has the requisite "nexus" to federal policy to give rise to Supremacy Clause immunity.

## B. Mr. Meadows's Conduct "Can Reasonably Be Characterized as Complying with the Full Range of Federal Law."

Mr. Meadows also satisfies the second prong of the Supremacy Clause immunity analysis because his conduct—even as charged in the Indictment—"'can reasonably be characterized as complying with the full range of federal law.'" *Kordash*, 51 F.4th at 1293 (quoting *Denson*, 574 F.3d at 1348). The key point here is that a federal official is entitled to Supremacy Clause immunity without regard to any provision of state law unless his conduct constituted a clear and objectively unreasonable violation of federal law or the Federal Constitution.

Under *Neagle*, "entitlement to Supremacy Clause immunity is to be ascertained by looking only at federal law"; the whole point is that a federal official carrying out his duties is not "obliged to consider state criminal law at all before

18

acting." Seth P. Waxman & Trevor W. Morrison, 112 Yale L.J. at 2233; *see also Johnson v. Maryland*, 254 U.S. 51, 56–57 (1920) ("[E]ven the most unquestionable and most universally applicable of state laws, such as those concerning murder, will not be allowed to control the conduct of a marshal of the United States acting under and in pursuance of the laws of the United States."); *Thomas*, 173 U.S. at 283 ("[F]ederal officers who are discharging their duties in a state, and who are engaged . . . in superintending the internal government and management of a federal institution, under the lawful direction of its board of managers, and with the approval of congress, are not subject to the jurisdiction of the state in regard to those very matters of administration which are thus approved by federal authority. . . . [Federal] officers, when discharging duties under federal authority pursuant to and by virtue of valid federal laws, are not subject to arrest or other liability under the laws of the state in which their duties are performed.").

Here, the indictment does not allege that Mr. Meadows violated any provision of federal law or of the Federal Constitution. To the contrary, he is charged "with the offense of **SOLICITATION OF VIOLATION OF OATH BY PUBLIC OFFICER, O.C.G.A. §§ 16-4-7 & 16-10-1**," Indictment, Dkt. No. 1-1, at 87 (Count 28), and based on that alleged predicate, "with the offense of **VIOLATION OF THE GEORGIA RICO (RACKETEER INFLUENCED AND CORRUPT**

19

**ORGANIZATIONS) ACT, O.C.G.A. § 16-14-4(c)**," *id.* at 13 (Count 1). Those

purported violations of state law are irrelevant under the second prong; he is not

accused of violating federal law.

And while there has been a recent federal indictment relating to many of the

same issues, *see United States v. Trump*, No. 1:23-cr-00257-TSC (D.D.C.) (initiated

Aug. 1, 2023), Mr. Meadows is neither charged nor identified as a co-conspirator in

that indictment. He is mentioned by title four times, including in connection with the

trip to the Cobb County Civic Center that is cited in the Indictment here:

- "On December 3, Co-Conspirator 1 orchestrated a presentation to a Judiciary Subcommittee of the Georgia State Senate, with the intention of misleading state senators into blocking the ascertainment of legitimate electors. During the presentation . . . [a]n agent of the Defendant and Co-Conspirator 1 falsely claimed that more than 10,000 dead people voted in Georgia. That afternoon, a Senior Advisor to the Defendant told the ***Defendant's Chief of Staff*** through text messages, 'Just an FYI. [A Campaign lawyer] and his team verified that the 10k+ supposed dead people voting in GA is not accurate . . . . It was alleged in [Co-Conspirator 1's] hearing today.' The Senior Advisor clarified that he believed that the actual number was 12." Indictment, *United States v. Trump*, No. 1:23-cr-00257-TSC (D.D.C.), Dkt. No. 1, ¶ 21(a).

- "On December 23, a day after the ***Defendant's Chief of Staff*** personally observed the signature verification process at the Cobb County Civic Center and notified the Defendant that state election officials were 'conducting themselves in an exemplary fashion' and would find fraud if it existed, the Defendant tweeted that the Georgia officials administering the signature verification process were trying to hide evidence of election fraud and were '[t]errible people!'" *Id.* ¶ 28.

20

- "The plan began in early December, and ultimately, the conspirators and the Defendant's Campaign took the Wisconsin Memo and expanded it to any state that the Defendant claimed was 'contested'— even New Mexico, which the Defendant had lost by more than ten percent of the popular vote. This expansion was forecast by emails the ***Defendant's Chief of Staff*** sent on December 6, forwarding the Wisconsin Memo to Campaign staff and writing, 'We just need to have someone coordinating the electors for states.'" *Id.* ¶ 55.

- "The Defendant repeatedly refused to approve a message directing rioters to leave the Capitol, as urged by his most senior advisors-including the White House Counsel, a Deputy White House Counsel, ***the Chief of Staff***, a Deputy Chief of Staff, and a Senior Advisor. Instead, the Defendant issued two Tweets that did not ask rioters to leave the Capitol but instead falsely suggested that the crowd at the Capitol was being peaceful . . . ." *Id.* ¶ 114.

(Emphasis added.) Nothing suggests Mr. Meadows violated federal law.

The core principle behind the doctrine of Supremacy Clause immunity is that *federal law*, not state law, must govern the conduct of federal officials in carrying out their federal duties. The States may not second-guess or superintend that role. This matter, then, provides a paradigmatic case for applying immunity: the U.S. Department of Justice brought charges related to the aftermath of the 2020 election, including in the State of Georgia, and omitted Mr. Meadows, while the Fulton County District Attorney has charged him with violations of state law arising from his conduct as a federal official in the same matter.

Indeed, even if a federal official *does* exceed his authority under federal law or violates some federal prohibition (or is accused of doing so), that would not be

enough to forfeit his Supremacy Clause immunity. Since the Supreme Court's seminal decision in *Neagle*, federal courts have consistently held that federal agents are immune from state-law prosecution so long as they did not violate federal law maliciously or with criminal intent. *See supra* n.2. For instance, in *Baucom*, the Eleventh Circuit held that it was irrelevant whether an undercover FBI special agent exceeded his authority under federal law by participating in an alleged attempt to bribe a state official; it was enough for the court that he did not act out of "any personal interest, malice, actual criminal intent, or for any other reason than to do his duty as he saw it." 677 F.2d at 1350. Similarly, in *Long*, the Sixth Circuit affirmed dismissal of a burglary charge against an FBI special agent, notwithstanding the agent's violation of FBI regulations, because the district court had found that the agent had "no motive other than to do his job under circumstances as they appeared to him" and "an honest and reasonable belief that what he did was necessary" to the performance of his duties. 837 F.2d. at 744. Thus, even if the State tried to articulate some *post hoc* theory that Mr. Meadows violated federal law, that accusation would not strip him of the immunity to which he is entitled under the Supremacy Clause.[8]

---

[8] The politically-charged nature of the issues involved in this matter further bolster, rather than undermine the basis for protecting federal officials from state law prosecution. *See Watson v. Philip Morris Cos., Inc.*, 551 U.S. 142, 150 (2007) (explaining that the removal statute's "basic" purpose is to protect the Federal Government from the interference with its "operations" and to protect when

## II.   EVEN IF THE COURT WERE TO CONCLUDE THAT MR. MEADOWS IS NOT ENTITLED TO SUPREMACY CLAUSE IMMUNITY, HIS ACTS WOULD BE PROTECTED BY THE FIRST AND FOURTEENTH AMENDMENTS

If the Court were to conclude that Mr. Meadows is not entitled to Supremacy Clause immunity, that would not mean that the charges against him should proceed to trial. He would still have defenses under the First and Fourteenth Amendments and would seek to raise those before trial.[9]

If the Court were to conclude that the charged conduct did not have any "nexus" to his official duties as Chief of Staff, then it would need to find instead that the First and Fourteenth Amendments protect that activity. All of the alleged conduct as to Mr. Meadows relates to protected political activity that lies in the heartland of First Amendment. The First Amendment "has its fullest and most urgent application precisely to the conduct of campaigns for political office," *FEC v. Cruz*, 142 S. Ct. 1638, 1650 (2022) (citation omitted), and merits "the broadest protection to such

---

State-court proceedings may reflect "local prejudice" against unpopular federal laws or federal officials.); *Jefferson Cnty. v. Acker*, 527 U.S. 423, 447 (1999); *Long*, 837 F.2d at 750 (explaining that the purpose of removal "was to provide a federal forum in any case where a federal official might raise a defense arising from his official duties" and to create "an environment free of local interests or prejudice").

[9] Mr. Meadows did not raise these issues in the Notice of Removal because they are solely contingent defenses, since they presume that he is not immune under the Supremacy Clause. But if necessary, Mr. Meadows would seek the Court's leave to amend the Notice of Removal to assert them and would set them forth in greater detail in a separate motion.

political expression in order to assure the unfettered interchange of ideas for the bringing about of political and social changes desired by the people," *Buckley v. Valeo*, 424 U.S. 1, 14 (1976) (cleaned up).

For example, whatever one thinks of the merits of the tone and tenor of the discussion with the Georgia Secretary of State, the subject matter was undeniably about public issues of political importance. A candidate for public office does not cease to be a political candidate when the polls close on election day. Rather, the right to "vigorously and tirelessly" advocate for one's own election continues beyond that time. *See Democratic Party of Georgia, Inc. v. Crittenden*, 347 F. Supp. 3d 1324, 1347 (N.D. Ga. 2018) (Jones, J.) (enjoining the State of Georgia from certifying election results until certain absentee ballots were counted). Nor is it unlawful to petition for redress pursuant to political or legal process when the results of an election remain undetermined. All the substantive allegations in the Indictment concern unquestionably political activity and thus, if not covered by Supremacy Clause immunity, the charges would be barred by the First Amendment.

