No. 23-12958

IN THE
**United States Court of Appeals**

FOR THE ELEVENTH CIRCUIT

THE STATE OF GEORGIA
*Appellee*,

v.

MARK RANDALL MEADOWS,
*Appellant.*

On Appeal from the U.S. District Court
For the Northern District of Georgia
No. 23-cv-03621-SCJ, Hon. Steve C. Jones

**BRIEF OF CONSTITUTIONAL LAW SCHOLARS AND FORMER STATE ATTORNEYS GENERAL AS AMICI CURIAE IN SUPPORT OF APPELLEES**

Michelle Kallen
Marcus Childress
Mary E. Marshall
JENNER & BLOCK, LLP
1099 New York Avenue NW
Washington, DC 20001
(202) 639-6093
mkallen@jenner.com

*Counsel Amici Curiae*

## SUPPLEMENTAL CERTIFICATE OF INTERESTED PARTIES

The undersigned counsel of record certifies that amici curiae are unaware of any persons with any interest in the outcome of this litigation other than the signatories to this brief and their counsel, and those identified in the party and amicus briefs filed in this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

Dated: September 25, 2023                                 /s/ *Michelle Kallen*
                                                                      Michelle Kallen

                                                                      *Counsel for Amici Curiae*

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS ........................................................i

TABLE OF AUTHORITIES .................................................................... iii

INTEREST OF AMICI CURIAE ....................................................................1

SUMMARY OF ARGUMENT .....................................................................2

ARGUMENT ....................................................................................3

I.     Supremacy Clause Immunity requires a careful balance between State police powers and federal interests...........................................5

II.    Mr. Meadows has not met his burden to show that his actions were authorized by federal law...................................................................7

    A.     Mr. Meadows has not met his burden to show that his actions were authorized by federal law ...........................................8

    B.     Mr. Meadows has not met his burden to show that his actions were no more than necessary and proper to perform his federal duties...................................................................11

CONCLUSION ...................................................................................13

# TABLE OF AUTHORITIES[*]

## CASES

*Arizona v. Manypenny*, 451 U.S. 232 (1981)..........................................2, 4, 5, 6, 13

*Baker v. Grice*, 169 U.S. 284 (1898) ...........................................................................6

*Colorado v. Symes*, 286 U.S. 510 (1932).................................................................6, 8

*Cunningham v. Neagle*, 135 U.S. 1 (1890).......................................................5, 6, 8, 11

*Denson v. United States*, 574 F.3d 1318 (11th Cir. 2009).........................8, 10, 11

*Idaho v. Horiuchi*, 253 F.3d 359 (9th Cir. 2001), *vacated*, 266 F.3d
    979 (9th Cir. 2001)............................................................................................5, 6, 7

*Isaac v. Googe*, 284 F. 269 (5th Cir. 1922) .............................................................8

*Leonard v. Enterprise Rent a Car*, 279 F.3d 967 (11th Cir. 2002) ..........................4

*M'Culloch v. Maryland*, 17 U.S. (4 Wheat.) 316 (1819)....................................5, 6

*Mesa v. California*, 489 U.S. 121 (1989)........................................................2, 4, 5

*Morgan v. California*, 743 F.2d 728 (9th Cir. 1984)................................................6

*Ohio v. Thomas*, 173 U.S. 276 (1899) ....................................................................5

*Patterson v. New York*, 432 U.S. 197 (1977)...........................................................7

*United States ex rel. Drury v. Lewis*, 200 U.S. 1 (1906) .....................................3, 7

## CONSTITUTIONAL PROVISIONS AND STATUTES

U.S. Const., art. II, § 1, cl. 2 .................................................................................12

U.S. Const. art. VI, cl. 2 ...........................................................................................5

5 U.S.C. § 7323(a)(1).................................................................................................9

5 U.S.C. § 7324 .....................................................................................................9, 11

---

[*] Authorities upon which we chiefly rely are marked with an asterisk.

5 U.S.C. § 7324(a)(1)............................................................................3, 9

28 U.S.C. § 1442(a)(1)..............................................................................4

**OTHER AUTHORITIES**

U.S. Office of Special Counsel, *Investigation of Political Activities by Senior Trump Administration Officials During the 2020 Presidential Election* (Nov. 9, 2021)...............................................................11

# INTEREST OF AMICI CURIAE[1]

Erwin Chemerinsky is Dean and Jesse H. Choper Distinguished Professor of Law at the University of California at Berkeley School of Law.  Dean Chemerinsky has written and researched issues of federalism, civil procedure, and constitutional law.  He is the author of sixteen books, including leading casebooks and treatises about constitutional law and federal jurisdiction.

