**No. 23-12958**

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

State of Georgia,

*Plaintiff-Appellee*,

v.

Mark R. Meadows,

*Defendant-Appellant*.

From the United States District Court for the Northern District of Georgia
The Honorable Steve C. Jones, Presiding
No. 1:23-CV-3621-SCJ

**Response Brief to October 17 Order**
**re *United States v. Pate*, No. 20-10545**

George J. Terwilliger, III
John S. Moran
Michael Francisco
Francis J. Aul
MCGUIREWOODS LLP
888 16th Street NW, Suite 500
Washington, DC 20006
(202) 857-1700

*Counsel for Defendant-Appellant Mark R. Meadows*

No. 23-12958, *State of Georgia v. Meadows*

## CERTIFICATE OF INTERESTED PERSONS
## AND CORPORATE DISCLOSURE STATEMENT

To the best of Appellant's knowledge, no associations of persons, partnerships, or corporations have an interest in the outcome of this case or appeal, including subsidiaries, conglomerates, affiliates, parent corporations, any publicly held corporation that owns 10% or more of the party's stock; the following is a list, in alphabetical order, of all trial judges, attorneys, law firms, and persons with such an interest[*]:

1.    Alksne, Cynthia, *amicus* below

2.    Anulewicz, Christopher Scott, attorney for Robert David Cheeley

3.    Arora, Manubir, attorney for Kenneth John Chesebro

4.    Aul, Francis, attorney for Mark R. Meadows

5.    Ayer, Donald B., *amicus* below

6.    Barron, Lynsey M., attorney for Scott Graham Hall

7.    Beckermann, Wayne R., attorney for Robert David Cheeley

8.    Bernick, Alex, Fulton County District Attorney's Office

9.    Bever, Thomas Dean, attorney for Shawn Micah Tresher Still

10.   Bittman, Robert, attorney for Mark R. Meadows

---

[*] For all parties who appeared below, Appellant has included the parties, their attorneys, and their attorneys' law firms. In order to facilitate this Court's review for potential conflicts, Appellant has also included the other named defendants in the state proceeding and their attorneys, where available.