Similarly, in that scenario, Mr. Meadows would also have a fair notice defense under the Due Process Clause of the Fourteenth Amendment. If O.C.G.A. § 16-14-4(c) (Georgia RICO), and O.C.G.A. §§ 16-4-7 & 16-10-1 (Solicitation of Violation of Oath by Public Officer), are truly broad enough to criminalize the

conduct of the Chief of Staff as alleged in the Indictment, then those statutes are unconstitutionally vague as applied to the charges against Mr. Meadows. "To satisfy due process, 'a penal statute [must] define the criminal offense [1] with sufficient definiteness that ordinary people can understand what conduct is prohibited and [2] in a manner that does not encourage arbitrary and discriminatory enforcement.'" *Skilling v. United States*, 561 U.S. 358, 402–03 (2010) (quoting *Kolender v. Lawson*, 461 U.S. 352, 357 (1983)). If Georgia law really does apply to Mr. Meadows as alleged in the Indictment, then its enforcement violates his rights under the Due Process Clause of the Fourteenth Amendment.

## CONCLUSION

This Court should dismiss all charges against Mr. Meadows in the Indictment under the Supremacy Clause of the Federal Constitution—or, alternatively, under the First and Fourteenth Amendments.

Dated: August 18, 2023                    Respectfully submitted,

                                          */s/ George J. Terwilliger III*

Joseph M. Englert                         George J. Terwilliger, III*
MCGUIREWOODS LLP                          John S. Moran*
1230 Peachtree St., N.E., Suite 2100      Michael Francisco*
Atlanta, GA 30309                         MCGUIREWOODS LLP
(404) 443-5500                            888 16th Street NW, Suite 500
Jenglert@mcguirewoods.com                 Washington, DC 20006

(202) 857-1700                              * Admitted *Pro Hac Vice*
gterwilliger@mcguirewoods.com
jmoran@mcguirewoods.com                    *Counsel to Mark R. Meadows*
mfrancisco@mcguirewoods.com

26

## **CERTIFICATE OF COMPLIANCE**

The undersigned certifies that 14-point Times New Roman font was used for

this document and that it has been formatted in compliance with Local Rule 5.1.


August 19, 2023


 /s                      
Michael Francisco
*Attorney for Defendant Mark R. Meadows*

27

## <u>CERTIFICATE OF SERVICE</u>

On August 19, 2023, the foregoing MEMORANDUM IN SUPPORT OF MOTION TO DISMISS CHARGES AGAINST DEFENDANT MARK R. MEADOWS BASED ON SUPREMACY CLAUSE IMMUNITY was electronically filed with the Clerk of Court using the CM/ECF system, which will automatically send email notification of such filing to all attorneys of record.

August 19 2023

___/s_____

Michael Francisco

*Attorney for Defendant Mark R. Meadows*

28

**Tab 17**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA

|  |  |  |
|---|---|---|
| THE STATE OF GEORGIA, | ) | |
| | ) | |
| v. | ) | Case No. 1:23-cv-03621-SCJ |
| | ) | |
| MARK R. MEADOWS, | ) | |
| | ) | |
| *Defendant.* | ) | |
|  | ) | |

## EMERGENCY MOTION FOR IMMEDIATE REMOVAL, OR FOR AN ORDER PROHIBITING DA FANI WILLIS FROM ARRESTING DEFENDANT MARK MEADOWS

Defendant Mark R. Meadows hereby moves for the Court "promptly" to permit removal and "so notify the State court," 28 U.S.C. § 1455(b)(5), without a hearing and before Noon on Friday, August 25, 2023, in order to protect Mr. Meadows from arrest prior to this Court's upcoming hearing on removal. Granting removal immediately and notifying the state court is the most efficient way to effectuate relief. Federal courts have permitted removal without first holding the evidentiary hearing contemplated by § 1455(b)(5) where, as here, the defendant's entitlement to removal can be determined without one. *See New York v. Tanella*, 239 F. Supp. 2d 291, 295 (E.D.N.Y. 2003); *City of Jackson v. Jackson*, 235 F. Supp. 2d 532, 534 & n.2 (S.D. Miss. 2002).

Alternatively, the Court can effectuate relief by issuing an order to Fulton County District Attorney Fani Willis—who is a party to the matter before the Court—prohibiting her from arresting or causing the arrest of Mr. Meadows before the Monday hearing.

## I.   Immediate Relief Is Necessary to Prevent a State Arrest That Would Irreparably Deprive Mr. Meadows of Protection Under Federal Law and Interfere With This Court's Orderly Consideration of Removal.

District Attorney Fani Willis has made clear that she intends to arrest Mr. Meadows before this Court's Monday hearing and has rejected out of hand a reasonable request to defer *one business day* until after this Court's hearing. Absent this Court's intervention, Mr. Meadows will be denied the protection from arrest that federal law affords former federal officials, and this Court's prompt but orderly consideration of removal will be frustrated.

The Supremacy Clause protects federal officials from being "***arrested*** and brought to trial in a State court," *Tennessee v. Davis,* 100 U.S. 257, 263 (1880) (emphasis added), not just from being convicted and sentenced there. *See New York v. Tanella*, 374 F.3d 141, 147 (2nd Cir. 2004) (explaining that the Supremacy Clause provides "immunity from suit rather than a mere shield against liability"). Consistent with that broad immunity, Congress has provided that, in cases removed from state court (including under the Federal Officer Removal Statute), the state proceedings

2

should be halted immediately if the case is civil, *see* 28 U.S.C. § 1446(d), and after prompt consideration if the case is criminal, *see id.* § 1455(b)(4)–(5).

Mr. Meadows has moved as quickly as possible to remove the case against him, and consistent with § 1455(b)(5), this Court has acted "promptly" to adjudicate removal. On Wednesday, August 16, the Court entered an order holding "that Meadows's Notice of Removal is sufficient to withstand summary remand under Section 1455(b)(4)," Order, Dkt. No. 6, at 8, and ordered, "that the Parties participate in an evidentiary hearing concerning the Notice of Removal of the Indictment against Mark R. Meadows on **Monday, August 28, 2023, at 10:00 A.M.**," *id.* at 10.

Earlier that day, counsel for Mr. Meadows had made efforts to meet and confer with District Attorney Fani Willis about seeking the Court's prompt consideration of removal "or in the alternative, to stay state criminal proceedings against Mr. Meadows pending consideration of his notice of removal." Ex. 1 (Aug. 16, 2023, Email from J. Moran to F. Willis). District Attorney Willis informed counsel that no one from the District Attorney's Office would be available until Monday, August 21. *See* Ex. 2 (Aug. 16, 2023, Email from F. Willis to J. Moran). At 10:30 A.M. on Monday, August 21, counsel spoke with the District Attorney's Office; they informed counsel of their firm terms for a consent bond and made clear

that Mr. Meadows would be arrested if he did not voluntarily surrender before Noon on Friday, August 25. *See* Ex. 3 (Aug. 21, 2023 Letter from J. Moran to F. Willis).

On the afternoon of Monday, August 21, counsel for Mr. Meadows sent a letter to District Attorney Willis requesting "a modest extension of that [Friday at Noon] deadline." *Id*. Noting that this Court had set the hearing for Monday, August 28, counsel stated that "it would be eminently reasonable, and the best allocation of the parties' resources, to defer voluntary surrender for Mr. Meadows until next week." *Id*. Counsel further stated that, if District Attorney Willis agreed to the additional time, counsel would "be prepared to meet and confer . . . immediately following the federal court hearing—which is scheduled for less than one business day after the current deadline"—to "discuss the best path forward based on the outcome of the hearing, including a prompt voluntary surrender in Fulton County, if appropriate." *Id*.

This morning, District Attorney Willis rejected the proposal out of hand and made clear that she would arrest Mr. Meadows before this Court's hearing if he does not agree to bond terms and voluntarily surrender:

> I am not granting any extensions. I gave 2 weeks for people to surrender themselves to the court. Your client is no different than any other criminal defendant in this jurisdiction. The two weeks was a tremendous courtesy. At 12:30 pm on Friday I shall file warrants in the system. My team has availability to meet to discuss reasonable consent bonds Wednesday and Thursday.

4

Ex. 4 (Aug. 22, 2023, Email from F. Willis to J. Moran). Counsel responded by letter earlier today making clear that Mr. Meadows *is* differently situated from other Fulton County defendants because he is a former federal official who has a pending Notice of Removal which is scheduled for consideration before this Court on Monday, August 28. *See* Ex. 5 (Aug. 22, 2023, Letter from J. Moran to F. Willis). Counsel urged District Attorney Willis to reconsider and made clear that, in the meantime, Mr. Meadows would seek appropriate relief. *See id.*

The Court should promptly grant relief to prevent Mr. Meadows from irreparably losing his right under federal law to be free from state arrest and to protect this Court's ability consider Mr. Meadows's Notice of Removal, *see* Notice, Dkt. No. 1, and Motion to Dismiss, Dkt. No. 15, in an orderly fashion.

## II. The Most Efficient Relief Is to Permit Removal Immediately and So Notify the State Court.

Under § 1455(b)(5), state criminal proceedings will stop as soon as this Court permits removal and so notifies the state court. While § 1455(b)(5) contemplates an evidentiary hearing, and this Court has scheduled one for Monday, August 28, federal courts have also permitted removal on the papers without an evidentiary hearing. *See Tanella*, 239 F. Supp. 2d at 295; *Jackson*, 235 F. Supp. 2d at 534 & n.2. Doing so here would be the most efficient and effective way to protect Mr. Meadows's rights under federal law and to facilitate the orderly consideration of

5

everything pending before this Court. The Court could still hold a hearing on Monday, August 28, and could later reconsider removal, if necessary.