Brian Frosh is the Former Attorney General of the State of Maryland.  In that role, he served as Maryland's chief law enforcement officer and was elected by the citizens of Maryland to uphold the state and federal constitutions.

Mark A. Graber is a University System of Maryland Regents Professor at the University of Maryland Francis King Carey School of Law.  Professor Graber is recognized as one of the leading scholars in the country on constitutional law and politics.  He has written on issues of constitutional law and federal power in our democracy.

Tom Miller is the Former Attorney General of the State of Iowa, a position which he held for 40 years, making him the longest serving state attorney general in the country.  In that position, he served as Iowa's chief law enforcement officer

---

[1] No counsel for a party authored this brief in whole or in part; and no person or entity, other than amici and their counsel, made a monetary contribution intended to fund the preparation and submission of this brief.

1

and was elected by the citizens of Iowa to uphold the state and federal constitutions.

Peter M. Shane is the Jacob E. Davis and Jacob E. Davis II Chair in Law Emeritus at the Ohio State University's Moritz College of Law and is currently serving as a Distinguished Scholar in Residence and Adjunct Professor in Law at New York University School of Law. Professor Shane is a leading scholar in U.S. constitutional and administrative law, with a special focus on the American presidency and the separation of powers.

## SUMMARY OF ARGUMENT

Federal officer removal sets forth an exception to the "strong judicial policy against federal interference with state criminal proceedings." *Arizona v. Manypenny*, 451 U.S. 232, 243 (1981). An officer seeking to remove a criminal prosecution to federal court bears the burden of proving proper federal jurisdiction. Appellant Mark Meadows failed to meet this burden.

In addition to the flaws identified by the district court, Mr. Meadows did not establish a "colorable federal defense," *Mesa v. California*, 489 U.S. 121, 129 (1989), of Supremacy Clause immunity. On the record before the district court, both elements of federal officer immunity are missing: (1) Mr. Meadows did not show that he had authority as Chief of Staff to the President to participate in then-President Trump's efforts to overturn the 2020 election in Georgia; and (2) Mr. Meadows

2

failed to show that he did no more than what was necessary and proper in furtherance of that endeavor. *United States ex rel. Drury v. Lewis*, 200 U.S. 1, 8 (1906).

Far from showing that he was authorized to oversee or otherwise participate in a State's selection of its presidential electors, federal law (the Hatch Act) specifically prohibits using "official authority or influence for the purpose of interfering with or affecting the result of an election." 5 U.S.C. § 7324(a)(1). The Hatch Act is fatal to any argument that Mr. Meadows was authorized to interfere with Georgia's selection of its presidential electors.

The evidence before the district court also negates the second element of Supremacy Clause immunity: that the officer did no more than what was necessary and proper. The actions Mr. Meadows took to undermine the election in Georgia were certainly not necessary to his role as the President's Chief of Staff. The evidence before the district court, moreover, detailed numerous actions by Mr. Meadows that were improper when undertaken by the President's Chief of Staff.

Because the record before the district court did not support even a colorable Supremacy Clause immunity defense, the district court properly remanded the case to the Fulton County Superior Court.

## ARGUMENT

State prosecutions of state crimes normally belong in state court. The Supreme Court has long emphasized that, "[u]nder our federal system," the task of

"preventing and dealing with crime is much more the business of the States than it is of the Federal Government." *Arizona v. Manypenny*, 451 U.S. 232, 243 (1981) (internal quotation marks omitted). And, "[b]ecause the regulation of crime is pre-eminently a matter for the States," the Supreme Court has "identified 'a strong judicial policy against federal interference with state criminal proceedings.'" *Id.* (quoting *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 600 (1975)).

The federal officer removal statute, 28 U.S.C. § 1442, provides a limited exception to that "strong judicial policy." *Id.* (quoting *Huffman*, 420 U.S. at 600). Under this limited exception, a "criminal prosecution that is commenced in a State court . . . may be removed" to federal court if the prosecution is against "any officer . . . of the United States . . . for or relating to any act under color of such office." 28 U.S.C. § 1442(a)(1). Federal officers seeking to enter federal court must raise a "colorable federal defense" arising out of their duty to enforce federal law. *Mesa v. California*, 489 U.S. 121, 129 (1989).