No. 23-12958, *State of Georgia v. Meadows*

11.  Bondurant Mixson & Elmore LLP

12.  Carr, Christopher M., Attorney General of the State of Georgia

13.  Cheeley, Robert David, Defendant in *Georgia v. Trump*

14.  Chemerinsky, Erwin, *amicus* below

15.  Chesebro, Kenneth John, Defendant in *Georgia v. Trump*

16.  Childress, Marcus, attorney for *amici*

17.  Christenson, David Andrew, *pro se*, denied intervention below

18.  Clark, Jeffrey Bossert, Defendant in *Georgia v. Trump*

19.  Cohen, Darryl B., attorney for Trevian C. Kutti

20.  Copeland, Amy, *amicus* below

21.  Cromwell, William Grant, attorney for Cathleen Alston Latham

22.  Cross, Anna Green, Fulton County District Attorney's Office

23.  Cross Kincaid LLC

24.  Durham, James D., attorney for Mark R. Meadows in *Georgia v. Trump*

25.  Eastman, John Charles, Defendant in *Georgia v. Trump*

26.  Ellis, Jenna Lynn, Defendant in *Georgia v. Trump*

27.  Englert, Joseph Matthew, attorney for Mark R. Meadows

28.  Farmer, John J. Jr., *amicus* below

29.  Floyd, Harrison William Prescott, Defendant in *Georgia v. Trump*

30.  Floyd, John Earl, Fulton County District Attorney's Office

31.  Francisco, Michael Lee, attorney for Mark R. Meadows

No. 23-12958, *State of Georgia v. Meadows*

32.  Fried, Charles A., *amicus* below

33.  Frosh, Brian, *amicus*

34.  Fulton County District Attorney's Office

35.  Gerson, Stuart M., *amicus*

36.  Gillen, Craig A., attorney for David James Shafer

37.  Giuliani, Rudolph William Louis, Defendant in *Georgia v. Trump*

38.  Graber, Mark A., *amicus*

39.  Griffin Durham Tanner & Clarkson LLC

40.  Grohovsky, Julie, *amicus* below

41.  Grubman, Scott R., attorney for Kenneth John Chesebro

42.  Hall, Scott Graham, Defendant in *Georgia v. Trump*

43.  Hampton, Misty (a/k/a Emily Misty Hayes), Defendant in *Georgia v. Trump*

44.  Harding, Todd A., attorney for Harrison William Prescott Floyd

45.  Hogue, Franklin James, attorney for Jenna Lynn Ellis

46.  Hogue, Laura Diane, attorney for Jenna Lynn Ellis

47.  Jenner & Block, LLP

48.  Jones, Steve C., U.S. District Court Judge for the Northern District of Georgia

49.  Kallen, Michelle S., attorney for *amici*

50.  Kammer, Brian S., attorney for *amici* below

51.  Kelley, Emily E., attorney for Mark R. Meadows

52.  Kutti, Trevian C., Defendant in *Georgia v. Trump*

53.  Lake, Anthony C., attorney for David James Shafer

54.  Latham, Cathleen Alston, Defendant in *Georgia v. Trump*

55.  Lee, Stephen Cliffgard, Defendant in *Georgia v. Trump*

56.  Little, Jennifer L., attorney for Donald J. Trump

57.  Luttig, J. Michael, *amicus*

58.  MacDougald, Harry W., attorney for Jeffrey Bossert Clark

59.  Marshall, Mary E., attorney for *amici*

60.  McAfee, Scott, Fulton County Superior Court Judge

61.  McFerren, William Coleman, attorney for Shawn Micah Tresher Still

62.  McGuireWoods, LLP

63.  Meyer, Joseph Michael, attorney for *amici* below

64.  Miller, Tom, *amicus*

65.  Moran, John S., attorney for Mark R. Meadows

66.  Morgan, John Thomas III, attorney for *amici*

67.  Morris, Bruce H., attorney for Ray Stallings Smith, III

68.  Ney, Adam, Fulton County District Attorney's Office

69.  Novay, Kristen Wright, attorney for Ray Stallings Smith, III

70.  Palmer, Amanda, attorney for Ray Stallings Smith, III

71.  Parker, Wilmer, attorney for John Charles Eastman

72.  Pierson, Holly Anne, attorney for David James Shafer

No. 23-12958, *State of Georgia v. Meadows*

73. Powell, Sidney Katherine, Defendant in *Georgia v. Trump*

74. Rafferty, Brian T., attorney for Sidney Katherine Powell

75. Ragas, Arnold M., attorney for Harrison William Prescott Floyd

76. Ratakonda, Maithreyi, attorney for *amici*

77. Raul, Alan Charles, *amicus*

78. Rice, Richard A., Jr., attorney for Robert David Cheeley

79. Roman, Michael A., Defendant in *Georgia v. Trump*

80. Rood, Grant H., Fulton County District Attorney's Office

81. Sadow, Steven H., attorney for Donald J. Trump

82. Saldana, Sarah R., *amicus* below

83. Samuel, Donald Franklin, attorney for Ray Stallings Smith, III

84. Shafer, David James, Defendant in *Georgia v. Trump*

85. Shane, Peter M., *amicus*

86. Smith, Ray Stallings, III, Defendant in *Georgia v. Trump*

87. Still, Shawn Micah Tresher, Defendant in *Georgia v. Trump*

88. Terwilliger, George J., III, attorney for Mark R. Meadows

89. Trump, Donald J., Defendant in *Georgia v. Trump*

90. Twardy, Stanley A. Jr., *amicus* below

91. Volchok, Daniel, attorney for *amici* below

92. Wade, Nathan J., Fulton County District Attorney's Office

93. Wade & Campbell Firm

No. 23-12958, *State of Georgia v. Meadows*

94.  Wakeford, Francis McDonald IV, Fulton County District Attorney's Office

95.  Waxman, Seth P., attorney for *amici* below

96.  Weld, William F., *amicus* below

97.  Wertheimer, Fred, attorney for *amici* below

98.  Williams, Jonathan L., attorney for *amici*

99.  Willis, Fani T., Fulton County District Attorney's Office

100. Wilmer Cutler Pickering Hale and Dorr LLP

101. Wooten, John William, Fulton County District Attorney's Office

102. Wu, Shan, *amicus* below

103. Young, Daysha D'Anya, Fulton County District Attorney's Office

## TABLE OF CONTENTS

Introduction ........................................................................................1

A. *Removal under § 1442(a) turns on whether the officer was in service at the time of the act under color of federal office for which he is sued* ..........................2

B. *Using this Court's construction of § 1521 in* Pate *to radically constrict the protections of § 1442(a) would ignore that the two provisions are meaningfully distinct in statutory text, context, and structure* ......................................................4