Mr. Meadows's entitlement to removal under the Federal Officer Removal Statute is plain from the face of the indictment and his Notice of Removal. *See* Dkt. Nos. 1, 1-1.

> A defendant can remove a case to federal court under section 1442(a)(1) when the following two elements are met: (1) the defendant advances a "colorable defense arising out of his duty to enforce federal law" and (2) the defendant establishes that there is a "causal connection between what the officer has done under asserted official authority and the action against him."

*Bateman v. Depczynski*, No. 1:12-CV-04118-SCJ, 2013 WL 7121195, at *2 (N.D. Ga. July 8, 2013) (Jones, J.) (quoting *Magnin v. Teledyne Cont'l Motors*, 91 F.3d 1424, 1427 (11th Cir.1996)); *see also Georgia v. Heinze*, 637 F. Supp. 3d 1316 (N.D. Ga. 2022). Mr. Meadows has a (far more than) plausible or "'colorable'" federal defense, *Heinze*, 637 F. Supp. 3d at 1325 (quoting *Jefferson Cnty., Ala. v. Acker*, 527 U.S. 423, 431 (1999)), based on federal immunity under the Supremacy Clause of the Federal Constitution, *see* U.S. CONST., art. vi, cl. 2; *In Re Neagle*, 135 U.S. 1, 57 (1890); *Kordash v. United States*, 51 F.4th 1289, 1293 (11th Cir. 2022); *Denson v. United States*, 574 F.3d 1318, 1345–46 (11th Cir. 2009). And there is a plain "'causal connection'" between the conduct charged and his official role, *Magnin v. Teledyne Cont'l Motors*, 91 F.3d 1424, 1427 (11th Cir. 1996) (quoting *Maryland v. Soper*,

6

270 U.S. 9, 33 (1926)), sufficient to clear the "quite low" "hurdle" of the second prong, *Caver v. Cent. Alabama Elec. Coop.*, 845 F.3d 1135, 1144 (11th Cir. 2017).

That is enough. Mr. Meadows "need not win his case before he can have it removed" and enjoy "the protection of a federal forum." *Willingham v. Morgan*, 395 U.S. 402, 407 (1969).[1] The standard for removal is even easier to meet than the standard for asserting a Supremacy Clause immunity on the merits. *See Caver*, 845 F.3d at 1145 (explaining that removal under § 1442 was proper when the defendant's federal defense was "plausible" and then separately analyzing the actual merits of that defense). Mr. Meadows has satisfied this showing.

Prompt action is needed to spare Mr. Meadows the burden and cost of defending himself in state court, which is precisely what the Supremacy Clause and § 1442 protect against. *See, e.g.*, *Denson*, 574 F.3d at 1346–47. Because federal law provides federal officials like Mr. Meadows "immunity from suit rather than a mere

---

[1] To the extent the State takes issue with, or the Court might have questions about, the relevant facts, counsel will be prepared to address them at the upcoming evidentiary hearing on Monday, August 28—though it bears repeating that Mr. Meadows "need not admit the acts charged, nor . . . establish [his] innocence of the charges" to remove to federal court. 14C WRIGHT & MILLER, FED. PRAC. & PROC. JURIS. § 3726 (Rev. 4th ed.) (citing *Soper*, 270 U.S. at 36). Mr. Meadows also respectfully submits that the Court can permit removal now, and thereby stop the state criminal proceedings, and still hold an evidentiary hearing to consider additional arguments and evidence, after which the Court could reconsider its decision if necessary.

shield against liability," *Tanella*, 374 F.3d at 147, it is important to adjudicate removal quickly *before* Mr. Meadows is subjected to the very burdens in state court from which he has a legal right to be free. *Cf. McClish v. Nugent*, 483 F.3d 1231, 1237 (11th Cir. 2007) ("In order to spare officials who are entitled to immunity from the burden of litigation, the availability of qualified immunity should be evaluated early in the proceedings.") (citing *Saucier v. Katz*, 533 U.S. 194, 200–01 (2001)).

Unfortunately, the State is set on subjecting Mr. Meadows to criminal process in Georgia as quickly as it can and without regard to his pending efforts to remove the case to federal court. In addition to threatening arrest on Friday—in advance of this Court's Monday hearing—the State has also sought a scheduling order that would proceed exceptionally fast for a 19-defendant, 41-count prosecution. *See* Ex. 6 (State's Motion for Entry of Pretrial Scheduling Order). After arrest, the State would require arraignment by Friday, September 8, and then would quickly initiate critical deadlines on discovery and defenses. *See id*. Time is therefore of the essence for this Court to permit removal and notify the state court so as to halt further state court proceedings, *see* 28 U.S.C. § 1455(b)(5), before Mr. Meadows (and the State) expend substantial resources in state-court litigation.

The Court should therefore effectuate relief for Mr. Meadows by permitting removal immediately and so notifying the state court.

**III.  The Court May Also Issue an Order Enjoining District Attorney Willis from Arresting Mr. Meadows Before This Court's Monday Hearing.**

Alternatively, Mr. Meadows asks the Court to order District Attorney Willis not to arrest Mr. Meadows before the hearing scheduled for Monday, August 28. That short-term, modest relief would prevent the irreparable loss of Mr. Meadows's rights under federal law and allow this Court to consider the merits of removal in an orderly fashion without any substantial prejudice to the State of Georgia. While federal courts will not enjoin pending state proceedings lightly, a temporary pause of the state criminal proceedings here would not run afoul of the Anti-Injunction Act, *see* 28 U.S.C. § 2283, nor of the abstention doctrine articulated in *Younger v. Harris*, 401 U.S. 37 (1971), and would protect the important federal interests flowing from the Supremacy Clause and the Federal Officer Removal Statute while the Court considers Mr. Meadows's Notice of Removal.

Mr. Meadows's grounds for removal are simple, but the case as a whole is complex. It includes 19 defendants charged in 41 counts in a 97-page indictment.[2] It

---

[2] The Federal Officer Removal Statute by default removes to federal court the entire case, not just the charges against Mr. Meadows—whether or not other defendants wish to remove or have a legal basis to do so. *See Heinze*, 637 F. Supp. 3d at 1325 n.8 ("'It is well settled that if one claim cognizable under Section 1442 is present, the entire action is removed, regardless of the relationship between the Section 1442 claim and the non-removable claims.'") (quoting *Nadler v. Mann*, 951 F.2d 301, 306 n.9 (11th Cir. 1992)). Mr. Meadows, of course, had no control over how the case was presented to the grand jury and seeks removal only on his own behalf. A district

9

could take significant time to brief, argue, and adjudicate removal and substantive defenses, particularly now that other defendants have filed notices of removal. And state court proceedings are not stayed automatically as they would be with removal of a civil case. The State, meanwhile, is threatening arrest and seeking a pretrial scheduling order that would proceed very quickly, with critical deadlines coming up in a matter of weeks.

As noted, the Supremacy Clause and the Federal Officer Removal Statute provide Mr. Meadows a legal immunity from suit, not just a substantive defense. If Mr. Meadows is required to defend himself in state criminal proceedings pending this Court's adjudication of his notice of removal, he will suffer an "irreparable loss" of his procedural rights that "is both great and immediate," *Younger*, 401 U.S. at 45, justifying a modest federal stay. *See also Nixon v. Fitzgerald*, 457 U.S. 731, 742 (1982) (explaining that denials of immunity can be immediately appealable since the loss of immunity from suit cannot be vindicated on appeal from a final judgment).

---

court may remand proceedings against remaining defendants *after* dismissing charges against federal officials, *see Spencer v. New Orleans Levee Bd.*, 737 F.2d 435, 438 (5th Cir. 1984), and at least one has severed a case after permitting removal and then remanded the non-removable portion to state court, *see Joyner v. A.C. & R. Insulation Co.*, No. CIV. CCB-12-2294, 2013 WL 877125, at *9-10 (D. Md. Mar. 7, 2013). But however the Court should proceed, Mr. Meadows has an "absolute" right to have the charges against him heard in federal court, *Willingham*, 395 U.S. at 406, and the Federal Officer Removal Statute calls for prompt consideration of his Notice.

Once the Court rules on removal, either the state court proceedings will be stayed as expressly provided by federal law (if the Court permits removal), *see* 28 U.S.C. § 1455(b)(5), or Mr. Meadows will have a statutory right to appeal (if the Court does not), *see id.* § 1447(d). In either case, a brief temporary stay of state criminal proceedings will preserve Mr. Meadows's rights without substantially burdening the State of Georgia. And for now, Mr. Meadows is seeking only to prevent his arrest before the previously scheduled hearing on Monday, August 28. At the hearing and following, the Court and the parties can discuss where the matter stands and whether any further relief is necessary and appropriate.

The Anti-Injunction Act does not prevent this Court from enjoining Mr. Meadows's arrest. The Act provides that a "court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. § 2283. To start, Mr. Meadows is seeking an injunction (as an alternative to immediate removal) against District Attorney Willis, as a party to this federal case, not directly against the state court. But in any event, the Federal Officer Removal Statute is a federal statute that "expressly" authorizes a halt of state proceedings. *See Ackerman v. ExxonMobil Corp.*, 734 F.3d 237, 250 (4th Cir. 2013) (construing parallel "proceed no further" language from civil

11

removal statute as express authorization for purposes of the Anti-Injunction Act). And this is not an instance where the federal courts should abstain as a matter of comity; absent relief, Mr. Meadows is threatened with an "irreparable loss" of his procedural rights that "is both great and immediate." *Younger*, 401 U.S. at 45.