A removing defendant must establish the propriety of removal under 28 U.S.C. § 1441, and therefore "bears the burden of proving proper federal jurisdiction." *Leonard v. Enter. Rent a Car*, 279 F.3d 967, 972 (11th Cir. 2002). The evidence before the district court reveals that Appellant Mark Meadows has not met his burden of proving proper federal jurisdiction. "It is hardly consistent with th[e] 'strong judicial policy' to permit removal of state criminal prosecutions of

4

federal officers and thereby impose potentially extraordinary burdens on the States when" as is the case here "absolutely no federal question is even at issue in [the] prosecution[]." *Mesa*, 489 U.S. at 138.

## I.  Supremacy Clause Immunity requires a careful balance between State police powers and federal interests

The Supremacy Clause declares: "This Constitution, and the Laws of the United States . . . shall be the supreme Law of the Land . . . , any Thing in the . . . Laws of any State to the Contrary notwithstanding." U.S. Const. art. VI, cl. 2.  This clause ensures that states do not "impede," "burden," "retard," or "control" the execution of federal law, *M'Culloch v. Maryland*, 17 U.S. 316 (4 Wheat.), 317 (1819), and the Supreme Court has held that where a state prosecution unduly constrains the operations of the federal government, the Supremacy Clause may immunize a federal official from state prosecution.  *Cunningham v. Neagle*, 135 U.S. 1, 74–75 (1890); *Ohio v. Thomas*, 173 U.S. 276, 284 (1899).

"Supremacy Clause immunity," however, "is not absolute and . . . presupposes that federal agents can be prosecuted for violating state law." *Idaho v. Horiuchi*, 253 F.3d 359, 376 (9th Cir. 2001) (emphasis added), *vacated*, 266 F.3d 979 (9th Cir. 2001).  A "[s]tate's interest in enforcing its criminal laws merits comparable judicial respect when pursued in the federal courts." *Manypenny*, 451 U.S. at 243.  The immunity is reserved for the "exceptional" case where the propriety of the officer's actions is "beyond dispute" and where enforcement of state law actually interferes

with enforcement of federal law.  *Horiuchi*, 253 F.3d at 368; *Baker v. Grice*, 169 U.S. 284, 291 (1898) ("Unless [a] case be of such an exceptional nature, [courts] ought not to encourage the interference of the federal court . . . with the regular course of justice in the state court."); *accord Morgan v. California*, 743 F.2d 728, 731 (9th Cir. 1984) ("The power of the federal court to enjoin state criminal prosecutions . . . should be sparingly exercised.").  "Federal officers and employees are not, merely because they are such, granted immunity from prosecution in state courts for crimes against state law." *Colorado v. Symes*, 286 U.S. 510, 518 (1932).

In *Cunningham v. Neagle*, the Supreme Court set out the test for Supremacy Clause immunity.  The immunity is available only if the federal officer establishes that: (1) the officer was performing an act that the officer was authorized to do by federal law; and (2) in doing so, the officer did "*no more* than what was necessary and proper for him to do."  135 U.S. at 75 (emphasis added).  The purpose of this test is to identify the extraordinary cases where a State's prosecution will "nullify[] federal laws by attempting to impede enforcement of those laws." *Morgan*, 743 F.2d at 731 (citing *Neagle*, 135 U.S. 1); *see also M'Culloch*, 17 U.S. at 317.

Reserving Supremacy Clause immunity for cases of "an exceptional nature," *Baker*, 169 U.S. at 291, accounts for the reality that Supremacy Clause immunity undermines the States' "pre-eminent[]" power "to make and enforce [their] own criminal laws," *Manypenny*, 451 U.S. at 243.  Indeed, the Supreme Court has been

6

clear that courts "should not lightly construe the Constitution so as to intrude upon the administration of justice by the individual States." *Patterson v. New York*, 432 U.S. 197, 201 (1977). Mr. Meadows has not met the burden to establish that his case is so "exceptional" as to have a colorable defense of Supremacy Clause immunity.

## II. Mr. Meadows has not met his burden to show that his actions were authorized by federal law

To predicate removal to federal court on a Supremacy Clause Immunity defense, Mr. Meadows must provide evidence that: (1) he had authority as Chief of Staff to the President to participate in then-President Trump's efforts to overturn the 2020 election in Georgia; and (2) he did *no more* than what was necessary and proper in furtherance of that endeavor. *See United States ex rel. Drury v. Lewis*, 200 U.S. 1, 8 (1906) (rejecting Supremacy Clause immunity when "there was a conflict of evidence as to whether [the victim] had or had not surrendered"); *Horiuchi*, 253 F.3d at 366 n.9 ("*Drury* actually holds . . . [that] [e]ven if it is not clear that the federal agents acted unlawfully, the state may proceed with the prosecution if it has evidence which, if believed, would render the federal agents' conduct unlawful."). Mr. Meadows falls far short of establishing a colorable federal defense of Supremacy Clause immunity under this standard.