C. *Removal by former officers vindicates the readily apparent purpose of the Federal Officer Removal Statute to allow federal courts to adjudicate challenges to acts done under color of federal authority* ........................................................9

Conclusion ........................................................................................10

# TABLE OF AUTHORITIES

## Cases

*Apprendi v. New Jersey*,
  530 U.S. 466 (2000) ...................................................................................3

*Bradford v. Harding*,
  284 F.2d 307 (2d Cir. 1960) ....................................................................8

*Davis v. Michigan Dep't of Treasury*,
  489 U.S. 803 (1989) ...............................................................................2, 8

*Gallizzi v. Williams*,
  423 F.2d 1213 (5th Cir. 1970)................................................................10

*In re Neagle*,
  135 U.S. 1 (1890) ....................................................................................10

*Jefferson Cnty. v. Acker*,
  527 U.S. 423 (1999) ..................................................................................9

*Margan v. Chemetron Fire Sys., Inc.*,
  954 F. Supp. 1127 (E.D. Va. 1997)..........................................................3

*Mesa v. California*,
  489 U.S. 121 (1989) ..................................................................................6

*New York v. Tanella*,
  374 F.3d 141 (2nd Cir. 2004) .................................................................10

*New York v. Trump*,
  No. 23 CIV. 3773 (AKH), 2023 WL 4614689 (S.D.N.Y. July 19, 2023) ............9

*Nixon v. Fitzgerald*,
  457 U.S. 731 (1982) ..............................................................................2, 10

*Robinson v. Shell Oil Co.*,
  519 U.S. 337 (1997) ..................................................................................2

*Tennessee v. Davis*,
  100 U.S. 257 (1879) ..................................................................................8

*United States v. Lanier*,
  520 U.S. 259 (1997) .................................................................................10

*United States v. Pate*,
  No. 20–10545, __ F.4th __, 2023 WL 6618405 (11th Cir. Oct. 11, 2023).. *passim*

*Watson v. Philip Morris Companies, Inc.*,
  551 U.S. 142 (2007) ...................................................................................9

**Statutes**

18 U.S.C. § 111 ...........................................................................................7, 8

18 U.S.C. § 1114 .....................................................................................3, 5, 7, 8

18 U.S.C. § 115 ...........................................................................................7, 8

18 U.S.C. § 1521 ...................................................................................... *passim*

28 U.S.C. § 1442(a) .................................................................................. *passim*

*An Act further to provide for the collection of duties on imports*,
  4 Stat. 632 (Mar. 2, 1833)........................................................................7

Court Security Improvement Act of 2007,
  Pub. L. No. 111–177, 121 Stat. 2534 (Jan. 7, 2008) ...............................6

**Treatises**

ANTONIN SCALIA & BRYAN A. GARNER,
  READING LAW: THE INTERPRETATION OF LEGAL TEXTS (2012) ............................9

The Court has directed the parties to address what effect, if any, *United States v. Pate*, No. 20-10545, __ F.4th __, 2023 WL 6618405 (11th Cir. Oct. 11, 2023), interpreting 18 U.S.C. § 1521, has on the analysis of whether a former officer may remove under 28 U.S.C. § 1442(a)(1). The answer is that, in light of important differences in "statutory text, context, and structure" between the two statutes, *Pate*, *supra*, at *5, *Pate* has no material impact on this case. If anything, *Pate* further supports the application of § 1442(a) to former officers sued for official acts.

While this Court divided in *Pate*, no judge thought what mattered was the officer's status at the time of indictment. Rather, *Pate*—about a criminal statute prohibiting malicious liens—quite naturally focused on the officer's status *at the time of the actus reus*, *i.e.*, at the filing of the lien. By contrast, § 1442(a) is a civil statute which provides a federal forum to federal officers sued in state court "for or relating to" acts under color of federal office. The focus is quite naturally on the officer's status *at the time of the official act* that underlies the suit. Just as in *Pate*, status at the time of indictment is irrelevant. Thus, a former officer—executive, legislative, or judicial—sued for prior official acts can remove while a *current* officer sued for prior non-official acts cannot.