A federal court's control over parallel state proceedings in removal cases is not limited to the stays expressly provided for in Title 28; the court may also enjoin the parties from pursuing *other* litigation that is inconsistent with the defendant's right to removal. *See Quackenbush v. Allstate Ins. Co.*, 121 F.3d 1372, 1378 (9th Cir. 1997). A litigant's efforts to "subvert the removal statute implicate[] the expressly authorized exception to the Anti–Injunction Act and may warrant the granting of an anti-suit injunction." *Davis Int'l, LLC v. New Start Grp. Corp.*, 367 F. App'x 334, 337 (3d Cir. 2010). Federal courts have thus held that a party to a federal case may properly be enjoined from pursuing litigation in other fora that "would result in unwarranted inconvenience, expense, and vexation," even if the court would not have any ability to control litigation in the other fora directly. *Kaepa, Inc. v. Achilles Corp.*, 76 F.3d 624, 627 (5th Cir. 1996).

Moreover, an injunction is appropriate not only to protect Mr. Meadow's right to removal but also to protect this Court's jurisdiction and orderly consideration of the pending Notice. If District Attorney Willis arrests Mr. Meadows before this

Court's Monday hearing, the Court's August 16 order, which declined summary remand and set a hearing date to determine whether Mr. Meadows has a right to be free from state criminal proceedings, "would be effectively nullified" insofar as Mr. Meadows's right to be free from arrest and processing in state court is concerned. *Southmark Properties v. Charles House Corp.*, 742 F.2d 862, 868 (5th Cir. 1984); *see also Davis,* 100 U.S. at 263 (explaining that the Supremacy Clause protects federal officials against arrest).

Moreover, while the standard for granting removal is independent of the traditional factors for granting a stay, Mr. Meadows would be entitled to a stay of the state criminal proceedings even under those factors. *See Nken v. Holder*, 556 U.S. 418, 426 (2009) (stay governed by "four factors: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.") (citation omitted).

***First***, Mr. Meadows has made a strong showing that he is likely to prevail in removing the case to federal court and avoiding a state arrest. As set forth in the Notice of Removal, state criminal charges cannot be brought against the Chief of Staff of the President of the United States for conduct within his federal duties. *See*

13

Notice of Removal, Dkt. No. 1, at 9–12. Mr. Meadows is likely to clear the "quite low" "hurdle" of establishing his entitlement to removal. *Caver*, 845 F.3d at 1144.

***Second***, Mr. Meadows would be irreparably injured if the state criminal proceeding is not stopped. He would be subject to arrest, to the State's pre-trial criminal restrictions, and, ultimately, to risks of criminal sanction. It is black-letter law that in the context of qualified immunity, that government officials are protected for "performing discretionary functions from civil trials (and the other burdens of litigation, including discovery)." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Federal officer removal is "analogous to the qualified immunity situation, in that there comes a point early in the proceedings where the federal immunity defense should be decided in order to avoid requiring a federal officer to run the gauntlet of standing trial and having to wait until later to have the issue decided." *Kentucky v. Long*, 837 F.2d 727, 752 (6th Cir. 1988); *see also id.* (explaining that the purpose of federal officer removal is "not only to avoid the possibility of conviction of a federal agent, but also to avoid the necessity of undergoing the entire process of the state criminal procedure."). In *Davis*, the Supreme Court highlighted the need for the federal government to be able "to interfere at once" to protect federal officers charged with state crimes. 100 U.S. at 263. Courts have also long held that the otherwise strong policy against federal interference in state criminal proceedings

14

allows "intervention in those cases where the District Court properly finds that the state proceeding is motivated by a desire to harass or is conducted in bad faith." *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 611 (1975). The State's insistence on arresting Mr. Meadows before his day in federal court justifies relief.

**Third**, a stay will not substantially injure other parties, particularly the State of Georgia. If removal is resolved in Mr. Meadows's favor, the State will not have lost anything to which it was entitled. And if removal is instead resolved in favor of the State, a modest and temporary stay of Mr. Meadow's arrest will not have worked any substantial prejudice. Again, for now, he is only seeking a delay of ***one business day*** so that the Court and the parties can determine how best to proceed on Monday, August 28. So long as Mr. Meadows has a fair opportunity to present his arguments—which he has sought to do as quickly as is reasonably possible—the State can proceed in state court if and when that issue is resolved in its favor.

**Fourth**, the public interest strongly supports a stay. The very premise of Supremacy Clause immunity and the Federal Officer Removal Statute is that it is vitally important to the proper functioning of our Federal Government that federal officials be free from state arrest and prosecution when carrying out their duties. *See Davis,* 100 U.S. at 263. For the State to arrest Mr. Meadows one business day before this Court's scheduled hearing on his Notice of Removal would give rise to the very

"chilling effect" that federal law goes out of its way to protect against. *Tanella*, 374 F.3d at 147; *see generally Neagle*, 135 U.S. at 1 (1890).

*   *   *   *   *

The Court should therefore grant removal immediately and so notify the state court, or in the alternative, should enter an order prohibiting District Attorney Willis from arresting Mr. Meadows ahead of the evidentiary hearing this Court scheduled for Monday, August 28, at 10:00 A.M.[3]

---

[3] As a further alternative, the Court could construe this motion as a petition for a writ of habeas corpus and issue the writ to keep him out of state custody. For the same reasons that Mr. Meadows is entitled to removal, his arrest in state court would be in "violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). "The Supreme Court has held that challenges to future confinement are actionable in a habeas action." *Vargas v. Swan*, 854 F.2d 1028, 1031 (7th Cir. 1988) (citing *Preiser v. Rodriguez*, 411 U.S. 475, 487 (1973); *Braden v. 30th Jud. Cir. Ct. of Kentucky*, 410 U.S. 484, 488–89 (1973); *Peyton v. Rowe*, 391 U.S. 54, 67 (1968)); *Mokone v. Fenton*, 710 F.2d 998, 1002 (3d Cir. 1983) (holding that a defendant could challenge his future confinement in New York); *see also Stevens v. Heard*, 674 F.2d 320, 324 (5th Cir. 1982) (holding that habeas corpus is the right vehicle under *Preiser* to challenge "future confinement"). Mr. Meadows may therefore be considered "in custody" for habeas purposes before his actual arrest. As the Eleventh Circuit has observed, "the 'in custody' requirement should be construed 'very liberally.'" *Clements v. Florida*, 59 F.4th 1204, 1213 (11th Cir. 2023) (quoting *Howard v. Warden*, 776 F.3d 772, 775 (11th Cir. 2015)). The "proper inquiry" is whether the state's action "substantially limit[s] Mr. [Meadows's] actions or movement." *Id.* at 1214. Because "habeas corpus is no longer simply a remedy for unlawful physical custody" and the "focus [is] on liberty of movement," *id.*, the prospect of arrest unquestionably limits Mr. Meadows's "actions or movements," and if achieved, would place him squarely in state custody.

16

Dated: August 22, 2023

Respectfully submitted,

 _/s/ John S. Moran_

Joseph M. Englert
MCGUIREWOODS LLP
1230 Peachtree St., N.E., Suite 2100
Atlanta, GA 30309
(404) 443-5500
Jenglert@mcguirewoods.com

George J. Terwilliger, III*
John S. Moran*
Michael Francisco*
MCGUIREWOODS LLP
888 16th Street NW, Suite 500
Washington, DC 20006
(202) 857-1700
gterwilliger@mcguirewoods.com
jmoran@mcguirewoods.com
mfrancisco@mcguirewoods.com
* Admitted _Pro Hac Vice_

_Counsel to Mark R. Meadows_

17

## **CERTIFICATE OF COMPLIANCE**

The undersigned certifies that 14-point Times New Roman font was used for

this document and that it has been formatted in compliance with Local Rule 5.1.


August 22, 2023

                                          */s/ John S. Moran*
                                          John S. Moran
                                          *Counsel to Mark R. Meadows*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 22nd day of August, 2023, I filed a copy of this document using the Court's ECM/ECF filing system, which will send an electronic notification of the same (NEF) to counsel of record for the State.

<u>  */s/ John S. Moran*      </u>
John S. Moran
*Counsel to Mark R. Meadows*

**Tab 17-1**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA

|  |  |  |
|---|---|---|
| THE STATE OF GEORGIA, | ) | |
| | ) | |
| v. | ) | Case No. 1:23-cv-03621-SCJ |
| | ) | |
| MARK R. MEADOWS, | ) | |
| | ) | |
| *Defendant.* | ) | |
| | ) | |

## DECLARATION OF JOHN S. MORAN IN SUPPORT OF EMERGENCY MOTION FOR IMMEDIATE REMOVAL, OR FOR AN ORDER PROHIBITING DA FANI WILLIS FROM ARRESTING DEFENDANT MARK MEADOWS

I, John S. Moran, declare as follows:

1.     I am a partner with the law firm McGuireWoods LLP and one of the attorneys representing Defendant Mark R. Meadows in *Georgia v. Meadows*, 1:23-CV-03621- SCJ, where I have been admitted *pro hac vice*.

2.     I submit this declaration in support of Mr. Meadows's Emergency Motion for Immediate Removal, or for an Order Prohibiting DA Fani Willis from Arresting Defendant Mark Meadows.