### A. Mr. Meadows has not met his burden to show that his actions were authorized by federal law

"For a federal official to be exempt from civil or criminal liability under state law," it is well-settled that "it is not enough that . . . he was present for an official purpose." *Isaac v. Googe*, 284 F. 269, 270 (5th Cir. 1922); *see also Symes*, 286 U.S. at 518.  The "mere fact that one is an officer of the United States . . . does not exempt him from civil or criminal liability for what he does beyond the scope of his official duties and not in the discharge thereof." *Isaac*, 284 F. at 270.  Rather, to establish a colorable defense of Supremacy Clause immunity, Mr. Meadows must show that his actions to impede the free and fair elections in Georgia in 2020 were "act[s] which he was authorized to do" by federal law.  *Neagle*, 135 U.S. at 75; *Isaac*, 284 F. at 270.  Mr. Meadows has made no such showing here.

Far from showing that he was authorized to oversee or otherwise participate in a State's selection of its presidential electors, federal law specifically prohibits such activity by the President's Chief of Staff.  This Court recognized, "a federal official may not with impunity ignore the limitations which the controlling law has placed on his powers." *Denson v. United States*, 574 F.3d 1318, 1347 (11th Cir. 2009) (quoting *Butz v. Economou*, 438 U.S. 478, 489 (1978)).  And Mr. Meadows himself looked to *Denson* to acknowledge that this Court examines "whether the officers were acting 'within the outer perimeter of [their] line of duty' as defined by

8

federal statutory and regulatory law," Appellant Br. at 18 (citation omitted). Here, Mr. Meadows was acting outside that perimeter by violating the Hatch Act.

The Hatch Act prohibits federal employees, other than the President and Vice President, from engaging in political activity in their capacity as a government employee. 5 U.S.C. § 7324. Prohibited political activity includes use of "official authority or influence for the purpose of interfering with or affecting the result of an election." *Id.* § 7323(a)(1).

Mr. Meadows's activities fall squarely within the Hatch Act. He participated in meetings aimed at subverting the process of counting votes in Georgia and disrupting the count of duly cast electoral votes in the Senate. App. 38–39, 58. Mr. Meadows even "sent a text message to Office of the Georgia Secretary of State Chief Investigator" asking, "Is there way to speed up Fulton county signature verification in order to have results before Jan if the trump campaign assist financially." App. 59. Mr. Meadows confirmed both of these allegations were true in his testimony before the district court. App. 380–530.

Indeed, Mr. Meadows's own brief in the district court admitted that "[a]ll of the alleged conduct as to Mr. Meadows relates to protected *political activity*." App. 169 (emphasis added). In his opening brief before this Court, Mr. Meadows attempts to place this political behavior within the ambit of the Chief of Staff. He maintains he was simply "arrang[ing] and staff[ing] meetings for the President" and

9

"consider[ing] politics alongside policy."  Appellant Br. 2–3, 7.  But this is not the sort of political conduct actually before the district court.  The Indictment alleges that Mr. Meadows put pressure on Georgia officials during the ballot audit process.  App. 58–59.  Indeed, Mr. Meadows confirmed that he attempted to enter the audit in person and offered to pay for some of the audit using Trump *campaign* funds.  These are not the actions of a federal officer accounting for politics while directing federal policy.  This is active engagement in politics in an attempt to subvert American democracy—actions which are clearly beyond the scope of the duties of the Chief of Staff.

Mr. Meadows attempts to circumvent this limit on political conduct by the Chief of Staff by casting it as a rule created by the district court.  But the district court did not create a "political exception," Appellant Br. II.B, to removal.  In passing the Hatch Act, *Congress* created a "controlling law" that "placed [limitations] on [the Chief of Staff's] powers." *Denson*, 574 F.3d at 1347 (quoting *Butz*, 438 U.S. at 489).  The district court simply applied that controlling law when it determined Mr. Meadow's actions were not in keeping with his duties as Chief of Staff.

And Mr. Meadows is equally wrong in his assertion that "[t]he [Hatch] Act does not operate to define the role of a President or his senior aides."  Appellant Br. 43 (citing no authority).  By its plain text, the Hatch Act prohibits *all* federal

10

employees, aside from the President and Vice President, from engaging in political conduct.  5 U.S.C. § 7324.  That definition covers the Chief of Staff.