That rule follows directly from the text of § 1442(a) and its readily apparent purpose to provide a federal forum for state suits implicating actions taken under color of federal office. It is reinforced by the applicable rules of construction. The

Supreme Court has instructed that, while criminal statutes should be interpreted narrowly to protect the accused, § 1442(a) should be construed broadly to effectuate its fundamental purpose of providing a federal forum for cases implicating the official acts of federal officers. Federal immunity defenses still apply to former officers, *see Nixon v. Fitzgerald*, 457 U.S. 731 (1982), and there is no basis to interpret § 1442(a), which simply provides a federal forum for such claims, to be at odds with that fundamental principle.

**A**. Removal under § 1442(a) turns on whether the officer was in service at the time of the "act under color of [federal] office" for which he is sued. The key jurisdictional element is whether the suit is "for or related to" an "act under color of [federal] office." *See* Appellant's Supplemental Brief, ECF No. 21, at 1–4 ("Supp. Br."). Consistent with *Pate*, the question is simply whether the removing party was an officer at the time of that official act. It is clear that a current officer cannot remove for prior unofficial acts, but it is equally clear that a former official can remove for prior official acts. In either case, what matters is status at the time of the acts under color of office, not status when a suit is filed or removed.

One could think of it two ways: either (1) § 1442(a) uses "officer" to include former officers like the statutes at issue in *Robinson v. Shell Oil Co.*, 519 U.S. 337 (1997), and *Davis v. Michigan Dep't of Treasury*, 489 U.S. 803 (1989), *see Pate*, *supra*, at *11 (explaining these decisions show "that words like 'officer' and

2

'employee' can . . . include formers . . . when the statutory context makes clear that they should");[1] or (2) "officer" means current officer, but that status is measured *at the time* of the "act under color of [federal] office," just as *Pate* measured official status *at the time* of the offense conduct. All roads lead to the same conclusion: a former officer may remove if sued for an act taken under color of office.

*Pate* construed a reference to a federal "officer" in a different set of statutory provisions: 18 U.S.C. §§ 1114, 1521. The Court held that the relevant question under § 1521, by cross-reference to § 1114, was whether the victims were officers "at the time [the defendant] filed liens against their property," *Pate*, *supra*, at *2—i.e.*, at the time of the offense conduct. That view coheres with the principle that a criminal offense turns on "the circumstances of the crime and the intent of the defendant *at the time of commission*." *Apprendi v. New Jersey*, 530 U.S. 466, 480 (2000) (emphasis added). But it hardly suggests that § 1442(a) denies removal to a former officer sued for official acts taken during his tenure.

---

[1] *See also* Supp. Br. 3 ("Prosecution of a former official may naturally be described as a case 'against . . . an[] officer . . . of the United States . . . for or relating to any an[] act under color of [his] office' . . . ."); *id.* at 5 n.6 (explaining why the phrasing of 1442(a)'s predecessor statute "illustrates the lexical point . . . that 'officer' naturally refers to a former officer"); *id.* at 8 ("[T]he Westfall Act's further reference to 'the estate of such employee' further illustrates that the unmodified noun 'employee' (like 'officer') can naturally refer to someone who previously filled that role but does not currently.") (citing *Margan v. Chemetron Fire Sys., Inc.*, 954 F. Supp. 1127, 1130 (E.D. Va. 1997)).

In fact, neither the § 1521 victim nor the § 1442(a) removing party needs to be a federal officer when the prosecution at issue is commenced. The parties and opinion authors in *Pate* differed as to when to measure the § 1521 victim's status. The dissenters would have allowed conviction when the defendant's conduct was motivated by a prior official act of a former officer, *see, e.g.*, *Pate*, *supra*, at *20 (Lagoa, J., dissenting), while the majority held the victim must be an officer when the lien is filed, *see id.* at *2. But no one thought the officer must still be in active service at the time of indictment. Thus, even if "officer" in § 1442(a) referred to a current (rather than former) officer, the court would still need to interpret or construe the statute to ascertain *when* that status is measured. And the text of § 1442(a) makes clear—supported further by history, precedent, and purpose, *see* Supp. Br. 4–10— that the relevant time for measuring officer status is at the time of the "act under color of [federal] office" for which he is sued. That is the plain focus of the text and the operative element giving rise to federal-question jurisdiction under Article III.[2]

**B**. Using this Court's construction of § 1521 in *Pate* to radically constrict the protections of § 1442(a) would ignore that the two provisions are meaningfully distinct in "statutory text, context, and structure." *Pate*, *supra*, at *5.

---

[2] If the "act under color of [federal] office" did not define the relevant time, the text of § 1442(a) would provide no clear definition: When the action or prosecution is first commenced? When an amended complaint or superseding indictment makes it removable? At the time of removal? When the federal court permits removal? For the entire pendency of the case?