3.     Attached hereto as Exhibit 1 is a true and accurate copy of an August 16, 2023, email from me to District Attorney Fani Willis requesting a call to meet and confer about Mr. Meadows's Notice of Removal (Dkt. 1) and logistics relating to the state court proceeding.

4.      Attached hereto as Exhibit 2 is a true and accurate copy of an August 16, 2023, email from District Attorney Willis to me stating that no one on her team would be available to speak to us prior to Monday, August 21 at 10:30 AM.

5.      Attached hereto as Exhibit 3 is a true and accurate copy of an August 21, 2023, letter from me to District Attorney Willis requesting an extension of her deadline for Mr. Meadows's voluntary surrender by Noon on Friday, August 25, until after this Court's hearing on Monday, August 28.

6.      Attached hereto as Exhibit 4 is a true and accurate copy of an August 22, 2023, email from District Attorney Willis to me rejecting the extension request and expressing her intent to file a warrant for arrest on Friday, August 25 at 12:30 P.M. if Mr. Meadows has not voluntarily surrendered by then.

7.      Attached hereto as Exhibit 5 is a true and accurate copy of an August 22, 2023, letter from me to District Attorney Willis urging reconsideration of her decision to deny the extension request.

8.      Attached hereto as Exhibit 6 is a true and accurate copy of the Motion for Entry of Pretrial Scheduling Order and the accompanying Proposed Pretrial Scheduling Order, filed by the Fulton County District Attorney's Office on August 16, 2023, in the Superior Court of Fulton County, Georgia in the case *Georgia v. Trump, et al.*, 23SC188947.

2

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Executed on this, the twenty-second day of August, 2023.

John S. Moran

**Tab 17-2**

# EXHIBIT
# ONE

| From: | Moran, John S. |
| --- | --- |
| To: | "Fani.WillisDA@fultoncountyga.gov" |
| Cc: | "nathan@wadeandcampbell.com"; "FMcDonald@fultoncountyga.gov"; "Will.Wooten@fultoncountyga.gov"; "Adam.Ney@fultoncountyga.gov"; George J. Terwilliger III (gterwilliger@mcguirewoods.com); Michael Francisco (mfrancisco@mcguirewoods.com); Englert, Joseph M. |
| Subject: | Georgia v. Meadows, No. 1:23-cv-03621-SCJ (N.D. Ga.) |
| Date: | Wednesday, August 16, 2023 1:36:33 PM |
| Attachments: | 20230815 Georgia v. Meadows - Notice of Removal.pdf |
| | 20230815 Georgia v. Meadows - Notice of Removal - Ex 1 - Indictment.pdf |

Ms. Willis,

On behalf of our client, Mark Meadows, we wanted to reach out and see if you or an appropriate representative from your team would be available for a call this afternoon.  Yesterday, Mr. Meadows removed the criminal proceeding your office initiated against him to the U.S. District Court for the Northern District of Georgia.  (It appears that the clerk already entered you on the docket and provided you a copy by e-mail, but I am attaching a copy of the notice and Exhibit 1 for convenience.)

We intend to move the Court "promptly" to determine that removal should be permitted and to notify the state court, as provided in 28 U.S.C. § 1455(b)(5), or in the alternative, to stay state criminal proceedings against Mr. Meadows pending consideration of his notice of removal.  We would welcome the opportunity to confer with you on the motion, including in particular about a briefing schedule and hearing date.

I should also note that Danny Griffin spoke with Mr. Wade earlier today to request an opportunity to confer timing and logistics in connection with the state court proceeding. Mr. Wade suggested that Mr. Griffin call on Monday morning at 10:30 AM to have that discussion.  We would welcome the opportunity to confer on those issues sooner but will otherwise wait for Monday morning.

Regards,

**John S. Moran**
Partner
McGuireWoods LLP
888 16th Street N.W.
Suite 500
Black Lives Matter Plaza
Washington, DC 20006
T:  +1 202 828 2817
M: +1 202 525 0356
F:  +1 202 828 3327
jmoran@mcguirewoods.com

Bio | VCard | LinkedIn | www.mcguirewoods.com



**Tab 17-3**

# EXHIBIT
# TWO

| From: | Willis, Fani |
|---|---|
| To: | Moran, John S. |
| Cc: | nathan@wadeandcampbell.com; FMcDonald@fultoncountyga.gov; Wooten, Will; Ney, Adam; Terwilliger, George J. III; Francisco, Michael; Englert, Joseph M. |
| Subject: | RE: Georgia v. Meadows, No. 1:23-cv-03621-SCJ (N.D. Ga.) |
| Date: | Wednesday, August 16, 2023 1:44:44 PM |
| Attachments: | image001.png |

**\*\*EXTERNAL EMAIL; use caution with links and attachments\*\***

Greetings Attorney Moran:

We can discuss this and the issue of your client's bond on Monday at 10:30 am.  Unfortunately, no one from my team will be available prior to that time.

Yours in Service,

*Fani T. Willis*

Fani T. Willis
District Attorney
Atlanta Judicial Circuit
Fulton County, Georgia

Please note:  This message is intended only for the use of the individual or entity to which it is addressed and may contain information that is privileged, confidential and exempt from disclosure under applicable law.  If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited.  If you have received this communication in error, please notify us immediately.

**From:** Moran, John S. <JMoran@mcguirewoods.com>
**Sent:** Wednesday, August 16, 2023 1:37 PM
**To:** Willis, Fani <Fani.WillisDA@fultoncountyga.gov>
**Cc:** nathan@wadeandcampbell.com; FMcDonald@fultoncountyga.gov; Wooten, Will <Will.Wooten@fultoncountyga.gov>; Ney, Adam <Adam.Ney@fultoncountyga.gov>; Terwilliger, George J. III <GTerwilliger@mcguirewoods.com>; Francisco, Michael <MFrancisco@mcguirewoods.com>; Englert, Joseph M. <JEnglert@mcguirewoods.com>
**Subject:** Georgia v. Meadows, No. 1:23-cv-03621-SCJ (N.D. Ga.)

Ms. Willis,

On behalf of our client, Mark Meadows, we wanted to reach out and see if you or an appropriate representative from your team would be available for a call this afternoon.  Yesterday, Mr. Meadows removed the criminal proceeding your office initiated against him to the U.S. District Court for the Northern District of Georgia.  (It appears that the clerk already entered you on the docket and provided you a copy by e-mail, but I am attaching a copy of the notice and Exhibit 1 for convenience.)

We intend to move the Court "promptly" to determine that removal should be permitted and to notify the state court, as provided in 28 U.S.C. § 1455(b)(5), or in the alternative, to stay state criminal proceedings against Mr. Meadows pending consideration of his notice of removal.  We would welcome the opportunity to confer with you on the motion, including in particular about a briefing schedule and hearing date.

I should also note that Danny Griffin spoke with Mr. Wade earlier today to request an opportunity to confer timing and logistics in connection with the state court proceeding. Mr. Wade suggested that Mr. Griffin call on Monday morning at 10:30 AM to have that discussion.  We would welcome the opportunity to confer on those issues sooner but will otherwise wait for Monday morning.

Regards,

**John S. Moran**
Partner
McGuireWoods LLP
888 16th Street N.W.
Suite 500
Black Lives Matter Plaza
Washington, DC 20006
T:  +1 202 828 2817
M: +1 202 525 0356
F:  +1 202 828 3327
jmoran@mcguirewoods.com
Bio | VCard | LinkedIn | www.mcguirewoods.com



*This e-mail from McGuireWoods may contain confidential or privileged information. If you are not the intended recipient, please advise by return e-mail and delete immediately without reading or forwarding to others.*

**Tab 17-4**

# EXHIBIT
# THREE

**McGuireWoods**

**McGuireWoods LLP**
888 16th Street N.W.
Suite 500
Black Lives Matter Plaza
Washington, DC 20006
Phone: 202.857.1700
Fax: 202.857.1737
www.mcguirewoods.com

**John S. Moran**
Direct: 202.828.2817
jmoran@mcguirewoods.com

Monday, August 21, 2023

**By E-mail & Federal Express**

Fani T. Willis
Fulton County District Attorney
136 Pryor Street
Atlanta, GA 30303
(404) 612-8904
fani.willisda@fultoncountyga.gov

### *Georgia v. Meadows*, No. 1:23-cv-03621-SCJ (N.D. Ga.)

District Attorney Willis:

I spoke with your team this morning about a consent bond for Mark R. Meadows. We are reviewing your Office's proposed terms and will discuss them with our client. We understand that you have set a deadline of this Friday, August 25, 2023, at Noon for voluntary surrender.

We respectfully request a modest extension of that deadline. As you know, Mr. Meadows has removed the case against him to federal court. Judge Steve C. Jones issued an order last Wednesday declining summary remand and setting a hearing for one week from today—Monday, August 28, at 10 AM—to address removal. We believe it would be eminently reasonable, and the best allocation of the parties' resources, to defer voluntary surrender for Mr. Meadows until next week.

If you agree, we will be prepared to meet and confer with you immediately following the federal court hearing—which is scheduled for less than one business day after the current deadline. We can then discuss the best path forward based on the outcome of the hearing, including a prompt voluntary surrender in Fulton County, if appropriate.

Thank you for your consideration. We would appreciate your reply at your soonest convenience.

Sincerely,

John S. Moran
*Counsel to Mark R. Meadows*

cc: George J. Terwilliger, III, McGuireWoods LLP

Atlanta | Austin | Baltimore | Charlotte | Charlottesville | Chicago | Dallas | Houston | Jacksonville | London | Los Angeles - Century City
Los Angeles - Downtown | New York | Norfolk | Pittsburgh | Raleigh | Richmond | San Francisco | Tysons | Washington, D.C.