If Mr. Meadows's conduct was political, it was not authorized under federal law.  As this Court explained, "it is a tautology that a federal officer's actions lie outside the scope of his authority when the officer fails to comply with the affirmative requirements of federal statutory or regulatory law." *Denson*, 574 F.3d at 1347.  Mr. Meadows has not met his burden to establish that his actions were within the scope of his authority as the President's Chief of Staff.

### B. Mr. Meadows has not met his burden to show that his actions were no more than necessary and proper to perform his federal duties

The Supreme Court has made clear that a federal official is not entitled to Supremacy Clause immunity unless "he did *no more* than what was necessary and proper for him to do." *Neagle*, 135 U.S. at 75.  The actions Mr. Meadows took to undermine the election in Georgia were certainly not necessary to his role of Chief of Staff and the evidence before the district court detailed numerous actions by Mr. Meadows that were improper by a Chief of Staff.

White House Chief of Staff is a position in the federal government that exists separate and apart from the President's campaign.  U.S. Office of Special Counsel, *Investigation of Political Activities by Senior Trump Administration Officials During the 2020 Presidential Election* 7, 22–23 (Nov. 9, 2021).  By design, the Chief of Staff does not have any power to supervise or influence an election.  *See id.* at 7

11

(explaining that federal employees, such as the Chief of Staff, are "prohibit[ed] . . . from using their official authority or influence for the purpose of interfering with or affecting elections."). The Constitution places the regulation of state processes for the choice of presidential electors in the hands of state, not federal authority. U.S. Const. art. II, § 1, cl. 2 ("Each state shall appoint, in such Manner as the Legislature thereof may direct, a number of electors . . ."). Given that the President has no say in how the states choose presidential electors, his Chief of Staff certainly does not.

Because the White House Chief of Staff has no role in supervising or conducting elections, Mr. Meadows's attempts to influence the election exceeded what was necessary and proper for his role as White House Chief of Staff. For example, Mr. Meadows's outreach to encourage a state official to speed up a state process by facilitating funding by a political campaign, *see* Section II.A, *supra*, is neither a necessary part of a White House Chief of Staff's role nor is it proper for a White House Chief of Staff to attempt to influence a state election process. The Indictment details Mr. Meadows's repeated attempts to impede the 2020 election in Georgia and nullify the votes of the state's citizens. This is far more than was "proper" for the job of a government official who has no role in elections and it is certainly not a "necessary" part of the White House Chief of Staff's role.

*     *     *

State authority is at its apex when it is enforcing its police powers. *Manypenny*, 451 U.S. at 243. Mr. Meadows asks this Court to craft a rule that essentially provides federal officers a blanket right to removal, so long as they engaged in that crime at the direction of the President or higher-level executive branch officer. Such a rule is untenable, and out of step with the power granted to states to manage their own criminal law.

A state prosecution of a federal official who facilitates an illegal conspiracy to undermine the votes of millions of American citizens and undermine the peaceful transfer of power imposes no undue constraints the operations of the federal government. Because Mr. Meadows has failed to meet his burden of establishing a colorable federal defense necessary for removal, this Court should not strip the State of its traditional venue for a state criminal prosecution.

## CONCLUSION

For the foregoing reasons, the district court's decision to decline jurisdiction and remand the case to Culton County Superior Court should be affirmed.

13

Respectfully Submitted,

/s/ *Michelle S. Kallen*
Michelle S. Kallen
Marcus Childress
Mary E. Marshall
JENNER & BLOCK LLP
1099 New York Ave. NY, Suite 900
Washington, D.C. 20001
Tel: (202) 639-6865
mkallen@jenner.com

*Counsel for Amici Curiae*

## <u>CERTIFICATE OF COMPLIANCE</u>

I certify that this document complies with the type-volume limitation set forth in FRAP 29(a)(5).  This document contains 3187 words, excluding the parts exempted by FRAP 32(f) and 11th Cir. R. 32-4.  I also certify that this document complies with the typeface and type-style requirements of FRAP 32(a)(5)–(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font.

September 25, 2023                    */s/ Michelle Kallen*
                                                 Michelle Kallen

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and accurate copy of the foregoing will be served via the Court's electronic filing system and served on all counsel of record on this 25th day of September, 2023.

September 25, 2023                    */s/ Michelle Kallen*
                                     Michelle Kallen