*First*, the provisions differ in relevant statutory text.[3] As a criminal provision, § 1521 naturally focuses on the prohibited conduct and the attendant circumstances at the time of that conduct:

> Whoever [knowingly] files . . . any false lien . . . *against the real or personal property of an individual described in section 1114, on account of the performance of official duties by that individual* . . . shall be fined . . . or imprisoned for not more than 10 years, or both.

18 U.S.C. § 1521 (emphasis added). The class of individuals covered by § 1521 is set forth separately in 18 U.S.C. § 1114, which provides:

> Whoever kills or attempts to kill *any officer or employee of the United States* . . . while such officer or employee is engaged in or on account of the performance of official duties . . . , shall be punished . . . .

*Id.* § 1114(a) (emphasis added). This Court in *Pate* construed these provisions to prohibit filing a malicious lien "against the real or personal property of [an officer or employee of the United States]," with status measured at the time of the offense.

As a federal-question removal provision, § 1442(a) naturally focuses on the connection between the case and an act under color of federal office:

> *A civil action or criminal prosecution* that is commenced in a State court and that is *against or directed to* any of the following may be removed by them to the district court of the United States for the district and division embracing the place wherein it is pending:

---

[3] The relevant provisions are set forth in full (along with the provisions related to § 1521 addressed in *Pate*) in the attached Statutory Addendum.

(1) . . . *any officer (or any person acting under that officer) of the United States* . . . , in an official or individual capacity, *for or relating to any act under color of such office* . . . .

28 U.S.C. § 1442(a) (emphasis added). The Supreme Court has also authoritatively construed this statute and "its long line of statutory forebears" as establishing federal jurisdiction by "the averment of a federal defense." *Mesa v. California*, 489 U.S. 121, 125, 134 (1989).[4]

The differences in text make clear that the Court's construction of the operative language in *Pate* simply does not resolve the question here.

**Second**, the provisions arise in different contexts. Section 1521 is a recent innovation, created in Section 201 ("Protections Against Malicious Recording of Fictious Liens Against Federal Judges and Federal Law Enforcement Officers") of Title II ("Criminal Law Enhancements to Protect Judges, Family Members, and Witnesses") of the Court Security Improvement Act of 2007, Pub. L. No. 111–177, 121 Stat. 2534 (Jan. 7, 2008). It protects officers from harassment by private citizens through prosecution of a federal criminal offense. And it is part of a family of criminal enhancements that make it a *federal* offense to commit crimes that ordinarily arise under *state* law when the victim is a federal officer. *See* 18 U.S.C.

---

[4] The Court explained that it had to read the "plain language" of § 1442(a) not just in isolation but in the context of its "long-standing interpretation of Congress' intent in enacting the removal statute." *Id.* at 134–35.

6

§ 111 (assault and interference); *id.* § 115 (interference through threats or injury to family members); *id.* § 1114 (murder, manslaughter, and attempted murder).

Section 1442(a), by contrast, is the modern codification of a form of federal-court jurisdiction that traces its roots back to the 19th Century. *See* Supp. Br. 2–3 & 1 n.2. It establishes jurisdiction and secures a federal forum for cases involving federal immunity defenses, vindicating the core constitutional principle under the Supremacy Clause that state prosecutors and state courts cannot interfere with the operations of the federal government. *See id.* at 9–10.

There is simply no reason to think that, because Congress in 2007 did not make it a federal crime to file malicious liens against a former officer, Congress also did not, starting nearly two centuries earlier, provide for removal of state suits concerning the official acts of then-current (but now former) federal officers.

The consequences of excluding former officers are also quite different. The criminal prohibition in § 1521 provides federal officers additional protection above and beyond state law when carrying out their duties. A former officer is still protected by state law; indeed, under *Pate*, a former officer stands in the same position as *all* federal officers before 2008. But if the Court were to hold that a former officer cannot remove under § 1442(a), state law would not provide a backstop; the very point of § 1442(a) is to allow removal and provide a federal forum for adjudication of federal defenses. A narrowing construction of § 1442(a) would

force former officers with meritorious immunity defenses to litigate them in state court, risking not just the interests of the defendant but the interests of the United States itself. *See Bradford v. Harding*, 284 F.2d 307, 309–10 (2d Cir. 1960) (Friendly, J.) (citing *Tennessee v. Davis*, 100 U.S. 257, 262 (1879)).