# Tab 17-5

# EXHIBIT
# FOUR

| | |
|---|---|
| **From:** | Willis, Fani |
| **To:** | Moran, John S. |
| **Cc:** | Terwilliger, George J. III; Englert, Joseph M.; Wooten, Will; nathan@wadeandcampbell.com |
| **Subject:** | RE: Georgia v. Meadows, No. 1:23-cv-03621-SCJ (N.D. Ga.) - Letter re Voluntary Surrender |
| **Date:** | Tuesday, August 22, 2023 6:25:56 AM |
| **Attachments:** | image001.png |

**EXTERNAL EMAIL; use caution with links and attachments**

Good Morning Mr. Moran:

I am not granting any extensions.  I gave 2 weeks for people to surrender themselves to the court.  Your client is no different than any other criminal defendant in this jurisdiction.  The two weeks  was a tremendous courtesy.   At 12:30 pm on Friday I shall file warrants in the system.  My team has availability to meet to discuss reasonable consent bonds Wednesday and Thursday.


Yours in Service,

*Fani T. Willis*

Fani T. Willis
District Attorney
Atlanta Judicial Circuit
Fulton County, Georgia

Please note:  This message is intended only for the use of the individual or entity to which it is addressed and may contain information that is privileged, confidential and exempt from disclosure under applicable law.  If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited.  If you have received this communication in error, please notify us immediately.

**From:** Moran, John S. <JMoran@mcguirewoods.com>
**Sent:** Monday, August 21, 2023 6:11 PM
**To:** Willis, Fani <Fani.WillisDA@fultoncountyga.gov>
**Cc:** Terwilliger, George J. III <GTerwilliger@mcguirewoods.com>; Englert, Joseph M. <JEnglert@mcguirewoods.com>; Wooten, Will <Will.Wooten@fultoncountyga.gov>; nathan@wadeandcampbell.com
**Subject:** Georgia v. Meadows, No. 1:23-cv-03621-SCJ (N.D. Ga.) - Letter re Voluntary Surrender

DA Willis,

Attached please find a letter on behalf of our client, Mark R. Meadows.  We will also send a hard copy via Federal Express.

Regards,

**John S. Moran**
Partner
McGuireWoods LLP
888 16th Street N.W.
Suite 500
Black Lives Matter Plaza
Washington, DC 20006
T:  +1 202 828 2817
M: +1 202 525 0356
F:  +1 202 828 3327
jmoran@mcguirewoods.com
Bio | VCard | LinkedIn | www.mcguirewoods.com



*This e-mail from McGuireWoods may contain confidential or privileged information. If you are not the intended recipient, please advise by return e-mail and delete immediately without reading or forwarding to others.*

**Tab 17-6**

# EXHIBIT
# FIVE

**McGuireWoods**

McGuireWoods LLP
888 16th Street N.W.
Suite 500
Black Lives Matter Plaza
Washington, DC 20006
Phone: 202.857.1700
Fax: 202.857.1737
www.mcguirewoods.com

John S. Moran
Direct: 202.828.2817
jmoran@mcguirewoods.com

Tuesday, August 22, 2023

**By E-mail & Federal Express**

Fani T. Willis
Fulton County District Attorney
136 Pryor Street
Atlanta, GA 30303
(404) 612-8904
fani.willisda@fultoncountyga.gov

*Georgia v. Meadows*, No. 1:23-cv-03621-SCJ (N.D. Ga.)

District Attorney Willis:

I write in response to your email this morning rejecting our request in my letter yesterday for a modest extension of the voluntary-surrender deadline so that our client, Mark R. Meadows, will not be arrested before Judge Steve C. Jones has an opportunity to conduct an evidentiary hearing and decide whether to permit his removal, as provided under 28 U.S.C. § 1455(b)(5).

While I can understand the sentiment behind your assertion that Mr. Meadows "is no different than any other criminal defendant in [Fulton County]," we both know that is simply not true when it comes to our request. He is a former federal official charged with state-law crimes for conduct that occurred while he was serving as Chief of Staff to the President of the United States. Under the laws and Constitution of the United States, he has a right to remove his case to federal court under 28 U.S.C. § 1442(a)(1), and ultimately, to have the charges against him dismissed under the Supremacy Clause. You and your Office surely considered these issues before filing these charges.

We expect you will not agree with Mr. Meadows on the merits of removal or immunity. But we would expect you to agree that he has a right to have his arguments considered, just like any other defendant. In this instance, the rights Mr. Meadows asserts include the right not to be "***arrested*** and brought to trial in a State court." *Tennessee v. Davis,* 100 U.S. 257, 263 (1880) (emphasis added). By arresting Mr. Meadows or coercing him into a voluntary surrender before the hearing on Monday, you would be irreparably impairing his rights under federal law and frustrating the federal district court's orderly consideration of removal.

We strongly urge you to reconsider. In the meantime, we will pursue appropriate recourse to protect Mr. Meadows and his rights under federal law.

Atlanta | Austin | Baltimore | Charlotte | Charlottesville | Chicago | Dallas | Houston | Jacksonville | London | Los Angeles - Century City
Los Angeles - Downtown | New York | Norfolk | Pittsburgh | Raleigh | Richmond | San Francisco | Tysons | Washington, D.C.

M. Meadows
August 22, 2023
Page 2

Sincerely,

John S. Moran
*Counsel to Mark R. Meadows*

cc: George J. Terwilliger, III, McGuireWoods LLP

**Tab 17-7**

# EXHIBIT
# SIX

Case 1:23-cv-03621-SCJ    Document 17-7    Filed 08/22/23    Page 1 of 6
USCA11 Case: 23-12958    Document: 33-1    Date Filed: 09/18/2023    Page: 229 of 248

Fulton County Superior Court
***EFILED***NY
Date: 8/16/2023 12:49 PM
Che Alexander, Clerk

IN THE SUPERIOR COURT OF FULTON COUNTY
STATE OF GEORGIA

| | | |
|---|---|---|
| STATE OF GEORGIA | \| | |
| | \| | CASE NO. |
| v. | \| | |
| | \| | 23SC188947 |
| DONALD JOHN TRUMP, | \| | |
| RUDOLPH WILLIAM LOUIS GIULIANI, | \| | |
| JOHN CHARLES EASTMAN, | \| | |
| MARK RANDALL MEADOWS, | \| | |
| KENNETH JOHN CHESEBRO, | \| | |
| JEFFREY BOSSERT CLARK, | \| | |
| JENNA LYNN ELLIS, | \| | |
| RAY STALLINGS SMITH III, | \| | |
| ROBERT DAVID CHEELEY, | \| | |
| MICHAEL A. ROMAN, | \| | |
| DAVID JAMES SHAFER, | \| | |
| SHAWN MICAH TRESHER STILL, | \| | |
| STEPHEN CLIFFGARD LEE, | \| | |
| HARRISON WILLIAM PRESCOTT FLOYD, | \| | |
| TREVIAN C. KUTTI, | \| | |
| SIDNEY KATHERINE POWELL, | \| | |
| CATHLEEN ALSTON LATHAM, | \| | |
| SCOTT GRAHAM HALL, | \| | |
| MISTY HAMPTON a/k/a EMILY MISTY HAYES | \| | |
| Defendants. | \| | |

## MOTION FOR ENTRY OF PRETRIAL SCHEDULING ORDER

COMES NOW, the State of Georgia, by and through Fulton County District Attorney

Fani T. Willis, and requests this Honorable Court enter a pretrial scheduling order governing the

deadlines for 23SC188947, State of Georgia v. Donald John Trump et al.

In light of Defendant Donald John Trump's other criminal and civil matters pending in

the courts of our sister sovereigns[1], the State of Georgia proposes certain deadlines that do not

conflict with these other courts' already-scheduled hearings and trial dates. Further, the proposed

---

[1] United States of America v. Donald J. Trump, 1:23-CR-00257-TSC (D. D.C.); United States of America v. Donald J. Trump et al., 9:23-CR-80101-AMC (S.D. Fl.); People of the State of New York v. Donald J. Trump, 71543-23 (S. Ct. N.Y. Cty., N.Y.); People of the State of New York v. Donald J. Trump et al., 451685/2020 (S. Ct. N.Y. Cty., N.Y.).

dates are requested so as to allow the Defendants' needs to review discovery and prepare for trial but also to protect the State of Georgia's and the public's interest in a prompt resolution of the charges for which the Defendants have been indicted. The State attaches to this Motion a proposed Pretrial Scheduling Order for the Court's consideration containing the State's proposed deadlines and other relevant dates.

Respectfully submitted this 16th day of August, 2023.

FANI T. WILLIS
District Attorney
Atlanta Judicial Circuit

By:
/s/Nathan J. Wade
Nathan J. Wade
Georgia Bar No. 390947
Special Prosecutor
Fulton County District Attorney's Office
136 Pryor Street SW
3rd Floor
Atlanta, GA 30303

**Tab 17-7**

IN THE SUPERIOR COURT OF FULTON COUNTY
STATE OF GEORGIA

STATE OF GEORGIA      |

v.             |

DONALD JOHN TRUMP,    |
RUDOLPH WILLIAM LOUIS GIULIANI,  |
JOHN CHARLES EASTMAN,   |
MARK RANDALL MEADOWS,   |
KENNETH JOHN CHESEBRO,   |
JEFFREY BOSSERT CLARK,   |
JENNA LYNN ELLIS,     |
RAY STALLINGS SMITH III,   |
ROBERT DAVID CHEELEY,   |
MICHAEL A. ROMAN,    |
DAVID JAMES SHAFER,    |
SHAWN MICAH TRESHER STILL,  |
STEPHEN CLIFFGARD LEE,   |
HARRISON WILLIAM PRESCOTT FLOYD,  |
TREVIAN C. KUTTI,     |
SIDNEY KATHERINE POWELL,   |
CATHLEEN ALSTON LATHAM,   |
SCOTT GRAHAM HALL,    |
MISTY HAMPTON a/k/a EMILY MISTY HAYES|
  Defendants.     |

CASE NO.