*Third*, the provisions are situated in different statutory structures. This Court in *Pate* looked to 18 U.S.C. § 111 and § 115, emphasizing that "those provisions— quite unlike § 1521—were amended in 1988 to bring explicitly within their coverage individuals 'who formerly served as . . . person[s] designated' in § 1114." *See Pate*, *supra*, at *4 (citation omitted). The Court held that, under "an entire 'family of canons,'" Congress's adding former officers expressly to § 111 and § 115 suggests they are excluded from § 1521. The Court further relied on § 111 and § 115 to distinguish the Supreme Court's decision in *Davis v. Michigan Dep't of Treasury*, 489 U.S. 803 (1989), *see Pate*, *supra*, at *10, which shows "that words like 'officer' and 'employee' can . . . include formers . . . when the statutory context makes clear that they should," *id.* at *11. None of that context bears on § 1442(a), which contains no cross-reference to § 1114 and falls under Title 28, not in Title 18.

This is all to say that § 1442(a) and § 1521 differ in ways that were material to the Court's decision in *Pate*. *Pate* therefore does not answer the question whether former officers may remove under § 1442(a). Indeed, those distinctions only further

illustrate why § 1442(a) applies where, as here, a former officer removes a prosecution for or relating to a prior act under color of federal office.

**C**. Removal by former officers vindicates the readily apparent purpose of the Federal Officer Removal Statute "to allow federal courts to adjudicate challenges to acts done under color of federal authority." *New York v. Trump*, No. 23 CIV. 3773 (AKH), 2023 WL 4614689, at *5 (S.D.N.Y. July 19, 2023). Federal courts rightly focus on text, but "words are given meaning by their context, and context includes the purpose of the text." ANTONIN SCALIA & BRYAN A. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 56 (2012). That is why the Supreme Court has expressly rejected interpretations of § 1442(a) that would "defeat the purpose of the removal statute." *Jefferson Cnty. v. Acker*, 527 U.S. 423, 432 (1999). One need not rely on "extrinsic sources such as legislative history or an assumption about the legal drafter's desires," SCALIA & GARNER at 56, to know that the statute is meant to provide a federal forum for adjudicating federal immunity defenses. *See* Supp. Br. 8–10. That is readily apparent from the text of § 1442(a), its predecessors, and the federal courts' long-standing reading of those laws.

Allowing removal by a former officer of an action or prosecution for prior official acts vindicates this purpose.[5] It makes removal under § 1442(a) effectively

---

[5] The Supreme Court has made clear that § 1442(a) "must be liberally construed" to effectuate its purpose, *Watson v. Philip Morris Companies, Inc.*, 551 U.S. 142, 147 (2007), which differs markedly from how federal courts construe criminal laws, *see,*

co-extensive with federal immunity defenses, which apply to former officers. *See Nixon*, 457 U.S. at 756; *Gallizzi v. Williams*, 423 F.2d 1213, 1214 (5th Cir. 1970).

A narrower reading, by contrast, would require state-court adjudication of federal immunity defenses—what § 1442(a) is meant to avoid—if the defendant happened to leave office. And it would chill *current* federal officers in the exercise of their duties, knowing they face the threat of state prosecution in a state court immediately upon leaving office. *See New York v. Tanella*, 374 F.3d 141, 147 (2d Cir. 2004); *see generally In re Neagle*, 135 U.S. 1 (1890).

*    *    *    *    *

A former officer like Meadows may remove under § 1442(a).

---

*e.g.*, *Pate*, *supra*, at *11 (Rosenbaum, J., concurring) (explaining why construing § 1521 broadly to effectuate its purpose would have collided with the requirement of "'fair warning' of what the law proscribes"). In the criminal context, "the fair warning requirement" includes "the canon of strict construction of criminal statutes, or rule of lenity," which does not apply to the construction of civil statutes. *United States v. Lanier*, 520 U.S. 259, 266 (1997).