23SC188947

---

## [PROPOSED] PRETRIAL SCHEDULING ORDER

The following proposed Order shall govern this criminal case. Absent express permission from the Court, no exceptions, extensions, or waivers to the requirements set forth herein are allowed. The term "Defendant" refers to each of the named defendants individually.

### A.  ARRAIGNMENT:

1.  Arraignment for the various Defendants shall take place the week of September 5, 2023.

2. The Clerk of Fulton County Superior Court shall mail to each Defendant and his/her counsel, if applicable, notice of this date at least five days prior to this date, pursuant to Georgia law.

**B. DISCOVERY:**

1. Defendant has until 10 days after arraignment to opt into reciprocal discovery as set forth in O.C.G.A. § 17-16-1 *et. seq*.

2. If Defendant elects to participate in reciprocal discovery pursuant to O.C.G.A. § 17-16-1 *et. seq*, all parties shall serve discovery materials then in its possession upon opposing counsel no later than September 29, 2023. Any additional discovery shall be provided to opposing counsel on a rolling basis and as soon as practicable once available within the time frames as set forth in O.C.G.A. § 17-16-4. If Defendant procures new counsel, it shall be the duty of the original attorney for the Defendant to provide all discovery served upon him/her to the new attorney.

**C. MOTIONS HEARINGS:**

1. All demurrers and claims of immunity are to be filed within ten (10) days of arraignment in accordance with O.C.G.A § 17-7-110.

2. All particularized motions and notices, including but not limited to (a) motions to suppress and (b) notices of evidence of other crimes, wrongs, or acts (including, but not limited to, 404(b) notices) shall be filed on or before October 31, 2023.

3. Hearings for motions filed by October 31 shall commence on December 11, 2023 and continue until completion.

4. Generalized and omnibus motions will not be considered by the Court. All motions shall specify, with particularity, the item, statement, and/or event at issue. Thus, for

example, a motion to suppress any and all statements is insufficient: the motion must identify the specific statement the movant is seeking to suppress, as well as the theory of suppression.

5. All motions in limine shall be filed at least five (5) days prior to the call of the trial.

**D. FINAL PRETRIAL CONFERENCE AND TRIAL DATES:**

1. The final pretrial conference shall be held on February 20, 2024.

2. The trial shall commence on March 4, 2024.

**EXTENSIONS OF DEADLINES MAY BE GRANTED WHEN REQUESTED IN WRITING AND GOOD CAUSE IS SHOWN.**


**SO ORDERED**, this _____ day of _____, 2023.


_____
**SCOTT MCAFEE**
Fulton County Superior Court
Atlanta Judicial Circuit

**Tab 23**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| THE STATE OF GEORGIA, | ) | |
| | ) | CIVIL ACTION NO. |
| | ) | 1:23-cv-03621-SC |
| | ) | |
| v. | ) | |
| | ) | RE: NOTICE OF REMOVAL |
| | ) | OF FULTON COUNTY |
| | ) | SUPERIOR COURT |
| MARK RANDALL MEADOWS | ) | INDICTMENT NO. |
| | ) | 23SC188947 |

**THE STATE OF GEORGIA'S RESPONSE IN OPPOSITION TO THE**
**DEFENDANT'S EMERGENCY MOTION FOR IMMEDIATE REMOVAL**
**AND REQUEST FOR AN INJUNCTION**

Defendant Mark R. Meadows has moved this Court for an Emergency Motion

for Immediate Removal or Order Prohibiting the District Attorney from Arresting

the Defendant. Pursuant to this Court's Order, the State of Georgia, by and through

Fulton County District Attorney Fani T. Willis, responds that the defendant's motion

is baseless and in direct contravention with the requirements of the law. The State

respectfully asks that this Court dismiss or deny the Emergency Motion, as

appropriate.

Following a lengthy investigation, a Fulton County Grand Jury issued a true

bill of indictment on August 14, 2023 against Mark Meadows (hereinafter the

defendant) and others for violating the State of Georgia's Racketeering statute and

for soliciting a Georgia public officer to violate his oath of office. On August 15, the defendant filed a notice to remove his case to federal court. On August 16, this Court issued an Order in accordance with 28 U.S.C. § 1455 directing the parties to participate in an evidentiary hearing concerning the defendant's notice of removal. Such hearing is to take place on Monday August 28, 2023, at 10:00 a.m.

Following the grand jury's return of a true bill of indictment against the defendant on August 14, the District Attorney stated she intended to provide the defendant two weeks to voluntarily surrender himself to Fulton County authorities. On August 21, the defendant, through his attorney, requested that the surrender date offered by the District Attorney be extended "until next week."[1] On August 22, the District Attorney denied the defendant's request for additional time to surrender.[2] The defendant then again requested that he be afforded additional time to surrender himself to authorities, which the District Attorney declined to offer.[3]

Subsequently, on August 22, the defendant filed this emergency motion to immediately remove the case without an evidentiary hearing and to alternatively

---

[1] Doc. [17-3]. Defendant did not actually request a particular date in which to extend his surrender, and only offers to confer after the evidentiary hearing set by this Court on August 28.

[2] Doc. [17-4]. With a true bill of indictment in hand, the District Attorney was not required to give the defendant any time to turn himself in, but did not immediately cause an arrest warrant to be issued as a matter of professional courtesy.

[3] It should be noted the defendant's former boss, the former President of the United States, voluntarily agreed to surrender himself to state authorities, while other defendants have already surrendered.

enjoin the District Attorney from "arresting or causing the arrest" of the Defendant.[4]

In his motion, the defendant contends that if this Court does not either remove the defendant's case immediately or enjoin the District Attorney from "arresting or causing the arrest of" the defendant, that the defendant will be subject to irreparable harm, in that the defendant will be arrested and otherwise subject to litigation in state court.   On August 22, 2023, this Court entered an order directing the District Attorney's Office to respond to the Defendant's Emergency Motion by 3 p.m. August 23, 2023.  Accordingly, the State of Georgia submits this response.

I.   **The Defendant's Request for Immediate Removal is not Authorized and the Court is Required to Conduct an Evidentiary Hearing.**

The defendant's contention the case should be immediately removed on the papers is meritless.  Pursuant to 28 U.S.C. § 1455(b)(3), the filing of a notice of removal of a criminal prosecution "shall not prevent the State court in which such prosecution is pending from proceeding further."  The only limitation imposed on the State court pending a notice of removal is that the State court may not enter a judgement of conviction before the prosecution is remanded.  *Id.*  Additionally, if the District Court does not order the summary remand of the prosecution, the Court **shall** order an evidentiary hearing.  *Id.*  Accordingly, the Court is required to conduct

---

[4] Doc. [17] at 2.

an evidentiary hearing, and the State court is not precluded from proceeding against the defendant even if his Notice of Removal is pending in federal court.

The Defendant's reliance on *New York v. Tanella*, 374 F.3d 141 (2d Cir. 2004) and *City of Jackson v. Jackson*, 235 F. Supp. 2d 532 (S.D.Miss 2002) for the suggestion that this Court can permit removal without an evidentiary hearing is misplaced. Both *Jackson* and *Tanella* were decided prior to the enactment of §1455.[5] Accordingly, such authority does not provide any support for the defendant's contention that this Court should dispense with an evidentiary hearing or that the State prosecution should be precluded from proceeding against the defendant pending the Court's ruling on the defendant's notice of removal.

Additionally, this Court, in compliance with § 1455, has promptly ordered an evidentiary hearing to take place on August 28, at which time both parties may be heard and present evidence concerning whether removal is proper. The Court has also allowed the State until today, Wednesday, August 23, 2023, to file a written response to the defendant's Notice of Removal. That forthcoming response demonstrates that the defendant would not be entitled to any "summary decision" regarding removal, even if such were possible under the law. The defendant's

---

[5] 28 U.S.C. §1455 was enacted December 7, 2011 and applies to any action or prosecution commenced on or after such date. The undersigned has found no authority subsequent to the enactment of § 1455 in which a criminal prosecution was removed to federal court over the objection of state authorities without an evidentiary hearing. The defense also cites no such authority.

request to immediately remove the case is a not so subtle request to invite the Court to improperly prevent the State from proceeding against the defendant pending the Court's ruling on the notice of removal. Accordingly, the State of Georgia respectfully requests that the Court DISMISS or DENY the Defendant's motion in this respect, as appropriate.

## II.   This Court Should Abstain from Interfering in a State Court Criminal Prosecution and Refuse to Enjoin or Otherwise Order the District Attorney from Performing her Statutory Duties

The defendant's request that this Court enjoin the District Attorney of Fulton County from taking action that would facilitate the arrest of the defendant is a request that this Court violate the long-standing principles set forth by the United States Supreme Court in *Younger v. Harris*, 401 U.S. 37 (1971), requiring federal courts to abstain from interfering with or enjoining state prosecutions. In order to avoid the abstention doctrine as it applies to state criminal prosecutions, the defendant bears the burden of demonstrating the proceeding against him was instituted in bad faith or that the proceedings are founded on clearly unconstitutional laws. *Leonard v. Ala. State Bd. of Pharm.*, 61 F.4th 902, 911 (11th Cir. 2023).