Dated: November 3, 2023

Respectfully submitted,

*/s/ George J. Terwilliger III*
George J. Terwilliger III
John S. Moran
Michael Francisco
Francis J. Aul
McGuireWoods LLP
888 16th Street NW, Suite 500
Washington, DC 20006
(202) 857-1700
gterwilliger@mcguirewoods.com
jmoran@mcguirewoods.com
mfrancisco@mcguirewoods.com
faul@mcguirewoods.com

*Counsel to Mark R. Meadows*

11

# STATUTORY ADDENDUM

## 18 U.S.C. § 111 – Assaulting, resisting, or impeding certain officers or employees

(a) **In General.**—Whoever—

> (1) forcibly assaults, resists, opposes, impedes, intimidates, or interferes with any person designated in section 1114 of this title while engaged in or on account of the performance of official duties; or

> (2) forcibly assaults or intimidates any person who formerly served as a person designated in section 1114 on account of the performance of official duties during such person's term of service,

shall, where the acts in violation of this section constitute only simple assault, be fined under this title or imprisoned not more than one year, or both, and where such acts involve physical contact with the victim of that assault or the intent to commit another felony, be fined under this title or imprisoned not more than 8 years, or both.

(b) **Enhanced Penalty.**—

Whoever, in the commission of any acts described in subsection (a), uses a deadly or dangerous weapon (including a weapon intended to cause death or danger but that fails to do so by reason of a defective component) or inflicts bodily injury, shall be fined under this title or imprisoned not more than 20 years, or both.

(c) **Extraterritorial Jurisdiction.**—

There is extraterritorial jurisdiction over the conduct prohibited by this section.

## 18 U.S.C. § 115 – Influencing, impeding, or retaliating against a Federal official by threatening or injuring a family member

(a)

> (1) Whoever—

>> (A) assaults, kidnaps, or murders, or attempts or conspires to kidnap or murder, or threatens to assault, kidnap or murder a member of the immediate family of a United States official, a United States judge, a

Federal law enforcement officer, or an official whose killing would be a crime under section 1114 of this title; or

(B) threatens to assault, kidnap, or murder, a United States official, a United States judge, a Federal law enforcement officer, or an official whose killing would be a crime under such section,

with intent to impede, intimidate, or interfere with such official, judge, or law enforcement officer while engaged in the performance of official duties, or with intent to retaliate against such official, judge, or law enforcement officer on account of the performance of official duties, shall be punished as provided in subsection (b).

(2) Whoever assaults, kidnaps, or murders, or attempts or conspires to kidnap or murder, or threatens to assault, kidnap, or murder, any person who formerly served as a person designated in paragraph (1), or a member of the immediate family of any person who formerly served as a person designated in paragraph (1), with intent to retaliate against such person on account of the performance of official duties during the term of service of such person, shall be punished as provided in subsection (b).

(b)

(1) The punishment for an assault in violation of this section is—

(A) a fine under this title; and

(B)

(i) if the assault consists of a simple assault, a term of imprisonment for not more than 1 year;

(ii) if the assault involved physical contact with the victim of that assault or the intent to commit another felony, a term of imprisonment for not more than 10 years;

(iii) if the assault resulted in bodily injury, a term of imprisonment for not more than 20 years; or

(iv) if the assault resulted in serious bodily injury (as that term is defined in section 1365 of this title, and including any conduct

that, if the conduct occurred in the special maritime and territorial jurisdiction of the United States, would violate section 2241 or 2242 of this title) or a dangerous weapon was used during and in relation to the offense, a term of imprisonment for not more than 30 years.

(2) A kidnapping, attempted kidnapping, or conspiracy to kidnap in violation of this section shall be punished as provided in section 1201 of this title for the kidnapping or attempted kidnapping of, or a conspiracy to kidnap, a person described in section 1201(a)(5) of this title.

(3) A murder, attempted murder, or conspiracy to murder in violation of this section shall be punished as provided in sections 1111, 1113, and 1117 of this title.

(4) A threat made in violation of this section shall be punished by a fine under this title or imprisonment for a term of not more than 10 years, or both, except that imprisonment for a threatened assault shall not exceed 6 years.

(c) As used in this section, the term—

(1) "Federal law enforcement officer" means any officer, agent, or employee of the United States authorized by law or by a Government agency to engage in or supervise the prevention, detection, investigation, or prosecution of any violation of Federal criminal law;

(2) "immediate family member" of an individual means—

(A) his spouse, parent, brother or sister, child or person to whom he stands in loco parentis; or

(B) any other person living in his household and related to him by blood or marriage;

(3) "United States judge" means any judicial officer of the United States, and includes a justice of the Supreme Court and a United States magistrate judge; and

(4) "United States official" means the President, President-elect, Vice President, Vice President-elect, a Member of Congress, a member-elect of

iii

Congress, a member of the executive branch who is the head of a department listed in 5 U.S.C. 101, or the Director of the Central Intelligence Agency.