The Defendant makes no such claims here and has failed to make any showing his prosecution was instituted in bad faith or founded on unconstitutional laws. Instead, the Defendant's principal contention, citing *Younger*, is that he will suffer

irreparable loss by being required to "defend himself in state criminal proceedings."[6] The Court in *Younger*, however, specifically said that the inconvenience of having to defend against a single criminal prosecution does not by itself constitute irreparable injury. 401 U.S. at 46.

In fact, federal courts have repeatedly denied requests to interfere in state criminal prosecutions.[7] Generally, only in cases of proven harassment or prosecutions taken in bad faith without hope of obtaining a valid conviction is federal intervention against pending state prosecutions appropriate. *See Perez v. Ledesma*, 401 U.S. 82, 85 (1971) (reversing district court order suppressing evidence in a state prosecution and the return of seized material and concluding the district court improperly intruded into the State's criminal process). Indeed, the "propriety of arrests and admissibility of evidence in state criminal prosecutions are ordinarily matters to be resolved by state tribunals." *Id.* The Eleventh Circuit recently affirmed the long-standing principle that injury merely incidental to a lawful criminal proceeding brought in good faith does not constitute the type of irreparable injury required to merit federal intervention. *Chambersel v. Florida*, 816 Fed. Appx. 424

---

[6] Doc. [17] at 10.

[7] *See Lyons v. Kimmey*, 2021 U.S. App. LEXIS 24813 (10th Cir. 2021) (holding district court properly abstained from interfering with state criminal proceeding by dismissing defendant's lawsuit against police who arrested the defendant); *Nick v. Abrams*, 717 F. Supp 1053 (S.D. N.Y) (holding defendant failed to show irreparable harm in evidence seized from him pursuant to state search warrant).

(11th Cir. 2020) (affirming district court's denial of defendant's writ of mandamus that state court rule on pro se motions and decision not to interfere in pending state criminal prosecution).

In essence, the defendant's emergency motion is a plea to this Court to prevent the defendant from being arrested on the charges lawfully brought by the State of Georgia. Despite the Defendant's attempts to characterize the request as a "temporary pause," it is a request that the routine processing and handling of a criminal matter in the State system be dictated by federal authority. Such a request is improper.[8]

Here, the defendant does not allege that his prosecution is taken in bad faith, that there is no hope of obtaining a valid conviction, or that it is being taken to harass the defendant. The defendant is simply requesting that this Court prevent him from being lawfully arrested as any criminal defendant would be after indictment on felony charges by a grand jury. The defendant's claim that his status as a former federal officer somehow heightens this routine procedure to the level of irreparable injury to the defendant is baseless.

---

[8] It should be noted that federal courts have no authority to issue writs of mandamus to state and local officials to direct state courts or their judicial officers in the performance of their duties. *Lewis v. Texas*, 2001 U.S. App. LEXIS 31887, *2 (5th Cir. 2001). The defendant is requesting that the Court, without any proper authority, direct the District Attorney in the performance of her duties.

Even if the defendant were under federal jurisdiction, the Defendant would still be subject to arrest and detention.  Further, other former federal officers, to include the former President of the United States, have agreed to voluntarily surrender to State authorities without the claim of irreparable injury.  Additionally, the defendant's arrest will not preclude the defendant from asserting any State or federal defenses he may have.  Accordingly, the Defendant has failed to articulate the type of irreparable harm contemplated by *Younger* and its progeny.

The defendant also erroneously claims that the Anti-Injunction Act, 28 U.S.C. § 2283, which precludes a federal court from granting an injunction to stay proceedings in State court (subject to limited exceptions) does not prevent this Court from enjoining the State from arresting the defendant.[9]  The defendant appears to base this assertion on the fact he is seeking the Court to enjoin the District Attorney from acting and not the State court.  It is the State court, however, that has issued the warrant for the defendant's arrest, not the District Attorney.

Georgia criminal procedure provides that a law enforcement officer may arrest a person for a crime with or without a warrant.  O.C.G.A. §17-4-20.  Generally, it is typical Georgia criminal procedure for a defendant to be arrested on a grand jury warrant after being indicted.[10]  This generally takes place prior to or at arraignment

---

[9] Doc. [17] at 11.

[10] *See generally Wilkie v. State*, 290 Ga. 450 (2012) (noting defendant arrested on grand jury warrant after indictment); *Brooks v. State*, 365 Ga. App. 711, 729

and is part of the State court proceedings against a criminal defendant in the State criminal justice system. Accordingly, the defendant's contention the Anti-Injunction Act does not apply is meritless, and to enjoin such proceedings at this time is not authorized under the Anti-Injunction Act.

Even as he makes the above argument, the defendant also seems to suggest that the Anti-Injunction Act does apply, but the Court is permitted to enjoin the District Attorney pursuant to an exception to the Act. Specifically, citing *Davis Int'l, LLC v. New Start Grp. Corp*, 367 F. Appx. 334, 337 (3rd Cir. 2010), the defendant contends his arrest is somehow an attempt to circumvent the removal statute, which invokes an exception to the Act warranting the grant of an injunction. In *Davis*, the court found a party's re-filing of a state court action intended to circumvent the removal statute *could* be subject to an anti-suit injunction. Id. That rationale for employing an exception to the Act is inapplicable here. The State of Georgia is merely following routine procedure in a pending criminal prosecution in seeking the arrest of an indicted defendant in a case now pending before the Superior Court of Fulton County. Such action on the part of the State does not preclude this Court from considering removal on August 28, 2023, or otherwise interfere with this

---

(2022) (noting the procedural history of the case that defendant was arrested on grand jury warrant after indictment).

Court's authority to remove the case to federal court if the Court finds reason to do so.

Similarly, the defendant's claim that injunctive relief is appropriate to protect the defendant's right to removal and the Court's jurisdiction and orderly consideration of the pending notice is also meritless.[11]   Lawfully arresting the defendant on felony charges after allowing the defendant ample time to negotiate a surrender neither deprives the defendant of the ability to seek removal nor does it impact this Court's jurisdiction to consider removal.   Arresting the defendant is simply the next step in the State criminal process against the defendant, a process that, pursuant to § 1455, does not pause pending the Court's ruling on the defendant's notice of removal.

Further, even assuming the Court grants the defendant's motion to remove his case to federal court, the prosecution against the defendant remains and the defendant is still subject to arrest and detention for the offenses for which he has been indicted.   Accordingly, the defendant's request to enjoin the District Attorney from arresting or causing to have the defendant arrested is futile and the Court should DISMISS or DENY the defendant's motion in this respect, as appropriate.

---

[11] Doc. [17] at 12.

### Conclusion

28 U.S.C. § 1455 requires that the Court hold an evidentiary hearing on the defendant's notice to remove his case from state court to federal court.  Accordingly, the defendant's request that the Court decide the issue immediately "on the papers" is incompatible with the statutory requirements of removal of a criminal case. Further, the defendant has failed to demonstrate he has suffered irreparable harm warranting federal intervention in his case and has cited no authority authorizing this Court to prevent his lawful arrest.  The hardship facing the defendant is no different than any other criminal defendant charged with a crime, including his co-defendants who have either already surrendered to Fulton County Authorities or have agreed to so surrender in the time allotted by the District Attorney.  Additionally, the Superior Court of Fulton County has already issued an arrest warrant for the defendant and the Court is not authorized to enjoin such action pursuant to 28 U.S.C. § 2283. Accordingly, this Court should **DISMISS or DENY** the Defendant's motion, as appropriate.

Respectfully submitted this 23rd day of August, 2023.

FANI T. WILLIS
DISTRICT ATTORNEY
ATLANTA JUDICIAL CIRCUIT

By:

By: *s/ F. McDonald Wakeford*
F. McDonald Wakeford
Chief Senior Assistant District Attorney
Atlanta Judicial Circuit
Georgia Bar No. 414898
136 Pryor Street SW, Third Floor
Atlanta, Georgia 30303
fmcdonald.wakeford@fultoncountyga.gov

## CERTIFICATE OF COMPLIANCE

The undersigned counsel hereby certifies that this pleading complies with

the Local Rules of this Court, including Local Rules 5.1.C and 7.1.D (N.D. Ga.) in

that it is double-spaced and composed in 14-point Times New Roman font.

This 23rd day of August 2023.

*s/ F. McDonald Wakeford*
F. McDonald Wakeford
Chief Senior Assistant District Attorney
Atlanta Judicial Circuit
Georgia Bar No. 414898
136 Pryor Street SW, Third Floor
Atlanta, Georgia 30303
Fmcdonald.wakeford@fultoncountyga.gov

## CERTIFICATE OF SERVICE

I hereby certify the foregoing was served upon the following by email:

Joseph M. Englert
McGuire Woods LLP
1230 Peachtree Street NE, Suite 2100
Atlanta GA 30309

(404) 443-5500
jenglert@mcguirewoods.com

George J. Terwilliger
John S. Moran
Michael Francisco
McGuire Woods LLP
888 16th Street NW, Suite 500
Washington, DC 20006
(202) 857-1700
gterwilliger@mcguirewoods.com
jmoran@mcguirewoods.com
mfrancisco@mcguirewoods.com

Dated this 23rd day of August, 2023.

*s/ F. McDonald Wakeford*

F. McDonald Wakeford