(d) This section shall not interfere with the investigative authority of the United States Secret Service, as provided under sections 3056, 871, and 879 of this title.

(e) There is extraterritorial jurisdiction over the conduct prohibited by this section.

## 18 U.S.C. § 1114 – Protection of officers and employees of the United States

(a) **In General.—**Whoever kills or attempts to kill any officer or employee of the United States or of any agency in any branch of the United States Government (including any member of the uniformed services) while such officer or employee is engaged in or on account of the performance of official duties, or any person assisting such an officer or employee in the performance of such duties or on account of that assistance, shall be punished—

> (1) in the case of murder, as provided under section 1111;

> (2) in the case of manslaughter, as provided under section 1112; or

> (3) in the case of attempted murder or manslaughter, as provided in section 1113.

(b) **Extraterritorial Jurisdiction.—**There is extraterritorial jurisdiction over the conduct prohibited by this section.

## 18 U.S.C. § 1521 – Retaliating against a Federal judge or Federal law enforcement officer by false claim or slander of title

Whoever files, attempts to file, or conspires to file, in any public record or in any private record which is generally available to the public, any false lien or encumbrance against the real or personal property of an individual described in section 1114, on account of the performance of official duties by that individual, knowing or having reason to know that such lien or encumbrance is false or contains any materially false, fictitious, or fraudulent statement or representation, shall be fined under this title or imprisoned for not more than 10 years, or both.

iv

## 28 U.S.C. § 1442 – Federal officers or agencies sued or prosecuted

(a) A civil action or criminal prosecution that is commenced in a State court and that is against or directed to any of the following may be removed by them to the district court of the United States for the district and division embracing the place wherein it is pending:

>   (1) The United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, in an official or individual capacity, for or relating to any act under color of such office or on account of any right, title or authority claimed under any Act of Congress for the apprehension or punishment of criminals or the collection of the revenue.

>   (2) A property holder whose title is derived from any such officer, where such action or prosecution affects the validity of any law of the United States.

>   (3) Any officer of the courts of the United States, for or relating to any act under color of office or in the performance of his duties;

>   (4) Any officer of either House of Congress, for or relating to any act in the discharge of his official duty under an order of such House.

(b) A personal action commenced in any State court by an alien against any citizen of a State who is, or at the time the alleged action accrued was, a civil officer of the United States and is a nonresident of such State, wherein jurisdiction is obtained by the State court by personal service of process, may be removed by the defendant to the district court of the United States for the district and division in which the defendant was served with process.

(c) Solely for purposes of determining the propriety of removal under subsection (a), a law enforcement officer, who is the defendant in a criminal prosecution, shall be deemed to have been acting under the color of his office if the officer—

>   (1) protected an individual in the presence of the officer from a crime of violence;

>   (2) provided immediate assistance to an individual who suffered, or who was threatened with, bodily harm; or

(3) prevented the escape of any individual who the officer reasonably believed to have committed, or was about to commit, in the presence of the officer, a crime of violence that resulted in, or was likely to result in, death or serious bodily injury.

(d) In this section, the following definitions apply:

(1) The terms "civil action" and "criminal prosecution" include any proceeding (whether or not ancillary to another proceeding) to the extent that in such proceeding a judicial order, including a subpoena for testimony or documents, is sought or issued. If removal is sought for a proceeding described in the previous sentence, and there is no other basis for removal, only that proceeding may be removed to the district court.

(2) The term "crime of violence" has the meaning given that term in section 16 of title 18.

(3) The term "law enforcement officer" means any employee described in subparagraph (A), (B), or (C) of section 8401(17) of title 5 and any special agent in the Diplomatic Security Service of the Department of State.

(4) The term "serious bodily injury" has the meaning given that term in section 1365 of title 18.

(5) The term "State" includes the District of Columbia, United States territories and insular possessions, and Indian country (as defined in section 1151 of title 18).

(6) The term "State court" includes the Superior Court of the District of Columbia, a court of a United States territory or insular possession, and a tribal court.

## CERTIFICATE OF COMPLIANCE

I hereby certify that this brief complies with the ten-page limit set forth in the Court's October 17 order. This brief is 10 pages long, excluding items excluded from length under Appellate Rule 32(f), and uses a Times New Roman 14-point font.

Respectfully submitted this 3rd day of November, 2023.

*/s/ John S. Moran*

John S. Moran

*Counsel for Defendant-Appellant Mark R. Meadows*